**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

CHAD LINDSEY MOSHELL, Individually
and On Behalf of All Others Similarly
Situated,

       Plaintiff,

    -v-

SASOL LIMITED, DAVID EDWARD
CONSTABLE, BONGANI NQWABABA,
STEPHEN CORNELL, PAUL VICTOR,
FLEETWOOD GROBLER, and STEPHAN
SCHOEMAN,

       Defendants.

Case No. 1:20-cv-01008-JSR

Hon. Jed S. Rakoff

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Sasol Limited, David
Edward Constable, Bongani Nqwababa, Stephen
Cornell, Paul Victor, Fleetwood Grobler, and
Stephan Schoeman*

August 10, 2020

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

I.    PLAINTIFF FAILS TO STATE A SECTION 10(B) CLAIM.................................... 2

      A.    LCCP Cost and Schedule Estimates Are Forward-Looking Statements
            Protected by the PSLRA Safe Harbor................................................................ 2

      B.    Plaintiff Fails to Plead an Actionable Misstatement......................................... 6

      C.    Plaintiff Fails to Plead Scienter....................................................................... 8

II.   IN THE ALTERNATIVE, DEFENDANTS SEEK LEAVE TO TAKE
      DEPOSITIONS OF PLAINTIFF'S CWS ................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Barrick Gold Sec. Litig.*,
   2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015)......................................................................2, 3, 7

*Campo v. Sears Holdings, Corp.*,
   371 F. App'x 212 (2d Cir. 2010) ...................................................................................10

*In re Citigroup Inc. Sec. Litig.*,
   753 F. Supp. 2d 206 (S.D.N.Y. 2010).............................................................................5, 6

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.,*
   957 F. Supp. 2d 277 (S.D.N.Y. 2013)...............................................................................8

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...........................................................................9

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)...............................................................................4, 9

*Galestan v. Onemain Holdings, Inc.*,
   348 F. Supp. 3d 282 (S.D.N.Y. 2018)...............................................................................5

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)...............................................................................6

*In re IMAX Sec. Litig.*,
   587 F. Supp. 2d 471 (S.D.N.Y. 2008)...............................................................................9

*Kalnit v. Eichler*,
   264 F. 3d 131 (2d Cir. 2001)............................................................................................9

*Lipow v. Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015)...............................................................................8

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
   724 F. Supp. 2d 447 (S.D.N.Y. 2010),
   *aff'd*, 430 F. App'x 63 (2d Cir. 2011).................................................................................6

*In re NovaGold Res. Inc. Sec. Litig.*,
   629 F. Supp. 2d 272 (S.D.N.Y. 2009)...............................................................................8

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................................................4

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)........................................................................................................9

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015),
   *aff'd sub nom. Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)......................................................................................................3

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010).............................................................................................3, 4, 10

## PRELIMINARY STATEMENT

Rather than confront the arguments in Defendants' moving brief ("Motion" or "Mot."), Plaintiff responds with misstated legal standards and misrepresentations of both Sasol's disclosures and his own allegations. These deficiencies only highlight Plaintiff's inability to plead a Section 10(b) claim under well-settled Second Circuit precedent.

*First*, Defendants demonstrated that the LCCP cost and schedule projections were overwhelmingly forward-looking statements protected by the PSLRA safe harbor because they were (1) accompanied by meaningful cautionary language and, separately, (2) made without Defendants' "actual subjective knowledge" of falsity. Plaintiff's conclusory mischaracterization of Sasol's cautionary language as "boilerplate" does nothing to rebut Defendants' detailed showing, nor does the demonstrably false assertion that Sasol's risk disclosures were "unchanged" throughout the putative Class Period. Plaintiff's argument that the CW allegations establish actual knowledge of falsity is equally unavailing. Indeed, Plaintiff's assertion that the CWs should be viewed "collectively" concedes his failure to plead particularized CW allegations reflecting that any Defendant had actual knowledge that the LCCP estimates were false. *See infra* Section I.A.

