UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD LINDSEY MOSHELL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and FLEETWOOD GROBLER,<br><br>Defendants. | Case No. 1:20-cv-01008-JSR<br><br>**LEAD PLAINTIFF'S NOTICE OF SUBMISSION OF ILLUSTRATIVE FOR USE AT ORAL ARGUMENT ON DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u> |

010886-11/1335581 V1

Pursuant to the Court's instructions at the telephonic conference held on August 19, 2020,

Lead Plaintiff respectfully submits the attached illustrative for use at oral argument on Defendants'

Motion to Dismiss the Amended Complaint (ECF No. 65).

DATED: August 19, 2020

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Lucas E. Gilmore*

Lucas E. Gilmore (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com

Steve W. Berman (admitted *Pro Hac Vice*)
Jerrod C. Patterson (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

*Counsel for Lead Plaintiff David Cohn*

- 1 -

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Lucas E. Gilmore*
LUCAS E. GILMORE

# Sasol's Fraud on Investors

| What Defendants Said | What Defendants Knew | What Defendants Ultimately Admitted in Board's Oct. 2019 Report |
|---|---|---|
| **"To oversee the execution phase of the projects we have an <u>extremely experienced owner's team in place</u> and have progressed several key milestones. Site work is proceeding safely and efficiently and we expect that the plant will achieve mechanical completion at the end of calendar-year 2017. Beneficial operations are on track for the first half of calendar-year 2018."** (¶ 132)<br><br>*Constable on Mar. 9, 2015 Earnings Call* | ❌ **FALSE:** LCCP led by "amateur" Commissioners that lacked an engineering background and had no experience commissioning a project. The inexperienced leadership led to poor labor cost management, "dangerous engineering" designs, constant order changes, and safety violations. (¶¶ 79-83) | LCCP leadership "demonstrated a lack of competence" and there was "[i]nsufficient experience within the LCCP leadership team in executing mega projects." (¶ 215) |

1

# Sasol's Fraud on Investors

| What Defendants Said | What Defendants Knew | What Defendants Ultimately Admitted in Board's Oct. 2019 Report |
|---|---|---|
| "Our <u>US $8,9 billion</u> world-scale ethane cracker and downstream derivatives complex in Lake Charles, Louisiana <u>remains on track</u> to reach beneficial operation in 2018." (¶ 136)<br><br>*Sep. 7, 2015 Form 6-K* | ❌ **FALSE:** Sasol's internal end-of-job cost estimate was appx. $11 billion from the beginning. (¶ 95) Development was "behind schedule" due to construction delays. (¶ 69) | "Errors in cost and schedule estimation" due to "[i]nappropriate conduct and an improper tone at the top of the LCCP." (¶ 215) |
| "Total capital expenditure [on the LCCP] could increase up to $11 billion," but "<u>this is worst case type of scenario and we don't expect it</u>," and "<u>we are confident that we'll be able to push the CapEx down</u>" (¶ 147).<br><br>*Constable on June 6, 2016 Earning Call* | ❌ **FALSE:** In light of Fluor Change Order, Sasol was legally bound to pay at least $11.7 billion in end-of-job costs. (¶¶ 66-69) | |

2

# Sasol's Fraud on Investors

| What Defendants Said | What Defendants Knew | What Defendants Ultimately Admitted in Board's Oct. 2019 Report |
|---|---|---|
| **"Based on the detailed review process, management has taken decisive action to ensure that we successfully deliver the LCCP execution and start-up. These actions include <u>key project management changes, improvement of control base detail and changed management processes overlaying the control base,</u> amongst others."** (¶ 162)<br><br>*Nqwababa at Sep. 12, 2016 Earnings Call* | ❌ **FALSE:** LCCP management was encouraging the reporting of false values for Fluor's "self-performing construction" and "management negotiated savings," which was known by Constable and led to material understatement of costs, and was so widespread that finance personnel refused to sign off on the reports. (¶¶ 87-89) Sasol senior management, including Schoeman, directed colleagues to change anticipated completion dates for projects to make it appear on paper that the LCCP would be completed on time. (¶ 97-98) | "Insufficient segregation of duties of the LCCP project controls environment from the LCCP project execution environment, which prevented the identification of certain potential errors in cost and schedule estimation." (¶ 215)<br><br>"Inadequate control procedures within the LCCP control environment that allowed erroneous and/or unsupported reporting by the LCCP leadership to go unchallenged without proper escalation of potential red flags." (¶ 215)<br><br>"Inadequate procedures to ensure that internal ethics complaints as to the LCCP were escalated appropriately." (¶ 215)<br><br>"A culture of excess deference within the control environment that oversaw the LCCP caused certain individuals with control responsibilities and in oversight committees, including but not limited to the Steering Committee created to oversee the LCCP, to exhibit insufficient scepticism toward reporting by the LCCP leadership team." (¶ 215) |

3