# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| CHAD LINDSEY MOSHELL, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN,<br><br>                    Defendants. | : : : : : : : : : : : : : : : : | Case No. 1:20-cv-01008-JPC<br><br>Hon. John Peter Cronan |

### <u>DECLARATION OF DECLAN McNULTY</u>

Declan McNulty hereby declares as follows:

1.      I have worked at Fluor Corporation ("Fluor")[1] from February 2002 through the present. My current title is Executive Director of Supply Chain. From November 2016 to March 2019, I worked on the Lake Charles Chemical Project ("LCCP") as a Commercial Director, where I was responsible for the commercial management of project contractors and suppliers while acting in the role of limited agent on behalf of Sasol. Additionally, from October 2017 to March 2019, I also undertook the role of Deputy Project Director for the FTI JV with delivery responsibility on Fluor's engineering procurement and construction management scope within the JV.

2.      I have seen and reviewed a copy of the Second Amended Complaint ("SAC") filed in the above-captioned matter, including paragraphs 64 through 74, which  purport

---

[1] All references to "Fluor" or "FTI" refer to the engineering, procurement, and construction management contractor for the LCCP, including Fluor Corporation, Technip Stone & Webster, and the Fluor-Technip joint venture.

to be the allegations of Confidential Witness 1 ("CW-1"). CW-1 claims to have served "as a senior engineer for the LCCP project from early fall 2015 to mid-summer July 2016, and worked as a subcontractor for Fluor, the main subcontractor on the project."  SAC ¶ 64.

3.    CW-1 alleges that "in February 2016, Fluor submitted a Change Order  for $11.7 billion for the LCCP project . . . ." SAC ¶ 65. CW-1 describes the Change Order as "a formal notice by a contractor to its client that a project's initial, approved budget has been exhausted and that more money is needed to continue work." SAC ¶ 65. CW-1 also alleges that "[t]here was no basis for Sasol to renegotiate or bargain down the price . . ." and Sasol "was not in a position to reject the Change Order, but instead was contractually obligated to pay that amount [$11.7 billion] as it came due."  SAC ¶ 66.

4.    As someone who has worked at Fluor for more than eighteen years and who has been intimately involved in the LCCP since 2016, I can state that CW-1's statements are inaccurate and reflect a complete ignorance of the contractual relationship between Sasol and FTI JV and the associated billing and budgeting practices of the LCCP, as well as Fluor's role in the process.

5.    In my role as Commercial Director, I worked on and had  knowledge of the costs and budget related to the LCCP and associated contractual relationship between Sasol and FTI, Sasol and Fluor and Sasol and their directly engaged construction contractors and suppliers. Given my position on the LCCP from the Fluor side, I can unequivocally state that Fluor never submitted a Change Order to Sasol such as that described in the SAC. Neither Fluor nor FTI ever and unilaterally increased the cost of the LCCP from $8.9 billion to $11.7 billion in February 2016 nor at any other time.

2

6.     To confirm my understanding that no such document exists, I reviewed FTI's corporate records for the period in and around February 2016. Based on that review, I can confirm that our corporate records do not reflect any such Change Order as is described by CW-1.

7.     Not only are CW-1's allegations concerning the Change Order false, they also reflect a total misunderstanding of Fluor's role in the project, the contractual relationship between Sasol and FTI, and the nature of the project cost forecasting and billing process.

8.     FTI had no authority to send a Change Order for the entire project that required Sasol to pay $11.7 billion. FTI was not a construction contractor on the LCCP—it was the Engineering, Procurement and Construction Manager ("EPCM") for the LCCP. As such, it was primarily responsible for the provision of engineering and procurement services and construction management services, to manage Sasol selected construction contractors and suppliers performing the actual construction and off site fabrication works, including but not limited to, overseeing the budgets and schedules of these Sasol directly contracted contractors and suppliers. In the role of EPCM, FTI only billed for its own services to Sasol  and managed, as limited agent on behalf of Sasol, Sasol directly contracted contractors and suppliers. FTI did not and could not mandate cost for the contractors and suppliers. FTI charged for their own services for acting as agent on behalf of Sasol. Thus, the notion reflected in CW-1's story—that FTI simply told Sasol it had to pay $11.7 billion dollars makes no sense.

9.     Second, neither FTI for its own EPCM services, nor any contractor for their own services, simply imposed a cost on Sasol. They could not do so. They billed by the hour. Invoices were based on the time it took to accomplish the work. All they could and did do was submit estimates.     These estimates were by their nature non-binding, not unilateral and all

3

subject to extensive negotiation and approval at Sasol's sole discretion. Thus, the entire premise of CW-1's account—that FTI even had the ability to impose a final cost for the project on Sasol—let alone that it in fact did so—is literally impossible.

10.    In sum, CW-1's description of an alleged "Change Order" is absolutely false. Not only does the Change Order described by CW-1 not exist, but it could not exist. CW-1 completely misrepresents the relationship between FTI and Sasol, and how contractors and suppliers billed for their work on the LCCP.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed in＿＿＿Farnborough, UK＿＿＿, on＿＿＿29th October＿＿＿, 2020.

mcn46323

Digitally signed by mcn46323
DN: cn=mcn46323,
email=Declan.McNulty@Fluor.
com
Date: 2020.10.29 17:51:18 Z

Declan McNulty

4