# EXHIBIT 13

## (Unredacted Version Filed Under Seal)



T 510.725.3000    F 510.725.3001

Lucas Gilmore
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 HEARST AVENUE, SUITE 202
BERKELEY, CA  94710
www.hbsslaw.com
**Direct (510) 725-3052**
LucasG@hbsslaw.com

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

September 21, 2020

**VIA E-MAIL**

Nicole Prunetti
nicole.prunetti@weil.com
Jonathan Polkes
jonathan.polkes@weil.com
Caroline Zalka
caroline.zalka@weil.com
Luna Barrington
luna.barrington@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153

     Re:    *Moshell v. Sasol Limited, et al.*
             **(Case No. 1:20-cv-01008-JSR)**

Dear Counsel:

     In accordance with the Court's September 16, 2020 Order directing Plaintiffs to identify the Confidential Witnesses ("CWs") cited in Plaintiffs' Second Amended Complaint, we write to provide the following chart reflecting the identities of the Confidential Witnesses ("CWs") referred to in Plaintiffs' pleadings:



| CW | IDENTITY |
|---|---|
| CW-1 |  |
| CW-2 |  |

SEATTLE  BOSTON  CHICAGO  LOS ANGELES  NEW YORK  PHOENIX  SAN DIEGO  BERKELEY

WEIL, GOTSHAL & MANGES LLP
September 21, 2020
Page 2

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



| CW | IDENTITY |
|---|---|
| CW-3 | |
| CW-4 | |
| CW-5 | |
| CW-6 | |

Pursuant to the Confidentiality Stipulation and Protective Order (ECF 80), Plaintiffs designate the above Discovery Material as Confidential - "*Attorneys' Eyes Only*."

For point of clarification, "*Attorneys' Eyes Only*" shall mean and is limited to both Sasol's external counsel of record in this action, as well as the members of the in-house Sasol legal team involved in supervising this litigation, which according to your representation are Mr. Jens Straatman, Mr. Torsten Peters, and Ms. Jennifer Gallagher.

Plaintiffs submit that "extraordinary circumstances" exist warranting the "*Attorneys' Eyes Only*" designation and limiting the dissemination of this Discovery Material to Sasol's attorneys.

010886-11/1345996 V2

WEIL, GOTSHAL & MANGES LLP
September 21, 2020
Page 3

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

As a general matter, courts have repeatedly recognized the chilling effects of disclosing a confidential source's identity. *See Novak v. Kasak*, 216 F.3d 300, 314 (2d Cir. 2000) (disclosing confidential sources' identities "could deter informants from providing critical information to investigators in meritorious cases or invite retaliation against them . . . .").

Indeed, as recognized by The Association of the Bar of the City of New York Securities Litigation Committee, Subcommittee on Use of Confidential Sources:

> Even with statutory protections, witnesses see great risk to their reputations and careers by being 'outed" as whistleblowers: suspicion on the part of their current employers; ill-will from former employers on whom they depend for references; strained relations in their professional social networks; and the burden and distraction of being embroiled in high-stakes litigation.
>
> . . .
>
> Moreover, the remedies available only address retaliation against current employees who blow the whistle on wrongdoing at their employer; they provide no protection for a whistleblower who finds him or herself unable to find a new position in the industry with a different employer – which is one of the particular concerns that whistleblowers often have.

More specific to this case, Sasol has a well-documented history of maltreatment of whistleblowers, including those reporting unethical conduct at the Lake Charles Chemical Project to senior management, like the CWs. *See* "SOL: Sasol Limited - Outcomes of the Independent Board Review and Executive Transition Plan," PR News (Oct. 28, 2019) (identifying Sasol's "Ethics process - Inadequate procedures to ensure that internal ethics complaints as to the LCCP were escalated appropriately" as a causal factor that "affected the prompt identification and reporting of the errors, omissions, and inaccuracies in the project cost estimate.").

The CWs themselves described specific instances of Sasol flouting Sarbanes-Oxley regulations, retaliation against them by Sasol management for raising concerns about management of the LCCP, and resigning in an effort to avoid engaging in management's misconduct. *See* SAC, ¶ 86 (CW-4 describing SOX violations); ¶ 83 (CW-3 was fired a week after complaining to Sasol's Commissioning VP about Cordero); ¶ 98 (CW-6 quit because of Sasol's management's illegal misconduct). Accordingly, the risk that the CWs' reputations and careers will be adversely impacted by having their identities disclosed to individuals outside of Sasol's legal team is not speculative, but real.

Finally, the above-described privacy rights of the CWs vastly outweigh any purported need for Sasol business personnel to view this Discovery Material or have any portion of this Discovery Material filed publicly.

WEIL, GOTSHAL & MANGES LLP
September 21, 2020
Page 4

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Lucas Gilmore
Senior Counsel

LG

010886-11/1345996 V2