# EXHIBIT 1

## (Unredacted Version Filed Under Seal)

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

CHAD LINDSEY MOSHELL, Individually

and on Behalf of All Others

Similarly Situated,

　　　　　　　　　　Plaintiffs,　　　　　　Case no.

　　　　　　　　　　v.　　　　　　　　1:20-cv-01008-JPC

SASOL LIMITED, DAVID EDWARD

CONSTABLE, BONGANI NQWABABA,

STEPHEN CORNELL, PAUL VICTOR, and

STEPHAN SCHOEMAN,

　　　　　　　　　　Defendants.

------------------------------------------x

　　　　　　　　　　1:55 p.m.

　　　　　　　　　　December 2, 2020

　　　　VIDEOTAPED VIRTUAL DEPOSITION of ▊▊▊

▊▊▊▊, a Witness in the above entitled matter,

pursuant to Order, before Stephen J. Moore, a

Registered Professional Reporter, Certified

Realtime Reporter and Notary Public of the State

of New York.

████████████

A P P E A R A N C E S:


        HAGENS BERMAN SOBOL SHAPIRO LLP

                Attorneys for Plaintiff

                455 Noth Cityfront Plaza

                Chicago, Illinois 60611


        BY:    JERROD PATTERSON, ESQ.


        WEIL, GOTSHAL & MANGES, LLP

                Attorneys for Defendants and the

                Witness

                767 Fifth Avenue

                New York, New York 10153-0119


        BY:    JONATHAN POLKES, ESQ.

                - and -

                LUNA BARRINGTON, ESQ

                - and -

                INGRID EICHER, ESQ.

                - and -

                CAROLINE ZALKA, ESQ.

Page 3

A P P E A R A N C E S   (Continued:)

        HACH ROSE SCHIRRIPA & CEVERIE LLP

                Attorneys for Witness

                112 Madison Avenue

                New York, New York   10016

        BY:    FRANK SCHIRRIPA, ESQ.

Page 4

EXAMINATION BY                                              PAGE

MR. POLKES                                                      7

Page 5

THE VIDEOGRAPHER:  We are now going on the record at approximately 1:55 p.m.

This is media unit number 1 of the recorded deposition of ▮▮▮▮▮▮▮▮ on December 2, 2020.

It is taken by counsel for the Defendant, in the matter of Chad Lindsay Moshell, et al., versus Sasol Limited, et al., it is filed in the United States District Court, Southern District of New York.  Case number is 1:20-CV-01008-JSR.

The deposition is being held via Zoom conference.

I am the videographer.  My name is Kevin Gallagher.  The court reporter is Stephen Moore.  We are both from the firm of Veritext Legal Solutions.

At this time those present in the conference call will identify themselves for the record.

Frank, you want to start?

MR. SCHIRRIPA:  Frank Schirripa, law firm of Hach Rose Schirripa &

Page 6

Cheverie LLP for the witnesses, ██████████

██████████

MR. PATTERSON:  Jerrod Patterson, Hagens Berman for Plaintiffs and Mr. Polkes.

If I could just ask from the outset that I be allowed to join in the objections by Mr. Schirripa, so I don't have to object along with him.

MR. POLKES:  That's fine with me.

MR. PATTERSON:  Thank you.

MR. POLKES:  I am Jonathan Polkes from Weil, Gotshal representing all the Defendants in this action, and I am accompanied by some of my teammates here, partners and teammates, but I will be the only one speaking, other than with regard to exhibits.

THE VIDEOGRAPHER:  Our court reporter will swear the witness and we can proceed.

██████████    ██████████        called as a witness, having been first duly sworn by

Page 7

██████████████

          the Notary Public, was examined and

          testified as follows:


EXAMINATION BY

MR. POLKES:


          Q     All right, Mr. ████████, how are

you?

                Nice to meet you.

          A     Likewise, I'm okay thank you.

          Q     Virtually.

                Where are you, are you like in

your kitchen or something?

          A     In my kitchen in ████████.

          Q     All right, that beats a

conference room in New York, I guess, right?

                Which is what we would be doing.

          A     I think I would prefer the

office than a kitchen all the time, actually.

          Q     I think actually when I spoke to

Frank you were traveling, you were in a trailer

or something, living in campgrounds?

          A     I was going to initially take my

camper away for about three months, but then

████████████

with this -- with a few other things, with work commitments, I decided to postpone.

And also the COVID has started to ramp up, and I didn't want to get involved more so in that, so --

Q    Is that an English accent? What's your accent?

A    Welsh.

Q    Welsh?

A    Thank you.

Q    Thank you for correcting me.  I saw The Crown about that, so I realize that's a sensitive issue.

A    I recognize your Aston Martin, DB 6 or 7?

Q    6.

A    6, yeah.

Q    So, you know we only have an hour and we should be fine, so I'm going to skip a lot of the things that I would normally do and just sort of jump right in.

First of all, I understand that Frank Schirripa is your lawyer, is that right?

A    Correct.

████████

Q        And I understand now Mr. Patterson, who is here virtually, is from the firm of Hagens Berman.

You have spoken with him before, right?

A        Correct, yes.

Q        In connection with --

MR. POLKES:  Let me ask a better question.

Q        My understanding is that Mr. Patterson's law firm, Mr. Patterson himself, and private investigators working for Mr. Patterson spoke to you a number of times prior to the filing of the Complaint in this action, is that right?

A        Correct.

Q        Yeah.

And you spoke to Mr. Patterson personally prior to the preparation of the complaint, right?

A        Correct, yes.

Q        And you spoke to the PI a number of times, was it a woman?

A        Yes, female, yes, I think her

name was Lynn or something.

Q    Lynn, let's call her Lynn, I think that's right.  Do you remember how many times you spoke to them collectively before the Complaint was filed?

A    Probably two, three, I would say three times.

Q    Okay.

Just to be clear, I don't know if you've spoken to them since -- let me ask that, have you, setting aside Frank, who's your lawyer, have you spoken with Mr. Patterson since the Complaint was filed?

A    At the time to do my affidavit.

Q    Okay.

A    That's it.

Q    Other than that, no?

A    No.

Q    How about anyone else from Hagens Berman, just so I sort of have that straight, after the Complaint was filed have you spoken to anyone from Hagens Berman, other than to file your affidavit?

A    I am trying to think, I don't

think so, no.

Q    You did speak?

A    Three or four times and then I spoke to them three or four times, confirmed that it was going to be kind of a confidential witness, but things would be open, did the affidavit to confirm, and that's it from memory.

