# EXHIBIT 2

## (Unredacted Version Filed Under Seal)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x

CHAD LINDSEY MOSHELL, Individually

and on Behalf of All Others

Similarly Situated,

                    Plaintiffs,        Case no.

                    v.              1:20-cv-01008-JPC

SASOL LIMITED, DAVID EDWARD

CONSTABLE, BONGANI NQWABABA,

STEPHEN CORNELL, PAUL VICTOR, and

STEPHAN SCHOEMAN,

                    Defendants.

-------------------------------------------x

                    2:00 p.m.

                    December 8, 2020

        VIDEOTAPED VIRTUAL DEPOSITION of ▆▆▆▆

▆▆▆▆▆▆▆, a Witness in the above entitled matter,

pursuant to Order, before Stephen J. Moore, a

Registered Professional Reporter, Certified

Realtime Reporter and Notary Public of the State

of New York.

A P P E A R A N C E S:

HAGENS BERMAN SOBOL SHAPIRO LLP

Attorneys for Plaintiff

455 North Cityfront Plaza

Chicago, Illinois 60611

BY:   LUCAS GILMORE, ESQ.

- and -

NICOLLE GRUENEICH, ESQ

WEIL, GOTSHAL & MANGES, LLP

Attorneys for Defendants and the

Witness

767 Fifth Avenue

New York, New York 10153-0119

BY:   CAROLINE ZALKA, ESQ.

- and -

INGRID EICHER, ESQ

- and -

JENNA HARRIS, ESQ.

Page 3

INDEX

EXAMINATION BY                                        PAGE

MR. GILMORE                                             6


                    E X H I B I T S

EXHIBIT


Exbt 1    Phone records                           7    13

Page 4

THE VIDEOGRAPHER:   Good afternoon.  We are going on the record at 1:11 a.m., Central time, December 8, 2020.

Please note that the microphones are sensitive and may pick up whispering and private conversations.

Please mute your microphone whenever possible.  Audio and video recording will continue to take place unless all parties agree to go off the record.

This is media unit 1 of the video recorded deposition of taken by counsel for the Defendant, in the matter of Chad Lindsey Moshell individually and on behalf of all others similarly situated versus Sasol, Ltd., et al., filed in the United States District Court, Southern District of New York, case number 1:20-CV-01008-JPC.

This deposition is being held remotely.  My name is Robert Rudis, from the firm Veritext Legal Solutions, and I

Page 5

am the videographer.

Our court reporter is Stephen Moore, also from Veritext.

I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel and everyone attending remotely will please now state their appearances and affiliations for the record.

If there are any objections to proceeding, please state them at the time of your appearance, beginning with the noticing attorney.

MR. GILMORE:  Good afternoon, Lucas Gilmore on behalf of the Plaintiffs.

MS. ZALKA:  Caroline Zalka from Weil, Gotshal on behalf of the Defendants and                    .

And just one clarification, Bob, I think you said the deposition was being taken by Defendants, but it's being taken by the Plaintiffs.  Just minor correction.

THE VIDEOGRAPHER:  Thank you.
Shall we go off the record?

MR. GILMORE:  Yes.

MS. ZALKA:  Yes.

THE VIDEOGRAPHER:  We are going
off the record at 1:13.

(At this point in the proceedings
there was a recess, after which the
deposition continued as follows:)

THE VIDEOGRAPHER:  We are back on
the record at 1:15.

██████████        ███████████████,        called as a
witness, having been first duly sworn by
the Notary Public, was examined and
testified as follows:

EXAMINATION BY

MR. GILMORE:

Q                             , you own a cell
phone, correct?

A       Yes, I do.

Q       And that cell phone number is

███████████, correct?

A    Yes.

Q    And on May 4th, 2020 at 6:13 p.m. Eastern time you were contacted on your cell phone by a Ms. Linnley Browning of On Point Investigations, correct?

A    I didn't remember the date.

Q    Can I have you take a look at tab 1, that has been previously marked as Exhibit 1.

(The above described document was marked Exhibit 1 for identification, as of this date.)

A    Okay.

Q    Can I have you take a look at the second page of that document?

A    Okay.

MS. ZALKA:  I am just going to object to any questions concerning this document.  You haven't established the witness has seen before.

Q                can I have you take a look at that entry at May 4, 6:13?

A    Okay.

Page 8

Q     I will ask you that question again.  On May 4, 2020 at 6:13 p.m. Eastern you were contacted by Linnley Browning of On Point Investigations, correct?

MS. ZALKA:  Same objection.

MR. GILMORE:  Sorry, I didn't hear that.

MS. ZALKA:  Go ahead,

If I say objection, you can still answer, unless I specifically instruct you not to answer, okay?

THE WITNESS:  Okay.

A     That's what this document indicates.

Q     Do you have an independent recollection of that call?

A     I remember having a conversation, a brief conversation.

Q     Okay.

For this two minute call, this was a voicemail that Ms. Linnley left with you, correct?

MS. ZALKA:  Objection.

A     I don't know.

Q      On the message, Ms. Browning introduced herself as working for On Point Investigations?

MS. ZALKA:  Is there a question, Lucas?

Q

On the message, Ms. Browning introduced herself as working for On Point Investigations, correct?

MS. ZALKA:  Same objection.

A      I don't recall who -- I don't recall who she said she worked for.

Q      Do you have a recollection of Ms. Browning telling you that she was working for a law firm representing shareholders in a lawsuit against Sasol?

A      Yes, she did say that.

MS. ZALKA:  Objection to form.

Q      And she asked that you call her back to discuss your experience at Sasol, correct?

MS. ZALKA:  Objection to form.

A      I can't remember exactly what she said.

Q    You don't dispute that Ms. Browning left a message asking you to call her back to discuss your experience at Sasol?

A    I recall that we had a conversation.  I don't recall how that conversation came about.

Q    Okay.

The next day, on May 5, 2020, at 9:50 a.m., you spoke on the phone with Ms. Browning, correct?

A    That's what this record indicates.

Q    Do you dispute that you had a call with Ms. Browning on May 5th?

A    I recall that I had a call with an individual, I don't even recall her name, because the conversation was so brief that -- about a potential lawsuit against Sasol.

Q    And Ms. Browning told you that she was working on a law firm representing shareholders in a lawsuit against Sasol, correct?

A    Yes.

Q    And this initial call on May

5th, that lasted for approximately four minutes?

MS. ZALKA:  Objection to form.

A       That's what this record indicates.

Q       And do you have any information to dispute that?

A       No.

Q       The purpose of this call was to set up a convenient time to speak about your experience at Sasol, correct?

MS. ZALKA:  Objection to form.

A       I don't remember.

Q       Do you dispute that the issue of setting up a convenient time to speak about your experience at Sasol, do you dispute that that topic was discussed?

MS. ZALKA:  Objection, asked and answered.  Go ahead,

A       I remember we had a conversation.  I don't remember how it occurred or how it was scheduled.  I just remember the brief conversation that we had.

Q       And you agreed to make yourself

available for a call later that day, correct?

MS. ZALKA:  Same objection, asked and answered.

A        That's what this appears to be.

Q        On May 5th, 2020, later that day, Ms. Browning and you spoke, correct?

A        That's what this indicates.

Q        Do you dispute that you had another conversation with Ms. Browning on May 5th?

MS. ZALKA:  Objection to form.

A        I recall that I had a conversation with an investigator pursuant to the Sasol litigation.

Q        And that call on May 5, 2020 occurred at approximately 12:56 Eastern time?

MS. ZALKA:  Is there a question, Lucas?

Q        Is that correct?

A        That's what it indicates.

Q        You and Ms. Browning spoke for 22 minutes, correct?

A        That's what this record indicates.

Q    Okay.  And do you have any information reflecting that you didn't have a 22 minute call?

A    No.

Q    During the call with Ms. Browning, the investigator, you asked if you could be compensated, correct?

MS. ZALKA:  Objection to form.

A    I don't recall -- I don't recall saying that.  I recall a conversation where I asked her what the process was and how this -- how the lawsuit occurred and all of this, if she could give me more detail about my involvement and why she was calling me and what my -- what she was looking for.

Q    Understood.  But the issue of you being compensated came up in your discussion with Ms. Browning, correct?

A    I don't recall.

MS. ZALKA:  Objection to form.

A    I don't recall that.

Q    Do you dispute that you asked Ms. Browning whether you could be compensated?

MS. ZALKA:  Objection, asked and

answered two times now.

A    As I said, I don't recall.

Q    So you do not dispute that, correct?

MS. ZALKA:  Objection, misstates the testimony.

A    I do not recall.

Q    Ms. Browning told you during that conversation that you could not be compensated, correct?

MS. ZALKA:  Objection to form.

A    Once again, I do not recall.

Q    Ms. Browning told you that the law firm could not compensate you, correct?

MS. ZALKA:  Objection to form, asked and answered.

A    What else do I need to say? I said I don't recall.

Q    During the call you asked whether your identity would be kept confidential, correct?

A    Yes.

Q    And Ms. Browning told you that your name would not be used by the law firm in

its Complaint, correct?

A    Well, she actually said I would not be included in the lawsuit.

Q    Ms. Browning told you that the Complaint would refer to you as a confidential witness, correct?

A    No, that is not correct.

Initially I told her I did not want to be included in this lawsuit, in my reputation and role in the industry was extremely important to me, and she reassured me that I would not be part of the investigation and that they were just gathering information and so they have all the facts about the potential lawsuit.

Then she -- and once I continuously told her I was not interested in being a part of this lawsuit, she did come back and say we could make you a confidential witness.

And I told her that did not make sense.  Because of my title and because of my tenure, that does -- there is no way that I would be considered confidential.

