# EXHIBIT 6

**(Unredacted Version Filed Under Seal)**

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

CHAD LINDSEY MOSHELL, Individually

and on Behalf of All Others

Similarly Situated,

                    Plaintiffs,          Case no.

                    v.              1:20-cv-01008-JPC

SASOL LIMITED, DAVID EDWARD

CONSTABLE, BONGANI NQWABABA,

STEPHEN CORNELL, PAUL VICTOR, and

STEPHAN SCHOEMAN,

                    Defendants.

------------------------------------------x

                    11:00 a.m.

                    December 7, 2020

          VIDEOTAPED VIRTUAL DEPOSITION of ███████

███████, a Witness in the above entitled matter,

pursuant to Order, before Stephen J. Moore, a

Registered Professional Reporter, Certified

Realtime Reporter and Notary Public of the State

of New York.

A P P E A R A N C E S:

HAGENS BERMAN SOBOL SHAPIRO LLP

Attorneys for Plaintiff

455 Noth Cityfront Plaza

Chicago, Illinois 60611

BY:    JERROD PATTERSON, ESQ.

WEIL, GOTSHAL & MANGES, LLP

Attorneys for Defendants and the

Witness

767 Fifth Avenue

New York, New York 10153-0119

BY:    CAROLINE ZALKA, ESQ.

- and -

LUNA BARRINGTON, ESQ

- and -

ANNA GORDON, ESQ.

- and -

SALAM SHEIKH-KHALIL, ESQ.

A P P E A R A N C E S   (Continued:)


        HACH ROSE SCHIRRIPA & CEVERIE LLP

                Attorneys for Witness

                112 Madison Avenue

                New York, New York   10016


        BY:     FRANK SCHIRRIPA, ESQ.

██████████████

**I N D E X**

**EXAMINATION BY**                                    **PAGE**

**MS. ZALKA**                                              **7      4**

Page 5

THE VIDEOGRAPHER:  Good morning. We are going on the record at 11:11 a.m. on December 7, '20.

Please note that the microphones are sensitive and may pick up whispering, and private conversations.

Please mute your microphone whenever possible.  Audo and video recording will continue to take place unless all parties agree to go off the record.

This is media unit one of the video recorded deposition of ▮▮▮▮▮▮ taken for counsel for Defendant in the matter of Chad Lindsay Moshell, individually and on behalf of all others similarly situated versus Sasol Limited, et al., filed in the United States District Court, Southern District of New York.  Case number 1:20-cv-01008-JPC.

This deposition is being held remotely.  My name is Robert Rudis from the firm Veritext Legal Solutions and I am the videographer.  Our court reporter is

Page 6

Stephen Moore, also from Veritext.

I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel and everyone attending remotely will please now state their appearances and affiliation for the record.

If there are any objections to proceeding, please state them at the time of your appearance, beginning with the noticing attorney.

MS. ZALKA:  Caroline Salka from Weil, Gotshal for all Defendants.

MR. SCHIRRIPA:  This is Frank Schirrapa from the law firm Hach Rose Schirripa & Ceverie for the witness, Mr.

MR. PATTERSON:  Good morning. Jerrod Patterson, Hagens Berman for Plaintiffs.

Caroline, I have asked that I be allowed to join in any objections by Mr. Schirripa.

**Page 7**

MS. ZALKA:  Yes, no issues there.

████████        █████████████        called as a witness, having been first duly sworn by the Notary Public, was examined and testified as follows:

EXAMINATION BY

MS. ZALKA:

Q       Hi, Mr. ██████████ like I mentioned before we started, my name is Caroline Zalka, I am one of the attorneys here at Weil acting for Sasol and the Defendants in the action.

Have you been deposed before?

A       I have not.

Q       Just a couple of ground rules, let's try and not talk over one another, so just let me finish my question before you answer.

If you don't understand anything that I am saying, or if the questions aren't clear at all, let me know and I will rephrase.

Page 8

████████

Also, and this everybody struggles with it, but try not to, try to answer verbally as opposed to nodding your head, because obviously the court reporter can't take down the head nod.

So just -- and we will take it from there.

If you want a break at any time just let me know and we can go off the record. I will just ask you to answer the question that's pending.

A       Okay, understood.

Q       Okay.

Now, you were interviewed by the Plaintiff's investigator in the Sasol securities class action, is that correct?

A       Yes.

Q       When were you interviewed?

A       It was the spring of 2020.

Q       Do you remember which month?

A       I don't have that information right in front of me.

Q       No, I'm not asking whether you have the information in front of you, I'm just

Page 9

asking if you sitting here today, do you
remember what month it was when you spoke to
the Plaintiff's investigator?

A     I do not.

Q     Okay, do you remember how many
times you spoke with the Plaintiff's
investigator?

A     I believe it was three times.
There was an initial call and then a second
call after I had my attorney, and then the
third call I believe was the time I gave my
statement.

Q     Do you recall having three calls
with the Plaintiff's investigator, is that
correct?

A     Yes.

Q     And you mentioned that you had
your attorney on two of those calls, is that
correct?

A     Yes, two.  The second two.

Q     Yeah.

      What did you discuss with the
Plaintiff's investigator in the initial call?

A     He reached out saying that there

was -- there was like a request to get information about like -- there was a request of like he had spoke to someone else on-site about activity relating to like the shareholders complaining about something and wanted to get information from me.

And he said he had got my information from someone else that had worked at Sasol at the time, or previously.

Q    During that first call, did the Plaintiffs -- was there anybody else on the phone other than you and the Plaintiff's investigator?

A    There might have been a second person, but I'm not sure.  I just remember -- go ahead.

Q    A second person from the same kind of investigative firm?

A    Yeah, I'm not 100 percent sure, but I thought there was a second person.

Q    And so in response to what the investigator told you about trying to get more information, what did you do?

A    I said I would get back to them

████████████████

and then I was going to get my own lawyer to represent me prior to talking.

Q       And did you tell him you wanted to get your own lawyer prior to talking with them further?

A       Just to be safe.  Like -- I have a lawyer for other stuff and I wanted to get him involved to make sure.

Q       To make sure what?

A       To make sure like everything they were asking me was okay.

Q       Okay.

So you mentioned that you had -- subsequent to that initial call you mentioned that you told them that you wanted to speak with your lawyer to make sure that everything was okay, is that accurate?

A       Yes.

Q       And then I assume you spoke with your lawyer, and that's just a yes or no, so let me just give you a couple of ground rules, I don't want any information concerning your conversations with your attorney, so I'm not trying to get at privileged communications.

