# EXHIBIT 38

## [REDACTED VERSION]

*MOSHELL V. SASOL*
CASE NO. 1:20-CV-01008-JPC

**SUMMARY OF CWS' MISSTATEMENTS AND DEFENSE COUNSELS' MISSTATEMENTS**

| Statements by the CWs and Defense Counsel | Why it is False |
|---|---|
| **A.  False Statements about the Record** | |
| In its initial Motion to Dismiss, defense counsel denied there was a "Change Order." *See* ECF No. 66 at 3 ("there was no Change Order") | Defense counsel now admits there is a Change Order. *See* Supp. Memo at 16. |
| ██████████████████████████ "confirmed everything in Defendants' motion." Supp. Mem. at 7. | The Recanting CWs only directly recanted a small portion of statements attributed to them in the SAC. *See* Gilmore Decl. Ex. 37 (highlighted SAC of statements directly recanted by CWs). |
| Regarding the Court's opinion that ██████ "expressed concerns about the cost and timeline of the LCCP to defendants Nqwababa, Cornell, and Victor on several occasions" and "that it was 'clear from the beginning' that the [LCCP] was going to cost more than $8.1 billion"), defense counsel claims that ████████ "never said it." Supp. Mem. at 7. | ████████ repeatedly testified that she could not "recall" the content of her discussions with Browning. *See, e.g.,* ████████ Dep. at 9:12–13, 10:5–7, 13:10–14:19, 17:17–18, 18:18, 19:9, 21:6, 22:10, 22:17, 23:18–24:11, 25:10, 27:18–28:25, 30:8–11, 31:25–32:1. She was therefore unable to deny making those statements. *Id.* at 44:2–15, 49:14–24. |
| ████████ "has no idea what unspooling even means." Supp. Mem. at 8. | ████████ testified that "unspooling" was "not a word I would even use." Supp. Mem. at 8. |
| The investigator "promised [████████ she would not be included in the lawsuit." Supp. Mem. at 9. | The investigator did not say this, and has no ability or authority to determine who is in the lawsuit. Browning Decl. ¶ 49. |
| ████████ had no chance to review or verify the allegations attributed to her in the Complaint. Supp. Mem. at 9 | ████████ did not dispute receiving several voicemail messages from Browning seeking to schedule follow up calls with Plaintiff's counsel. ████████ Dep. at 19:3-24:20. |
| ████████ "refused further communication after the initial interview." Supp. Mem. at 11. | After the initial interview, ████████ called the investigator on October 13, 2020, and they spoke for 13 minutes. Browning Decl. ¶ 77. ██████ also called the investigator on October 21, 2020, and they spoke for two minutes. *Id.* ¶ 82. In addition to these two calls, the investigator and ████████ spoke on two more occasions. *Id.* ¶¶ 72, 80. ████████ also sent four text messages after the initial interview. *Id.* ¶ 74. |
| ████████ asked for ████████ "in an attempt to stop the PI's repeated, harassing contact." Supp. Mem. at 12. | According to ████████ text message, he asked for ██████, and stated ████████████████████████████████████████████████████████████████████████████████████ Browning Decl. ¶ 74. ████████ also stated ████████████████████████████████████████████████████████████ |

| Statements by the CWs and Defense Counsel | Why it is False |
|---|---|
| | ████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>*Id.* (emphasis added). |
| According to defense counsel, ████████ told the investigator that ████████ ████████ Supp. Mem. at 12. | The full sentence reads as following: ████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>Browning Decl. ¶ 74. |
| "The PI assumed [████████ could not be included in the complaint" based on an email from the investigator stating that the ████████ ████████████████ Supp. Mem. at 12. | The PI's statement about ████████ being a ██ ██ was about a follow-up interview, not the Complaint, for which the PI has no role or authority to determine who is included. Browning Decl. ¶ 93. According to the investigator, ████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████████<br>*Id.* |
| In describing his contacts with the PI, ████████ declaration states only that he had one phone call with the PI on May 5, 2020. ████ Decl. ¶ 2. | ████████████ declaration omits the fact that he spoke to the PI in a subsequent call for 34 minutes. Browning Decl. ¶ 105. |
| Plaintiffs' counsel "fabricat[ed]" affidavits of ████████ and ████████ because they were "signed without question or revision." Supp. Mem. at 20. | ████████ and ████████ (and ████████ revised their declarations over the phone with Plaintiffs' counsel (████ Dep. at 34:15–35:17; ████ Dep. at 54:8–56:3), and they reviewed them with their attorney before signing them. ECF Nos. 115-30–33. |
| ████████ "entirely agrees with" the descriptions of the Change Order contained in declarations provided by Sasol and Fluor employees. Supp. Mem. at 17. | ████████ was never shown these declarations, nor was he asked about them. ████ has consistently confirmed the accuracy of the statements attributed to him in the SAC. Browning Decl. ¶¶ 32, 43; ████ Decl. ¶ 4. |

