UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD LINDSEY MOSHELL, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN,<br><br>                Defendants. | Case No. 1:20-cv-01008-JPC<br><br>Hon. John P. Cronan<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY THE COURT'S JULY 7, 2021 OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND TO STAY FURTHER PROCEEDINGS PENDING APPEAL** |

010886-11/1575329 V4

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..........................................................................................1

II.     BACKGROUND ..........................................................................................................3

        A.      Defendants' Repeated Distortion of the Order ........................................................3

III.    LEGAL STANDARD.......................................................................................................5

        A.      Interlocutory Appeal Is an Extraordinary Procedure Granted only
                in "Exceptional" Circumstances ..............................................................................5

IV.     ARGUMENT...................................................................................................................7

        A.      Defendants Fail to Present "Exceptional Circumstances" Necessary
                to Grant Interlocutory Appeal..................................................................................7

        B.      The Issues Identified by Defendants Are Not "Controlling
                Questions of Law" ...................................................................................................9

                1.      The Proposed Questions Raise Factually Disputed Issues
                        Rendering Certification Inappropriate ...........................................................10

                2.      Reversal of the Order Would Neither Terminate the Action
                        Nor Significantly Affect the Conduct of the Case ...................................11

                3.      The Order Has Minimal Precedential Impact ...........................................12

        C.      The Order Does Not Present a Substantial Ground for Difference
                of Opinion ...............................................................................................................15

        D.      An Immediate Appeal Would Not Materially Advance the
                Ultimate Termination of the Litigation..................................................................18

        E.      The Court Should Not Stay This Litigation............................................................20

V.      CONCLUSION...................................................................................................................22

010886-11/1575329 V4

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Adkins v. Stanley*,
2013 WL 6585389 (S.D.N.Y. Dec. 13, 2013) ............................................................................2

*Am. Fed'n of Musicians & Emp'rs' Pension Fund v. Neshoma Orchestra and
Singers, Inc.*,
2018 WL 3711811 (S.D.N.Y. Aug. 3, 2018) ..........................................................................18

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
2019 WL 3202745 (S.D.N.Y. July 16, 2019) ....................................................................17, 19

*Bishop v. Best Buy, Co.*,
2011 WL 4011449 (S.D.N.Y. Sept. 8, 2011) ..........................................................................19

*In re Blech Sec. Litig.*,
2003 WL 134988 (S.D.N.Y. Jan. 21, 2003) ............................................................................19

*Bradley v. Jusino*,
2008 WL 4566792 (S.D.N.Y. Oct. 14, 2008) ............................................................................3

*Campo v. Sears Holdings Corp.*,
371 F. App'x 212 (2d Cir. 2010) ..............................................................................3, 16, 17

*Campo v. Sears Holdings Corp.*,
635 F. Supp. 2d 323 (S.D.N.Y. 2009) ....................................................................................16

*Capitol Records, LLC v. Vimeo, LLC*,
972 F. Supp. 2d 537 (S.D.N.Y. Dec. 31, 2013) ......................................................................15

*Chenault v. Gen. Motors LLC*,
2017 WL 698387 (S.D.N.Y. Feb. 21, 2017) ............................................................................6

*Consol. Edison, Inc. v. Ne. Utils.*,
318 F. Supp. 2d 181 (S.D.N.Y. 2004) ......................................................................................8

*Consub Del. LLC v. Schahin Engenharia Limitada*,
476 F. Supp. 2d 305 (S.D.N.Y. 2007) ....................................................................................15

*Cunningham v. Hamilton Cty.*,
527 U.S. 198 (1999) ..................................................................................................................7

*Daniels v. City of New York*,
138 F. Supp. 2d 562 (S.D.N.Y. 2001) ....................................................................................21

010886-11/1575329 V4

*Douglas v. Merck & Co.*,
    456 F. App'x 45 (2d Cir. 2012) ..............................................................................7

*In re Elec. Books Antitrust Litig.*,
    2014 WL 1641699 (S.D.N.Y. Apr. 24, 2014).........................................................22

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014).............................................................. *passim*

*Florio v. City of New York*,
    2008 WL 3068247 (S.D.N.Y. Aug. 5, 2008)....................................................17, 18

*Freeman v. Nat'l Broad. Co.*,
    1993 WL 524858 (S.D.N.Y. Dec. 15, 1993) ...........................................................9

*Genentech, Inc. v. Novo Nordisk A/S*,
    907 F. Supp. 97 (S.D.N.Y. 1995).........................................................................19

*Glatt v. Fox Searchlight Pictures Inc.*,
    2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)....................................................9, 21

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    2014 WL 5002090 (S.D.N.Y. Oct. 7, 2014) ...........................................................19

*Gottesman v. Gen. Motors Corp.*,
    268 F.2d 194 (2d Cir. 1959)...................................................................................8

*Herold v. Braun*,
    671 F. Supp. 936 (E.D.N.Y. 1987) .........................................................................8

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995) ....................................................................................21

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996)..................................................................................11

*In re Manhattan Inv. Fund Ltd.*,
    288 B.R. 52 (S.D.N.Y. 2002)...........................................................................8, 20

*Mauss v. NuVasive, Inc.*,
    2017 WL 4838826 (S.D. Cal. Apr. 27, 2017)........................................................22

*McNeil v. Aguilos*,
    820 F. Supp. 77 (S.D.N.Y. 1993)............................................................................6

*United States ex rel. Mikes v. Straus*,
    939 F. Supp. 301 (S.D.N.Y. 1996)........................................................................21

- iii -

*In re Millennial Media, Inc. Sec. Litig.*,
  2015 WL 3443918 (S.D.N.Y. May 29, 2015) ................................................................ *passim*

*Mills v. Everest Reins. Co.*,
  771 F. Supp. 2d 270 (S.D.N.Y. 2009) .................................................................................10