*Second*, Defendants showed that Plaintiff failed to plead with particularity that any of the challenged statements were contemporaneously false. In opposition, beyond the inadequate CWs, Plaintiff cites Sasol's Board review of the LCCP that began in earnest in May 2019 and concluded in October 2019 when Sasol disclosed the final results. But the very disclosure that Plaintiff relies upon reflects that it was the Board review—in 2019—that revealed deficiencies in the LCCP process. Plaintiff's reliance on the Board review actually contradicts his claim that Defendants knew the LCCP estimate was false years earlier. *See infra* Section I.B.

*Third*, in response to Defendants' showing that Plaintiff failed to plead the requisite strong

inference of scienter, Plaintiff effectively abandons his contention that Defendants had any cognizable "motive" for the alleged fraud. Instead, he defaults to the oft-rejected and legally inadequate assumption that the LCCP was so important Defendants "must" have known the cost estimates were off. Overall, the Opposition ("Opp.") confirms Plaintiff has failed to allege a fraud that is at least as "cogent and compelling" as the ordinary, non-fraudulent alternative—the LCCP was a multi-billion dollar construction project that, as frequently occurs, came in late and over budget, with Defendants continuously revisiting progress and updating the market. *See infra* Section I.C.

## I.    PLAINTIFF FAILS TO STATE A SECTION 10(B) CLAIM

### A.    LCCP Cost and Schedule Estimates Are Forward-Looking Statements Protected by the PSLRA Safe Harbor

Defendants demonstrated that nearly all of the challenged LCCP projections are forward-looking statements protected by the PSLRA safe harbor for two independent reasons: (1) Sasol accompanied these disclosures with meaningful cautionary language; and (2) Plaintiff failed to plead "actual knowledge" of Sasol's LCCP projections' falsity. Mot. at 11-23.

#### 1.    *LCCP Cost and Schedule Estimates Were Forward-Looking*

Plaintiff asserts that Sasol's LCCP disclosures were not forward-looking (Opp. at 13-14), characterizing them as concerning "contemporaneous" facts that are merely "couched in terms of estimates." Opp. at 13-14. This is just false. The actual statements at issue are precisely the type of statements identified as forward-looking by the PSLRA. Mot. at 12; *see, e.g.*, AC ¶ 136 ("We expect to achieve [Beneficial Operation] during [] 2018 . . . The final estimated project cost . . . ."); AC ¶ 158 ("[T]otal capital cost for the project is expected to be US$11 billion . . . ."); *see also* Mot. at 12 n.4. Sasol's projections are identical to those the court in *Barrick* found "plainly qualify as forward-looking statements." *In re Barrick Gold Sec. Litig.*, 2015 WL 1514597 at *7-8

(S.D.N.Y. Apr. 1, 2015) (finding statements that include the words "believe," "expect," and "estimate" are forward-looking); *see also* Mot. at 12-13. As elsewhere, Plaintiff totally ignores *Barrick* in this regard. *See also infra* at 7-8.

### 2.    *LCCP Cost and Schedule Estimates Were Accompanied by Meaningful Cautionary Language*

Next, Plaintiff contends that Sasol's cautionary language was not "meaningful" because (i) the risk of cost increases and delays was contemporaneously known; and (ii) the cautionary language did not specifically mention the LCCP and remained "virtually unchanged throughout the Class Period." Opp. at 13, 17-18. Both arguments fail.

First, the PSLRA safe harbor is framed in the disjunctive—Defendants need show only meaningful cautionary language *or* that Plaintiff failed to plead actual knowledge. *See Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010); *see also In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 529-30 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016). In arguing that Sasol's cautionary language was "meaning[less]" because the cost increases were known and not "unforeseen," Plaintiff conflates these disjunctive prongs. Opp. at 17-18.