Q    Okay, I guess just for the record, and to be clear, I believe it was Hagens Berman and Mr. Patterson that referred Mr. Schirripa to you, right?

A    Correct.

Q    So you spoke to them at least by e-mail, if not personally, after the Complaint was filed in order to be directed to Mr. Schirripa, right?

A    Correct, the only time that I requested an attorney was when the subpoena was served upon me.

Q    And you requested an attorney by going to Mr. Patterson?

A    To Lynn.

Q    To Lynn?

████████████

A      Yes.

Q      And she directed you to Mr. Schirripa?

A      Correct; or Lynn directed me to the attorney and the attorney directed me to Frank, yes.

Q      And by the attorney you mean Mr. Patterson?

A      Yes, I guess that's his name. To be honest, I deal with so many people with work, names forget me, I remember Frank, I don't even remember your name, sorry.

Q      Okay, that's fine.

But you reached out to Lynn, Lynn directed you to the Hagens Berman firm, Hagens Berman firm directed you to Frank?

A      Um-hum, yes.

Q      Got it, okay, very good.

And do you know who's paying Frank's bills?

A      The attorney, the Plaintiffs or --

Q      So Hagens Berman?

A      I won't be paying his bill,

████████

trust me, but yes.

Q        Okay, very good.

Now, I think you said you spoke to Hagens Berman or Lynn four or five times prior to the preparation of the Complaint, is that right?

A        Um-hum; yes.

Q        Did they ever show you their notes that they took of those conversations to make sure that they had transcribed it accurately?

A        Not shown, discussed.

Q        Okay, they called you to discuss what you had said in earlier interviews?

A        Um-hum.

Q        Okay, that's when the Hagens Berman firm called you after your conversations with Lynn to see if they got it all straight, is that right?

A        Basically, yes.

Q        Okay.

Did you know that you were going to be -- that your discussions were going to be reflected in a Complaint that was going to be

▬▬▬▬▬▬▬

filed in court?

A    Yes.

Q    Did you ask to see a copy of the Complaint before it was filed, the draft?

A    No.

Q    Were you shown a draft of the Complaint before it was filed?

A    Discussed it, but no.  Didn't see it.

Q    When you say discussed it, I want to be clear, I understand you told me already that Hagens Berman spoke to you to make sure that they understood what you had told Lynn, right?

A    Um-hum, yes.

Q    Separate and apart from that, did they ever call you to read to you over the phone what they were going to say in the Complaint about you?

A    We discussed many things, probably they did.  As for recollecting exactly, no.

Q    All right, so you don't remember?

A       We discussed many things about Sasol and about what they were going to do.

Q       Okay.

A       Eventually that went all quiet, and then a subpoena turned up on my doorstep.

Q       Yeah, but I'm just asking you, I'm just asking you a specific question.

Did they read to you over the phone what they were going to say about you in the Complaint before it was filed?

A       About me, yes.

Q       I'm sorry?

A       About me, yes.

Q       So they did read it to you, they said here is what we are going to say?

A       Um-hum.

Q       Okay.  All right, then.

Now, have you seen the notes taken by Lynn of your conversations with her?

A       No.

Q       Not even in connection with preparing for today?

A       Not the notes, only my affidavit and what was in the Complaint.

 

Q       Have you seen the notes that were taken by Mr. Patterson of your conversations with him from Hagens Berman?

A       No.

Q       Are you aware of the fact that those notes were produced to me to my law firm?

A       I understand they were.

Q       Okay.

So you understand that I have seen the notes of those conversations?

A       Um-hum.

Q       Very good.

So then let me ask you about a conversation that you had with the Hagens Berman firm, and it was with Jerrod Patterson, and it was on June 2nd of 2020, this year, according to the notes.

MR. SCHIRRIPA:  Mr. Polkes, at this point in time can I open the folder that was sent to me.

MR. POLKES:  Absolutely, Frank.

MR. SCHIRRIPA:  I would just like to note for the record that Mr. ████ has not received a copy of the

▆▆▆▆▆▆▆▆▆

documents.  They were not sent to him.

MR. POLKES:  Okay.

MR. SCHIRRIPA:  So I think screen share would probably be best.

Q       Mr. ▆▆▆▆▆ with regard to your conversation with Mr. Patterson, do you remember telling him that a change order is an estimate?

A       Probably, yes, it is an estimate as well.

Q       Well, you said an estimate as well.  I am just asking do you remember telling him that it's an estimate?

A       Probably, yes.

Q       And do you remember telling him that it is an estimate based on the design at the moment and based on current progress?

A       Yes.

Q       Okay.

You also remember telling Mr. ▆▆▆▆, bear with me, that a change order -- you told Mr. Patterson and also Lynn, I'm asking if you remember this, that you saw a change order from Fluor that pushed -- that was

about a $2 billion increase?

A        Correct.

Q        From the prior estimate, right?

And do you remember describing it as saying that it was a request by Fluor to increase the indirects?

A        Indirects and all things associated with the project.  It's not purely indirects.

Q        Okay.

But that it was a request to do an increase, right?

A        Um-hum, yes.

Q        And do you remember saying that Fluor couldn't do it unless there was approval given by Sasol to the increase?

A        That is correct.

No change order is acted upon unless it's approved by the client.

Q        Okay.

Now you also, I believe, told Patterson and Lynn, the private investigator, that the billing is a function of time times the billing rate, right, the hours expended

███ ████████

times the billing rate, right?

A      Depends if it's time and materials, schedule of rates, lump sum, et cetera.

Q      Right, and this was not a lump sum contract, correct?

A      Correct.

Q      So, in other words, there was no fixed price for this construction project?

A      No, it's man-hours, labor, or labor, equipment, et cetera.

Q      Right.

And so when you said that the amount spent or the billing is something that Sasol must pay, you mean after the work is done and a bill is submitted, right?

A      Yes.

Work is performed, invoiced every two weeks.

Q      Right, just like a construction on your house.

If someone has done the work and they have spent the hours and they present you with a bill and the work has been done, it has

to be paid, right?

A       Yes.

Q       But an estimate is different,
isn't it?

MR. PATTERSON:  I object to form.

Q       Well, when you said a change
order is a request to increase the estimate,
it's looking forward, it's a prediction of how
many hours the job is going to take, right?

A       Correct.

Q       No one knows when a change order
is issued how many hours the job is actually
going to take, right?

A       Actually, you do.

MR. PATTERSON:  I object to form,
this is all outside the scope of the
deposition ordered by the court.

MR. POLKES:  You know what,
Jerrod, that's a fair objection.