Page 16

Q        Understood.

And you told Ms. Browning that you were worried that if the law firm used your title and dates of employment, that Sasol would know your identity?

A        Well, anybody that knew that I -- I'm the only person at Sasol with that title.

So anyone that saw that title and that tenure would know that it's me.

Q        Understood.

You did not want Sasol to know that you were providing information to a private investigator on behalf of shareholders, correct?

A        I did not want to be a part of this lawsuit.

Q        And that's because you currently work in the same industry as Sasol, correct?

A        I work in the energy industry, however I do not work in the chemical industry, which is a subset of the energy industry that Sasol is in.

Q        You told Ms. Browning that it

would be "very obvious who I am"?

MS. ZALKA:  Objection to the form of the question to the extent you are quoting from a document or purporting to quote from a document that you are not even showing the witness.

Q

MS. ZALKA:  You can go ahead and answer,

A       I'm sorry, can you repeat the question?

Q       You told Ms. Browning that it would be "very obvious who I am," correct?

MS. ZALKA:  Same objection.  You can answer,

A       Okay, I don't recall exactly what I said.

Q       You told Ms. Browning that "my personal reputation in the industry would be destroyed," correct?

A       I don't know that I used the word destroyed.

MS. ZALKA:  Objection.

A       I said I did not want to be a

part of the lawsuit because of my reputation and role in the industry.

Q    You agreed to go forward with answering Ms. Browning's questions, correct?

A    Well --

MS. ZALKA:  Objection to the form.

A    Well, she -- she misled me by saying that I would not be a part of the lawsuit, so as a matter of fact, I shouldn't be sitting here if she had honored my wishes.

And she said she was only gathering information.

Q    Understood.  That 22 minute conversation that we just discussed, that ended with a phone disconnection, correct?

A    I don't recall.

Q    Immediately after, Ms. Browning on May 5, 2020 at 1:18 p.m. Eastern time called you back, correct?

MS. ZALKA:  Objection to the form.

A    I'm sorry, can you repeat the question?  It went out a bit.

Q       Sure.

On May 5, 20 at 1:18 Eastern time, Ms. Browning called you back, correct?

A       That's what this document indicates.

Q       And do you have an independent recollection of Ms. Browning calling you back?

A       I don't recall.

Q       So you have no documents or information in your head that could dispute that you had a conversation with Ms. Browning, correct?

A       No, I don't have any documents in my head.

MS. ZALKA:   Objection.

Q       And you spoke with Ms. Browning for 49 minutes, correct?

A       That's what this document indicates.

Q       And you don't have any kind of documentation or information to dispute that you spoke with Ms. Browning for a second time for 49 minutes, correct?

A       No.

If I had known that I would have been here in this situation, I would have definitely taken notes, but I didn't anticipate her moving forward and not honoring my wishes.

Q       Understood.

But the court reporter is transcribing my questions and your answers and I want to get a clean answer to this.

You have no documents or information to suggest that you didn't have a 49 minute call with Ms. Browning, correct?

A       I do not.

MS. ZALKA:  Objection to form. One second, actually, give me a chance to object,                          Object to the for of the question.

Lucas, to the extent the witness already answered, not to get a, quote unquote, clean answer, but we can move forward with

MR. GILMORE:  Counsel, please limit your objections to form.

Q       On May 10, 2020 Ms. Browning called you at 2:58 p.m. Eastern time, correct?

A       That's what this indicates.

Q       And she left a 2 minute voicemail seeking to arrange a follow-up interview with Plaintiff's counsel, correct?

A       I don't recall.

MS. ZALKA:  Objection.

Q       Do you have an independent recollection of receiving a voicemail from Ms. Browning on May 10, 2020?

A       I recall she tried to reach me numerous times after our initial conversation, and after I told her that I did not want to be a part of this lawsuit, and I did not respond back to her.

Q       Okay.

A       Because I thought her message was clear.

Q       This May 10, 2020 call, you did not return her call, correct?

A       No.

Q       This May 10, 2020 call, you did not write to her in response, correct?

A       No.

Q       This May 10, 2020 call, you did

Page 22

not text her to stop contacting you, correct?

A       No; not that I recall.

Q       On May 13, Ms. Browning again called you at 10:28 a.m. Eastern time, correct?

A       That's what this record indicates.

Q       Do you dispute that Ms. Browning called you on May 13, 2020?

A       I don't recall.

Q       Ms. Browning left a two minute voicemail message seeking to arrange a follow-up interview with you and Plaintiff's counsel, correct?

MS. ZALKA:  Objection, asked and answered.

A       I don't recall.

Q       Okay.

You did not return this call, correct?

A       No.

Q       You did not write to her, correct?

A       No.

Q       You did not text her to stop

Page 23

contacting you, correct?

A       No.

Q       On June 2, 2020, Ms. Browning
called you again at 12:27 p.m. Eastern time,
correct?

A       June 2nd, that's what this
document indicates.

Q       Do you have any documentation or
information to dispute that?

A       No.

Q       Ms. Browning left a two minute
voicemail message seeking to arrange a
follow-up interview with you and Plaintiff's
counsel, correct?

MS. ZALKA:  Objection to the
form.

A       I don't recall that she ever
asked me to set up a conversation with counsel.
No, I don't recall that.

Q       So it's your testimony today
that Ms. Browning never left a voicemail
seeking to arrange a follow-up call with
Plaintiff's counsel?

MS. ZALKA:  Objection to form.

Page 24

A    No, that's not what I said.  I said no, I don't recall that.

Q    Understood.

So you have no information to dispute that Ms. Browning on June 2, 2020 left a voicemail message seeking to arrange a follow-up interview with Plaintiff's counsel?

MS. ZALKA:  Objection to form, asked and answered several times now.

A    I don't recall.

Q    You did not return this call, correct?

A    No.

Q    You did not write to Ms. Browning, correct?

A    No.

Q    You did not text Ms. Browning to stop contacting you, correct?

A    No.

Q    On September 10, 2020, Ms. Browning called you again at 4:22 Eastern time, correct?

A    That's what this document indicates.

Page 25

Q        And do you have any documentation to suggest otherwise?

A        No.

Q        And Ms. Browning left a two minute voicemail seeking to arrange a call for a status update on the litigation, correct?

MS. ZALKA:  Objection to the form.

A        I don't recall.

Q        You don't have any information concerning the subject matter of this voicemail, correct?

A        No.

Q        You did not return Ms. Browning's call, correct?

A        I did not.

Q        And you did not write to Ms. Browning, correct?

A        I did not.

Q        And you didn't text Ms. Browning to stop contacting you, correct?

A        I did not.

Q        Okay.

I would like to go back to your

Page 26

calls with Ms. Browning on May 5, 2020.

You told Ms. Browning that you were ██████████████████████████, correct?

A    I probably told her that.  I am ██████████████████████.

Q    And you told Ms. Browning that you worked as ██████████████████████, correct?

A    That is the title that I had at Sasol when I was there, so I don't recall, but I could have told her that.

Q    And you told Ms. Browning that you worked as ████████████████████ for Sasol North America?

MS. ZALKA:  Is there a question, Lucas?  Sorry, that was just a statement.  You might want to correct it.

Q    ████████████, you told Ms. Browning that you were the ████████████ ██████████ for Sasol North America, correct?

A    I don't -- I don't recall the specifics of the conversation, but I was the ██████████████████ for Sasol U.S., yes.

Page 27

Q      You told Ms. Browning that you held this position for approximately ten months, correct?

A      Yes.

Q      You told Ms. Browning that you held this position at Sasol North America from September 2014 to July 2015?

A      I could have told her that. That is the period of time that I was there.

Q      And you told Ms. Browning that you were based at Sasol's office in Houston, correct?

A      I was based in Sasol's office in Houston.

Q      That's what you told Ms. Browning, correct?

A      I don't recall exactly what I told her.

Q      You told Ms. Browning that you reported directly to ▊▊▊▊▊, correct?

A      I did report directly to ▊▊▊▊▊.

Q      Did you tell Ms. Browning that you reported to ▊▊▊▊▊?

Page 28

A    I don't recall the specifics of that conversation.

Q    Okay.

And you said ▮▮▮▮▮ reported directly to ▮▮▮▮▮, correct?

A    That is the case, or, that was the case.

Q    But you don't have a recollection of telling Ms. Browning that?

A    I don't remember exactly the words that I said and exactly the words she said.

Q    Understood.

You told Ms. Browning that ▮ ▮▮▮ hired you expressly to oversee the ▮ function for the LCCP?

MS. ZALKA:  Objection to the form.  You can answer.

A    I was hired as the ▮ of the U.S. operation.

Whether I specifically said that to her, I don't recall, but that is a true statement, that I was the ▮ of the U.S. operations for Sasol.

Page 29

Q     And you told Ms. Browning that your role focused extensively on the Lake Charles chemical complex project, correct?

A     Well, that was one of the projects in the U.S., during that period of time, yes.  I don't know that I specifically said that, but that is a true statement.

Q     And you said that as ████ for Sasol North America, you were responsible for ███████████████████████████████ ██████████████████████ ?

MS. ZALKA:  I assume you are asking is that correct, Lucas?

MR. GILMORE:  That's correct.

MS. ZALKA:  Go ahead,   .

A     Can you repeat the question?

Q     Yes; certainly.

You told Ms. Browning that as ████████████████████ for Sasol North America you were responsible for ██████████ ████████████████████ ███████████████

A     I told her that I was the ██████

Page 30

████████████████████ for the U.S. operations.  I don't recall at what level of detail we went into the specifics of my role.

Q     You told Ms. Browning that the activities you oversaw included ████████████, correct?