██████████████

So I am just going to ask you, I just want to know did you speak with your attorney, and this is yes or no, after you spoke with the Plaintiff's investigator?

A       Yes, I did.

Q       Just for the record, who is that attorney?

A       Steve Hahn.

Q       So you spoke with Mr. Hahn and then subsequently you spoke again you said with the investigator two more times, is that correct?

A       Yes.

Q       On the first call with the Plaintiff's investigator, was it just you or did --

MS. ZALKA:  Sorry, strike that.

Q       On the second call with the Plaintiff's investigator, was there anybody from the Plaintiff's law firm on the call, Hagens Berman?

A       Can you repeat the question again, make sure I understand it?

Q       Sure, that's totally fair.

Page 13

So on the second call that you had, you mentioned that the Plaintiff's investigator was on that call, correct?

A    Yes.

Q    Was there an attorney from the Plaintiff's law firm from Hagens Berman also on the call?

A    Let me rephrase and make sure I'm understanding it.

The second call was Steve Hahn, my lawyer, with Jerrod Patterson.

Does that answer your question?

Q    Sure, and were you on that call with Mr. Patterson and Mr. Hahn?

A    Yes.

Q    So the second call was between you, Mr. Patterson and you had Mr. Hahn there as well, is that correct?

A    Yes.

Q    What was Mr. Hahn's role on that call?

A    Just my legal counsel.

Q    Did you tell Mr. Patterson that you wanted to have you've legal counsel present

on the call?

A      Yes.

Or Mr. Hahn informed Mr. Patterson that he was representing me.

Q      And so you mentioned -- how long did that call last, approximately?

A      I mean I don't actually know the time or remember it, but to my best recollection it was the same call that Jerrod Patterson said, it was the same amount of time in questions.

Q      What do you mean it was the same amount of time in questions?

A      When he initially called me he said I'm representing, you know, the shareholders, something to that effect, and here is what I would like to speak about, right?

When Mr. Hahn called Mr. Patterson with me on the call, it was the same verbiage, hey, you know, we are representing the team, we would like you to be a confidential witness, and then that's what was discussed.

████████████████

Q      And you gave your permission to have your statements attributed to you in the Complaint?

A      Yes.

Q      Did you review a copy of the statements that were attributed to you in the Complaint before it was filed?

A      So, that wouldn't have been until the third call.

Q      Okay.

So what happened on the third call?

A      The third call was the official meeting where it was -- multiple questions were asked of me.

Q      When you say it was the official meeting, can you just explain what you mean by that?

A      The first intent -- the first meeting that was -- or the first time he called me he gave me a summary of what was going to go on, right?

That call ended, me and Steve called him back at a later date, and then on

████████████

the call was the one where he read through all the questions, I gave my statement and made corrections to that statement over the phone.

Q    Okay.

Do you recall what corrections you made to the statement?

A    They were -- they were like technical schedule related questions.

Like corrections, so he -- like in the summary he would say something and I would say technically that's probably not correct, this would be a better verbiage of it, or a more accurate statement of what was in that summary.

Q    Okay, and were those -- your corrections were made before the Complaint was filed?

A    They were reread to me as each correction was made, and then the statement was reread in its entirety at the end of the call.

Q    How long did that call last, to the best of your recollection, that third call?

A    Probably like an hour and a half.

██████████████

I'm not sure, I mean it's probably documented somewhere, but I don't have that in front of me.

Q      Okay.

Did you receive a copy, did you receive a copy of the Complaint after it was filed with the court?

A      I received a paper copy of the report after it was filed.

Q      When after it was filed?

A      I don't have it on me, but it's in my e-mail.

Q      Got it.

But was it kind of roughly contemporaneous with the time that you had the three calls, or was it more recently?

MR. PATTERSON:  I object to form. You can answer.

A      Sorry, can you repeat it and I can answer, is that correct?

MR. SCHIRRIPA:  Yes, you can answer the question, but please repeat it, Caroline.

MS. ZALKA:  Sure.

Q        So, Mr. ████████ I just wanted to understand when you recall receiving a copy of the as filed Complaint.

So you had stated that you didn't specifically recall, so my question is do you think that you received the copy of the as filed Complaint around the same time that you had the calls with the Plaintiff's investigator on the one hand, or do you recall receiving it more recently, within the last couple of months?

MR. SCHIRRIPA:  Objection.  You can still answer.

THE WITNESS:  So I can answer, sorry?

MR. SCHIRRIPA:  Yes.

A        So, to the best of my knowledge the report was received after it was officially filed, I received the paper copy.

Q        But do you recall receiving a paper copy within the last like two months or much earlier in 2020?

A        I believe it was much earlier, like slightly -- would have been like July or

Page 19

August.

Q       Okay.

        And did you review a copy of the Complaint in July or August?

A       I did review it.

Q       Did you review it all or just the portions -- did you review the entire document?

A       I did not review the entire document, I looked at sections and then I looked at I believe it was confidential witness number 6 that I was, it was a three paragraphs that were attributed to me, that's what I did review.

Q       Now, during your call with the Plaintiff's investigator and/or Mr. Patterson -- actually let me just do this, during your calls with Mr. Patterson, okay, that you just mentioned the second and the third call, do you recall telling Mr. Patterson that at some point upper echelon said we want you to break your commissioning schedule from the construction schedule?

A       Do I remember telling that to

████████████

Mr. Patterson?

Q       Yes.

A       Yes, I do.

Q       And do you recall Mr. Patterson asking who gave the order to break the schedule?

A       Yes, I believe so.

Q       And do you recall telling Mr. Patterson that you, in response to his question, that it was anyone who's got a vested interest in not following the usual industry standard practice?

A       Can you repeat that again?

Q       Sure.

So do you recall telling Mr. Patterson in response to his question about who gave the order to break the schedule, that it was anyone who has got a vested interest in not following the usual industry standard practice?

A       I do not remember making that statement.

I believe what I said was that we got an e-mail from someone up above that said we needed to decouple the schedule.

███████████

Q      Did you ever identify to Mr. Patterson who from up above sent you the order to break the schedule?

A      I believe I made a guess at it, yes.

Q      You finish.

A      Sorry, I made a guess at it, but wasn't 100 percent certain.

Q      And I assume you told Mr. Patterson that it was just a guess when you spoke with him?

A      I don't really recollect that, but I'm pretty sure I informed him that this is what I believed.

Q      You informed him this is what you believed or this is what you were guessing?

A      Sorry, that that's what I was guessing.

Q      And what did you tell Mr. Patterson that your guess was?

MR. SCHIRRIPA:  Objection.

A      That probably -- go ahead.