| Statements by the CWs and Defense Counsel | Why it is False |
|---|---|
| **B.  False Allegations of Misconduct by Plaintiffs' Counsel and the PI** | |
| Plaintiffs' counsel falsified "all" of the critical allegations of the Individual Defendants' knowledge of misstatements. Supp. Mem. at 3. | Plaintiffs' counsel did not fabricate any of the Individual Defendants' knowledge of misstatements. *See* Browning Decl. ¶¶ 43, 57, 108, 115. |
| Plaintiffs' counsel "falsified" ███ account of a legally binding Change Order." Supp. Mem. at 15. | ███ positively affirmed the accuracy of the statements attributed to him in the Complaint on three occasions, including under oath. Browning Decl. ¶¶ 32, 43; ███ Decl. ¶ 4. |
| Plaintiffs' counsel had "no basis whatsoever for alleging that the Change Order was legally binding." Supp. Mem. at 16. | ███ positively affirmed the accuracy of the Change Order allegations on three occasions, including under oath. Browning Decl. ¶¶ 32, 43; ███ Decl. ¶ 4. |
| Counsels' statement that they had "copious notes and memorandums [sic] of what [the CWs] said" is false. Supp. Mem. at 17. | Plaintiffs' counsel produced memoranda and notes for every substantive conversation with the CWs. Exs. 9–13, 15, 17–25, 27–31, 33–35. |
| "Investigators' notes … confirm that Counsel knew that a Change Order was a negotiable estimate." Supp. Mem. at 17. | The investigator's notes state ███ ███ ███ " Browning Decl. ¶ 42. Counsels' notes state as follows: ███ ███ " Ex. 14 at 3. Later in the notes, it states "███ ███ ███ *Id.* |
| "Counsel misrepresented [███ and ███ allegations, in a clear attempt by Counsel to bolster their claim of the Individual Defendants' knowledge." Supp. Mem. at 19. | According to Defendants, counsel worked with "diligence" in verifying the ███ and ███ allegations. Supp. Mem. at 19. |
| Counsel "falsified allegations" regarding ███ knowledge of Defendant ███ involvement in decoupling the construction and startup schedules. Supp. Mem. at 19. | ███ positively affirmed the accuracy of the statements attributed to him in the Complaint on three occasions, including twice under oath. ███ Decl. ¶ 4; ███ Dep. at 16:6–16-21. |
| Counsel "made false statements to this Court time and again, in papers and in person," including that "we confirmed" the CW-1's Change Order allegations. Supp. Mem. at 21. | ███ positively affirmed the accuracy of the statements attributed to him in the Complaint on two occasions, including under oath. Browning Decl. ¶¶ 32, 43; ███ Decl. ¶ 4. |
| Counsel made the following "false statement": "We have a trail of communications that our investigator had with each of these confidential witnesses, that are going to show that the confidential witnesses were cooperating." Supp. Mem. at 22. | The PI had 55 phones calls with the six CWs, talking to them for a total of 713 minutes (or nearly 12 hours), including 75 minutes with ███ 103 minutes with ███ and 73 minutes with ███ Browning Decl. ¶ 119. |
| Counsel made the following "false and malicious" statement: "The three recanting CWs' affidavits … are verifiably wrong." Supp. Mem. at 22. | The three recanting CWs' affidavits were false in material respects. *See* Browning Decl. ¶ 116 ███ ███ ███ |

- 3 -

| Statements by the CWs and Defense Counsel | Why it is False |
|---|---|
|  | ████████████████████████ |
| Counsel "engaged in a persistent and unlawful scheme to cover it all up." Supp. Mem. at 25. | There is no evidence of an unlawful scheme to cover up anything; Plaintiffs' counsel sought to protect the CWs' identities from disclosure absent the protection of a court order because of the chilling effect of unprotected disclosure. *See* ECF No. 105-13 (Sept. 21, 2020 Gilmore letter to Prunetti). As referenced in that letter, this issue was particularly relevant here when Sasol's own Independent Board Review found inadequate procedures to address and escalate internal ethics complaints. *Id.* at 3. |
| The investigator stated that she could not be sure she "understood ████ correctly" during the interview. Supp. Mem. at 11. | The comment about understanding ████ correctly, based on the cited source, was on the narrow issue related to accrual liabilities, not on the interview overall. Browning Decl. ¶ 92 ██ ███████████████████ |