*Monaghan v. SZS 33 Assocs., L.P.*,
  153 F.R.D. 60 (S.D.N.Y. 1994) ...........................................................................................10

*Moshell v. Sasol Ltd.*,
  2021 WL 3174414 (S.D.N.Y. July 24, 2021) ............................................................... *passim*

*In re MTBE Prods. Liab. Litig.*,
  399 F. Supp. 2d 320 (S.D.N.Y. 2005) .................................................................................17

*Multi–Juice, S.A. v. Snapple Beverage Corp.*,
  2003 WL 21998970 (S.D.N.Y. Aug. 21, 2003) ...................................................................14

*In re Oxford Health Plans, Inc.*,
  182 F.R.D. 51 (S.D.N.Y. 1998) .......................................................................................1, 11

*Pereira v. Cogan*,
  265 B.R. 32 (S.D.N.Y. 2001) ..............................................................................................12

*Primavera Familienstifung v. Askin*,
  139 F. Supp. 2d 567 (S.D.N.Y. 2001) .................................................................................15

*In re Prudential Lines, Inc.*,
  59 F.3d 327 (2d Cir. 1995) ..................................................................................................18

*Ret. Sys. v. Boeing Co.*,
  711 F.3d 754 (7th Cir. 2013). But the Order ......................................................................16

*Scheffer v. Civil Serv. Emps. Ass'n, Local 828*,
  2006 WL 8456333 (W.D.N.Y. Dec. 21, 2006) .....................................................................8

*SEC v. Credit Bancorp, Ltd.*,
  103 F. Supp. 2d 223 (S.D.N.Y. 2000) .................................................................................15

*SEC v. Gruss*,
  2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012) ..................................................................9, 10

*SEC v. Smith*,
  710 F.3d 87 (2d Cir. 2013) ....................................................................................................8

*In re Shafer*,
  2009 WL 3334877 (D.N.J. Oct. 14, 2009) ............................................................................8

- iv -

*Strougo v. Barclays PLC*,
  194 F. Supp. 3d 230 (S.D.N.Y. 2016)..................................................................................21

*In re Supplement Spot, LLC*,
  2009 WL 1343165 (S.D. Tex. May 12, 2009) ........................................................................8

*Transp. Workers Union of Am., Local 100, AFL-CIO v. NYC Transit Auth.*,
  358 F. Supp. 2d 347 (S.D.N.Y. 2005)...................................................................................6

*Weinraub v. Glen Rauch Sec., Inc.*,
  419 F. Supp. 2d 507 (S.D.N.Y. 2005).................................................................................11

*Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*,
  964 F.2d 85 (2d Cir. 1992).............................................................................................2, 19

*In re World Trade Ctr. Disaster Site Litig.*,
  469 F. Supp. 2d 134 (S.D.N.Y. 2007)...................................................................................6

*In re Worldcom*,
  2003 WL 21498904 (S.D.N.Y. June 30, 2003) ......................................................................9

*Youngers v. Virtus Inv. Partners Inc.*,
  228 F. Supp. 3d 295 (S.D.N.Y. 2017)...................................................................................6

## STATUTES

15 U.S.C. § 78u–4(c)(3)(A) ...............................................................................................11

28 U.S.C. § 1291...............................................................................................................5

28 U.S.C. § 1292(b) .......................................................................................................2, 6

## OTHER AUTHORITIES

Fed. R. Civ. P. 1..............................................................................................................22

- v -

## I.    PRELIMINARY STATEMENT

Defendants' motion to certify an interlocutory appeal of this Court's July 7, 2021 Opinion and Order, which was made public on July 24, 2021 (ECF No. 155),[1] is the latest in Defendants' repeated attempts to fracture discovery and delay trial on their massive securities fraud relating to the Lake Charles Chemicals Project. Defendants seek to certify two issues for interlocutory review.[2] Both questions challenge the Court's *discretionary* decision not to impose sanctions on Plaintiffs or their counsel for their inclusion of certain confidential witness allegations in the Amended Complaint.[3] Tellingly, Defendants make no contention, let alone produce evidence showing, that this Court abused its discretion in denying sanctions—the standard of review on appeal. This fact alone dooms their motion.[4]

Nor do Defendants offer any justification for departing from the bedrock principle that an appeal lies only from a final judgment. Section 1292(b) provides a very narrow exception to § 1291's "final judgment" rule, "[w]hen a district judge, in making in a civil action an order not otherwise appealable … shall be of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion *and* [3] that an immediate appeal from the order may materially advance the ultimate termination of the

---

[1] *Moshell v. Sasol Ltd.*, 2021 WL 3174414 (S.D.N.Y. July 24, 2021) (the "Order").

[2] The questions Defendants list are: (1) "whether Rule 11 and the PSLRA permit plaintiffs to file a complaint attributing allegations to confidential witnesses without first confirming that the witnesses support the allegations and consent to be included in the litigation"; and (2)"if plaintiffs can make those allegations, it asks what happens when a post-pleading factfinding process turns up evidence that the complaint's attributions to confidential witnesses are false." Mem. in Supp. of Defs.' Motion, ECF No. 151, at 2.

[3] *See* Order at *17 (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)) ("[E]ven if a district court finds that a party has violated Rule 11, 'the decision whether or not to impose sanctions is a matter for the court's discretion.'").

[4] *See, e.g.*, *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 54 (S.D.N.Y. 1998) (denying certification of order appointing lead plaintiff under PSLRA, where decision lied within the trial court's discretion and "[n]o evidence of an abuse of discretion is cited").