Second, Plaintiff's fallback argument—characterizing Sasol's disclosures as unchanged "boilerplate" throughout the putative Class Period—offers only mischaracterization, not rejoinder. Opp. at 17. Contrary to Plaintiff's spin, Sasol disclosed the risks associated with the LCCP from the moment it was announced in 2014, and continued to do so throughout the project's early stages, including by listing nine risk factors that could contribute to delays and cost overruns. *See* Ex. D (Sasol 20-F dated Sept. 29, 2014) at 14-15; Ex. H (Sasol 20-F dated Oct. 9, 2015) at 14-15. In 2016, after Sasol completed its first extensive budget review (Mot. at 5-7), Sasol updated the language to warn that the LCCP was "particularly material" to the company and that "further cost overruns or adverse changes" in the project's assumptions "could have a material adverse effect."

3

Ex. L (Sasol 20-F dated Sept. 27, 2016) at 9. Sasol further updated its cautionary language in 2017, by making its LCCP warnings the focus of a separate section in its disclosures, adding that "Projects like LCCP . . . are subject to risk of delay and cost overruns . . ." and adding a new factor, "unforeseen construction problems." Ex. O (Sasol 20-F dated Aug. 28, 2017) at 9. Sasol's cautionary language—and not Plaintiff's mischaracterization of it—was continuously updated and sufficiently meaningful to invoke the safe harbor.[1] This alone provides a basis to dismiss.

### 3.     *Plaintiff Fails to Plead Actual Knowledge of Falsity*

Even if Sasol's forward-looking statements were not accompanied by meaningful cautionary language, they remain subject to the safe harbor because Plaintiff has not plead particularized facts showing Defendants had "actual subjective knowledge" the LCCP projections were false when made. *Slayton*, 604 F.3d 776 n.9; *see also* Mot. at 14-22.

In relying exclusively on the CWs in this regard, Plaintiff fails to confront the requirement imposed by *Novak* that *each CW* must be described "with sufficient particularly to support the probability that a person in the [CW's] position . . . would possess the information alleged." *See Novak v. Kasaks*, F.3d 300, 314 (2d Cir. 2000); *see also* Mot. at 15-17. Instead, Plaintiff changes the subject, and invokes *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, urging the Court to evaluate the CWs "collectively." Opp. at 19. But *Tellabs* does not do away with—or even concern— *Novak*'s particularity requirement; it addresses the separate issue of whether sufficiently particularized allegations, viewed collectively, give rise to a strong inference of scienter.[2]

---

[1] Sasol's mention of other large capital projects *along with the specific mention of the LCCP* in early disclosures is inconsequential, as Plaintiff's sole cite to an out-of-circuit district court demonstrates. *See* Opp. at 18.

[2] Plaintiff's own discussion of *Freudenberg v. E\*Trade Fin. Corp.* is instructive. Opp. at 19 n.10. In *Freudenberg*, the court first evaluated plaintiffs' CWs under *Novak*, and only after determining plaintiffs had "pled with particularity the knowledgeable positions occupied by each of the CWs"

As to the purported substance of the CWs' accounts, Plaintiff fails to address (much less rebut) Defendants' showing that the CWs' subjective musings do not suffice to support a Section 10(b) claim.[3] First, Defendants showed that the CWs do not offer requisite particularized allegations demonstrating "actual subjective knowledge" of falsity on the part of Defendants. *See* Mot. at 17-22.[4] Specifically, Defendants demonstrated that five of the six CWs allege no direct communication with the individual Defendants about the topics of the alleged misstatements. *See* Mot. at 19-20. In response, Plaintiff repeats the (unparticularized) allegations of CW-4 and CW-5. *See* Opp. at 22; *see also* AC ¶¶ 86, 95; Mot. at 19. *But neither CW alleges that Defendants had actual knowledge of contemporaneously false disclosures about the LCCP.* CW-4 makes a conclusory assertion that Mr. Constable "knew" about "accounting irregularities," but provides no explanation of the basis for Mr. Constable's knowledge, let alone how these unspecified accounting irregularities even relate to LCCP cost estimates. AC ¶ 87. CW-5's allegations are even more flimsy, stating only that an $11 billion cost estimate was "socialized" among "senior management" in 2015. AC ¶ 95. Vague rumor and conjecture are insufficient to show actual knowledge. *See In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 245 (S.D.N.Y. 2010)

---

did the court consider the CW allegations. *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196 (S.D.N.Y. 2010).