Q       So, Mr. ▇▇▇▇▇ I just want to
clarify that when you spoke to Mr. Patterson
you explained to him that an estimate is
something that is forward looking and that you
can't know in advance how many hours are

▓▓▓▓▓▓▓▓

actually going to be spent?

    A    I would like to clarify the prior thing, so when engineering is proceeding, you have masses of drawings about the project.

    Q    Go ahead, I'm sorry.

    A    The man-hours are worked upon the drawings to gather you an estimate, equipment is ordered by the client, those estimate hours equate into dollars.

    Q    Um-hum.

    A    So, yes, it is a forward looking estimate in the sense of what they are going to take to build it, but it is a firm number to go forward.

    If you've burnt X and you have forward to go X, you can see where the data will tell you, the data is there.

    Q    I'm sorry?

    A    You don't understand?

    Q    Not at all.

    If the estimate, and again, I am asking what you told Mr. Patterson?

    A    Um-hum.

    Q    Because that is what's important

Page 22

here.

Did you explain to him that if the estimate is for a certain number of hours it could take more hours or less hours, in fact, right?

A    No, I don't think I explained that to him.

But you are correct, it could take less or more.

Q    He didn't ask you?

A    Not from memory, no.

Q    Okay.

So if a project takes less hours than the estimate, it's going to cost less, right?

MR. PATTERSON:  Objection, outside the scope.

Q    And if it takes more hours, it's going to cost more, right?

MR. SCHIRRIPA:  Same objection.

Q    Right?

A    That is correct.

Q    And so when -- and in your words, which you've already told me, when Fluor

Page 23

requests an increase in budget, that estimate
is going to be scrubbed by Sasol, right?

A        Correct.

MR. PATTERSON:  Objection.  This
is all outside the scope, Mr. Polkes.

Q        Mr. ▓▓▓▓▓▓ let me ask you
that.

Were you asked that by
Mr. Patterson or by Lynn?

A        No, but then step back, if a
contractor gives you a change order for an
additional man-hours and equipment and time,
what does it tell you?

Q        Well, you tell me what you told
them as to what it tells you.

A        The estimate is incorrect.

Q        And that has to be revised or
that Fluor is proposing revising it, right?

A        Yes.

Q        Okay.

A        And per the contract they
entered into.

You're trying to analyze a
project where data is flowing on a weekly

Page 24

basis, hours are burned, productivity suffers, it all goes based on productivity, you don't pay a dollar for a dollar worked, you never do. Productivity comes into it.

Q    When the change order that you saw in February of 2016 was sent, are you saying that the $8.9 billion had been completely spent at that point?

MR. PATTERSON:  Objection, outside the scope.

Q    Let me ask you this, did Mr. Patterson ask you that question?

A    I do not recollect that.  I don't think so.

Q    Did you explain to him whether or not the $8.9 billion had been fully spent?

A    Probably -- to be honest, I cannot recollect that I did.  I may have, we discussed a lot of things.  Specifically around the change order.

Q    And do you remember telling Mr. Patterson that Fluor and Sasol track the actual to budget of the estimate?

A    We did.

Q    And did you tell him that a change order would come across because the budget and the actual are no longer tracking properly, did you explain that to him?

A    Progress and performance.

Q    You never said to Mr. Patterson or to Lynn that once -- that a revised estimate is something that Sasol has no choice but to agree to, did you?

A    I may have; but I can't remember.

Q    It's not true, is it?

A    So you have four ground working contractors on-site with almost 5,000 people, estimates are done as progress is performed, as things progress, nothing goes as planned.

And if Fluor had been more man-hours and Technip, too, hence it's going to cost more, and hence that's why Fluor flagged the change order, and that's probably one of many, thereby increasing your costs.

Q    Right.  What I am asking you is you would -- you didn't tell Lynn or Jerrod Patterson that simply because Fluor revised its

estimate upwards, that Sasol has no choice but to pay that sum in the end, did you?

A    Probably I did.

Because in my experience, I've never seen a contract, i.e., come down in price.  Estimates --

Q    That's not what I'm asking you.

I'm asking you if you told them that as a matter of contract all Fluor has to do is revise its estimate and Sasol is legally obligated at that point with no ability to say anything, it has to pay whatever Fluor tells it to pay?

A    No.

Q    That's not true, is it?

A    Correct, the EPC contract will give you guidelines of how to process a change order.

Q    Right.

And a change order will be vetted.

Did you explain to them that under normal circumstances or under --

MR. POLKES:  Withdrawn, let me

ask you this question.

Q    Did you explain to them that under the procedures here that if Fluor revised its estimate upward, that revised estimate would be reviewed by Sasol and discussed?

A    Correct, it would be.

Q    Negotiated, right?

A    Yes.

Q    And you explained all that to them, didn't you?

A    I guess I did.

Q    Yeah.

It looked to me from the notes as if Lynn, the private investigator, is the first person to tell you that the estimate that Fluor made public for the LCCP project, that the first time they went public with $11.7 billion was 2019, or something like that?

MR. SCHIRRIPA:  Objection.

Q    Do you remember that discussion?

MR. SCHIRRIPA:  Objection.

A    Yes, I remember it, it was actually yeah, written down.

Q    Right, and I guess what I'm

Page 28

███████████

really asking you is you didn't know that before Lynn, the private investigator told you, right?

A    That is correct, I left in July of '16, and that's why I left the project; nothing more to do with it, done.

Q    Did Lynn, the private investigator, show you a disclosure that said that -- in March of 2016 that said that Sasol had received the change order from Fluor and was reviewing it?

A    I don't know if that was mentioned.

Q    So, Lynn did tell you that?

A    No, I don't think she did; I don't think so.

Q    Did Jerrod Patterson tell you that?

A    I'm trying to recollect the conversations, there were three of them, but no, I don't recollect that data of being Fluor or Sasol acknowledging the change and looking at it.

Q    And just so we are clear, I want

to make sure I understand the distinction that you provided to Lynn and to Mr. Patterson when you were speaking to them.

A bill, once it's been provided by Fluor for work already done, has to be paid, no negotiating, that's just money owed, right?

A        Providing it meets the criteria of the contract for the schedule of rates in place.

Q        Yeah; yes, assuming it's --

A        It's in line with the billing procedure.

Q        Right.

But a change order, which is an estimate going forward, has to be reviewed and approved by Sasol, isn't that --

MR. PATTERSON:   Objection, outside the scope.

Q        Is that right, Mr.

A        Change orders in any form will have to get approved from the client.