A     As I said, I don't recall the specifics of our conversation, but I did tell her that I was the -- I did tell her I was ██ ██.

Q     Okay.

As ████, the activities that you oversaw included ████████████, correct?

MS. ZALKA:  Objection to the form and beyond the scope.

Q

A     It did include cost control.

Q     And you told Ms. Browning that the activities you oversaw included ████████ ████████████, correct?

A     As I said previously, I don't recall specifically what we talked about in regard to the role.

Q     But your role, it did include

Page 31

overseeing ████████████████████, correct?

MS. ZALKA:  Objection to the form, beyond the scope.

A       My role was the ██████████ ████████████████████████████████ ██████████████████████████████ ████████████████████.

Q       Understood.

And your activities also included overseeing ████████, correct?

MS. ZALKA:  Objection to the form, beyond the scope.

A       Yes, when I was there as a ███ my role did include ████████.

Q       And when you were there as ███ it included ████████████████, correct?

MS. ZALKA:  Objection to the form, beyond the scope.

A       Are you asking me if I told her that or if that is the case?

Q       Well, let's first, did you tell Ms. Browning that your activities included overseeing ████████████████?

A       I don't recall specifically what

I told her about my responsibilities.

Q    Would that be consistent with what your actual responsibilities were, that overseeing ▮▮▮▮▮▮▮▮▮▮▮▮?

A    I was responsible for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Q    Okay.

And you also told Ms. Browning that the activities included ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, correct?

A    I don't know what -- I don't know the specifics that I told her.

Q    But that would be consistent with what your responsibilities as ▮▮ were, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, correct?

A    That's correct.

Q    You told Ms. Browning that there was an LCCP ▮▮▮▮▮▮▮▮▮▮ that reported to you, correct?

A    I don't recall that I told her that.

Q    But that was consistent with your time at Sasol, correct, that an LCCP ▮▮▮▮▮▮▮▮▮ reported to you, correct?

Page 33

A       That -- I did have a ███████.

Q       You said that you worked directly with Sasol's ███ ███████ in Johannesburg, correct?

A       I don't recall I specifically said that.

Q       But that was consistent with what your responsibilities were, correct?

A       I do have conversations and had a dotted line responsibility to the ███ in Johannesburg in South Africa.

Q       You told Ms. Browning that there was a revolving door of ███s at Sasol, correct?

A       I don't know that I said that.

Q       You said that the LCCP was a "high profile mega project for the company," correct?

MS. ZALKA:  Objection to the form.

A       I don't recall specifically what I told her.

Q       Okay.

You told Ms. Browning, "I was the most knowledgeable about the LCCP's costs,"

correct?

MS. ZALKA:  Same objection to the form to the extent you are purporting to be quoting from something that you are not even showing the witness, but

you can answer based on that objection.

A      I don't recall that.

Q      Okay.

A      That doesn't sound like something I would say.

Q      Okay.

You told Ms. Browning that you were not surprised that things unspooled after you left, correct?

A      Can you repeat that?

Q      Yes.

You told Ms. Browning that you were not surprised that things unspooled after you left?

A      Unspoiled?

Q      Unspooled.

A      No, that's not a word I would even use.

Q        During your call with Ms. Browning you discussed the topic of the LCCP's costs, correct?

A        I don't remember specifically what we talked about.

Q        Okay.

You discussed factors that you believed contributed to cost overruns at the LCCP, correct?

A        You will have to be more specific.

Q        Okay.

You said that at the time you were hired there were many contracts in place, correct?

A        I don't know that I said that, I don't recall.

Q        You discussed with Ms. Browning certain contracts that Sasol had entered into with third parties pertaining to the LCCP, correct?

A        You are going to have to give me more information.

Q        Well, one contract that you

discussed with Ms. Browning was the one that
Sasol entered into with Fluor and Technip,
correct?

A    I don't know if I said that to
her, but there was a contract between Fluor and
Technip and Sasol.

Q    And that was -- the contract
that you referred to was for the main
contractor for the LCCP project, correct?

A    There was a contract for the
EPC, the engineering procurement construction
of this mega project with Fluor and Technip.

Q    And as to that contract, you
said that Fluor, Technip was paid for
everything they did, it was a fixed contract --

MR. GILMORE:  Strike that.

Q    You said as to the Fluor-Technip
contract, they were paid for everything they
did, it wasn't a fixed contract?

MS. ZALKA:  Objection to the form
of the question.

A    I don't know if I specifically
said it, said that.

Q    Is that your understanding of

the Fluor-Technip contract, that it's not a fixed contract?

A       It is not a fixed contract.

Q       And that Fluor --

A       It was not a fixed contract when I was there.  Let me correct my statement.

Q       Thank you.

Is it consistent with your understanding that Fluor-Technip was paid for everything that they did?

A       It was a time and materials contract.

Q       And you said that the Fluor-Technip time and materials contract meant that the subcontractor had limited risk, correct?

MS. ZALKA:  I assume you are asking to the extent about the conversation with the Plaintiff's investigator?

MR. GILMORE:  If the witness has questions about my questions, you should feel free to do so, but please limit the objections to form.

Page 38

MS. ZALKA:  Okay, I will object to the form as vague.

A    Can you repeat your question?

Q    Sure.

You said that the --

MR. GILMORE:  Strike that.

Q    It was your understanding that the Fluor-Technip contract was unusual, correct?

MS. ZALKA:  Objection to the form.  It goes beyond the scope of what the court has ordered here, to the extent that you are asking not about a conversation she had with Ms. Browning.

A    So are you asking me what I said to her?

Q    Yes.

You characterized the Fluor-Technip contract as unusual, correct?

A    Like I said before, I don't recall the exact conversation and the exact words that were used.

Evidently you have notes, I do not.  But -- or you have something that you are

looking at, excuse me.

But I wouldn't -- I don't recall if I said that.

Q     But you don't dispute your characterization of the Fluor-Technip contract as unusual?

A     I don't know if I used the word unusual.

But I would agree that the contracts that I have seen in the past are usually, for a mega type project are, typically have some fixed portion to it, so that the risk is shared.

Q     And by having no fixed portion to it, Fluor-Technip as subcontractor had limited risk; that's something that you told Ms. Browning, correct?

A     I don't know specifically if I said that.

Q     Is that consistent with your understanding?

A     Based on what I knew of the contract at the time that I was there, the risk -- risk was primarily on Sasol.

Page 40

Q        Okay.

And you said that from late 2014 through 2015 there wasn't much work for the contractor to do because the LCCP was still in its early stages.

You said that to Ms. Browning, correct?

A        I don't recall that, I don't think that's something that I would have said.

Q        You told Ms. Browning that during this period of late 2014 through 2015 that there were too many people brought on too early, correct?

A        I don't recall that.

And when you say through 2015, let's be clear, my tenure was through July of 2015, through half the year.

So when you refer to through 2015, I cannot speak to the full year of 2015.

Q        Okay.  That's a fair point.

So, from late 2014 through July 2015, there wasn't much work for the contractor to do because the LCCP was still in its early stages, correct?

Page 41

MS. ZALKA:  Objection to form, beyond the scope.

A        I'm not sure that -- that I would be the right person to say that, because I am ████████████████████████████.

I am not an engineer.

I can't tell you what any activities related to construction of a mega projects.

Q        You told Ms. Browning that during this period, late 2014 through July of 2015, there were too many people brought on too early at the LCCP, correct?

A        I don't recall making that statement.

Q        You told Ms. Browning that you had direct contact with Mr. Nqwababa, correct?

A        I don't know if I said that to her.

Q        Is that consistent with what your responsibilities were, having direct contact with Mr. Nqwababa?

A        I had -- I had meetings with him, yes.

Page 42

Q       And you said the same for Mr. Cornell?

MS. ZALKA:  Objection to the form.

A       My meetings with Mr. Cornell were very limited.

Q       But you did have direct communications with Mr. Cornell, correct?

MS. ZALKA:  Objection to the form, beyond the scope.

A       I had.

Q       I'm sorry, I didn't hear that. What was that?

A       I did.

Q       You also told Ms. Browning that you had direct contact with Mr. Victor on several occasions, correct?

A       I did.

I mean, I don't know that I said that to her, but I did have conversations with Mr. Victor.

Q       Okay.

And you told Ms. Browning on one or more occasions you raised concerns with

Page 43

Mr. Cornell, Nqwababa and Victor concerning the LCCP, correct?

A    No.  That's not true; I don't recall saying that.

Q    You told Ms. Browning that you raised concerns about the risk of Sasol exceeding the LCCP cost estimates, correct?

A    I -- I don't recall saying that.

Q    Did you, in fact, raise concerns with Mr. Cornell, Nqwababa and Victor about the risk of Sasol exceeding LCCP cost estimates?

A    No.

Let's put it into perspective. This was a five year contract.  I was there for, was it nine months, in the very beginning.

Q    Okay.

You told Ms. Browning that you raised concerns with Mr. Cornell, Nqwababa and Victor about the risk of Sasol staying on schedule for completion of the project, correct?

A    I think -- no, I did -- I think words are being twisted here.  That is not what I would have said.

Q    You spoke to -- you spoke to Ms. Browning about raising concerns with respect to the LCCP to Mr. Cornell, knock would be and Victor, correct?

MS. ZALKA:  Objection to the form, asked and answered.

A    I do not recall making that statement.

Q    Okay.

But you have nothing to dispute that you made that statement, correct?

MS. ZALKA:  Objection to the form, misstates the witness' testimony.

A    I do not recall.

Q    You discussed your resignation from Sasol with Ms. Browning, correct?

A    I don't recall the specific conversation.