MR. SCHIRRIPA:  You can answer.

A      I -- probably Schoeman or

Page 22

██████████

Schoeman.

Q       And did you identify anybody else as the kind of your guess as to who gave you the order?

A       I might have mentioned something like, you know, some -- like a party that didn't want to have the schedule coupled with construction activities.

But I don't think I had a specific name.

Q       You were clear with Mr. Patterson that you did not have specific knowledge as to who specifically gave you the order to break the schedule?

MR. PATTERSON:  Objection to form.

MR. SCHIRRIPA:  Objection.

MS. ZALKA:  Guys, let me just finish the question before you object.

Q       So, Mr. ████████ am I correct that you did not specifically identify to Mr. Patterson that you had specific firsthand knowledge as to who gave you the order to break the schedule, is that correct?

Page 23

MR. PATTERSON:  Objection.

Q     You can answer.

THE WITNESS:  Okay, so can I answer, sorry?

MR. SCHIRRIPA:  Yes, you can answer the question.

A     So, you know, I gave the best estimate or guess, and then I know that I had gotten a specific e-mail or there was an e-mail that said this is what needs to happen from my boss.

And to add to all of this, this has been a while and I know the e-mails are there, so -- and I don't have access to the e-mails.

Q     Yeah, no, that's fair.

And I think that you were clear then with Mr. Patterson that, you know, you didn't have access to the e-mails and so beyond the guess that you offered, was there any additional detail that you could offer on that?

MR. PATTERSON:  I object to form.

MR. SCHIRRIPA:  Objection.

THE WITNESS:  So am I allowed to

Page 24

▬▬▬▬▬▬▬

answer?

MR. SCHIRRIPA:  Yes, unless I --
sorry, ▬▬▬▬▬ unless I instruct you not
to answer based on one of my objections,
which would roughly be an objection
related to attorney-client
communication, just assume you are to
answer after I object, unless you don't
understand the question and the question
is vague.

THE WITNESS:  Okay.

A      Can you repeat the question,
make sure I answer it correctly?

Q      Sure, of course.

When you spoke with Mr.
Patterson before the Complaint was filed, were
you clear with Mr. Patterson that you were
offering kind of, you know, your guess as to
who had sent you your e-mail to decouple the
schedule?

MR. SCHIRRIPA:  Objection.

MR. PATTERSON:  Objection.

A      So I said that the e-mail had
came from my boss, ▬▬▬▬▬▬▬, but I don't

Page 25

know who originated it.

And when I talked to Mr. Patterson, I believe I offered my best estimate of who I thought it would be coming from.

Q       So you were offering -- just so when you spoke with Mr. Patterson, you were clear that your recollection was that the instruction to kind of decouple the schedule, the e-mail had come from ███████, is that correct?

A       The e-mail was being forwarded on from ███████, who was my direct boss.

Q       So you recall receiving the forwarded e-mail from ███████?

A       Yes.  Direction on to decouple the schedule.

Q       Correct, but that's beyond the e-mail from ███████ that you recalled.

Were you clear with Mr. Patterson that you were offering your best estimate or your best guess as to who ultimately higher up the chain had actually made the decision to decouple the schedule?

A       Yes, I believe I stated that I

believed Schoeman to be the originator of it, but it would have been anyone that would have had a vested interest in decoupling the schedule.

Q     Did Mr. Patterson ask you what you based your belief or your guess with respect to Mr. Schoeman being the ultimate decision maker?

A     He -- sorry, can you repeat it one more time?

Q     Sure.

So when you informed Mr. Patterson that it was, you know, your belief or your guess that it was Mr. Schoeman who ultimately had made the decision to decouple the schedule, did Mr. Patterson ask you what the basis was for your belief or guess?

A     I mean he -- I believe he did, and I did explain that, you know, questions like this and the rework of the schedule had been done when he was on-site before.

Mr. Schoeman when he came on-site, we have reworked the schedule at his request.

Page 27

Q      Okay, so with respect to the decision to decouple, with respect to the decision to decouple the schedule, your guess -- you explained to Mr. Patterson the reason why you're guess was that it was Mr. Schoeman?

A      Yes.

Q      And you have a specific recollection of having that conversation with Mr. Patterson?

MR. PATTERSON:  Objection.

A      Yes; it was -- yes.

Q      What were you going to say?

A      I said yes.

Q      Now, when you were -- what was the dates of your employment on the LCCP project?

MR. PATTERSON:  Objection, outside the scope.

MR. SCHIRRIPA:  You can answer the question.

A      It was May of 2018 to February of 2019.

Q      Did you discuss with Mr.

Patterson what your role was at the LCCP?

A        Yes, I did.

Q        And what did you tell Mr. Patterson about what your role was during the May 2018 to February 2019 time period?

A        I told him that I was a ████ ████████████████ for Sasol hired by TRS staffing.

Q        Did you explain what your responsibilities were that you had in that role?

A        Yes.

Q        What did you tell Mr. Patterson about what your responsibilities were?

A        So the first role was ████████ ████████████████████████.

It was one of the seven -- six to seven like process areas.

We were bringing utilities into the plant and it was scheduling that, working with contractors, getting their dates, the durations for activities and then working with my supervisors on trying to get an accurate date on like how we would get power, potable

Page 29

water, and other utilities requested for other end -- downstream users.

Q    Did your role change at all during the time you were at Sasol -- working at the LCCP?

A    Yeah, so I don't remember the exact date, but about five months in my supervisor left and I was promoted to ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮.

So I had like five direct reports.

Q    Sorry, you said all of the commissioning schedules?

A    Yeah, so there are like five -- I don't remember at this point, there are five to six units in the plant that each produce different -- like so LLDPE, LDPE, like alcohols, there are five to six different plants that each produce a product that's brought to market.

I was managing the ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ for all of those.

Q    Got it.

A    Kind of like at a program level.

Page 30

████████████

Q        What do you mean when you say program level?

A        Like a higher level than just -- UO & I was one specific schedule, this was looking at all the schedules and then working with each scheduler in their respective unit.

Q        So how long did you have that role, the working with all of the schedulers?

A        It was, I believe, like four to five months.

Q        Now, just going back to -- I just want to be clear about one aspect of your conversation with Mr. Patterson.

So, did you tell Mr. Patterson that Mike Kane had told you or instructed you to decouple the construction schedule from the commissioning schedule?

A        Sorry, can you repeat the question?

Q        Sure.

Did you tell Mr. Patterson that Mike Kane had given you -- had made the decision to decouple the construction schedule from the commissioning schedule?

Page 31

A        I don't recollect, but I did have a discussion with Mike Kane and Nadine Kruger at one point.