- 1 -

litigation." 28 U.S.C. § 1292(b).[5] Interlocutory review is therefore "strictly reserved for *exceptional* cases and is especially rare in the early stages of litigation."[6]

Here, Defendants' § 1292(b) motion fails to satisfy any of the three requirements. ***First***, the questions framed are not purely legal questions, as required under § 1292(b). Rather, Defendants present highly fact-intensive issues that an appellate court could decide only after an extensive review of the voluminous record.[7] These questions also do not control the outcome of the case. Reversal of the Order would neither terminate the litigation nor significantly alter its scope. Defendants do not challenge the Order's holding that "considerable evidence of Defendants' scienter would remain in the Amended Complaint, even if the information attributed to CW-2, CW-4, and CW-5 and the legally binding nature of the Change Order were disregarded." Order at *15. Accordingly, even if the Second Circuit were to find this Court abused its discretion in denying sanctions, Plaintiffs and the Class would proceed on the exact same claims.[8] And, the purported "seismic" precedential value of the Order is both exaggerated and stems from Defendants' mischaracterization of the law and the Court's holdings.

***Second***, Defendants do not point to any substantial grounds for difference of opinion as to the Court's application of the law based on its review of the unique facts in this case. In denying sanctions, the Court addressed all of the arguments and precedent before it, including the precise authorities on which the motion relies. Defendants' argument that the Court's holding

---

[5] Emphases added and internal citations and quotations omitted unless otherwise noted.

[6] *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014) (denying certification of order denying motion to dismiss securities class action).

[7] *See Adkins v. Stanley*, 2013 WL 6585389, at *3 (S.D.N.Y. Dec. 13, 2013) ("The question of law certified for interlocutory appeal must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.").

[8] *See Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 88 (2d Cir. 1992) (cautioning against the certification of questions in cases where "many of the same factual issues ... would still have to be litigated").

- 2 -

somehow contravenes *In re Millennial Media, Inc. Sec. Litig.*, 2015 WL 3443918, at \*11 (S.D.N.Y. May 29, 2015), and *Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010), results from a misreading of these cases—an issue squarely addressed in the Order.[9]

**Third**, Defendants do not identify any means by which interlocutory appeal in this case will speed termination of the litigation.

In short, Defendants point to no "exceptional" circumstances demonstrating the necessity for an immediate appeal. Instead, the motion presents questions routinely rejected for interlocutory appeal and consists entirely of assertions and precedent rejected in the Order. Accordingly, the Court should reject Defendants' latest gambit to freeze the litigation and deny the motion in its entirety.

## II.   BACKGROUND

### A.   Defendants' Repeated Distortion of the Order

While not relevant to the Court's § 1292(b) analysis, Defendants center their motion on blatant mischaracterizations of the Order's findings and holdings. For example, Defendants claim that the limited discovery concerning the confidential witness allegations "revealed—and this remains undisputed—that Plaintiffs' Counsel falsified or misrepresented certain critical allegations that were central to the Court's ruling on Defendants' motion to dismiss; that Counsel knowingly including allegations in the Complaint without the consent (or even knowledge) of the confidential witnesses to whom they were attributed; and that Counsel included allegations in the Complaint notwithstanding directly contradictory contemporaneous private-investigator

---

[9] *See Bradley v. Jusino*, 2008 WL 4566792, at \*2 (S.D.N.Y. Oct. 14, 2008) (a party's "claim that the Court's ruling was incorrect, without more, does not demonstrate a substantial ground for difference of opinion").

- 3 -

notes and the fact that the witnesses themselves claim to have said the exact opposite." ECF No. 151 at 4.

This statement is false. As observed in the Order, Plaintiffs' counsel strongly disputed each of these assertions and produced controverting evidence, including: (i) investigator notes, memos, and declarations substantiating the allegations critical to the Court's August 24, 2020 Order denying Defendants' motion to dismiss; and (ii) sworn testimony that prior to voluntarily providing their accounts, each of the witnesses cited in the complaint were told that they had been contacted in connection with counsel's investigation of potential securities fraud by Sasol, that the information provided might be included in a complaint, that the individual would be identified as a confidential witness bearing the individual's job title and tenure, and anonymity could not be guaranteed. Browning Decl., ECF No. 130-1, ¶ 13.

Defendants also state: "This Court nonetheless held, in an Opinion and Order dated July 7, 2021…, that Plaintiffs' misconduct did not provide any basis to reconsider the order denying Defendants' motion to dismiss the complaint or to award sanctions under Rule 11." ECF No. 151 at 4–5. But at no point in the Order did the Court hold Plaintiffs' counsel to have engaged in any "misconduct."

Likewise, Defendants state that the Court was "somewhat troubled" by Plaintiffs' counsel's actions, by virtue of "acknowledged facts that the complaint misrepresented statements attributed to confidential witnesses, made attributions to witnesses without those witnesses' knowledge or consent and without showing the witnesses the allegations to be attributed to them." ECF No. 151 at 5. The Court made no such findings about Plaintiffs' counsel's actions. Rather, the Court said it was "somewhat troubled" by Plaintiffs' counsel's failure to more thoroughly confirm two aspects of CW-1's account. But the Court later found that, given

- 4 -

counsel's confirmation of these allegations' accuracy with CW-1, which included counsel reading the relevant allegations to CW-1 verbatim and CW-1 affirming their accuracy, "Plaintiffs' counsel's decision to include these statements in the Amended Complaint does not warrant sanctions." Order at *18.

Similarly, Defendants claim the Court "held there is no consequence for a plaintiff using confidential-witness attributions against the witnesses' will, without showing the witnesses a draft of the allegations or providing any opportunity to verify them—even when the witnesses insist upon the first opportunity they have to review the complaint that the allegations are false." ECF No. 151 at 10. Again, the Order renders no such holding. Instead, the Court held that the record revealed a genuine dispute as to these and other facts pertaining to the challenged confidential witness allegations.