[3] Many of the CW allegations do not go to the alleged misstatements at all. For example, CW-3 makes several gratuitous references to the LCCP's allegedly poor safety record. *See, e.g.*, AC ¶¶ 79, 83-84. None of the challenged statements meaningfully concern the LCCP's safety and, at any rate, Sasol's disclosures make clear that the LCCP had an excellent safety record. *See, e.g.*, Ex. W (Sasol 6-K dated Feb. 24, 2020) at 4; Ex. X (Business Update Call held on May 22, 2019) at 5.

[4] Plaintiff claims that Defendants "overstate[] Plaintiff's burden" and points to *Galestan* as instructive. Opp. at 15-16, 22. *Galestan* is indeed instructive—it teaches that CW allegations must offer concrete, specific indications that defendants were aware of the falsity of their alleged misstatements. *See Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 299 (S.D.N.Y. 2018) (identifying "reports that were regularly distributed by email to the Company's management" showing negative results). As discussed in Defendants' Motion and here, the CW allegations come nowhere close to meeting that burden.

("Plaintiffs cannot rely on assertions that the information presented by confidential witnesses was known or common knowledge within the company; these assertions are too vague and conclusory to support a finding that defendants knew they were making false statements[…]"); *see also Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 461-62 (S.D.N.Y. 2010) *aff'd*, 430 F. App'x 63 (2d Cir. 2011); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 589-91 (S.D.N.Y. 2011).

Second, CW-1's February 2016 Change Order story is similarly unavailing. Indeed, Plaintiff has changed his story. In their moving brief, Defendants demonstrated the AC had no particularized facts showing the individual Defendants were aware of Fluor's purported binding $11.7 billion Change Order.[5] Now, Plaintiff claims, for the first time, that CW-1 describes "why three Individual Defendants would have seen [the Change Order]." Opp. at 23. This is a blatant misrepresentation of the AC—CW-1 *never* asserts that *any* individual Defendant saw the purported Change Order. AC ¶¶ 66-69. Nor does CW-1 describe "*Sasol's* proprietary system that created [the Change Order]," as Plaintiff now contends (a claim that is, at any rate, directly at odds with Plaintiff's claim that *Fluor*, not Sasol, generated the supposed Change Order). *See* Opp. at 23 (emphasis added). Plaintiff cannot even keep his own allegations straight.

### B.      Plaintiff Fails to Plead an Actionable Misstatement

In response to Defendants' argument that Plaintiff failed to plead falsity (Mot. at 23-27),

---

[5] CW-1's account of a purportedly "legally binding" Change Order is fundamentally undercut by Sasol's contemporaneous disclosure concerning the 2016 review process (which Plaintiff does not dispute). Sasol disclosed that a review of the LCCP from March to August 2016 was "**carried out by a team of experienced personnel** from Sasol, **Fluor** and Technip," which resulted in a disclosed, increased cost estimate of $11 billion. Ex. J (Investor Fact Sheet dated Aug. 23, 2016) at 6 (emphasis added); *see* Mot. at 5-7, 21-22. CW-1's contention that Fluor gave Sasol a legally binding $11.7 billion Change Order in February 2016 cannot be squared with Fluor's participation in this review and the increased estimate.

the only support Plaintiff offers for his allegations—beyond the insufficient CWs discussed above—is Sasol's 2019 Board review. He contends that the October 2019 disclosure of control weaknesses "bolster[s]" the allegation that "at the time of making the [challenged statements], Defendants knew of these precise control weaknesses." Opp. at 11.[6] But as Defendants explained (Mot. at 10-11), and as Plaintiff fails to acknowledge, the 2019 disclosures clearly explain that Defendants did not know about these control weaknesses *until the 2019 Board review*. *See* Ex. V (Sasol 20-F dated Oct. 28, 2019) at 96 ("*Based on this evaluation*, our Joint Chief Executive Officers and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were not effective…" (emphasis added)). Far from showing contemporaneous falsity, the 2019 disclosures that Plaintiff hangs his hat on put the lie to his whole theory of the case.