Q        And you explained that to Mr. Patterson, didn't you?

A        Yes.

███████████

It's actually written in my affidavit, if I'm correct.

Q       Actually, no, it's not.

Do you want to show me where you think it is in your affidavit?

MR. POLKES:  Withdrawn, let's leave that as is.

Q       Did Mr. Patterson or did Lynn explain to you that when the -- that later in 2016 when Sasol disclosed the $11 billion revised estimate for the project, that that number had been derived collaboratively with Fluor and that they both agreed to it?

MR. PATTERSON:  Objection.

Q       Did they tell you that?

A       Do I have to answer, yes or no?

Q       You can answer any way you like.

Did they tell you that?

A       Was I told by Lynn that Fluor and Sasol had agreed to the $11 plus billion in what date?

Q       Later in 2016, after the change order.

A       No.

Q        They didn't tell you that?

A        I don't think so, no.

I don't think they -- I didn't think it had been agreed to, anyhow.

Q        How would you know that, did you tell them how you would know that if it had been agreed to or not?

A        Well, if it was past July I wouldn't have been there anyhow.

Q        Because you had left in July of 2016?

A        Yeah.

Q        Did you explain to them that after July of 2016 you would have had no knowledge of how revised estimates were agreed to between Sasol and Fluor?

A        My knowledge ceased after that time.  When I left, I left.

Q        Did you explain that to Jerrod and to Lynn?

A        Yes, I would have.

Q        And that after you were gone you have no idea how the $11 billion estimate that was ultimately made public in 2016, how it was

arrived at?

MR. SCHIRRIPA:  Objection.

Q    Correct?

A    No.

MR. POLKES:  Could we take a short break.

MR. PATTERSON:  Sure.

THE VIDEOGRAPHER:  We are now going off the record at approximately 2:21 p.m.

(At this point in the proceedings there was a recess, after which the deposition continued as follows:)

THE VIDEOGRAPHER:  This is the beginning of media 2.  We are going back on the record, approximately 2:33 p.m.

Go ahead, counsel.

Q    All right.

Mr. ████████, when you were having your conversations with Lynn and with Hagens Berman, did they ever ask you if you had actually seen the contract with Fluor?

A    Contract.

Q    The contract between Sasol and

███████████████

Fluor?

          A          The change order or the EPC

contract?

          Q          No, the contract the ECPM.

          A          EPCM, yes.   I think we had sight

of it because we were looking for, what -- we

were looking in there for something.

          Q          I'm sorry, my first question is

were you asked, did they ever ask you if you

had actually seen the contract?

          A          Oh, no, no.

          Q          Did they ever ask you how the

contract actually worked with regard to change

orders?

          A          No.

                       Can I also -- we talked about

something -- about Sasol wouldn't approve the

change order or they wouldn't proceed.

          Q          Sure.

          A          In my affidavit in paragraph

number 72 I stated that Fluor would not have

expended that money, the additional $3 billion

until Sasol approved it.

          Q          I'm sorry, you are talking about

▆▆▆▆▆▆▆▆▆

your declaration?

A      Affidavit, the separate one after it.

It's the one that was done around 4th of June, 2nd of June, somewhere around that time period.

Q      Oh, I see what you're saying.

A      On November 5th it was dated, paragraph 72.

MR. SCHIRRIPA:  He's going back and forth between the two documents.

Referencing the declaration which references the June Complaint.

Q      Yeah, that's fine, and thank you for that.

Who prepared that?

Your calling it an affidavit, I think it's actually a declaration, but we are talking about the same thing, and just for the record, so we are all -- so there is no confusion, we are all discussing the declaration of ▆▆▆▆▆▆ which was provided to us in discovery which was executed in Indiana on November 5, 2020?

A        Yes.

Q        We are all talking about the same thing.

Who prepared that document, the draft?

A        Plaintiff's attorney.

Q        Okay, Hagens Berman?

A        Yes.

Q        And did you make any changes to it?

A        To this, no.

Q        Okay.

You got it, you signed it, you sent it back?

A        We discussed it on the phone, it came out, I reviewed it.

MR. SCHIRRIPA:  Anything that was discussed with me is privileged.

MR. POLKES:  Frank, we can't hear you.

MR. SCHIRRIPA:  Can you hear me? Not at all?

I am going to drop out and rejoin.

THE CONCIERGE:  Can you say

Page 36

[REDACTED] something now?

MR. POLKES:  Look, Frank, if it helps you, I am about to close the deposition, so I don't know if you want to put something on the record.

MR. SCHIRRIPA:  It's fine.  My objection just was anything that you and I discussed, [REDACTED], is privileged.

Anything that anyone else discussed with you, even if it was in my presence, is not privileged.

So just be mindful of that.

MR. POLKES:  That's all fine.

Mr. [REDACTED] I want to thank you very much for doing this, Frank, Jerrod, thank you, Veritext staff, thank you so much, and we are done.

MR. PATTERSON:  Thank you.

THE VIDEOGRAPHER:  Please stand by.  We are now going off the record at approximately 2:36 p.m.

Page 37

I, the undersigned, a Certified Shorthand Reporter of the State of New York, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction;

That the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case before completion of the proceedings, review of the transcript [ ] was [x ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: 12/3/20

Stephen J. Moore
RPR, CRR

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Page 38

██████████████

DECLARATION UNDER PENALTY OF PERJURY

Case Name: MOSHELL v. SASOL

Date of Deposition: December 2, 2020

I, ███████████, hereby certify

Under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this _____ day of _____, 2020, at _____.

_____

████████████

**Page 39**

████████

**DEPOSITION ERRATA SHEET**
**Case Name: MOSHELL v. SASOL**
**Name of Witness:** ████████
**Date of Deposition: December 2, 2020**
**Reason Codes:  1. To clarify the record.**
**2. To conform to the facts.**
**3. To correct transcription errors.**

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page 40

███████████

**DEPOSITION ERRATA SHEET**

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

_____ Subject to the above changes, I certify that the transcript is true and correct

_____ No changes have been made. I certify that the transcript  is true and correct.

_____
███████████

[& - called]                                                                    Page 1

**&**

**&**  2:11 3:5 5:25

**0**

**01008**  1:8 5:13

**1**

**1**  5:5 39:7
**10016**  3:8
**10153-0119**  2:15
**11**  30:11,21 31:24
**11.7**  27:18
**112**  3:7
**12/3/20**  37:17
**16**  28:6
**1:20**  1:8 5:13
**1:55**  1:14 5:4