Q    Do you dispute that you discussed your resignation from Sasol with Ms. Browning?

A    I don't recall.

Q    You told Ms. Browning that you resigned after only ten months at Sasol,

**Page 45**

correct?

MS. ZALKA:  Objection to the form.

A    I don't recall specifically what I told her, but it is a fact, that I did resign after a short period of time.

Q    And you told Ms. Browning that you met with Mr. Cornell at his Houston office to discuss your resignation, correct?

A    I don't know specifically if I told her that, but I did meet with Mr. Cornell after I gave my resignation.

Q    And you said that this meeting with Mr. Cornell occurred approximately the second week of July 2015, correct?

A    I don't know if I said that.

Q    Is that when your meeting did occur with Mr. Cornell?

A    I'm sure -- I mean, it occurred after I gave my resignation, so some time in July of 2015.

Q    Got it.

You told Ms. Browning that your tenure at Sasol was short, correct?

Page 46

A    I'm not sure if I said that specifically, but what you're saying is a true fact.

My tenure was short.

Q    And you said that the length of tenure for you was unusual for you, correct?

A    I don't know if I said that, but it is a true statement.

Q    You told Ms. Browning that normally you spend considerable time with a company when you commit, correct?

A    I don't know if I said that, and I don't know what considerable time definition -- your definition of considerable time is.

Q    Okay.

I'm saying that you used those words, you told Ms. Browning, "Normally I spend considerable time with a company when I commit"?

A    And I am telling you I don't recall.

MS. ZALKA:  Objection.

Q    You told Ms. Browning that you

had reached the breaking point, correct?

A    I don't recall saying that.

Q    Do you dispute that you used that term that you had reached the breaking point?

A    I don't recall.

Q    You said that you had a lack of ability to run your business, correct?

MS. ZALKA:  Objection to to the form.

A    I don't know specifically what I told her.

Q    Is that consistent with your recollection, that you had a lack of ability to run your business?

MS. ZALKA:  Objection to the form, outside the scope.

A    The conversation -- are you asking me about the reason for -- let me just -- can you rephrase your question?

Q    Sure.

Is that consistent with your recollection of in connection with your departure that you had a lack of ability to run

Page 48

your business?

MS. ZALKA:  Objection to the
form, outside the scope.

A       The reason I left Sasol was
because of Sasol's culture.

Q       And what do you mean by that?

MS. ZALKA:  Objection to the
form, outside the scope.

A       The culture of Sasol was such
that the South Africans -- the characteristics
of the people that I worked with in South
Africa, they had very strong opinions and
didn't -- weren't always open to the opinions
of others and new ideas and new concepts.

Q       You told Ms. Browning along
those lines that you were being hindered by the
South African side, correct?

A       I don't know if I said it that
way -- I would have said that.

Q       Is that consistent with your
recollection?

MS. ZALKA:  One second.  Did you
say you wouldn't have said that or you
would have said that?

Page 49

THE WITNESS:  I would not have said that.

Q      Is that consistent with your recollection, that you were being hindered by the South African side?

MS. ZALKA:  Objection to the form.

A      You know, the conversation that I had with management before I left Sasol was and the reason for my leaving Sasol was related to Sasol's culture.  It had nothing to do with the LCCP project.

Q      You did, however, tell Ms. Browning that you raised concerns regarding Sasol's contracting on the LCCP to Mr. Nqwababa, Cornell and Victor, correct?

MS. ZALKA:  Objection to form.

A      I don't recall saying that.

Q      Did you, in fact, raise concerns about Sasol's contracting at the LCCP with Messrs. Cornell, Nqwababa and Victor?

A      No, no, I would not have said that.  I don't recall saying that.

Q      Can I have you turn to tab 4,

Page 50

please.

      A     Okay.

      Q     This is a declaration that you signed, correct?

           MS. ZALKA:  You can take your time to look at the document, and let Mr. Gilmore know when you are ready.

      A     Okay.

      Q     This is your declaration, correct?

      A     It appears to be.

      Q     Okay, can I direct your attention to paragraph 9, please?

           MS. ZALKA:  Can I just make one note for the record, Lucas?  In terms of the redacted version, is that, the red, is that you or --

           MR. GILMORE:  That's how we received it.

           MS. ZALKA:  Okay.

      Q     So focusing on paragraph 9 on page 3, do you see that?

      A     Paragraph 9, on page 3.

Yes.

Q    Okay, it reads, "When I left Sasol in July 2015 the LCCP was both on time and on budget for the $8.9 billion cost estimate based on everything I knew."

Did I read that correctly?

A    Yes.

Q    And you signed this declaration under penalty of perjury, correct?

A    Yes.

Q    The statement, "based on everything I knew," do you see that?

A    Yes.

Q    Are you suggesting there when you use the term "based on everything I knew," that you were not aware of project reports from Fluor and Technip that estimated the cost of the LCCP to exceed $8.9 billion?

MS. ZALKA:  Hold on one second,

Wait, I'm going to object to the form of his question.

It assumes facts not in evidence, it goes beyond the scope of what the court reporter ordered the testimony to be.

But                          you can answer.

A       I'm sorry, can you repeat the question?

Q       Sure.

I'm focusing on your statement to the court, "based on everything I knew."  Do you see that?

A       Yes.

Q       Are you suggesting to the court that you were not aware of project reports from Fluor and TechNip during your tenure that estimated the cost of the LCCP to exceed $8.9 billion?

MS. ZALKA:  I object to the form of the question, it's beyond the scope of the deposition, which as you well know, Lucas, it also assumes numerous facts that are not in evidence.

It's a highly objectionable question.

How are you suggesting that it's within the scope?

MR. GILMORE:  Caroline, this is improper.  This was a declaration

submitted in connection with the motion. I'm entitled to ask about it.

MS. ZALKA:  You are, but you are not entitled to ask questions that assume a whole bunch of facts that aren't in evidence.

Q                     do I need to repeat the question?

A      Yes.

Q      When you say, "based on everything I knew," are you suggesting that you were not aware of project reports from Fluor and Technip that exceeded the $8.9 billion cost estimate for the LCCP?

A      I -- I am saying that based upon my knowledge that I was not -- I did not know if -- based on what I knew, the project was on time and on budget.  That's what I am saying here.

And during -- it appears that you're trying to twist my words and put words in my mouth, and that appears to be what the investigator did as well.

And I really don't appreciate

Page 54

it, it's inappropriate and unethical.

Q        Understood.  And we can get to that, but I am entitled to answers.

Are you saying that you were not aware of project reports from Fluor and Technip that exceeded the $8.9 billion cost?

MS. ZALKA:  No, no.

A        I'm not saying that, I'm not saying that.  I'm saying I don't know what reports you are referring to.

All I'm saying is based on my knowledge at the time the project was on time and on budget.

Q        So you do not dispute receiving project reports from Fluor and Technip that exceeded the $8.9 billion cost, correct?

MS. ZALKA:  Wait one second.

A        I have no idea what you're talking about.

MS. ZALKA:  And let me --
perfect, that's fine,                     but
just let me have time to object.

I'm going to object to this line of questioning, it assumes facts not in

Page 55

evidence, it's beyond the scope whatever the court ordered.

Q       And is it your testimony that were not aware of requests for increase from Fluor and Technip exceeding the $8.9 billion cost estimate?

MS. ZALKA:  Objection.

A       I don't recall any documents that you are referring to.

Q       Is it your testimony that you were not aware of any change orders issued from Fluor or Technip exceeding the $8.9 billion cost?

MS. ZALKA:  Objection.

A       I'm not aware of that.

MS. ZALKA:  Objection to this line of questioning.

Q       And it's your testimony that you were not aware of any internal estimates of Sasol exceeding the $8.9 billion cost?

MS. ZALKA:  Objection to -- no, objection to this line of questioning.

The question is vague, it's vague as to time period, it's beyond the scope

Page 56

of the order, it assumes facts not in evidence.

But with all those objections, to the extent you understand the question, you can answer.

A        I don't -- I don't know what you're referring to.

Q        You testified previously that you were in charge of the project tax team, correct?

MS. ZALKA:  Objection to the extent it mischaracterizes the witness' testimony.

A        Can you rephrase the question?

Q        Sure.

You previously referred to your ████████████████████, correct?

A        ██████████, there was a small ████ ██████ that reported to me as a part of the -- under my responsibilities.

Q        Okay.  And it's your testimony today, under oath, that you did not receive any internal estimates from the ███████████████ that exceeded the $8.9 billion cost estimate?

MS. ZALKA:  Objection to the form of the question, beyond the scope, assumes facts not in evidence, misstates the witness' testimony.

A        I don't -- I don't know what you're referring to.  I don't recall any reports, I don't know what you are referring to.

MR. GILMORE:  Okay.  I have nothing further.

MS. ZALKA:  Okay.  I think we are done.Ed.

MR. GILMORE:  Thank you for your time,                .

THE VIDEOGRAPHER:  We are going off the record.  The time is 2:06.  This ends media unit number 1.  Are we done?

MR. GILMORE:  We are, thanks.

THE VIDEOGRAPHER:  This concludes today's testimony given by

The total number of media units used was 1, and will be retained by Veritext Legal Solutions.

Thank you.

Page 58

I, the undersigned, a Certified Shorthand Reporter of the State of New York, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction;

That the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case before completion of the proceedings, review of the transcript [ ] was [x ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Stephen J. Moore
RPR, CRR

DECLARATION UNDER PENALTY OF PERJURY

Case Name: MOSHELL v. SASOL

Date of Deposition: December 8, 2020


I,                    hereby certify

Under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this _____ day of _____, 2020, at _____.