Q        So I am asking you just about your conversation with Mr. Patterson.

A        Okay.

Q        Okay, so I am saying in your conversation with Mr. Patterson, did you tell Mr. Patterson that Mike Kane had been involved in the decision to decouple the construction schedule from the commissioning schedule?

A        I believe so; yes.

Q        Did you tell -- was that a guess, or did you know that for a fact?

A        I knew that he had directed -- like he had said that's what we are going to do, like he was asking me to do that in an e-mail.

Q        Okay.

So let's be -- because what I want to know is basically, because maybe if we just focus, really focus on my question, did you tell -- in your conversation with Mr. Patterson, did you tell Mr. Patterson that Mike

[REDACTED]

Kane had made the decision to decouple the construction schedule from the commissioning schedule?

A       No.

Q       During your conversation with Mr. Patterson, did you tell Mr. Patterson that Stephen Schoeman had made the decision to decouple the construction schedule from the commissioning schedule?

A       I said yes, I believed that he was the person that did it.

Q       And did you tell Mr. Patterson -- based on that belief, did you tell Mr. Patterson that the reason why Mr. Schoeman had made the decision was so that he could show that more work had been completed at the LCCP than actually had been, that that was the reason why the schedule was decoupled?

A       I believe I said that's why I believe him to be in that yes, it was to show more progress.

Q       And so you told that -- you said that with respect to Mr. Schoeman that was your guess or that you knew that for a fact?

Page 33

A       That it was my guess.

Q       Were you clear with Mr. Patterson that was just your guess?

A       I had stated to Mr. Patterson that most -- that the e-mail, I did not have the e-mail access, so I didn't -- I wouldn't be able to look it up right at that point.

Q       Were you clear with Mr. Patterson that that was just your guess, that you didn't actually have specific knowledge with respect to the reasons why Mr. Schoeman or the level of his involvement in the decision to decouple?

                MR. PATTERSON:  Objection.

                MR. SCHIRRIPA:  Objection.

A       I believe I stated that.

Q       When you say you believe you stated that, what do you mean?

A       I believe that I stated that I didn't have material fact because I didn't have my e-mail.

                But I did tell him there was an e-mail that it was communicated to us; at some point while working on-site.

████████

Q     Did you tell him that the e-mail reflected that Mr. Schoeman had made the decision?

A     I don't believe I said with 100 percent certainty.

Q     And so I take it you were clear with Mr. Patterson that you weren't 100 percent certain on this, correct?

MR. SCHIRRIPA:  Objection.

A     Sorry, can you repeat the question?

Q     Sure.

So I take it you were clear with Mr. Patterson that you weren't 100 percent certain on this, correct?

MR. SCHIRRIPA:  Same objection.

A     So I said something to the effect of there was an e-mail sent from someone higher up to decouple the schedule.

And it's something that I didn't have complete 100 percent certainty at this point because I did not have my e-mails when I left.

Q     Basically it sounds like, and

again, I just want to be clear, it sounds like you recalled that there was an e-mail, right, around -- that you received around decoupling the schedule, right?

MR. SCHIRRIPA:  Objection.

A      There was an e-mail I received that said we need to decouple the schedule.

Q      And you discussed that with Mr. Patterson and you recalled at that point during your conversation with Mr. Patterson that it was kind of the e-mail was just sent from someone higher up, that was your recollection, right?

MR. SCHIRRIPA:  Objection.

MR. PATTERSON:  Objection.

A      Yeah, I believe I stated it was forwarded on from my boss, ███████████ , saying that we are going forward, we are decoupling the schedule.

Q      And then I take it you were clear with Mr. Patterson that okay, you recalled this e-mail, that it was forwarded on from your boss ███████████ , but that you didn't sitting there have direct knowledge of

kind of who more senior than ▮▮▮▮▮▮▮▮ actually made the decision?

MR. SCHIRRIPA:  Objection.

A       Yes.  And in addition, I said you know, all the e-mails I don't have, so, you know, this has been a year or a year and a half and that's, you know, I'm answering everything to the best of my knowledge.

Q       No, that's totally fair I get that, and sometimes -- so what I am trying to remember is during your conversation -- what I am trying to understand is, rather --

MS. ZALKA:  Strike that.

Q       During your conversation with Mr. Patterson, were you clear that look, time has passed, this is what I remember, but that with respect to Mr. Schoeman's involvement, it was your estimate or your guess, but you didn't specifically recall that he was involved in the e-mail decoupling the schedule?

A       Yes, I did not have specific recollection of him being directly involved with the e-mail.

MR. SCHIRRIPA:  Objection.

Q        And you obviously explained that to Mr. Patterson when you spoke to him, right?

A        Yes.

MS. ZALKA:  Let's take a quick break, we should be nearly done, Mr. [redacted] so I'll give you back some of your time.

Let me just confirm and then we will go from there.

Can we go into the Defendant's breakout room for a second.

MR. SCHIRRIPA:  We could use a breakout room as well.

(At this point in the proceedings there was a recess, after which the deposition continued as follows:)

THE VIDEOGRAPHER:  We are back on the record, it is 10:47.

MS. ZALKA:  I have no further questions, Mr. [redacted] that's it, you are free to go.

THE WITNESS:  Okay, thank you.

MS. ZALKA:  Thank you for taking the time to answer my questions.

THE WITNESS:  You're welcome.

THE VIDEOGRAPHER:  We are off the record at 11:48 a.m.

This concludes today's testimony given by ███████████.

The total number of media units used was 1 and will be retained by Veritext Legal Solutions, thank you.

Page 39

I, the undersigned, a Certified Shorthand Reporter of the State of New York, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction;

That the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a federal case before completion of the proceedings, review of the transcript [ ] was [x ] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: 12/8/20

Stephen J. Moore
RPR, CRR

Page 40

DECLARATION UNDER PENALTY OF PERJURY

Case Name: MOSHELL v. SASOL

Date of Deposition: December 7, 2020

I, ███████████████, hereby certify

Under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Executed this _____ day of

_____, 2020, at

_____.

_____

Page 41

DEPOSITION ERRATA SHEET
Case Name: MOSHELL v. SASOL
Name of Witness:
Date of Deposition: December 7, 2020
Reason Codes:  1. To clarify the record.
2. To conform to the facts.
3. To correct transcription errors.