In connection with their motion for reconsideration and motion for sanctions, Defendants followed the same pattern of misrepresenting the record in an effort to tarnish Plaintiffs' counsel's reputation. *See* ECF No. 128-8 (chart summarizing Defendants' counsel's misrepresentations). Plaintiffs respectfully request that the Court rebuke Defendants and their counsel to put a stop to this conduct.

## III.    LEGAL STANDARD

### A.    Interlocutory Appeal Is an Extraordinary Procedure Granted only in "Exceptional" Circumstances

As a general rule, only "final decisions of the district courts" may be appealed to the Court of Appeals. 28 U.S.C. § 1291. Decisions denying Rule 12(b)(6) motions (or denying Rule 11 sanctions motions) are, by definition, not "final" decisions appealable under § 1291, because they do not end the case.

- 5 -

Section 1292(b) provides a limited exception where the district judge may certify an order for interlocutory appeal. But "[i]nterlocutory appeals are strongly disfavored in federal practice," *Chenault v. Gen. Motors LLC*, 2017 WL 698387, at *3 (S.D.N.Y. Feb. 21, 2017), because they "prolong judicial proceedings, add delay and expense to litigants, burden appellate courts, and present issues for decisions on uncertain and incomplete records, tending to weaken the precedential value of judicial opinions." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007).

In turn, interlocutory appeals are not to be granted unless *all* of § 1292(b)'s criteria are satisfied: "[1] that such order involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The moving party has the burden of establishing all three elements [under § 1292(b)]." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017).

Thus, the district court may certify an interlocutory order for appeal only if it makes these three separate interdependent findings of fact. "These three prerequisites create a significant hurdle to certification, and the barrier is elevated by the mandate that section 1292(b) be 'strictly limited' because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.). "[E]ven where the three legislative criteria of section 1292(b) appear to be met, district courts have 'unfettered discretion to deny certification' if other factors counsel against it." *Transp. Workers Union of Am., Local 100, AFL-CIO v. NYC Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005).

010886-11/1575329 V4

## IV.    ARGUMENT

### A.    Defendants Fail to Present "Exceptional Circumstances" Necessary to Grant Interlocutory Appeal

Defendants maintain that a certification for interlocutory appeal is appropriate with respect to two issues in the Order: "[1] whether Rule 11 and the PSLRA permit plaintiffs to file a complaint attributing allegations to confidential witnesses without first confirming that the witnesses support the allegations and consent to be included in the litigation"; and "[2] if plaintiffs can make those allegations, … what happens when a post-pleading fact-finding process turns up evidence that the complaint's attributions to confidential witnesses are false." ECF No. 151 at 2.[10] Setting aside that the issues posed assume the truth of disputed facts, Defendants fail to present "exceptional circumstances" necessary to grant interlocutory appeal. Just the opposite, Defendants' motion presents issues routinely rejected for interlocutory review.

First, Defendants' motion directly challenges the Court's denial of Defendants' request to impose sanctions under Rule 11 as well as under the district court's inherent powers on Plaintiffs and their counsel. Yet the Supreme Court and the Second Circuit have held that interlocutory appeals from orders on motions requesting sanctions are generally inappropriate. *See Cunningham v. Hamilton Cty.*, 527 U.S. 198, 208–09 (1999); *Douglas v. Merck & Co.*, 456 F.

---

[10] Defendants later list three subquestions encompassed by these two issues: (1) "Must allegations attributed to confidential witnesses be corroborated *by the witnesses*, as *Millennial Media* and *Campo* suggest? Or is it enough to survive a motion to dismiss that the allegations are supported by an investigator's account of witness interviews, even in the face of vehement denials by the witnesses, as this Court held in this case?"; (2) "Does it violate Rule 11 to include confidential-witness allegations in a complaint without the witnesses' consent and without showing them the statements attributed to them?"; and (3) "[W]hat process should the court undertake where, as here, the witness newly stands by allegations that are squarely refuted by documentary evidence of their original testimony?" ECF No. 151 at 14–15.

- 7 -

App'x 45, 47 n.1 (2d Cir. 2012).[11] This is because, as in the instant case, such appeals often implicate the merits of the underlying action, requiring appellate courts to delve into the record, make credibility determinations, and decide whether a party's allegations and claims have evidentiary support or legal merit. These types of discretionary decisions are generally inappropriate for appellate review, as they are best reserved for the trial court. *See SEC v. Smith*, 710 F.3d 87, 96 (2d Cir. 2013); *Herold v. Braun*, 671 F. Supp. 936, 937–38 (E.D.N.Y. 1987) ("Ordinarily a district court should refuse to certify matters—such as the imposition of discovery sanctions … that lie within its discretion.").[12]

Second, the issues posed by Defendants relating to the use of confidential witnesses pertain to the sufficiency of Plaintiffs' allegations in the Amended Complaint. But "the Second Circuit has held that challenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review, as 'a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter.'" *In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002) (quoting *Gottesman v. Gen. Motors Corp.*, 268 F.2d 194, 196 (2d Cir. 1959)). Indeed, a piecemeal appeal on issues that could later be corrected via amendment impedes judicial efficiency, rather than advancing it, and runs counter to the underlying purpose of § 1292(b). *Gottesman*, 268 F.2d at 196; *Consol. Edison,*

---

[11] Courts outside of the Second Circuit are in accord. *See In re Shafer*, 2009 WL 3334877, at *1 (D.N.J. Oct. 14, 2009); *In re Supplement Spot, LLC*, 2009 WL 1343165, at *1 (S.D. Tex. May 12, 2009) (rejecting interlocutory appeal from order denying discovery sanctions as not appropriate).