Plaintiff offers nothing to distinguish this case from *In re Barrick Gold Securities Litigation*, 2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015). Ignoring Defendant's analysis of *Barrick*'s near-identical facts (Mot. at 22-23), Plaintiff instead primarily offers two bogus distinctions.[7] First, that "the statements at issue" in *Barrick* did not "contain [any] present tense [statements]" like Sasol's disclosure that the company was "on track." Opp. at 14-15. Not so. *E.g., Barrick*, 2015 WL 151457, at *2 (challenging statement that production was "on schedule"). And second, that "Barrick continually updated the cost and schedule estimates with the public" and hired a "third party consulting firm to audit the project." Opp. at 15. But again, that is just a false distinction: Sasol continually updated its cost and schedule estimates with the public and "commissioned a

---

[6] Plaintiff also offers a new theory of securities fraud premised on Sasol's alleged omissions. *See* Opp. at 9. But Plaintiff relies on the same allegations to show omissions as he does to show misstatements, which, as discussed in Defendants' Motion and above, still do not demonstrate that any of the statements (or omissions) at issue are actionable. *See* Mot. at 14-22.

[7] Plaintiff's contention that the alleged Fluor Change Order is distinguishable from the third party bid in *Barrick* fails for all of the reasons set forth above. *See supra* at 6; *see also* Mot. at 21-22.

7

review to be conducted by independent external experts." Mot. at 9 (quoting Ex. S (Sasol 6-K dated May 22, 2019) at 2). Plaintiff also offers a footnote (Opp. at 14 n.6), citing wholly inapposite authority: mega-project cases where—notably unlike this case—plaintiffs offered specific, particularized allegations showing the defendants were directly aware that alleged misstatements were false when made. *See In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 300 (S.D.N.Y. 2009) (identifying multiple sources describing internal cost estimates that were more than double the disclosed estimate); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 306 (S.D.N.Y. 2013) (complaint "identifies concrete facts" showing statements adhering to original construction schedule were "facile and insincere").

### C.      Plaintiff Fails to Plead Scienter

#### 1.      *Plaintiff Fails to Plead Motive and Opportunity*

Plaintiff has effectively abandoned his reliance on motive to plead scienter. As Defendants established, incentive compensation is insufficient to show motive, even when tied to corporate goals. Mot. at 28. Plaintiff does not contest that incentive compensation is the sole alleged "motive" for Sasol's purported fraud, and instead simply suggests there was something "unique" about Sasol's incentive compensation. *See* Opp. at 33-34. But Plaintiff's characterization of Sasol's incentive compensation as "unique" does not make it so, particularly when he has plead nothing to suggest that it was.[8] The AC simply alleges that the individual Defendants' compensation is tied to Sasol stock price and LCCP performance, *i.e.*, incentive compensation.

---

[8] Plaintiff's claim that Sasol "acknowledged that [its] compensation structure provided perverse incentives" is unavailing. Opp. at 34. Far from confirming motive, Sasol's adjustment to incentive plans due to cost overruns and delays relating to the LCCP further *undercuts* any incentive to mislead the market regarding the LCCP progress. *See Lipow v. Net1 UEPS Techs., Inc.,* 131 F. Supp. 3d 144, 161 (S.D.N.Y. 2015) (finding that incentive bonuses tied to a process that was allegedly improper, and therefore would be subject to invalidation, cut against finding motive to defraud).

8

AC ¶¶ 22, 233. As Defendants demonstrated, this "motive," without more, is insufficient to sustain a claim of securities fraud. *See* Mot. at 28.[9]

### 2. *Plaintiff Fails to Plead Conscious Misbehavior or Recklessness*

In the absence of motive, Plaintiff must show "correspondingly greater" allegations of either conscious misbehavior or recklessness. *Kalnit v. Eichler* 264 F. 3d 131, 142 (2d Cir. 2001). As Defendants demonstrated, Plaintiff fails to meet this exacting standard. Mot. at 29-32. To the extent Plaintiff attempts to establish conscious misbehavior or recklessness based on the CW allegations or Sasol's October 2019 disclosure (including the resignations of Mr. Nqwababa and Mr. Cornell), Plaintiff fails for all of the reasons discussed in Defendants' Motion and above. *See* Mot. at 14-27; *supra* at 5-7.