**2**

**2**  1:14 5:7 18:2
  32:16 38:4 39:5,9
**2016**  24:7 28:10
  30:11,23 31:12,15
  31:25
**2019**  27:19
**2020**  1:14 5:7
  16:17 34:25 38:5
  38:12 39:6
**20932**  37:20
**2:21**  32:11
**2:33**  32:17
**2:36**  36:22
**2nd**  16:17 34:6

**3**

**3**  33:23 39:10

**4**

**455**  2:6
**4th**  34:6

**5**

**5**  34:25

**5,000**  25:15
**5th**  34:9

**6**

**6**  8:16,17,18
**60611**  2:7

**7**

**7**  4:3 8:16
**72**  33:22 34:10
**767**  2:14

**8**

**8.9**  24:8,17

**a**

**ability**  26:12
**absolutely**  16:22
**accent**  8:7,8
**accompanied**  6:16
**accurately**  13:12
**acknowledging**
  28:23
**acted**  18:19
**action**  6:15 9:16
  37:14,15
**actual**  24:24 25:4
**additional**  23:13
  33:23
**advance**  20:25
**affidavit**  10:15,24
  11:8 15:24 30:3,6
  33:21 34:3,18
**agree**  25:10
**agreed**  30:14,21
  31:5,8,16
**ahead**  21:6 32:18
**al**  5:10,11
**allowed**  6:8
**amount**  19:15
**analyze**  23:24
**answer**  30:17,18

**apart**  14:17
**approval**  18:16
**approve**  33:18
**approved**  18:20
  29:17,22 33:24
**approximately**  5:3
  32:10,17 36:22
**arrived**  32:2
**aside**  10:12
**asked**  23:9 33:10
**asking**  15:7,8
  17:13,24 21:23
  25:23 26:8,9 28:2
**associated**  18:9
**assuming**  29:11
**aston**  8:15
**attorney**  11:20,22
  12:6,6,8,22 35:7
  37:14
**attorneys**  2:5,12
  3:6
**avenue**  2:14 3:7
**aware**  16:6

**b**

**b**  6:24
**back**  23:11 32:16
  34:11 35:15
**barrington**  2:19
**based**  17:17,18
  24:3
**basically**  13:21
**basis**  24:2
**bear**  17:22
**beats**  7:16
**beginning**  32:16
**behalf**  1:5
**believe**  11:11
  18:22
**berman**  2:4 6:5
  9:4 10:21,23
  11:12 12:16,17,24

13:5,18 14:13
16:4,16 17:22
32:22 35:8

**best**  17:5
**better**  9:9
**bill**  12:25 19:17,25
  29:5
**billing**  18:24,25
  19:2,15 29:12
**billion**  18:2 24:8
  24:17 27:19 30:11
  30:21 31:24 33:23
**bills**  12:21
**bongani**  1:9
**break**  32:7
**budget**  23:2 24:24
  25:4
**build**  21:14
**burned**  24:2
**burnt**  21:16

**c**

**c**  2:2 3:3
**call**  5:21 10:3
  14:18
**called**  6:24 13:14
  13:18

**[calling - employee]**                                                      Page 2

calling   34:18
camper   7:25
campgrounds
  7:23
caroline   2:23
case   1:7 5:13
  37:11 38:3 39:3
ceased   31:18
certain   22:4
certified   1:20 37:3
certify   37:4,13
  38:7 40:18,21
cetera   19:5,12
ceverie   3:5
chad   1:5 5:9
change   17:8,22,25
  18:19 20:7,12
  23:12 24:6,21
  25:3,21 26:18,21
  28:11,23 29:15,21
  30:23 33:3,14,19
changes   35:10
  40:18,20
cheverie   6:2
chicago   2:7
choice   25:9 26:2
circumstances
  26:24
cityfront   2:6
clarify   20:22 21:3
  39:7
clear   10:10 11:11
  14:12 28:25
client   18:20 21:9
  29:22
close   36:4
codes   39:7
collaboratively
  30:13
collectively   10:5

come   25:3 26:6
comes   24:5
commitments   8:3
complaint   9:15,21
  10:6,14,22 11:16
  13:6,25 14:5,8,20
  15:11,25 34:14
completely   24:9
completion   37:11
concierge   35:25
conference   5:15
  5:21 7:17
confidential   11:6
confirm   11:8
confirmed   11:5
conform   39:9
confusion   34:22
connection   9:8
  15:22
constable   1:9
construction
  19:10,21
continued   3:3
  32:14
contract   19:7
  23:22 26:6,10,17
  29:9 32:23,24,25
  33:4,5,11,14
contractor   23:12
contractors   25:15
conversation
  16:15 17:7
conversations
  13:10,18 15:20
  16:4,11 28:21
  32:21
copy   14:4 16:25
cornell   1:10
correct   8:25 9:7
  9:17,22 11:14,19
  12:5 18:3,18 19:7

19:8 20:11 22:9
  22:23 23:4 26:17
  27:7 28:5 30:3
  32:4 38:10 39:10
  40:19,22
correcting   8:12
cost   22:15,20
  25:20
costs   25:22
counsel   5:8 32:18
court   1:2 5:12,17
  6:20 14:2 20:18
covid   8:4
criteria   29:8
crown   8:13
crr   37:21
current   17:18
cv   1:8 5:13

**d**

data   21:17,18
  23:25 28:22
date   30:22 37:16
  38:4 39:5
dated   34:9 37:17
david   1:9
day   38:11
db   8:16
deal   12:11
december   1:14 5:7
  38:4 39:5
decided   8:3
declaration   34:2
  34:13,19,23 38:2
defendant   5:9
defendants   1:12
  2:12 6:15
depends   19:3
deposition   1:17
  5:6,14 20:18
  32:14 36:5 37:11
  38:4 39:2,5 40:2

derived   30:13
describing   18:5
design   17:17
different   20:4
directed   11:17
  12:3,5,6,16,17
direction   37:8
disclosed   30:11
disclosure   28:9
discovery   34:24
discuss   13:14
discussed   13:13
  14:9,11,21 15:2
  24:20 27:6 35:16
  35:19 36:9,10
discussing   34:22
discussion   27:21
discussions   13:24
distinction   29:2
district   1:2,3 5:12
  5:12
document   35:5
documents   17:2
  34:12
doing   7:18 36:16
dollar   24:4,4
dollars   21:10
doorstep   15:6
draft   14:5,7 35:6
drawings   21:5,8
drop   35:24
duly   6:25 37:7

**e**

e   2:2,2 3:3,3 6:24
  11:16
earlier   13:15
ecpm   33:5
edward   1:9
eicher   2:21
employee   37:14