_____

Page 60

DEPOSITION ERRATA SHEET
Case Name: MOSHELL v. SASOL.
Name of Witness:
Date of Deposition: December 8, 2020
Reason Codes:  1. To clarify the record.
2. To conform to the facts.
3. To correct transcription errors.

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page 61

DEPOSITION ERRATA SHEET

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

_____ Subject to the above
changes, I certify that the transcript is
true and correct

_____ No changes have been
made. I certify that the transcript  is
true and correct.

_____

**[& - behalf]**                                                                                                          Page 1

| & | | | |
|---|---|---|---|

**&**   2:13

| 0 |
|---|

**01008**   1:8 4:22

| 1 |
|---|

**1**   3:9 4:14 7:10,11 7:13 57:18,23 60:7
**10**   20:24 21:10,19 21:22,25 24:21
**10153-0119**   2:17
**10:28**   22:5
**12:27**   23:5
**12:56**   12:17
**13**   3:9 22:4,9
**1:11**   4:4
**1:13**   6:7
**1:15**   6:12
**1:18**   18:20 19:3
**1:20**   1:8 4:22

| 2 |
|---|

**2**   21:3 23:4 24:6 60:9
**20**   19:3
**2014**   27:8 40:3,12 40:22 41:12
**2015**   27:8 40:4,12 40:16,18,20,20,23 41:13 45:16,22 51:4
**2020**   1:14 4:5 7:4 8:3 10:9 12:6,16 18:20 20:24 21:10 21:19,22,25 22:9 23:4 24:6,21 26:2 58:16 59:5,12 60:6
**20932**   58:18
**22**   12:23 13:4 18:15

**2:00**   1:14
**2:06**   57:17
**2:58**   20:25
**2nd**   23:7

| 3 |
|---|

**3**   50:24,25 60:10

| 4 |
|---|

**4**   7:24 8:3 49:25
**455**   2:6
**49**   19:18,24 20:12
**4:22**   24:22
**4th**   7:4

| 5 |
|---|

**5**   10:9 12:16 18:20 19:3 26:2
**5th**   10:15 11:2 12:6,11

| 6 |
|---|

**6**   3:4
**60611**   2:7

| 7 |
|---|

**7**   3:9
**767**   2:16

| 8 |
|---|

**8**   1:14 4:4 59:4 60:5
**8.9**   51:5,19 52:13 53:14 54:7,17 55:6,13,21 56:25
**832-212-8243**   7:2

| 9 |
|---|

**9**   50:15,23,25 58:16
**9:50**   10:10

| a |
|---|

**a.m.**   4:4 10:10 22:5

**ability**   47:9,15,25
**accountant**   26:4,6 41:6
**accumulation**   31:5
**action**   5:6 58:13 58:14
**activities**   29:12,24 30:6,13,20 31:10 31:23 32:10 41:9
**actual**   32:4
**affiliations**   5:10
**africa**   33:12 48:13
**african**   48:18 49:6
**africans**   48:11
**afternoon**   4:3 5:16
**agree**   4:12 39:10
**agreed**   11:25 18:4
**ahead**   8:9 11:20 17:9 29:16
**al**   4:20
**america**   26:15,22 27:7 29:10,21
**answer**   8:11,12 17:10,16 20:9,20 28:19 34:7 52:2 56:6
**answered**   11:20 12:4 14:2,17 20:19 22:16 24:10 44:7
**answering**   18:5
**answers**   20:8 54:4
**anticipate**   20:4
**anybody**   16:7
**appearance**   5:14
**appearances**   5:10
**appears**   12:5 50:13 53:21,23
**appreciate**   53:25
**approximately** 11:2 12:17 27:3

45:15
**arrange**   21:4 22:12 23:13,23 24:7 25:6
**asked**   9:20 11:19 12:3 13:7,12,23,25 14:17,20 22:15 23:19 24:10 44:7
**asking**   10:3 29:14 31:20 37:19 38:14 38:16 47:20
**assume**   29:13 37:18 53:6
**assumes**   51:23 52:18 54:25 56:2 57:4
**attending**   5:8
**attention**   50:15
**attorney**   5:15 58:13
**attorneys**   2:5,14
**audio**   4:10
**available**   12:2
**avenue**   2:16
**aware**   51:17 52:11 53:13 54:6 55:5 55:12,16,20

| b |
|---|

**b**   3:6
**back**   6:11 9:21 10:4 15:19 18:21 19:4,8 21:15 25:25
**based**   27:12,14 34:7 39:23 51:6 51:12,16 52:7 53:11,16,18 54:12
**beginning**   5:14 43:16
**behalf**   1:5 4:18 5:17,20 16:15

**[believed - construction]**                                                      Page 2

**believed** 35:9
**berman** 2:4
**beyond** 30:16 31:4
  31:13,19 38:12
  41:3 42:11 51:24
  52:16 55:2,25
  57:3
**billion** 51:5,19
  52:14 53:14 54:7
  54:17 55:6,13,21
  56:25
**bit** 18:25
**bob** 5:22
**bongani** 1:9
**breaking** 47:2,5
**brief** 8:19 10:18
  11:24
**brought** 40:13
  41:13
**browning** 7:6 8:4
  9:2,8,15 10:3,11
  10:15,20 12:7,10
  12:22 13:7,19,24
  14:9,14,24 15:5
  16:3,25 17:13,19
  18:19 19:4,8,12,17
  19:23 20:12,24
  21:10 22:4,8,11
  23:4,12,22 24:6,16
  24:18,22 25:5,19
  25:21 26:2,3,7,13
  26:21 27:2,6,11,17
  27:20,24 28:10,15
  29:2,20 30:5,19
  31:23 32:9,18
  33:13,24 34:14,19
  35:3,19 36:2
  38:15 39:18 40:7
  40:11 41:11,17
  42:16,24 43:6,18
  44:3,17,22,24 45:8

45:24 46:10,19,25
  48:16 49:15
**browning's** 18:5
  25:16
**budget** 51:5 53:19
  54:14
**budgeting** 30:20
  31:2,6
**bunch** 53:6
**business** 47:9,16
  48:2

**c**

**c** 2:2 6:14
**call** 8:17,21 9:20
  10:3,15,16,25
  11:10 12:2,16
  13:4,6 14:20
  20:12 21:19,20,22
  21:25 22:19 23:23
  24:12 25:6,16
  35:2
**called** 6:14 18:20
  19:4 20:25 22:5,9
  23:5 24:22
**calling** 13:15 19:8
**calls** 26:2

**caroline** 2:19 5:19
  52:24
**case** 1:7 4:21 28:7
  28:8 31:21 58:10
  59:3 60:3
**cell** 6:22,25 7:6
**central** 4:4
**certain** 35:20
**certainly** 29:19
**certified** 1:20 26:4
  26:6 58:2
**certify** 58:3,12
  59:7 61:18,21

**chad** 1:5 4:17
**chance** 20:15
**change** 55:12
**changes** 61:18,20
**characteristics**
  48:11
**characterization**
  39:6
**characterized**
  38:19
**charge** 56:10
**charles** 29:4
**chemical** 16:22
  29:4
**chicago** 2:7

**cityfront** 2:6
**clarification** 5:22
**clarify** 60:7
**clean** 20:9,20
**clear** 21:18 40:17
**codes** 60:7
**come** 15:19
**commit** 46:12,21
**communications**
  42:9
**company** 33:17
  46:12,20
**compensate** 14:15
**compensated** 13:8
  13:18,24 14:11
**complaint** 15:2,6
**completion** 43:21
  58:10
**complex** 29:4
**concepts** 48:15
**concerning** 7:20
  25:12 43:2
**concerns** 42:25
  43:7,10,19 44:3
  49:15,20
**concludes** 57:20
**confidential** 14:22
  15:6,20,25
**conform** 60:9
**connection** 47:24
  53:2
**considerable**
  46:11,14,15,20
**considered** 15:25
**consistent** 32:3,14
  32:23 33:8 37:9
  39:21 41:21 47:14
  47:23 48:21 49:4
**constable** 1:9
**construction**
  36:12 41:9

**contact** 41:18,23 42:17
**contacted** 7:5 8:4
**contacting** 22:2 23:2 24:19 25:22
**continue** 4:11
**continued** 6:10
**continuously** 15:18
**contract** 35:25 36:6,8,11,14,16,19 36:20 37:2,3,4,6 37:13,15 38:9,20 39:6,24 43:15
**contracting** 49:16 49:21
**contractor** 36:10 40:5,23
**contracts** 35:15,20 39:11
**contributed** 35:9
**control** 30:6,14,18
**convenient** 11:11 11:16
**conversation** 8:19 8:19 10:6,7,18 11:22,24 12:10,14 13:11 14:10 18:16 19:12 21:12 23:19 26:24 28:3 30:9 37:20 38:15,22 44:19 47:19 49:9
**conversations** 4:8 33:10 42:21
**cornell** 1:10 28:6 42:3,6,9 43:2,11 43:19 44:4 45:9 45:12,15,19 49:17 49:22
**correct** 6:23 7:2,7 8:5,23 9:10,22

10:11,23 11:12 12:2,7,20,23 13:8 13:19 14:5,11,15 14:22 15:2,7,8 16:16,20 17:14,21 18:5,17,21 19:4,13 19:18,24 20:12,25 21:5,20,23 22:2,5 22:14,20,23 23:2,6 23:15 24:13,16,19 24:23 25:7,13,16 25:19,22 26:4,9,18 26:22 27:4,13,17 27:21 28:6 29:4 29:14,15,24 30:7 30:14,21 31:2,11 31:17 32:11,16,17 32:20,24,25 33:5,9 33:14,18 34:2,16 35:4,10,16,22 36:4 36:10 37:7,17 38:10,20 39:18 40:8,14,25 41:14 41:18 42:9,18 43:3,8,22 44:5,12 44:17 45:2,10,16 45:25 46:7,12 47:2,9 48:18 49:17 50:5,12 51:10 54:17 56:11 56:18 59:10 60:10 61:19,22
**correction** 5:25
**correctly** 51:7
**cost** 30:6,14,18 35:9 43:8,12 51:5 51:18 52:13 53:14 54:7,17 55:7,14,21 56:25
**costs** 33:25 35:4