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page 42

██████████████

DEPOSITION ERRATA SHEET

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

Page _____ Line _____ Reason _____
From _____ to _____

_____ Subject to the above changes, I certify that the transcript is true and correct

_____ No changes have been made. I certify that the transcript  is true and correct.

_____
██████████████

[& - ████                                                    Page 1

**&**

**&** 2:11 3:4 6:18 30:5

**0**

**01008** 1:8 5:21

**1**

**1** 38:8 41:7
**100** 10:20 21:9 34:5,8,15,22
**10016** 3:7
**10153-0119** 2:15
**10:47** 37:19
**112** 3:6
**11:00** 1:14
**11:11** 5:3
**11:48** 38:4
**12/8/20** 39:17
**1:20** 1:8 5:21

**2**

**2** 41:9
**20** 5:4
**2018** 27:23 28:6
**2019** 27:24 28:6
**2020** 1:14 8:20 18:23 40:5,12 41:6
**20932** 39:20

**3**

**3** 41:10

**4**

**4** 4:5
**455** 2:6

**6**

**6** 19:13
**60611** 2:7

**7**

**7** 1:14 4:5 5:4 40:4 41:5
**767** 2:14

**a**

**a.m.** 1:14 5:3 38:4
**able** 33:8
**access** 23:15,20 33:7
**accurate** 11:18 16:14 28:24
**acting** 7:15
**action** 6:4 7:16 8:17 39:14,15
**activities** 22:9 28:23
**activity** 10:5
**add** 23:13
**addition** 36:5
**additional** 23:22
**affiliation** 6:8
**agree** 5:11
**ahead** 10:17 21:23
**al** 5:19
**alcohols** 29:19
**allowed** 6:24 23:25
**amount** 14:11,14
**anna** 2:21
**answer** 7:22 8:4 8:11 13:13 17:19 17:21,23 18:14,15 21:24 23:3,5,7 24:2,5,9,14 27:21 37:25
**answering** 36:8
**anybody** 10:12 12:20 22:3
**appearance** 6:12

**appearances** 6:8
**approximately** 14:7
**areas** 28:19
**asked** 6:23 15:16
**asking** 8:24 9:2 11:12 20:6 31:5 31:18
**aspect** 30:13
**assume** 11:20 21:10 24:8
**attending** 6:6
**attorney** 6:13 9:11 9:19 11:24 12:4,8 13:6 24:7 39:14
**attorneys** 2:5,12 3:5 7:14
**attributed** 15:3,7 19:14
**audo** 5:9
**august** 19:2,5
**avenue** 2:14 3:6

**b**

**back** 10:25 15:25 30:12 37:7,18
**barrington** 2:19
**based** 24:5 26:7 32:14
**basically** 31:22 34:25
**basis** 26:18
**beginning** 6:12
**behalf** 1:5 5:17
**belief** 26:7,14,18 32:14
**believe** 9:9,12 18:24 19:12 20:8 20:23 21:5 25:4 25:25 26:19 30:10 31:13 32:20,21 33:17,18,20 34:5

35:17
**believed** 21:15,17 26:2 32:11
**berman** 2:4 6:21 12:22 13:7
**best** 14:9 16:23 18:18 23:8 25:4 25:21,22 36:9
**better** 16:13
**beyond** 23:20 25:18
**bongani** 1:9
**boss** 23:12 24:25 25:13 35:18,24
**break** 8:9 19:23 20:6,18 21:4 22:15,24 37:6
**breakout** 37:12,14
**bringing** 28:20
**brought** 29:21

**c**

**c** 2:2 3:2 7:4
**ca** 7:4
**call** 9:10,11,12,24 10:11 11:15 12:15 12:19,21 13:2,4,8 13:11,14,17,22 14:2,7,10,21 15:10 15:13,14,24 16:2 16:21,22,23 19:16 19:21
**called** 7:4 14:15,20 15:21,25
**calls** 9:14,19 17:17 18:9 19:19

[████ - discussed]



caroline  2:17 6:14
  6:23 7:14 17:24
case  1:7 5:21
  39:11 40:3 41:3
certain  21:9 34:9
  34:16
certainty  34:6,22
certified  1:20 39:3
certify  39:4,13
  40:7 42:18,21
ceverie  3:4 6:18
chad  1:5 5:16
chain  25:23
change  29:4
changes  42:18,20
chicago  2:7
cityfront  2:6
clarify  41:7
class  8:17
clear  7:25 22:12
  23:18 24:18 25:8
  25:20 30:13 33:3
  33:9 34:7,14 35:2
  35:22 36:16



client  24:7
codes  41:7
come  25:10
coming  25:5
commissioning
  19:23 29:10,14,22
  30:18,25 31:12
  32:3,10
communicated
  33:24
communication
  24:8
communications
  11:25
complaining  10:6
complaint  15:4,8
  16:17 17:7 18:4,8
  19:5 24:17
complete  34:22
completed  32:17
completion  39:11
concerning  11:23
concludes  38:5
confidential  14:24
  19:12
confirm  37:9
conform  41:9
constable  1:9
construction
  19:24 22:9 30:17
  30:24 31:11 32:3
  32:9
contemporaneous
  17:16

continue  5:10
continued  3:2
  37:17
contractors  28:22
control  28:8
conversation
  27:10 30:14 31:6
  31:9,24 32:6
  35:11 36:12,15
conversations  5:7
  11:24
copy  15:6 17:6,7,9
  18:3,7,20,22 19:4
cornell  1:10
correct  8:17 9:16
  9:20 12:13 13:4
  13:19 16:13 17:21
  22:21,25 25:11,18
  34:9,16 40:10
  41:10 42:19,22
correction  16:20
corrections  16:4,6
  16:10,17
correctly  24:14
counsel  5:15 6:6
  13:23,25
couple  7:19 11:22
  18:12
coupled  22:8
course  24:15
court  1:2 5:20,25
  8:5 17:8
crr  39:22
cv  1:8 5:21

**d**

d  4:2
date  15:25 28:25
  29:8 39:16 40:4
  41:5
dated  39:17

dates  27:17 28:22
david  1:9
day  40:11
december  1:14 5:4
  40:4 41:5
decision  25:24
  26:9,16 27:3,4
  30:24 31:11 32:2
  32:8,16 33:13
  34:4 36:3
declaration  40:2
decouple  20:25
  24:20 25:9,16,24
  26:16 27:3,4
  30:17,24 31:11
  32:2,9 33:14
  34:20 35:8
decoupled  32:19
decoupling  26:4
  35:4,20 36:21
defendant  5:15
defendant's  37:11
defendants  1:12
  2:12 6:15 7:15
deposed  7:17
deposition  1:17
  5:14,22 37:17
  39:11 40:4 41:2,5
  42:2
detail  23:22
different  29:18,19
direct  25:13 29:11
  35:25
directed  31:16
direction  25:16
  39:8
directly  36:23
discuss  9:23 27:25
discussed  14:25
  35:9

discussion  31:3
district  1:2,3 5:20
  5:20
document  19:9,11
documented  17:3
downstream  29:3
duly  7:5 39:7
durations  28:23