[12] *Scheffer v. Civil Serv. Emps. Ass'n , Local 828*, 2006 WL 8456333, at *2 (W.D.N.Y. Dec. 21, 2006) (denying motion to certify order appointing lead counsel, holding that "[s]ince the October 24 Decision involves an exercise of discretion that turns on its analysis of the factual record presented by both parties, leave to seek review under § 1292(b) is denied").

*Inc. v. Ne. Utils.*, 318 F. Supp. 2d 181, 196 (S.D.N.Y. 2004), *rev'd in part on other grounds*, 426 F.3d 524 (2d Cir. 2005).

Finally, the issues posed by Defendants are a complete rehash of the arguments and law Defendants unsuccessfully raised in their motions for reconsideration and for sanctions. A motion for certification of an interlocutory appeal may not be used to simply "repeat arguments." *SEC v. Gruss*, 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012).

In treading over the same ground covered before, Defendants fail to satisfy their heavy burden of establishing the required elements under § 1292(b), where: (1) the questions Defendants identify are neither purely questions of law nor controlling; (2) there are no substantial grounds for difference of opinion within the meaning of § 1292(b); and (3) an immediate appeal of the Court's Order will not speed resolution of the litigation.

## B.      The Issues Identified by Defendants Are Not "Controlling Questions of Law"

There is no controlling question of law here. "In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013).

A § 1292(b) appeal requires "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Worldcom*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003). Significantly, "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *Freeman v. Nat'l Broad. Co.*, 1993 WL 524858, at *1 (S.D.N.Y. Dec. 15, 1993). "Similarly, mixed questions of law and fact are not appropriate for certification under § 1292(b)." *Id.* at *2.

Indeed, "[t]he antithesis of a proper §1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Mills v. Everest Reins. Co.*, 771 F. Supp. 2d 270, 275–76 (S.D.N.Y. 2009).

### 1.    The Proposed Questions Raise Factually Disputed Issues Rendering Certification Inappropriate

As a threshold matter, Defendants' posed questions do not present any "pure" question of law that the Second Circuit could answer "quickly and clearly without having to study the record." *Gruss*, 2012 WL 3306166, at *2. Rather, Defendants challenge the factual and discretionary determinations of the Court in denying reconsideration and denying sanctions. As this Court observed, Defendants' motion for reconsideration "implicate[d] credibility issues and factual disputes." Order at *1. And Defendants' motion for sanctions required the Court to assess a voluminous evidentiary record of Plaintiffs' counsel's conduct in connection with the investigation and drafting of the Amended Complaint. *Id.* In turn, the Order's holdings were intensely fact-specific. Having an appellate court now answer whether the confidential witness allegations included in the Amended Complaint had sufficient evidentiary support and whether the Court abused its discretion in denying sanctions is a "fact-specific inquiry," and thus inappropriate for interlocutory review. *See In re Facebook*, 986 F. Supp. 2d at 537 (denying certification of order on motion to dismiss securities class action where "holdings were intensely fact specific"). As several courts in this District have held, "Section 1292(b) is not ... a mechanism 'for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts.'" *Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60, 64 (S.D.N.Y. 1994).

- 10 -

**2.    Reversal of the Order Would Neither Terminate the Action Nor Significantly Affect the Conduct of the Case**

Apart from raising factually disputed issues, the questions Defendants seek to certify for interlocutory appeal are not controlling. First, the Order denying sanctions is discretionary in nature and may be revisited at a later date. *See* Order at *17 (citing *Perez*, 373 F.3d at 325). In *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866–67 (2d Cir. 1996), the Second Circuit observed that "§ 1292(b) was not meant to substitute an appellate court's judgment for that of the trial court" and to challenge orders where the district has "such broad discretion … to revise its … determination before a final decision on the merits." Because this Court has discretion to revise the Order at a later time, appellate review under § 1292(b) is not appropriate. *See In re Oxford Health Plans, Inc.*, 182 F.R.D. at 54 (order appointing lead plaintiff not controlling where court had discretion to revise its lead plaintiff determination before a final decision on the merits) (citing *Koehler*, 101 F.3d at 866–67).

More significantly, reversal of the Order's challenged holdings would not terminate the action. As the Order observes, "considerable evidence of Defendants' scienter would remain in the Amended Complaint, even if the information attributed to CW-2, CW-4, and CW-5 and the legally binding nature of the Change Order were disregarded." Order at *15. Defendants' motion does not contest this ruling. Thus, even if the Second Circuit were to find Plaintiffs' counsel's inclusion of the challenged confidential witness allegations to be improper, Plaintiffs and the putative class would nevertheless still have viable claims against Defendants. At most, Plaintiffs and their counsel would face the prospect of monetary sanctions and filing an amended complaint removing the challenged confidential witness allegations. 15 U.S.C. § 78u–4(c)(3)(A) (Rule 11 sanctions stemming from securities fraud complaint is generally monetary in nature); *Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507, 512 (S.D.N.Y. 2005). "The Second

- 11 -

Circuit regularly denies interlocutory appeals at such preliminary stages where, as here, the appeal could at most lead only to a remand for repleading." *In re Facebook*, 986 F. Supp. 2d at 531.

Additionally, given that the contested confidential witness allegations overlap with the non-repudiating confidential witnesses' accounts and other evidence of Defendants, the proceedings subsequent to any reversal of the Order would not be materially affected in complexity or scope. That is, Plaintiffs would press the same claims for violation of sections 10(b) and 20(a) of the Securities Exchange Act, against the same Defendants, predicated on the same alleged false and misleading statements and omissions over the same time period, and based on the same evidence of Defendants' scienter. In turn, regardless of the presence of the challenged confidential witness allegations in the operative pleading, discovery in this action will remain focused on Sasol's forecasted and actual costs and construction schedule for the LCCP, as compared to their public statements on these subject matters. *See Pereira v. Cogan*, 265 B.R. 32, 34 (S.D.N.Y. 2001) (noting that certification is "inappropriate when the 'remaining claims in the lawsuit [are] closely related, and no appreciable savings in time would be realized by an appeal'") (quoting *Isra Fruit Ltd. v. Agrexco Agric. Exp. Co.*, 804 F.2d 24, 25–26 (2d Cir. 1986)).