All that remains is Plaintiff's reiteration of six circumstantial facts that he claims are "probative of scienter." *See* Opp. at 30-32.[10] Even viewed holistically, as Plaintiff insists, they do not demonstrate cost overruns at the LCCP were "so obvious that the defendant must have been aware" of them, as required to raise a strong inference of recklessness. Mot. at 30, citing *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009). Instead, these facts merely recycle the core-operations and the magnitude of the fraud allegations, which Plaintiff concedes

---

[9] None of Plaintiff's cited cases support the proposition that incentive compensation, standing alone, is sufficient to show motive. *In re Cornerstone Propane Partners, L.P. Securities Litigation* is out-of-circuit and, at any rate, does not help Plaintiff. 355 F. Supp. 2d 1069, 1092 (N.D. Cal. 2005) (holding allegations about incentive "legally and factually insufficient" even where executive bonuses directly tied to the alleged fraud). Each of the other cited cases (Opp. at 34-35) find scienter based, in part, on unusual stock sales that resulted in concrete and personal benefits to individual defendants, none of which are alleged here.

[10] Notably, unlike here, many of Plaintiff's cases contain a particularized showing that defendants were privy to information that directly contradicted their public statements. *See e.g. Freudenberg*, 712 F. Supp. 2d at 198 ("information [] provided to Defendants that was contrary to public statements"); *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) ("the existence of extensive documentation . . . and [] defendants' knowledge of, or access to, those documents").

do not independently support scienter. Opp. at 33 n.24.[11]

### 3. *Plaintiff's Theory of Fraud is Not Cogent and More Compelling Than the Non-Fraudulent Alternative*

Defendants established that the pleaded facts and Sasol's disclosures support the obvious non-fraudulent inference that the LCCP cost more and took longer than expected, and that Sasol reviewed and publicly updated those estimates accordingly. *See* Mot. at 32-33. Plaintiff's apparent competing theory—that Defendants wanted to see Sasol succeed (Opp. at 33-35)—is a goal all public companies share, and is certainly not as cogent and more compelling as Sasol's much more likely scenario. *Slayton*, 604 F.3d at 777 (no scienter where the pleaded facts supported the inference that defendants were "endeavoring in good faith to ascertain and disclose future losses").

## II. IN THE ALTERNATIVE, DEFENDANTS SEEK LEAVE TO TAKE DEPOSITIONS OF PLAINTIFF'S CWS

Finally, Plaintiff fails to show why this Court should not allow CW depositions if (and only if) it deems any of Plaintiff's CW allegations material to its ruling. *See* Mot. at 34 (describing the Second Circuit's endorsement of this approach in *Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010)). Plaintiff attempts to distinguish *Campo* in a footnote, calling the Second Circuit's decision "improper[ ]" and dicta, and citing a single out-of-circuit district-court case rejecting its approach. *See* Opp. at 23 n.17. But whatever Plaintiff thinks of it, he does not dispute that *Campo* is the Second Circuit's only statement on the issue, and its guidance has accordingly been followed in this District. *See* Mot. at 34 n.29 (collecting cases). And with good reason, as it would make no sense to allow Plaintiff to force Sasol into months, if not years, of burdensome discovery based on an allegation whose manifest falsity will be revealed by a single deposition.

---

[11] Plaintiff's claim that Sasol's history with a wholly-unrelated FT Wax Expansion Project in South Africa is circumstantial evidence of scienter is a non-starter. Once more, Plaintiff cites only to an out-of-circuit case that does not help his position. *See* Opp. at 33 n.25.

10

Dated: New York, New York
      August 10, 2020

Respectfully submitted,

 /s/ Jonathan D. Polkes
Jonathan D. Polkes
Caroline H. Zalka
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants Sasol Limited, David Edward Constable, Bongani Nqwababa, Stephen Cornell, Paul Victor, Fleetwood Grobler, and Stephan Schoeman*

11