[engineering - interviews]                                                    Page 3

| | | | |
|---|---|---|---|
| engineering 21:4 | **f** | forth 34:12 37:6 | **h** |
| english 8:7 | fact 16:6 22:6 | forward 20:9,24 | hach 3:5 5:25 |
| entered 23:23 | facts 39:9 | 21:12,15,17 29:16 | hagens 2:4 6:5 9:4 |
| entitled 1:18 | fair 20:20 | four 11:4,5 13:5 | 10:21,23 11:12 |
| epc 26:17 33:3 | february 24:7 | 25:14 | 12:16,17,24 13:5 |
| epcm 33:6 | federal 37:11 | frank 3:10 5:23,24 | 13:17 14:13 16:4 |
| equate 21:10 | female 9:25 | 7:22 8:24 10:12 | 16:15 32:22 35:8 |
| equipment 19:12 | fifth 2:14 | 12:7,12,17 16:22 | hear 35:20,22 |
| 21:9 23:13 | file 10:24 | 35:20 36:3,16 | held 5:14 |
| errata 39:2 40:2 | filed 5:11 10:6,14 | frank's 12:21 | helps 36:4 |
| errors 39:10 | 10:22 11:17 14:2 | fully 24:17 | honest 12:11 |
| esq 2:9,17,19,21 | 14:5,8 15:11 | function 18:24 | 24:18 |
| 2:23 3:10 | filing 9:15 | further 37:10,13 | hour 8:20 |
| estimate 17:9,10 | financially 37:14 | | hours 18:25 19:11 |
| 17:12,14,17 18:4 | fine 6:11 8:20 | **g** | 19:24 20:10,13,25 |
| 20:4,8,23 21:8,10 | 12:14 34:15 36:7 | gallagher 5:17 | 21:7,10 22:4,5,5 |
| 21:13,22 22:4,15 | 36:14 | gather 21:8 | 22:14,19 23:13 |
| 23:2,17 24:24 | firm 5:18,25 9:4 | give 26:18 | 24:2 25:19 |
| 25:8 26:2,11 27:5 | 9:12 12:16,17 | given 18:17 37:9 | house 19:22 |
| 27:5,16 29:16 | 13:18 16:7,16 | gives 23:12 | hum 12:18 13:8,16 |
| 30:12 31:24 | 21:14 | go 21:6,14,17 | 14:16 15:17 16:12 |
| estimates 25:16 | first 6:25 8:23 | 32:18 | 18:14 21:11,24 |
| 26:7 31:16 | 27:16,18 33:9 | goes 24:3 25:17 | |
| et 5:10,10 19:4,12 | five 13:5 | going 5:3 7:24 | **i** |
| eventually 15:5 | fixed 19:10 | 8:20 11:6,23 | i.e. 26:6 |
| exactly 14:23 | flagged 25:20 | 13:23,24,25 14:19 | idea 31:24 |
| examination 4:2 | flowing 23:25 | 15:3,10,16 20:10 | identify 5:21 |
| 7:5 | fluor 17:25 18:6 | 20:14 21:2,13 | illinois 2:7 |
| examined 7:2 | 18:16 22:25 23:19 | 22:15,20 23:3 | important 21:25 |
| executed 34:24 | 24:23 25:18,20,25 | 25:19 29:16 32:10 | incorrect 23:17 |
| 38:11 | 26:10,13 27:4,17 | 32:16 34:11 35:24 | increase 18:2,7,13 |
| exhibits 6:19 | 28:11,22 29:6 | 36:21 | 18:17 20:8 23:2 |
| expended 18:25 | 30:14,20 31:17 | good 12:19 13:3 | increasing 25:22 |
| 33:23 | 32:23 33:2,22 | 16:13 | indiana 7:15 34:25 |
| experience 26:5 | folder 16:20 | gotshal 2:11 6:14 | indirects 18:7,8,10 |
| explain 22:3 24:16 | follows 7:3 32:14 | ground 25:14 | individually 1:5 |
| 25:5 26:23 27:3 | foregoing 37:5,6,9 | guess 7:17 11:10 | ingrid 2:21 |
| 30:10 31:14,20 | 37:10 38:10 | 12:10 27:12,25 | initially 7:24 |
| explained 20:23 | forget 12:12 | guidelines 26:18 | interested 37:14 |
| 22:7 27:10 29:23 | form 20:6,16 | | interviews 13:15 |
| | 29:21 | | |

**investigator** 18:23 27:15 28:3,9
**investigators** 9:13
**invoiced** 19:19
**involved** 8:5
**issue** 8:14
**issued** 20:13

**j**

**j** 1:19 37:20
**jerrod** 2:9 6:4 16:16 20:20 25:24 28:18 31:20 36:16
**job** 20:10,13
**join** 6:8
**jonathan** 2:17 6:13
**jpc** 1:8
**jsr** 5:13
**july** 28:5 31:9,11 31:15
**jump** 8:22
**june** 16:17 34:6,6 34:14

**k**

**kevin** 5:17
**kind** 11:6
**kitchen** 7:14,15,20
**know** 8:19 10:10 12:20 13:23 20:19 20:25 28:2,13 31:6,7 36:5
**knowledge** 31:16 31:18
**knows** 20:12

**l**

**l** 6:24
**labor** 19:11,12
**law** 5:25 9:12 16:7
**laws** 38:9

**lawyer** 8:24 10:13
**lccp** 27:17
**leave** 30:8
**left** 28:5,6 31:11 31:19,19
**legal** 5:19
**legally** 26:11
**likewise** 7:11
**limited** 1:9 5:10
**lindsay** 5:9
**lindsey** 1:5
**line** 29:12 39:11 39:12,13,14,15,16 39:17,18,19,20,21 39:22,23,24 40:3,4 40:5,6,7,8,9,10,11 40:12,13,14,15,16
**living** 7:23
**llp** 2:4,11 3:5 6:2
**longer** 25:4
**look** 36:3
**looked** 27:14
**looking** 20:9,24 21:12 28:23 33:7 33:8
**lot** 8:21 24:20
**lump** 19:4,6
**luna** 2:19
**lynn** 10:2,3,3 11:24,25 12:5,15 12:16 13:5,19 14:15 15:20 17:23 18:23 23:10 25:8 25:24 27:15 28:3 28:8,15 29:3 30:9 30:20 31:21 32:21