**counsel** 4:16 5:8 20:22 21:5 22:14 23:15,19,24 24:8
**court** 1:2 4:21 5:3 20:7 38:13 51:24 52:7,10 55:3
**crr** 58:19
**culture** 48:6,10 49:12
**currently** 16:19
**cv** 1:8 4:22

**d**

**d** 3:2
**date** 7:8,14 58:15 59:4 60:5
**dated** 58:16
**dates** 16:5
**david** 1:9
**day** 10:9 12:2,7 59:11
**december** 1:14 4:4 58:16 59:4 60:5
**declaration** 50:4 50:11 51:9 52:25 59:2
**defendant** 4:16
**defendants** 1:12 2:14 5:21,24
**definitely** 20:4
**definition** 46:15 46:15
**departure** 47:25
**deposition** 1:17 4:15,23 5:23 6:10 52:17 58:10 59:4 60:2,5 61:2
**described** 7:12
**destroyed** 17:21 17:23
**detail** 13:14 30:3

**direct** 41:18,22 42:8,17 50:14
**direction** 58:7
**directly** 27:21,22 28:6 33:4
**disconnection** 18:17
**discuss** 9:21 10:4 45:10
**discussed** 11:18 18:16 35:3,8,19 36:2 44:16,21
**discussion** 13:19
**dispute** 10:2,14 11:8,15,17 12:9 13:23 14:4 19:11 19:22 22:8 23:10 24:6 39:5 44:11 44:20 47:4 54:15
**district** 1:2,3 4:20 4:21
**document** 7:12,17 7:21 8:14 17:5,6 19:5,19 23:8 24:24 50:7
**documentation** 19:22 23:9 25:3
**documents** 19:10 19:14 20:10 55:9
**done.ed.** 57:13
**door** 33:14
**dotted** 33:11
**duly** 6:15 58:6

**e**

**e** 2:2,2 3:2,6
**early** 40:6,14,24 41:14
**eastern** 7:5 8:3 12:17 18:20 19:3 20:25 22:5 23:5 24:22

edward   1:9
eicher   2:21
employee   58:13
employment   16:5
ended   18:16
ends   57:18
energy   16:21,23
engineer   41:7
engineering   36:12
entered   35:20 36:3
entitled   1:18 53:3
   53:5 54:4
entry   7:24
epc   36:12
errata   60:2 61:2
errors   60:10
esq   2:9,11,19,21
   2:23
established   7:21
estimate   51:6
   53:15 55:7 56:25
estimated   51:18
   52:13
estimates   43:8,12
   55:20 56:24
et   4:19
evidence   51:23
   52:19 53:7 55:2
   56:3 57:4
evidently   38:24
exact   38:22,22
exactly   9:24 17:17
   27:18 28:11,12
examination   3:3
   6:19
examined   6:16
exbt   3:9
exceed   51:19
   52:13
exceeded   53:14
   54:7,17 56:25

exceeding   43:8,12
   55:6,13,21
excuse   39:2
executed   59:11
exhibit   3:7 7:11,13
experience   9:21
   10:4 11:12,17
expressly   28:16
extensively   29:3
extent   17:4 20:18
   34:4 37:19 38:14
   56:5,13
extremely   15:12

**f**

fact   18:11 43:10
   45:6 46:4 49:20
factors   35:8
facts   15:15 51:23
   52:19 53:6 54:25
   56:2 57:4 60:9
fair   40:21
federal   58:10
feel   37:24
fifth   2:16
filed   4:20
finance   26:8 41:6



financially   5:6
   58:13
fine   54:22
firm   4:25 9:16
   10:21 14:15,25
   16:4
first   6:15 31:22
five   43:15
fixed   36:16,20
   37:3,4,6 39:13,15

fluor   36:3,6,13,15
   36:18 37:2,5,10,15
   38:9,20 39:6,16
   51:18 52:12 53:13
   54:6,16 55:6,13
focused   29:3
focusing   50:23
   52:6
follow   21:4 22:13
   23:14,23 24:8
follows   6:10,17
forecasting   30:21
   31:2,7
foregoing   58:4,5,8
   58:9 59:10
form   9:19,23 11:4
   11:13 12:12 13:9
   13:21 14:12,16
   17:3 18:8,23
   20:14,23 23:17,25
   24:9 25:9 28:19
   30:15 31:4,13,19
   33:20 34:4 36:21
   37:25 38:3,12
   41:2 42:5,11 44:7
   44:14 45:4 47:11
   47:18 48:4,9 49:8
   49:18 51:22 52:15
   57:2
forth   58:5
forward   18:4 20:5
   20:21
four   11:2
free   37:24
full   40:20
function   28:17
further   57:11 58:9
   58:12

**g**

gathering   15:14
   18:14
gilmore   2:9 3:4
   5:16,17 6:4,20 8:7
   20:22 29:15 36:17
   37:22 38:7 50:8
   50:20 52:24 57:10
   57:14,19
give   13:14 20:15
   35:23
given   57:21 58:8
go   4:12 6:3 8:9
   11:20 17:9 18:4
   25:25 29:16
goes   38:12 51:24
going   4:3 6:6 7:19
   35:23 51:21 54:24
   57:16
good   4:2 5:16
gotshal   2:13 5:20
group   56:19,20
grueneich   2:11

**h**

h   3:6 6:14
hagens   2:4
half   40:18
harris   2:23
head   19:11,15
hear   8:8 42:13
held   4:23 27:3,7
high   33:17
highly   52:20
hindered   48:17
   49:5
hired   28:16,20
   35:15
hold   51:20
honored   18:12

**[honoring -**                                                                                          Page 5

**honoring** 20:5
**houston** 27:12,15
  45:9

**i**

**idea** 54:19
**ideas** 48:15
**identification** 7:13
**identity** 14:21
  16:6
**illinois** 2:7
**immediately** 18:19
**important** 15:12
**improper** 52:25
**inappropriate**
  54:2
**include** 30:18,25
  31:15
**included** 15:4,10
  30:6,14,20 31:11
  31:17,23 32:10
**increase** 55:5
**independent** 8:16
  19:7 21:8
**indicates** 8:15
  10:13 11:6 12:8
  12:21,25 19:6,20
  21:2 22:7 23:8
  24:25
**individual** 10:17
**individually** 1:5
  4:18
**individuals** 31:7
**industry** 15:11
  16:20,21,22,23
  17:20 18:3
**information** 11:7
  13:3 15:14 16:14
  18:14 19:11,22
  20:11 23:10 24:5
  25:11 26:9 29:11
  29:23 31:6 35:24

**ingrid** 2:21
**initial** 10:25 21:12
**initially** 15:9
**instruct** 8:12
**interested** 5:7
  15:18 58:13
**internal** 55:20
  56:24
**interview** 21:5
  22:13 23:14 24:8
**introduced** 9:3,9
**investigation**
  15:13
**investigations** 7:7
  8:5 9:4,10
**investigator** 12:14
  13:7 16:15 37:21
  53:24
**involvement** 13:15
**issue** 11:15 13:17
**issued** 55:12

**j**

**j** 1:19 58:18
**jenna** 2:23
**johannesburg**
  33:5,12
**jpc** 1:8 4:22
**july** 27:8 40:17,22
  41:12 45:16,22
  51:4
**june** 23:4,7 24:6

**k**

**k** 6:14
**kept** 14:21
**kind** 19:21
**knew** 16:7 39:23
  51:6,13,16 52:7
  53:12,18
**knock** 44:4

**know** 8:25 16:6,11
  16:13 17:22 29:7
  32:12,13 33:15
  35:17 36:5,23
  39:8,19 41:19
  42:20 45:11,17
  46:8,13,14 47:12
  48:19 49:9 50:8
  52:18 53:17 54:10
  56:7 57:6,8
**knowledge** 53:17
  54:13
**knowledgeable**
  33:25
**known** 20:2

**l**

**l** 6:14
**lack** 47:8,15,25
**lake** 29:3
**lasted** 11:2
**late** 40:3,12,22
  41:12
**law** 9:16 10:21
  14:15,25 16:4
**laws** 59:9
**lawsuit** 9:17 10:19
  10:22 13:13 15:4
  15:10,16,19 16:18
  18:2,11 21:14
**lccp** 28:17 32:19
  32:24 33:16 35:10
  35:21 36:10 40:5
  40:24 41:14 43:3
  43:8,12 44:4
  49:13,16,21 51:4
  51:19 52:13 53:15
**lccp's** 33:25 35:4
**leaving** 49:11
**left** 8:22 10:3 21:3
  22:11 23:12,22
  24:6 25:5 34:16

  34:21 48:5 49:10
  51:3
**legal** 4:25 57:24
**length** 46:6
**level** 30:3
**limit** 20:23 37:24
**limited** 1:9 37:16
  39:17 42:7
**lindsey** 1:5 4:17
**line** 33:11 54:24
  55:18,23 60:11,12
  60:13,14,15,16,17
  60:18,19,20,21,22
  60:23,24 61:3,4,5
  61:6,7,8,9,10,11
  61:12,13,14,15,16
**lines** 48:17
**linnley** 7:6 8:4,22
**litigation** 12:15
  25:7
**llp** 2:4,13
**look** 7:9,16,24
  50:7
**looking** 13:16 39:2
**lucas** 2:9 5:17 9:6
  12:19 20:18 26:17
  29:14 50:17 52:18