**e**

e  2:2,2 3:2,2 4:2
  7:4,4 17:13 20:24
  23:10,10,14,16,20
  24:20,24 25:10,12
  25:15,19 31:19
  33:6,7,22,24 34:2
  34:19,23 35:3,7,12
  35:23 36:6,21,24
earlier  18:23,24
echelon  19:22
edward  1:9
effect  14:17 34:19
employee  39:14
employment  27:17
ended  15:24
entire  19:8,10
entirety  16:21
entitled  1:18
errata  41:2 42:2
errors  41:10
esq  2:9,17,19,21
  2:23 3:9
estimate  23:9 25:4
  25:22 36:19
et  5:19
everybody  8:2
exact  29:8
examination  4:4
  7:9
examined  7:6
executed  40:11

explain  15:18
  26:20 28:10
explained  27:5
  37:2

**f**

fact  31:15 32:25
  33:21
facts  41:9
fair  12:25 23:17
  36:10
february  27:23
  28:6
federal  39:11
fifth  2:14
filed  5:19 15:8
  16:18 17:8,10,11
  18:4,8,20 24:17
financially  6:4
  39:14
finish  7:21 21:7
  22:20
firm  5:24 6:17
  10:19 12:21 13:7
first  7:5 10:11
  12:15 15:20,20,21
  28:16
firsthand  22:23
five  29:8,11,15,16
  29:19 30:11
focus  31:23,23
following  20:12,20
follows  7:7 37:17
foregoing  39:5,6,9
  39:10 40:10
form  17:18 22:17
  23:23
forth  39:6
forward  35:19
forwarded  25:12
  25:15 35:18,23

four  30:10
frank  3:9 6:16
free  37:22
front  8:23,25 17:4
further  11:6 37:20
  39:10,13

**g**

getting  28:22
give  11:22 37:7
given  30:23 38:6
  39:9
go  5:11 8:10 10:17
  15:22 21:23 37:10
  37:11,22
going  5:3 11:2
  12:2 15:22 27:14
  30:12 31:17 35:19
good  5:2 6:20
gordon  2:21
gotshal  2:11 6:15
gotten  23:10
ground  7:19 11:22
guess  21:5,8,11,21
  22:4 23:9,21
  24:19 25:22 26:7
  26:15,18 27:5,6
  31:15 32:25 33:2
  33:4,10 36:19
guessing  21:17,19
guys  22:19

**h**

hach  3:4 6:17
hagens  2:4 6:21
  12:22 13:7
hahn  12:9,10
  13:11,15,18 14:4
  14:20
hahn's  13:21
half  16:25 36:7

hand  18:10
happen  23:11
happened  15:12
head  8:5,6
held  5:22
hey  14:22
hi  7:12
higher  25:23 30:4
  34:20 35:13
hired  28:8
hour  16:24

**i**

identify  21:2 22:3
  22:22
illinois  2:7
individually  1:5
  5:17
industry  20:12,20
information  8:22
  8:25 10:3,7,9,24
  11:23
informed  14:4
  21:14,16 26:13
infrastructure
  28:17
initial  9:10,24
  11:15
initially  14:15
instruct  24:4
instructed  30:16
instruction  25:9
intent  15:20
interest  20:12,19
  26:4
interested  6:5
  39:14
interviewed  8:15
  8:19
investigative
  10:19

**investigator** 8:16 9:4,8,15,24 10:14 10:23 12:5,12,16 12:20 13:4 18:10 19:17
**involved** 11:9 31:10 36:20,23
**involvement** 33:13 36:18
**issues** 7:2

**j**

**j** 1:19 39:21
**jerrod** 2:9 6:21 13:12 14:10
**join** 6:24
**jpc** 1:8 5:21
**july** 18:25 19:5

**k**

**kane** 30:16,23 31:3,10 32:2
**khalil** 2:23
**kind** 10:19 17:15 22:4 24:19 25:9 29:25 35:12 36:2
**knew** 31:16 32:25
**know** 7:25 8:10 12:3 14:8,16,22 22:7 23:8,9,14,19 24:19 25:2 26:14 26:20 31:15,22 36:6,7,8
**knowledge** 18:18 22:14,24 33:11 35:25 36:9

**l**

**l** 7:4,4
**law** 6:17 12:21 13:7
**laws** 40:9
**lawyer** 11:2,5,8,17 11:21 13:12
**lccp** 27:17 28:2 29:6 32:17
**ldpe** 29:18
**left** 29:9 34:24
**legal** 5:24 13:23,25 38:9
**level** 29:25 30:3,4 33:13
**limited** 1:9 5:18
**lindsay** 5:16
**lindsey** 1:5
**line** 41:11,12,13 41:14,15,16,17,18 41:19,20,21,22,23 41:24 42:3,4,5,6,7 42:8,9,10,11,12,13 42:14,15,16
**lldpe** 29:18
**llp** 2:4,11 3:4
**long** 14:6 16:22 30:8
**look** 33:8 36:16
**looked** 19:11,12
**looking** 30:6
**luna** 2:19

**m**

**m** 7:4
**machine** 39:8
**madison** 3:6
**mail** 17:13 20:24 23:10,10 24:20,24 25:10,12,15,19 31:19 33:6,7,22,24

34:2,19 35:3,7,12 35:23 36:21,24
**mails** 23:14,16,20 34:23 36:6
**maker** 26:9
**making** 20:21
**managing** 29:9,22
**manges** 2:11
**market** 29:21
**material** 33:21
**matter** 1:18 5:16
**mean** 14:8,13 15:18 17:2 26:19 30:2 33:19
**media** 5:13 38:7
**meeting** 15:15,18 15:21
**mentioned** 7:13 9:18 11:14,15 13:3 14:6 19:20 22:6
**microphone** 5:8
**microphones** 5:5
**mike** 30:16,23 31:3,10,25
**month** 8:21 9:3
**months** 18:12,22 29:8 30:11
**moore** 1:19 6:2 39:21
**morning** 5:2 6:20
**moshell** 1:5 5:16 40:3 41:3
**multiple** 15:15
**mute** 5:8