### 3.    The Order Has Minimal Precedential Impact

Defendants' sole basis for contending the Order is controlling is its purported precedential impact. Defendants argue that "the implications of the Court's ruling are potentially seismic," ECF No. 151 at 2, averring that the "Court's ruling risks spurring a dramatic transformation in the norms and practices of securities litigation." *Id.* at 2–3. Defendants further contend that the precedential effects from the Order are (i) "that plaintiffs' counsel can—and are strongly incentivized to—manipulate statements attributed to confidential witnesses to surmount

- 12 -

the PSLRA's important gatekeeping protections, with little if any oversight" (*Id*. at 8); and (ii) that the Order "incentivizes plaintiffs' counsel to hire unscrupulous investigators and insufficiently supervise them" (*id*. at 15). Defendants' precedential impact argument is frivolous.

First, the Order does not articulate any new standard or practice for use of confidential witness allegations in securities actions. Instead, the Court carefully reviewed the evidence and applied established Rule 11 law, including jurisprudence within the securities context dealing with the use of confidential witnesses in complaints, to find "the current record does not support a finding that Plaintiffs' counsel's conduct is sanctionable." Order at *18.

Defendants' contention that *In re Millennial Media, Inc. Securities Litigation* established a baseline standard for use of confidential witness allegations, which the Order purportedly contravenes, is a complete misreading of *In re Millennial Media*—a point the Order squarely addresses. Order at *17. Contrary to Defendants' contentions, and as emphasized by the Court, *In re Millennial Media* observes:

> Further, Rule 11 does not require counsel to "personally … participate in an initial witness interview" because it is "permissible and customary, not to mention economical, for facts to be gathered first by investigators." [*In re Millennial Media*, 2015 WL 3443918, at *11]. While it may be good practice for counsel to secure a witness's consent before including that person's allegations in a complaint, Rule 11 also does not impose such a requirement. But counsel's failure to affirm the truth of the statements attributed to a witness may factor in to the analysis of whether counsel conducted a reasonable pre-filing investigation. *See id.* at *14.

Order at *17. Consistent with *In re Millennial Media*, in the Order, the Court analyzed the reasonableness of Plaintiffs' counsel's pre-filing investigation and the evidentiary support for the Amended Complaint's confidential witness allegations, and then applied settled legal principles to hold that Plaintiffs' counsel's inclusion of the challenged confidential witnesses' allegations in the amended complaint did not warrant sanctions. Order at *18–19.

Second, Defendants' suggestion that this Court abdicated its gatekeeping role and issued an order motivating plaintiff securities firms to commit a fraud on the court is absurd. ECF No. 151 at 15. The Court extensively reviewed the record and made no findings of Plaintiffs' counsel or their investigators "manipulat[ing] statements attributed to confidential witnesses," or otherwise engaging in bad-faith conduct. And, contrary to Defendants' contentions, the stay on merits discovery, Court-ordered limited discovery, and extensive judicial review of the evidentiary record described in the July 7 Order will serve as a deterrent to abusive practices involving confidential witnesses. Apart from the time and resources spent litigating this collateral issue, Plaintiffs' counsel had to produce witness interview notes, memoranda and other attorney work product to their adversary and the Court to vindicate themselves of Defendants' baseless claims of wrongdoing. If anything, the Order emphasizes the importance of counsel having substantial evidentiary support for confidential witness accounts before including such allegations in a filed complaint.

Third, Defendants' contention that the Order will have "seismic" precedential effects is unsupported. While the Order will have some persuasive value, this is true for any district court opinion. Nonetheless, the facts of this case are highly unique. *See Multi–Juice, S.A. v. Snapple Beverage Corp.*, 2003 WL 21998970 at *3 (S.D.N.Y. Aug. 21, 2003) (holding that "reversal of this Court's opinion would not have precedential value for a large number of cases, because this Court's determination was based on a fact-specific analysis that would likely not apply in future cases"). The holdings in the Order were also narrow and could be changed at a later date. Moreover, Defendants have identified no pending cases, nor cited any evidence, to support their conjecture that the Order "will have consequences for all securities litigation in this circuit going forward." ECF No. 151 at 15. "[I]t is rather speculative to say that the ruling has precedential

- 14 -

value for a large number of cases when those cases have yet to be brought." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 573 (S.D.N.Y. 2001).

Finally, precedential value is not "per se sufficient to meet the 'controlling issue of law' standard." *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) (citing *Klinghoffer, S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) (observing that precedential value is only factor to be taken into account, but is not the requirement); *Oxford*, 182 F.R.D. at 54 (rejecting certification where sole basis for controlling issue of law was the challenged order's precedential value)). Indeed, the "impact that an appeal will have on other cases is a factor" that may be considered, but it is not the decisive factor. *Klinghoffer*, 921 F.2d at 24.

## C.    The Order Does Not Present a Substantial Ground for Difference of Opinion

A substantial ground for difference of opinion exists when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. Dec. 31, 2013). The standard is met when a party seeking certification shows there is "genuine doubt as to whether the district court applied the correct legal standard in its order." *Consub Del. LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008). Controlling Second Circuit authority on attorneys' obligations under Rule 11 and the Court's inherent power to sanction a party for perpetrating a fraud on the court is neither conflicting, nor is it a particularly difficult issue or one of first impression. Conversely, the legal standards for such issues are well established. Order at *16–18 (discussing legal standards for Rule 11 motions). And there is no genuine doubt the Court applied the correct legal standard in the Order. *Id.*

- 15 -

In arguing that a substantial ground for a difference of opinion exists, Defendants merely contend that the Order conflicts with *In re Millennial Media*, 2015 WL 3443918, *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 330 & n.54 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010), and *City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754 (7th Cir. 2013). But the Order addressed these authorities and clarified Defendants' misinterpretation of these cases' holdings.