**m**

**m** 6:24
**machine** 37:8
**madison** 3:7

**mail** 11:16
**man** 19:11 21:7 23:13 25:19
**manges** 2:11
**march** 28:10
**martin** 8:15
**masses** 21:5
**materials** 19:4
**matter** 1:18 5:9 26:10
**mean** 12:8 19:16
**media** 5:5 32:16
**meet** 7:10
**meets** 29:8
**memory** 11:9 22:12
**mentioned** 28:14
**mindful** 36:13
**moment** 17:18
**money** 29:7 33:23
**months** 7:25
**moore** 1:19 5:18 37:20
**moshell** 1:5 5:10 38:3 39:3

**n**

**n** 2:2 3:3
**name** 5:16 10:2 12:10,13 37:16 38:3 39:3,4
**names** 12:12
**negotiated** 27:8
**negotiating** 29:7
**neither** 37:13
**never** 24:4 25:7 26:6
**new** 1:3,22 2:15,15 3:8,8 5:12 7:17 37:4 38:9
**nice** 7:10

**normal** 26:24
**normally** 8:21
**notary** 1:21 7:2
**note** 16:24
**notes** 13:10 15:19 15:24 16:2,7,11,18 27:14
**noth** 2:6
**november** 34:9,25
**nqwababa** 1:9
**number** 5:5,13 9:14,23 21:14 22:4 30:13 33:22

**o**

**object** 6:10 20:6 20:16
**objection** 20:20 22:17,21 23:5 24:10 27:20,22 29:18 30:15 32:3 36:8
**objections** 6:9
**obligated** 26:12
**office** 7:20
**oh** 33:12 34:8
**okay** 7:11 10:9,16 11:10 12:14,19 13:3,14,17,22 15:4 15:18 16:9 17:3 17:20 18:11,21 22:13 23:21 35:8 35:13
**once** 25:8 29:5
**open** 11:7 16:20
**order** 1:19 11:17 17:8,23,25 18:19 20:8,12 23:12 24:6,21 25:3,21 26:19,21 28:11 29:15 30:24 33:3 33:19

**[ordered - record]**                                                    Page 5

**ordered**  20:18 21:9
**orders**  29:21 33:15
**original**  37:10
**outset**  6:7
**outside**  20:17 22:18 23:6 24:11 29:19
**owed**  29:7

**p**

**p**  2:2,2 3:3,3 6:24
**p.m.**  1:14 5:4 32:11,17 36:22
**page**  4:2 39:11,12 39:13,14,15,16,17 39:18,19,20,21,22 39:23,24 40:3,4,5 40:6,7,8,9,10,11 40:12,13,14,15,16
**paid**  20:2 29:6
**paragraph**  33:21 34:10
**partners**  6:17
**party**  37:15
**patterson**  2:9 6:4 6:4,12 9:3,12,14 9:19 10:13 11:12 11:23 12:9 16:3 16:16 17:7,23 18:23 20:6,16,22 21:23 22:17 23:5 23:10 24:10,13,23 25:7,25 28:18 29:3,18,24 30:9,15 32:8 36:19
**patterson's**  9:12





**pay**  19:16 24:4 26:3,13,14
**paying**  12:20,25
**penalty**  38:2,8
**people**  12:11 25:15
**performance**  25:6
**performed**  19:19 25:16
**period**  34:7
**perjury**  38:2,8
**person**  27:16
**personally**  9:20 11:16
**pertains**  37:10
**phone**  14:19 15:10 35:16
**pi**  9:23
**place**  29:10 37:5
**plaintiff**  2:5
**plaintiff's**  35:7
**plaintiffs**  1:7 6:5 12:22
**planned**  25:17
**plaza**  2:6
**please**  36:20
**plus**  30:21
**point**  16:20 24:9 26:12 32:12
**polkes**  2:17 4:3 6:6 6:11,13,13 7:6 9:9

16:19,22 17:3 20:19 23:6 26:25 30:7 32:6 35:20 36:3,14
**postpone**  8:3
**prediction**  20:9
**prefer**  7:19
**preparation**  9:20 13:6
**prepared**  34:17 35:5
**preparing**  15:23
**presence**  36:11
**present**  5:20 19:24
**price**  19:10 26:7
**prior**  9:15,20 13:6 18:4 21:4 37:6
**private**  9:13 18:23 27:15 28:3,8
**privileged**  35:19 36:9,12
**probably**  10:7 14:22 17:5,10,15 24:18 25:21 26:4
**procedure**  29:13
**procedures**  27:4
**proceed**  6:22 33:19
**proceeding**  21:4
**proceedings**  32:12 37:5,6,7,11
**process**  26:18
**produced**  16:7
**productivity**  24:2 24:3,5
**professional**  1:20
**progress**  17:18 25:6,16,17
**project**  18:9 19:10 21:5 22:14 23:25 27:17 28:6 30:12

**properly**  25:5
**proposing**  23:19
**provided**  29:3,5 34:23
**providing**  29:8
**public**  1:21 7:2 27:17,18 31:25
**purely**  18:9
**pursuant**  1:19
**pushed**  17:25
**put**  36:6

**q**

**question**  9:10 15:8 24:13 27:2 33:9
**quiet**  15:5

**r**

**r**  2:2 3:3 6:24,24
**ramp**  8:5
**rate**  18:25 19:2
**rates**  19:4 29:9
**reached**  12:15
**read**  14:18 15:9,15
**realize**  8:13
**really**  28:2
**realtime**  1:21
**reason**  39:7,11,12 39:13,14,15,16,17 39:18,19,20,21,22 39:23,24 40:3,4,5 40:6,7,8,9,10,11 40:12,13,14,15,16
**received**  16:25 28:11
**recess**  32:13
**recognize**  8:15
**recollect**  24:14,19 28:20,22
**recollecting**  14:22
**record**  5:3,22 11:11 16:24 32:10

**[record - tell]** Page 6

32:17 34:21 36:6
36:21 37:7,9 39:8
**recorded** 5:6
**references** 34:14
**referencing** 34:13
**referred** 11:12
**reflected** 13:25
**regard** 6:19 17:6
33:14
**registered** 1:20
**rejoin** 35:24
**relative** 37:14
**remember** 10:4
12:12,13 14:25
17:8,13,16,21,24
18:5,15 24:22
25:12 27:21,23
**reporter** 1:20,21
5:17 6:21 37:4
**representing** 6:14
**request** 18:6,12
20:8
**requested** 11:20
11:22 37:12
**requests** 23:2
**review** 37:11
**reviewed** 27:6
29:16 35:17
**reviewing** 28:12
**revise** 26:11
**revised** 23:18 25:8
25:25 27:4,5
30:12 31:16
**revising** 23:19
**right** 7:8,16,17
8:22,24 9:6,16,21
10:4 11:13,18
13:7,20 14:15,24
15:18 18:4,13,25
19:2,6,13,17,21
20:2,10,14 22:6,16