**m**

**m** 6:14
**machine** 58:7
**main** 36:9
**making** 41:15 44:8
**management** 26:9
  29:12,23 49:10
**manges** 2:13
**marked** 7:10,13

materials  37:12,15
matter  1:18 4:17
  18:11 25:12
mean  42:20 45:20
  48:7
meant  37:15
media  4:14 57:18
  57:22
meet  45:12
meeting  45:14,18
meetings  41:24
  42:6
mega  33:17 36:13
  39:12 41:9
message  9:2,8 10:3
  21:17 22:12 23:13
  24:7
messrs  49:22
met  45:9
microphone  4:9
microphones  4:6

mike  27:21,22,25
minor  5:25
minute  8:21 13:4
  18:15 20:12 21:3
  22:11 23:12 25:6
minutes  11:3
  12:23 19:18,24
mischaracterizes
  56:13
misled  18:9
misstates  14:6
  44:14 57:4
months  27:4 43:16
  44:25
moore  1:19 5:4
  58:18
moshell  1:5 4:17
  59:3 60:3
motion  53:2
mouth  53:23
move  20:20
moving  20:5
mute  4:9

**n**

n  2:2 3:2 6:14
name  4:24 10:17
  14:25 58:15 59:3
  60:3,4
need  14:18 53:8
neither  58:12
never  23:22
new  1:3,22 2:17,17
  4:21 48:15,15
  58:3 59:9
nicolle  2:11
nine  43:16
normally  46:11,19
north  2:6 26:15,22
  27:7 29:10,21
notary  1:21 6:16

note  4:6 50:17
notes  20:4 38:24
noticing  5:15
nqwababa  1:9
  41:18,23 43:2,11
  43:19 49:17,22
number  4:22 6:25
  57:18,22
numerous  21:12
  52:18

**o**

oath  56:23
object  7:20 20:16
  20:16 38:2 51:22
  52:15 54:23,24
objection  8:6,10
  8:24 9:11,19,23
  11:4,13,19 12:3,12
  13:9,21,25 14:6,12
  14:16 17:3,15,24
  18:7,22 19:16
  20:14 21:7 22:15
  23:16,25 24:9
  25:8 28:18 30:15
  31:3,12,18 33:19
  34:3,8 36:21
  38:11 41:2 42:4
  42:10 44:6,13
  45:3 46:24 47:10
  47:17 48:3,8 49:7
  49:18 55:8,15,17
  55:22,23 56:12
  57:2
objectionable
  52:20
objections  5:12
  20:23 37:25 56:4
obvious  17:2,14
occasions  42:18,25
occur  45:19

occurred  11:22
  12:17 13:13 45:15
  45:20
office  27:12,14
  33:4 45:9

okay  7:15,18,25
  8:12,13,20 10:8
  13:2 17:17 21:16
  22:18 25:24 28:4
  30:12 32:8 33:23
  34:10,13 35:7,13
  38:2 40:2,21
  42:23 43:17 44:10
  46:17 50:3,10,14
  50:22 51:3 56:22
  57:10,12
once  14:13 15:17
open  48:14
operation  28:21
operations  28:25
  30:2
opinions  48:13,14
order  1:19 56:2
ordered  38:13
  51:25 55:3
orders  55:12
original  58:9
outcome  5:7
outside  47:18 48:4
  48:9
overruns  35:9
oversaw  30:6,14
  30:20
oversee  28:16
overseeing  31:2,11
  31:24 32:5,10,16

**[p - recording]**

**p**

**p** 2:2,2
**p.m.** 1:14 7:5 8:3
  18:20 20:25 23:5
**page** 3:3 7:17
  50:24,25 60:11,12
  60:13,14,15,16,17
  60:18,19,20,21,22
  60:23,24 61:3,4,5
  61:6,7,8,9,10,11
  61:12,13,14,15,16
**paid** 36:15,19
  37:10
**paragraph** 50:15
  50:23,25
**part** 15:13,19
  16:17 18:2,10
  21:14 56:20
**parties** 4:12 35:21
**party** 5:5 58:14
**paul** 1:10
**penalty** 51:10 59:2
  59:8
**people** 40:13
  41:13 48:12
**perfect** 54:22
**period** 27:10 29:6
  40:12 41:12 45:7
  55:25
**perjury** 51:10
  59:2,8
**person** 16:8 41:5,6
**personal** 17:20
**perspective** 43:14
**pertaining** 35:21
**pertains** 58:9
**phone** 3:9 6:23,25
  7:6 10:10 18:17
**pick** 4:7
**place** 4:11 35:15
  58:4

**plaintiff** 2:5
**plaintiff's** 21:5
  22:13 23:14,24
  24:8 37:20
**plaintiffs** 1:7 5:18
  5:25
**plaza** 2:6
**please** 4:6,9 5:9,13
  20:22 37:24 50:2
  50:15
**point** 6:8 7:7 8:4
  9:3,9 40:21 47:2,6
**portion** 39:13,15
**position** 27:3,7
**possible** 4:10
**potential** 10:19
  15:16
**president** 26:8
**previously** 7:10
  30:22 56:9,17
**primarily** 39:25
**prior** 58:5
**private** 4:8 16:15
**probably** 26:5
**proceeding** 5:13
**proceedings** 6:8
  58:4,5,6,10
**process** 13:12
**procurement**
  36:12
**professional** 1:20
**profile** 33:17
**project** 29:4 31:8
  32:19,25 33:17
  36:10,13 39:12
  43:21 49:13 51:17
  52:11 53:13,18
  54:6,13,16 56:10
  56:18,24
**projects** 29:6
  41:10

**providing** 16:14
**public** 1:21 6:16
  26:4,6
**purporting** 17:5
  34:4
**purpose** 11:10
**pursuant** 1:19
  12:14
**put** 43:14 53:22

**q**

**question** 8:2 9:5
  12:18 17:4,12
  18:25 20:17 26:16
  29:18 36:22 38:4
  47:21 51:22 52:4
  52:16,21 53:9
  55:24 56:5,15
  57:3
**questioning** 54:25
  55:18,23
**questions** 7:20
  18:5 20:8 37:23
  37:23 53:5
**quote** 17:6 20:19
**quoting** 17:5 34:5

**r**

**r** 2:2 6:14
**raise** 43:10 49:20
**raised** 42:25 43:7
  43:19 49:15
**raising** 44:3
**reach** 21:11
**reached** 47:2,5
**read** 51:7
**reads** 51:3
**ready** 50:9
**really** 53:25
**realtime** 1:21
**reason** 47:20 48:5
  49:11 60:7,11,12

  60:13,14,15,16,17
  60:18,19,20,21,22
  60:23,24 61:3,4,5
  61:6,7,8,9,10,11
  61:12,13,14,15,16
**reassured** 15:12
**recall** 9:12,13 10:5
  10:6,16,17 12:13
  13:10,10,11,20,22
  14:3,8,13,19 17:17
  18:18 19:9 21:6
  21:11 22:3,10,17
  23:18,20 24:3,11
  25:10 26:11,23
  27:18 28:2,23
  30:3,8,23 31:25
  32:21 33:6,21
  34:9 35:18 38:22
  39:3 40:9,15
  41:15 43:5,9 44:8
  44:15,18,23 45:5
  46:23 47:3,7
  49:19,24 55:9
  57:7
**receive** 56:23
**received** 50:21
**receiving** 21:9
  54:15
**recess** 6:9
**recollection** 8:17
  9:14 19:8 21:9
  28:10 47:15,24
  48:22 49:5
**record** 4:3,13 5:11
  6:3,7,12 10:12
  11:5 12:24 22:6
  50:17 57:17 58:6
  58:8 60:8
**recorded** 4:15
**recording** 4:11

**records** 3:9
**red** 50:18
**redacted** 50:18
**refer** 15:6 40:19
**referred** 36:9
  56:17
**referring** 54:11
  55:10 56:8 57:7,8
**reflecting** 13:3
**regard** 30:24
**regarding** 49:15
**regional** 29:11,22
**registered** 1:20
**related** 5:5 31:6
  41:9 49:11
**relative** 58:13
**remember** 7:8
  8:18 9:24 11:14
  11:21,22,23 28:11
  35:5
**remotely** 4:24 5:9
**repeat** 17:11 18:24
  29:18 34:17 38:4
  52:3 53:9
**rephrase** 47:21
  56:15
**report** 27:22
**reported** 27:21,25
  28:5 32:19,25
  56:20
**reporter** 1:20,21
  5:3 20:7 51:25
  58:3
**reporting** 31:17
  31:24 32:5,7,11,16
**reports** 51:17
  52:11 53:13 54:6
  54:11,16 57:8
**representing** 9:16
  10:21