**n**

**n** 2:2 3:2 4:2 7:4,4
███████████████

**name** 5:23 7:13 22:11 39:16 40:3

41:3,4
**nearly** 37:6
**need** 35:8
**needed** 20:25
**needs** 23:11
**neither** 39:13
**new** 1:3,22 2:15,15 3:7,7 5:20 39:4 40:9
**nod** 8:6
**nodding** 8:4
**notary** 1:21 7:6
**note** 5:5
**noth** 2:6
**noticing** 6:13
**nqwababa** 1:9
**number** 5:21 19:13 38:7

**o**

**object** 17:18 22:20 23:23 24:9
**objection** 18:13 21:22 22:16,18 23:2,24 24:6,22,23 27:12,19 33:15,16 34:10,17 35:6,15 35:16 36:4,25
**objections** 6:10,24 24:5
**obviously** 8:5 37:2
**offer** 23:22
**offered** 23:21 25:4
**offering** 24:19 25:6,21
**official** 15:14,17
**officially** 18:19
**okay** 8:13,14 9:6 11:12,13,18 15:11 16:5,16 17:5 19:3 19:19 23:4 24:12 27:2 31:7,8,20

**[okay - rephrase]**                                                                                                    Page 5

35:22 37:23
**opposed** 8:4
**order** 1:19 20:6,18
  21:3 22:5,15,24
**original** 39:10
**originated** 25:2
**originator** 26:2
**outcome** 6:5
**outside** 27:20

**p**

**p** 2:2,2 3:2,2
**page** 4:4 41:11,12
  41:13,14,15,16,17
  41:18,19,20,21,22
  41:23,24 42:3,4,5
  42:6,7,8,9,10,11
  42:12,13,14,15,16
**paper** 17:9 18:20
  18:22
**paragraphs** 19:13
**parties** 5:11
**party** 6:3 22:7
  39:15
**passed** 36:17
**patterson** 2:9 6:20
  6:21 13:12,15,18
  13:24 14:5,11,21
  17:18 19:18,19,21
  20:2,5,10,17 21:3
  21:11,21 22:13,16
  22:23 23:2,19,23
  24:17,18,23 25:4,7
  25:21 26:6,14,17
  27:5,11,12,19 28:2
  28:5,14 30:14,15
  30:22 31:6,9,10,25
  31:25 32:7,7,14,15
  33:4,5,10,15 34:8
  34:15 35:10,11,16
  35:22 36:16 37:3

**paul** 1:10
**penalty** 40:2,8
**pending** 8:12
**percent** 10:20 21:9
  34:6,8,15,22
**period** 28:6
**perjury** 40:2,8
**permission** 15:2
**person** 10:16,18
  10:21 32:12
**pertains** 39:10
**phone** 10:13 16:4
**pick** 5:6
**place** 5:10 39:5
**plaintiff** 2:5
**plaintiff's** 8:16 9:4
  9:7,15,24 10:13
  12:5,16,20,21 13:3
  13:7 18:9 19:17
**plaintiffs** 1:7 6:22
  10:12
**plant** 28:21 29:17
**plants** 29:20
**plaza** 2:6
**please** 5:5,8 6:7,11
  17:23
**point** 19:22 29:16
  31:4 33:8,25
  34:23 35:10 37:15
**portions** 19:8
**possible** 5:9
**potable** 28:25
**power** 28:25
**practice** 20:13,20
**present** 13:25
**pretty** 21:14
**previously** 10:10
**prior** 11:3,5 39:6
**private** 5:7
**privileged** 11:25

**probably** 16:12,24
  17:3 21:23,25
**proceeding** 6:11
**proceedings** 37:15
  39:5,6,7,11
**process** 28:19
**produce** 29:17,20
**product** 29:20
**professional** 1:20
**program** 29:25
  30:3
**progress** 32:22
**project** 27:18 28:7
**promoted** 29:9
**public** 1:21 7:6
**pursuant** 1:19

**q**

**question** 7:21 8:11
  12:23 13:13 17:23
  18:6 20:11,17
  22:20 23:7 24:10
  24:10,13 27:22
  30:20 31:23 34:12
**questions** 7:24
  14:12,14 15:15
  16:3,9 26:20
  37:21,25
**quick** 37:5

**r**

**r** 2:2 3:2
**reached** 9:25
**read** 16:2
**really** 21:13 31:23
**realtime** 1:21
**reason** 27:6 32:15
  32:19 41:7,11,12
  41:13,14,15,16,17
  41:18,19,20,21,22
  41:23,24 42:3,4,5
  42:6,7,8,9,10,11

42:12,13,14,15,16
**reasons** 33:12
**recall** 9:14 16:6
  18:3,6,10,21 19:21
  20:5,9,16 25:14
  36:20
**recalled** 25:19
  35:3,10,23
**receive** 17:6,7
**received** 17:9 18:7
  18:19,20 35:4,7
**receiving** 18:3,11
  18:21 25:14
**recess** 37:16
**recollect** 21:13
  31:2
**recollection** 14:10
  16:23 25:8 27:10
  35:13 36:23
**record** 5:3,12 6:9
  8:10 12:7 37:19
  38:4 39:7,9 41:8
**recorded** 5:14
**recording** 5:10
**reflected** 34:3
**registered** 1:20
**related** 6:3 16:9
  24:7
**relating** 10:5
**relative** 39:14
**remember** 8:21
  9:3,6 10:16 14:9
  19:25 20:21 29:7
  29:16 36:12,17
**remotely** 5:23 6:7
**repeat** 12:23 17:20
  17:23 20:14 24:13
  26:10 30:19 34:11
**rephrase** 7:25
  13:9

**[report - supervisors]**

**report** 17:10 18:19
**reporter** 1:20,21
  5:25 8:5 39:4
**reports** 29:12
**represent** 11:3
**representing** 14:5
  14:16,22
**request** 10:2,3
  26:25
**requested** 29:2
  39:12
**reread** 16:19,21
**respect** 26:8 27:2
  27:3 32:24 33:12
  36:18
**respective** 30:7
**response** 10:22
  20:10,17
**responsibilities**
  28:11,15
**retained** 38:8
**review** 15:6 19:4,6
  19:7,8,10,15 39:11
**rework** 26:21
**reworked** 26:24
**right** 8:23 14:19
  15:23 33:8 35:3,5
  35:14 37:3
**robert** 5:23
**role** 13:21 28:2,5
  28:12,16 29:4
  30:9
**room** 37:12,14
**rose** 3:4 6:17
**roughly** 17:15
  24:6
**rpr** 39:22
**rudis** 5:23
**rules** 7:19 11:22