As noted above, the Order rejected Defendants' arguments that *In re Millennial Media* (i) established a new standard for confidential witness allegations, (ii) prohibits attorneys from relying on investigator interviews, and (iii) holds that under Rule 11, an attorney must reconfirm a confirm witness account initially given to an investigator, obtain their consent to be included in the litigation, and provide them with a copy of the complaint before filing. Order at *17. Instead, as the Court noted, *In re Millennial Media* suggests such actions are "good practice," yet acknowledges that the question of whether Rule 11 sanctions should be imposed still requires the traditional "analysis of whether counsel conducted a reasonable pre-filing investigation." *Id.*

Similarly, the Court rejected Defendants' argument that *Campo* holds that when the accuracy of statements attributed to a witness in a complaint is at issue, the witness's subsequent repudiation of those statements is dispositive of the issue. Instead, the Court analyzed *Campo*, where the district court permitted depositions of confidential witnesses in aid of resolving the defendants' motion to dismiss. *Id.* at *13. The Court observed that, "The Second Circuit's approval of this procedure in *Campo* was tempered by the district court 'ma[king] no credibility determinations' in using the depositions of the confidential witnesses." *Id.* After analyzing the record, the Court found the instant action distinguishable since, unlike in *Campo*, "discovery here has revealed that much evidence relating to the CWs is in dispute." *Id.* The Court therefore

- 16 -

held: "Thus, the limited discovery authorized by the Court has unearthed factual disputes and credibility issues that cannot be considered and resolved at this stage." *Id.* at 15.

Likewise, the Court analyzed *Livonia* and found it "distinguishable for a few reasons," including that the plaintiffs relied on three other confidential witnesses who stand by the allegations attributed to them, and that the plaintiffs had not "walked away from relying on CW-2, CW-4, and CW-5 or conceded that their statements in the Amended Complaint were inaccurate, notwithstanding those witnesses' recent repudiations of those statements." Order at *14. Additionally, CW-2, CW-4, and CW-5's repudiations were "notably different from what occurred in *Livonia*," as the "three CWs do not dispute that they worked on the LCCP during the periods alleged in the Amended Complaint. ... And portions of the deposition testimonies of these CWs are not completely at odds with what was alleged in the Amended Complaint." *Id.*[13]

In sum, Defendants may disagree with this Court's application of the established legal standards articulated in *In re Millennial Media*, *Campo*, and *Livonia* to the facts of this case, but their repeated "claim that [this] district court's decision was incorrect does not suffice to establish substantial ground for a difference of opinion." *See Florio v. City of New York*, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008); *In re MTBE Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) ("[A] party that offers only arguments rejected on the initial motion does not meet the second requirement of § 1292(b).").

---

[13] And in any event, even if the Order were somehow inconsistent with *Livonia*, such tension would be of no moment. "[D]isagreement among courts outside the circuit does not alone support the certification of an interlocutory appeal." *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 2019 WL 3202745, at *2 (S.D.N.Y. July 16, 2019).

- 17 -

**D.     An Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Litigation**

In order to certify the Order under § 1292(b), this Court must also find that an immediate appeal would "materially advance the ultimate termination of the litigation." *In re Prudential Lines, Inc.*, 59 F.3d 327, 332 (2d Cir. 1995); *Florio*, 2008 WL 3068247, at *1 ("An immediate appeal is considered to advance the ultimate termination of the litigation if that 'appeal promises to advance the time for trial or to shorten the time required for trial.'").

Defendants have not demonstrated that their appellate application promises to advance this litigation to its conclusion, aside from the unremarkable argument that "the Second Circuit may reverse and order the case dismissed as a result." ECF No. 151 at 17, n.6. Of course, the same could be said about virtually any motion seeking dismissal.

To meet their burden, Defendants must show that **this** class action presents issues that are truly "exceptional" and that circumstances here "justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Am. Fed'n of Musicians & Emp'rs' Pension Fund v. Neshoma Orchestra and Singers, Inc.*, 2018 WL 3711811, at *1 (S.D.N.Y. Aug. 3, 2018). Yet, the issues that Defendants raise in their motion—whether counsel conducted a reasonable inquiry and whether the pleading's factual contentions have sufficient evidentiary support under Rule 11—are issues that are routinely litigated in this district.

Equally unavailing is Defendants' contention that the interests of judicial efficiency warrant certification because this is a large and complex securities fraud class action for which they may ultimately have to pay a substantial sum to resolve. ECF No. 151 at 15. But courts repeatedly reject this argument, noting that "interlocutory appeal … in these 'big' cases alleging violations of the securities laws is particularly inappropriate" due to "highly fact-specific applications of law to fact." *In re Facebook*, 986 F. Supp. 2d at 533. If this were sufficient, then

- 18 -

the interlocutory review of denial of dispositive motions in securities class actions would be commonplace—and virtually automatic. That is clearly not the law. *See, e.g.*, *In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 5002090, at *2 (S.D.N.Y. Oct. 7, 2014) (denying certification of order denying motion to dismiss); *In re Barclays*, 2019 WL 3202745, at *4 (same).

Moreover, Defendants' alleged potential burdens of discovery, class certification, summary judgment, and trial exist in every securities class action and are not "exceptional circumstances." As Judge Furman observed in *In re Barclays*, 2019 WL 3202745, at *3, "that is the price that must be paid in light of the final judgment rule, which serves a variety of other salutary purposes—and which, in light of those purposes, is standard operating procedure in the federal courts."