22:20,22 23:3,19
25:23 26:20 27:8
27:25 28:4 29:7
29:14,20 32:19
**room** 7:17
**rose** 3:5 5:25
**rpr** 37:21

**s**

**s** 2:2 3:3
**sasol** 1:9 5:10 15:3
18:17 19:16 23:3
24:23 25:9 26:2
26:11 27:6 28:10
28:23 29:17 30:11
30:21 31:17 32:25
33:18,24 38:3
39:3
**saw** 8:13 17:24
24:7
**saying** 18:6,15
24:8 34:8
**schedule** 19:4 29:9
**schirripa** 3:5,10
5:24,24,25 6:9
8:24 11:13,18
12:4 16:19,23
17:4 22:21 27:20
27:22 32:3 34:11
35:18,22 36:7
**schoeman** 1:10
**scope** 20:17 22:18
23:6 24:11 29:19
**screen** 17:4
**scrubbed** 23:3
**see** 13:19 14:4,10
21:17 34:8
**seen** 15:19 16:2,11
26:6 32:23 33:11
**sense** 21:13
**sensitive** 8:14

**sent** 16:21 17:2
24:7 35:15
**separate** 14:17
34:3
**served** 11:21
**set** 37:6
**setting** 10:12
**shapiro** 2:4
**share** 17:5
**sheet** 39:2 40:2
**short** 32:7
**shorthand** 37:4,8
**show** 13:9 28:9
30:5
**shown** 13:13 14:7
**sight** 33:6
**signature** 37:20
**signed** 35:14
**similarly** 1:6
**simply** 25:25
**site** 25:15
**situated** 1:6
**skip** 8:21
**sobol** 2:4
**solutions** 5:19
**sorry** 12:13 15:13
21:6,19 33:9,25
**sort** 8:22 10:21
**southern** 1:3 5:12
**speak** 11:3
**speaking** 6:18
29:4
**specific** 15:8
**specifically** 24:20
**spent** 19:15,24
21:2 24:9,17
**spoke** 7:21 9:14,19
9:23 10:5 11:5,15
13:4 14:13 20:22
**spoken** 9:5 10:11
10:13,23

**staff** 36:17
**stand** 36:20
**start** 5:23
**started** 8:4
**state** 1:21 37:4
38:9
**stated** 33:22
**states** 1:2 5:11
**step** 23:11
**stephan** 1:10
**stephen** 1:10,19
5:18 37:20
**straight** 10:22
13:19
**subject** 40:17
**submitted** 19:17
**subpoena** 11:20
15:6
**subscribed** 37:16
**suffers** 24:2
**sum** 19:4,7 26:3
**sure** 13:11 14:14
29:2 32:8 33:20
**swear** 6:21
**sworn** 6:25 37:7

**t**

**t** 6:24
**take** 7:24 20:10,14
21:14 22:5,10
32:6
**taken** 5:8 15:20
16:3 37:5
**takes** 22:14,19
**talked** 33:17
**talking** 33:25
34:20 35:3
**teammates** 6:16
6:17
**technip** 25:19
**tell** 21:18 23:14,15
25:2,24 27:16

**[tell - zoom]**

28:15,18 30:16,19 31:2,7

**telling** 17:8,13,16 17:21 24:22

**tells** 23:16 26:13

**testified** 7:3

**testifying** 37:7

**testimony** 37:9

**thank** 6:12 7:11 8:11,12 34:15 36:15,17,17,19

**thing** 21:4 34:20 35:4

**things** 8:2,21 11:7 14:21 15:2 18:8 24:20 25:17

**think** 7:19,21 9:25 10:4,25 11:2 13:4 17:4 22:7 24:15 28:16,17 30:6 31:3,4,5 33:6 34:19

**three** 7:25 10:7,8 11:4,5 28:21

**time** 5:20 7:20 10:15 11:19 16:20 18:24 19:3 23:13 27:18 31:19 34:7 37:5

**times** 9:14,24 10:5 10:8 11:4,5 13:5 18:24 19:2

**today** 15:23

**told** 14:12,14 17:23 18:22 21:23 22:25 23:15 26:9 28:3 30:20

**track** 24:23

**tracking** 25:4

**trailer** 7:22

**transcribed** 13:11 37:8

**transcript** 37:9,10 37:12 40:18,21

**transcription** 39:10

**traveling** 7:22

**true** 25:13 26:16 37:9 38:10 40:19 40:22

**trust** 13:2

**trying** 10:25 23:24 28:20

**turned** 15:6

**two** 10:7 19:20 34:12

**u**

**u** 6:24

**ultimately** 31:25

**um** 12:18 13:8,16 14:16 15:17 16:12 18:14 21:11,24

**undersigned** 37:3

**understand** 8:23 9:2 14:12 16:8,10 21:20 29:2

**understanding** 9:11

**understood** 14:14

**unit** 5:5

**united** 1:2 5:11

**upward** 27:5

**upwards** 26:2

**v**

**v** 1:8 38:3 39:3

**veritext** 5:19 36:17

**versus** 5:10

**vetted** 26:22

**victor** 1:10

**videographer** 5:2 5:16 6:20 32:9,15 36:20

**videotaped** 1:17

**virtual** 1:17

**virtually** 7:12 9:3

**w**

**want** 5:23 8:5 14:12 20:21 28:25 30:5 36:5,15

**way** 30:18

**weekly** 23:25

**weeks** 19:20

**weil** 2:11 6:14

**welsh** 8:9,10

**went** 15:5 27:18

**whereof** 37:15

**withdrawn** 26:25 30:7

**witness** 1:18 2:13 3:6 6:21,25 11:7 37:15 39:4

**witnesses** 6:2 37:6

**woman** 9:24

**words** 19:9 22:25

**work** 8:2 12:12 19:16,19,23,25 29:6

**worked** 21:7 24:4 33:14

**working** 9:13 25:14

**written** 27:24 30:2

**x**

**x** 1:4,13 21:16,17 37:12

**y**

**yeah** 8:18 9:18 15:7 27:13,24 29:11 31:13 34:15

**year** 16:17

**york** 1:3,22 2:15 2:15 3:8,8 5:13 7:17 37:4 38:9

**z**

**zalka** 2:23

**zoom** 5:15

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.