**reputation** 15:11
  17:20 18:2
**requested** 58:11
**requests** 55:5
**resign** 45:6
**resignation** 44:16
  44:21 45:10,13,21
**resigned** 44:25
**respect** 44:3
**respond** 21:14
**response** 21:23
**responsibilities**
  32:2,4,15 33:9
  41:22 56:21
**responsibility**
  33:11
**responsible** 29:10
  29:22 31:8 32:6
**results** 32:7
**retained** 57:23
**return** 21:20
  22:19 24:12 25:15
**review** 58:10
**revolving** 33:14
**right** 41:5
**risk** 37:16 39:13
  39:17,25,25 43:7
  43:12,20
**robert** 4:24
**role** 15:11 18:3
  29:3 30:4,24,25
  31:5,15
**rpr** 58:19
**rudis** 4:24
**run** 47:9,16,25

|  s  |
| --- |

**s** 2:2 3:6 6:14,14
**sasol** 1:9 4:19 9:17
  9:21 10:4,19,22
  11:12,17 12:15
  16:5,8,13,20,24

26:9,11,14,22,25
27:7 28:25 29:10
29:21 32:24 33:14
35:20 36:3,7
39:25 43:7,12,20
44:17,21,25 45:25
48:5,10 49:10,11
51:4 55:21 59:3
60:3
**sasol's** 27:12,14
  33:4 48:6 49:12
  49:16,21
**saw** 16:10
**saying** 13:11 18:10
  43:5,9 46:3,18
  47:3 49:19,24
  53:16,19 54:5,9,10
  54:10,12
**schedule** 43:21
**scheduled** 11:23
**schoeman** 1:10
**scope** 30:16 31:4
  31:13,19 38:12
  41:3 42:11 47:18
  48:4,9 51:24
  52:16,23 55:2,25
  57:3
**second** 7:17 19:23
  20:15 45:16 48:23
  51:20 54:18
**see** 50:24 51:13
  52:8
**seeking** 21:4 22:12
  23:13,23 24:7
  25:6
**seen** 7:22 39:11
**sense** 15:23
**sensitive** 4:7
**september** 24:21
  27:8

**set** 11:11 23:19
  58:5
**setting** 11:16
**shapiro** 2:4
**shared** 39:14
**shareholders** 9:16
  10:22 16:15
**sheet** 60:2 61:2
**short** 45:7,25 46:5
**shorthand** 58:3,7
**showing** 17:7 34:6
**side** 48:18 49:6
**signature** 58:18
**signed** 50:5 51:9
**similarly** 1:6 4:19
**sitting** 18:12
**situated** 1:6 4:19
**situation** 20:3
**small** 56:19
**sobol** 2:4
**solutions** 4:25
  57:24
**sorry** 8:7 17:11
  18:24 26:17 42:13
  52:3
**sound** 34:11
**south** 33:12 48:11
  48:12,18 49:6
**southern** 1:3 4:21
**speak** 11:11,16
  40:20
**specific** 35:12
  44:18
**specifically** 8:11
  28:22 29:7 30:23
  31:25 33:6,21
  35:5 36:23 39:19
  45:5,11 46:3
  47:12
**specifics** 26:24
  28:2 30:4,9 32:13

| | | | |
|---|---|---|---|
| **spend**  46:11,19 | **take**  4:11 7:9,16 | **think**  5:23 40:10 | **topic**  11:18 35:3 |
| **spoke**  10:10 12:7 | 7:24 50:6 | 43:23,23 57:12 | **total**  57:22 |
| 12:22 19:17,23 | **taken**  4:16 5:24,24 | **third**  35:21 | **transcribed**  58:7 |
| 44:2,2 | 20:4 58:4 | **thomas**  27:21,23 | **transcribing**  20:8 |
| **stages**  40:6,25 | **talked**  30:23 35:6 | 27:25 28:5,16 | **transcript**  58:8,9 |
| **state**  1:21 5:9,13 | **talking**  54:20 | **thought**  21:17 | 58:11 61:18,21 |
| 58:3 59:9 | **tax**  32:10,16,19,25 | **time**  4:4 5:13 7:5 | **transcription** |
| **statement**  26:18 | 33:2 56:10,18,19 | 11:11,16 12:17 | 60:10 |
| 28:24 29:8 37:7 | 56:19,24 | 18:20 19:4,23 | **treasury**  31:11,15 |
| 41:16 44:9,12 | **team**  32:19,25 | 20:25 22:5 23:5 | **tried**  21:11 |
| 46:9 51:12 52:6 | 33:2 56:10,18,24 | 24:23 27:10 29:7 | **true**  28:23 29:8 |
| **states**  1:2 4:20 | **technip**  36:3,7,13 | 32:24 35:14 37:12 | 43:4 46:3,9 58:8 |
| **status**  25:7 | 36:15,18 37:2,10 | 37:15 39:24 45:7 | 59:10 61:19,22 |
| **staying**  43:20 | 37:15 38:9,20 | 45:21 46:11,14,16 | **trying**  53:22 |
| **stephan**  1:10 | 39:6,16 51:18 | 46:20 50:7 51:4 | **turn**  49:25 |
| **stephen**  1:10,19 | 52:12 53:14 54:6 | 53:19 54:13,13,23 | **twist**  53:22 |
| 5:3 58:18 | 54:16 55:6,13 | 55:25 57:15,17 | **twisted**  43:24 |
| **stop**  22:2,25 24:19 | **tell**  27:24 30:9,10 | 58:4 | **two**  8:21 14:2 |
| 25:22 | 31:22 41:8 49:14 | **times**  14:2 21:12 | 22:11 23:12 25:5 |
| **strike**  36:17 38:7 | **telling**  9:15 28:10 | 24:10 | **type**  39:12 |
| **strong**  48:13 | 46:22 | **title**  15:23 16:5,9 | **typically**  39:12 |
| **subcontractor** | **ten**  27:3 44:25 | 16:10 26:10 | **u** |
| 37:16 39:16 | **tenure**  15:24 | **today**  23:21 56:23 | **u.s.**  26:25 28:21,24 |
| **subject**  25:12 | 16:11 40:17 45:25 | **today's**  57:21 | 29:6 30:2 |
| 61:17 | 46:5,7 52:12 | **told**  10:20 14:9,14 | **undersigned**  58:2 |
| **submitted**  53:2 | **term**  47:5 51:16 | 14:24 15:5,9,18,22 | **understand**  56:5 |
| **subscribed**  58:15 | **terms**  50:17 | 16:3,25 17:13,19 | **understanding** |
| **subset**  16:23 | **testified**  6:17 56:9 | 21:13 26:3,5,7,12 | 36:25 37:10 38:8 |
| **suggest**  20:11 25:3 | **testifying**  58:6 | 26:13,20 27:2,6,9 | 39:22 |
| **suggesting**  51:15 | **testimony**  14:7 | 27:11,16,19,20 | **understood**  13:17 |
| 52:10,22 53:12 | 23:21 44:14 51:25 | 28:15 29:2,20,25 | 16:2,12 18:15 |
| **sure**  19:2 38:5 | 55:4,11,19 56:14 | 30:5,19 31:20 | 20:6 24:4 28:14 |
| 41:4 45:20 46:2 | 56:22 57:5,21 | 32:2,9,13,18,21 | 31:9 54:3 |
| 47:22 52:5 56:16 | 58:8 | 33:13,22,24 34:14 | **unethical**  54:2 |
| **surprised**  34:15 | **text**  22:2,25 24:18 | 34:19 39:17 40:11 | **unit**  4:14 57:18 |
| 34:20 | 25:21 | 41:11,17 42:16,24 | **united**  1:2 4:20 |
| **sworn**  6:15 58:6 | **thank**  6:2 37:8 | 43:6,18 44:24 | **units**  57:23 |
| **t** | 57:14,25 | 45:6,8,12,24 46:10 | **unquote**  20:20 |
| **t**  3:6 | **thanks**  57:19 | 46:19,25 47:13 | **unspoiled**  34:22 |
| **tab**  7:10 49:25 | **things**  34:15,20 | 48:16 | **unspooled**  34:15 |
| | | | 34:20,23 |

**[unusual - zalka]**

**unusual**  38:9,20
  39:7,9 46:7
**update**  25:7
**use**  34:25 51:16
**usually**  39:12

| v |
| --- |

**v**  1:8 59:3 60:3
**vague**  38:3 55:24
  55:24
**veritext**  4:25 5:4
  57:24
**version**  50:18
**versus**  4:19
**vice**  26:8
**victor**  1:10 42:17
  42:22 43:2,11,20
  44:5 49:17,22
**video**  4:10,14
**videographer**  4:2
  5:2 6:2,6,11 57:16
  57:20
**videotaped**  1:17
**virtual**  1:17
**voicemail**  8:22
  21:4,9 22:12
  23:13,22 24:7
  25:6,13

| w |
| --- |

**wait**  51:21 54:18
**want**  15:10 16:13
  16:17 17:25 20:9
  21:13 26:18
**way**  15:24 48:20
**week**  45:16
**weil**  2:13 5:20
**went**  18:25 30:3
**whereof**  58:14
**whispering**  4:7
**wishes**  18:12 20:5

**witness**  1:18 2:15
  6:15 7:22 8:13
  15:7,21 17:7
  20:18 34:6 37:22
  44:14 49:2 56:13
  57:5 58:14 60:4
**witnesses**  58:5
**word**  17:23 34:24
  39:8
**words**  28:12,12
  38:23 43:24 46:19
  53:22,22
**work**  16:20,21,22
  40:4,23
**worked**  9:13 26:8
  26:14 33:3 48:12
**working**  9:3,9,15
  10:21
**worried**  16:4
**write**  21:23 22:22
  24:15 25:18

| x |
| --- |

**x**  1:4,13 3:2,6
  58:11

| y |
| --- |

**year**  40:18,20
  43:15
**york**  1:3,22 2:17
  2:17 4:21 58:3
  59:9

| z |
| --- |

**zalka**  2:19 5:19,19
  6:5 7:19 8:6,9,24
  9:5,11,19,23 11:4
  11:13,19 12:3,12
  12:18 13:9,21,25
  14:6,12,16 17:3,9
  17:15,24 18:7,22
  19:16 20:14 21:7
  22:15 23:16,25

          Veritext Legal Solutions
www.veritext.com

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.