**s**

**s** 2:2 3:2 7:4
**safe** 11:7
**salam** 2:23
**salka** 6:14
**sasol** 1:9 5:18 7:15
  8:16 10:10 28:8
  29:5 40:3 41:3
**saying** 7:24 9:25
  31:8 35:19
**schedule** 16:9
  19:23,24 20:7,18
  20:25 21:4 22:8
  22:15,25 24:21
  25:9,17,24 26:5,17
  26:21,24 27:4
  30:5,17,18,24,25
  31:12,12 32:3,4,9
  32:10,19 34:20
  35:5,8,20 36:21
**scheduler** 28:8,17
  30:7
**schedulers** 29:23
  30:9
**schedules** 29:10
  29:14 30:6
**scheduling** 28:21
**schirrapa** 6:17
**schirripa** 3:4,9
  6:16,18,25 17:22
  18:13,17 21:22,24
  22:18 23:6,24
  24:3,22 27:21
  33:16 34:10,17
  35:6,15 36:4,25
  37:13
**schoeman** 1:10
  21:25 22:2 26:2,8
  26:15,23 27:7
  32:8,15,24 33:12
  34:3

**schoeman's** 36:18
**scope** 27:20
**second** 9:10,21
  10:15,18,21 12:19
  13:2,11,17 19:20
  37:12
**sections** 19:11
**securities** 8:17
**senior** 36:2
**sensitive** 5:6
**sent** 21:3 24:20
  34:19 35:12
**set** 39:6
**seven** 28:18,19
**shapiro** 2:4
**shareholders** 10:6
  14:17
**sheet** 41:2 42:2
**sheikh** 2:23
**shorthand** 39:4,8
**show** 32:16,21
**signature** 39:20
**similarly** 1:6 5:18
**site** 10:4 26:22,24
  28:17 33:25
**sitting** 9:2 35:25
**situated** 1:6 5:18
**six** 28:18 29:17,19
**slightly** 18:25
**sobol** 2:4
**solutions** 5:24
  38:9
**sorry** 12:18 17:20
  18:16 21:8,18
  23:5 24:4 26:10
  29:13 30:19 34:11
**sounds** 34:25 35:2
**southern** 1:3 5:20
**speak** 11:16 12:3
  14:18

**specific** 22:11,13
  22:23 23:10 27:9
  30:5 33:11 36:22
**specifically** 18:6
  22:14,22 36:20
**spoke** 9:3,7 10:4
  11:20 12:5,10,11
  21:12 24:16 25:7
  37:3
**spring** 8:20
**staffing** 28:9
**standard** 20:13,20
**started** 7:13
**state** 1:21 6:7,11
  39:4 40:9
**stated** 18:5 25:25
  33:5,17,19,20
  35:17
**statement** 9:13
  16:3,4,7,14,20
  20:22
**statements** 15:3,7
**states** 1:2 5:19
**stephan** 1:10
**stephen** 1:10,19
  6:2 32:8 39:21
**steve** 12:9 13:11
  15:24
**strike** 12:18 36:14
**struggles** 8:3
**stuff** 11:8
**subject** 42:17
**subscribed** 39:16
**subsequent** 11:15
**subsequently**
  12:11
**summary** 15:22
  16:11,15
**supervisor** 29:9
**supervisors** 28:24

**[sure - zalka]**

**sure** 10:16,20 11:9 11:10,11,17 12:24 12:25 13:9,14 17:2,25 20:15 21:14 24:14,15 26:12 30:21 34:13
**sworn** 7:5 39:7

**t**

**t** 7:4
**take** 5:10 8:6,7 34:7,14 35:21 37:5
**taken** 5:15 39:5
**talk** 7:20
**talked** 25:3
**talking** 11:3,5
**team** 14:23
**technical** 16:9
**technically** 16:12
**tell** 11:4 13:24 21:20 28:4,14 30:15,22 31:9,14 31:24,25 32:7,13 32:14 33:23 34:2
**telling** 19:21,25 20:9,16
**testified** 7:7
**testifying** 39:7
**testimony** 38:5 39:9
**thank** 37:23,24 38:9
**think** 18:7 22:10 23:18
**third** 9:12 15:10 15:12,14 16:23 19:21
**thought** 10:21 25:5
**three** 9:9,14 17:17 19:13

**time** 6:11 8:9 9:12 10:10 14:9,11,14 15:21 17:16 18:8 26:11 28:6 29:5 36:16 37:8,25 39:5
**times** 9:7,9 12:12
**today** 9:2
**today's** 38:5
**told** 10:23 11:16 21:10 28:7 30:16 32:23
**total** 38:7
**totally** 12:25 36:10
**transcribed** 39:8
**transcript** 39:9,10 39:12 42:18,21
**transcription** 41:10
**trs** 28:8
**true** 39:9 40:10 42:19,22
**try** 7:20 8:3,3
**trying** 10:23 11:25 28:24 36:11,13
**two** 9:19,21,21 12:12 18:22

**u**

**ultimate** 26:8
**ultimately** 25:23 26:16
**undersigned** 39:3
**understand** 7:23 12:24 18:3 24:10 36:13
**understanding** 13:10
**understood** 8:13
**unit** 5:13 30:7
**united** 1:2 5:19

**units** 29:17 38:7
**uo** 30:5
**upper** 19:22
**use** 37:13
**users** 29:3
**usual** 20:12,20
**utilities** 28:16,20 29:2

**v**

**v** 1:8 7:4 40:3 41:3
**vague** 24:11
**verbally** 8:4
**verbiage** 14:22 16:13
**veritext** 5:24 6:2 38:9
**versus** 5:18
**vested** 20:11,19 26:4
**victor** 1:10
**video** 5:9,13
**videographer** 5:2 5:25 37:18 38:3
**videotaped** 1:17
**virtual** 1:17

**w**

**want** 8:9 11:23 12:3 19:22 22:8 30:13 31:22 35:2
**wanted** 10:7 11:4 11:8,16 13:25 18:2
**water** 29:2
**weil** 2:11 6:15 7:15
**welcome** 38:2
**whereof** 39:15
**whispering** 5:6
**witness** 1:18 2:13 3:5 6:18 7:5 14:24

18:15 19:12 23:4 23:25 24:12 37:23 38:2 39:15 41:4
**witnesses** 39:6
**work** 32:17
**worked** 10:9
**working** 28:21,23 29:5 30:6,9 33:25

**x**

**x** 1:4,13 4:2 39:12

**y**

**yeah** 9:22 10:20 23:17 29:7,15 35:17
**year** 36:7,7
**york** 1:3,22 2:15 2:15 3:7,7 5:21 39:4 40:9

**z**

**zalka** 2:17 4:5 6:14 7:2,10,14 12:18 17:25 22:19 36:14 37:5,20,24

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.