Rather than expedite the time until trial, there is a substantial risk that interlocutory review will not only fail to dispose of all issues raised but will also prolong the case and lead to piecemeal litigation. *See Westwood Pharms.*, 964 F.2d at 88 (cautioning against the certification of questions in cases where "many of the same factual issues … would still have to be litigated"); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 100 (S.D.N.Y. 1995) ("the district court must be of the opinion that immediate appeal of an order will literally accelerate the action as a whole"). As previously noted, reversal would not terminate this action. *See Bishop v. Best Buy, Co.*, 2011 WL 4011449, at *15 (S.D.N.Y. Sept. 8, 2011) ("if other claims 'will continue regardless of the disposition of this issue, certification would not materially advance the termination of this litigation'"); *In re Blech Sec. Litig.*, 2003 WL 134988, at *3 (S.D.N.Y. Jan. 21, 2003) (holding that interlocutory appeal would not "promote the efficient litigation of this

- 19 -

case, but [would] only serve to delay it" because, among other reasons, there remained another claim against the defendant).

And, given the overlap on the issues, the proceedings subsequent to any removal of the challenged confidential witness allegations will not materially affect the case in complexity or scope. *See In re Facebook*, 986 F. Supp. 2d at 532 ("certification here may not dispose of all issues, which would not streamline discovery"). Accordingly, certifying the order for interlocutory appeal would only further protract and delay, rather than advance this litigation closer to trial. *See Manhattan Inv. Fund Ltd.*, 288 B.R. at 56 (noting "challenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review, as 'a reversal … at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter'"); *see also In re Facebook*, 986 F. Supp. 2d at 532 ("certification here may not dispose of all issues, which would not streamline discovery").

Lastly, § 1292(b) was not intended to open the floodgates to a vast number of appeals from interlocutory decisions in ordinary litigation. *In re Facebook*, 986 F. Supp. 2d at 529. Whether a decision may lead to the "ultimate termination of the litigation" itself is logically tied to the probability of success on appeal—the lower the likelihood of success, the weaker the case for "ultimate termination." *Id.* Because Defendants' authority and arguments are unpersuasive and contrary to the authority in this Circuit, the likelihood of success on appeal is low, making certification inappropriate.

## E.    The Court Should Not Stay This Litigation

In deciding whether to grant a stay pending appeal, a court should consider: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility,

- 20 -

although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." *Daniels v. City of New York*, 138 F. Supp. 2d 562, 564 (S.D.N.Y. 2001).

The first factor militates against a stay because, as noted above, Defendants' proposed interlocutory appeal is unlikely to succeed on the merits. *Supra*, § IV.D. Nor does the second factor support a stay where, as here, Defendants merely argue that they may incur burdens and costs of participating in this litigation while an interlocutory appeal is pending. Indeed, "litigation costs do not rise to the level of irreparable injury." *Daniels*, 138 F. Supp. 2d at 564. As the Second Circuit has explained: "The key word in this consideration is **irreparable**. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995); *see also Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) (reasoning that "the prospect of incurring litigation costs, even if substantial, is not sufficient to constitute irreparable injury"); *Glatt*, 2013 WL 5405696, at *4 (certifying interlocutory appeal but denying stay, reasoning that "the only 'irreparable harm' identified by Defendants is the cost of continuing to litigate this action" and "it is well established that 'litigation costs do not rise to the level of irreparable injury'").

The third factor militates against a stay because Plaintiffs will suffer substantial injury if a stay is issued. This Court must consider that any stay, or interlocutory appeal for that matter, would only further delay this case where merits discovery has been stalled for some time. If this Court grants the stay, Plaintiffs will suffer additional delay. This factor not only supports a denial of the stay, but a denial of the whole motion. *See, e.g.*, *United States ex rel. Mikes v. Straus*, 939 F. Supp. 301, 302 (S.D.N.Y. 1996) (certification denied where "immediate appeal would even further protract resolution of this case, which has already been subjected to numerous delays").

010886-11/1575329 V4

Finally, Fed. R. Civ. P. 1 provides for the "just, speedy, and inexpensive determination" of all civil matters. And "the public has an interest in the efficient prosecution of securities laws and seeking to hold alleged corporate wrongdoers accountable." *Mauss v. NuVasive, Inc.*, 2017 WL 4838826, at *2 (S.D. Cal. Apr. 27, 2017); *see also In re Elec. Books Antitrust Litig.*, 2014 WL 1641699, at *12 (S.D.N.Y. Apr. 24, 2014) ("[C]lass members have a strong interest in being fully compensated for any losses they have suffered. Likewise, the public interest favors a speedy trial and resolution of this matter."). Defendants' stay request should be denied and this case should proceed expeditiously.

## V.    CONCLUSION

It is telling that, when this Court decisively rejects Defendants' efforts to malign Plaintiffs' counsel and fabricate charges of fabrication, Defendants respond by misstating the Court's own ruling, and even suggesting the Court failed to fulfill its "gatekeeping" function. ECF No. 151 at 15. There is a pattern of conduct here, and for all of their wild accusations of misconduct, it is Defendants that evince no regard for the truth. Defendants' motion to certify the July 7, 2021 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) should be denied.

DATED: August 2, 2021          Respectfully submitted,

By */s/ Steve W. Berman*
    STEVE W. BERMAN
Steve W. Berman (admitted *Pro Hac Vice*)
Jerrod C. Patterson (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: jerrodp@hbsslaw.com

- 22 -

- 23 -

Lucas E. Gilmore (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: lucasg@hbsslaw.com

*Counsel for Lead Plaintiff David Cohn and
Additional Representative Plaintiff Chad L. Moshell*

010886-11/1575329 V4

- 24 -

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Steve W. Berman
STEVE W. BERMAN

010886-11/1575329 V4