**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAD LINDSEY MOSHELL, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        -v-<br><br>SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN,<br><br>        Defendants. | Case No. 1:20-CV-01008-JPC<br><br>Hon. John P. Cronan |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO CERTIFY THE COURT'S JULY 7, 2021 OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND TO STAY FURTHER PROCEEDINGS PENDING APPEAL**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Sasol Limited, David Edward Constable, Bongani Nqwababa, Stephen Cornell, Paul Victor, and Stephan Schoeman*

August 9, 2021

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT............................................................................................................................. 4

I.     THIS COURT SHOULD CERTIFY ITS JULY 7 ORDER FOR APPEAL. ...................... 4

     A.     THE CERTIFIED ISSUES ARE CONTROLLING QUESTIONS OF
LAW ON WHICH COURTS ARE DIVIDED......................................................... 4

     B.     THE CERTIFIED ISSUES ARE IMPORTANT IN THIS CASE AND
MANY OTHERS—THEY MUST BE ADDRESSED NOW OR NEVER. .......... 7

II.     THIS COURT SHOULD STAY DISCOVERY PENDING APPEAL. ............................ 9

CONCLUSION........................................................................................................................ 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)......................................................................................................10

*Campo v. Sears Holdings Corp.*,
    371 F. App'x 212 (2d Cir. 2010) ..........................................................................................1, 7

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
    602 F.2d 1062 (2d Cir. 1979)....................................................................................................5

*In re Dynex Cap., Inc. Sec. Litig.*,
    2006 WL 1517580 (S.D.N.Y. June 2, 2006), *vacated in part sub nom.*
    *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008)......................................................................................................5

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014).......................................................................................5

*Glatt v. Fox Searchlight Pictures Inc.*,
    2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013)......................................................................8, 10

*Jayaraj v. Scappini*,
    66 F.3d 36 (2d Cir. 1995) ........................................................................................................10

*Koehler v. Bank of Berm. Ltd.*,
    101 F.3d 863 (2d Cir. 1996)......................................................................................................2

*In re Manhattan Inv. Fund Ltd.*,
    288 B.R. 52 (S.D.N.Y. 2002).....................................................................................................5

*U.S. ex rel. Mikes v. Straus*,
    939 F. Supp. 301 (S.D.N.Y. 1996)..........................................................................................10

*In re Millennial Media Inc. Sec. Litig.*,
    2015 WL 3443918 (S.D.N.Y. May 29, 2015) .........................................................................1, 6

*Ramos v. Telgian Corp.*,
    2016 WL 1959746 (E.D.N.Y. May 3, 2016) .............................................................................5

*SEC v. Rio Tinto PLC*,
    2021 WL 1893165 (S.D.N.Y. May 11, 2021) ..........................................................................5

*Strougo v. Barclays PLC*,
194 F. Supp. 3d 230 (S.D.N.Y. 2016)........................................................................10

*Tantaros v. Fox News Network, LLC*,
465 F. Supp. 3d 385 (S.D.N.Y. 2020).........................................................................5

*Weber v. United States*,
484 F.3d 154 (2d Cir. 2007)........................................................................................2

**Statutes and Rules**

28 U.S.C. § 1292(b) .........................................................................................................2

Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109
Stat. 737 (1995)...........................................................................................................1

Fed. R. Civ. P. 11 ............................................................................................................1

**Other Authorities**

John C. Coffee, Jr., *Confidential Distortion: Dealing with Confidential Witnesses
in Securities Litigation*, CLS Blue Sky Blog (Sept. 25, 2017) ...................................5

Charles Davidow et al., *Best Practice for Dealing with Confidential Witness
Allegations in Securities Fraud Complaints: The Implications of* In re
Millennial Media *and Other Recent Decisions*, 47 Sec. Reg. L. Rep. (BNA)
(July 27, 2015) ............................................................................................................8

H.R. Rep. No. 104-369, at 37 (1995) (Conf. Rep.).......................................................10

Gideon Mark, *Recanting Confidential Witnesses in Securities Litigation*, 45 Loy.
U. Chi. L.J. 575 (2014) ...............................................................................................5

Jed S. Rakoff, *Confidential Informants and Securities Class Actions: Mixed
Messages and Motive*s, 45 Loy. U. Chi. L.J. 571 (2014).......................................5, 9

16 Wright & Miller, Fed. Prac. & Procedure § 3931 (3d ed. 2021) ..............................5

## PRELIMINARY STATEMENT

This Court's July 7, 2021 Opinion and Order answered three questions of law. First: Can a securities plaintiff, consistent with the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995), and Federal Rule of Civil Procedure 11, file a complaint including confidential witness allegations without the witness' consent or review, even in the face of vehement objections by the witnesses to their participation? Second: where confidential witnesses were unaware that they were being used in a complaint and deny under oath having told a plaintiff the things attributed to them at the first opportunity, can a plaintiff overcome the PSLRA's stay of discovery by asserting that their own confidential witnesses are lying, supported solely by an affidavit from an investigator? Third: can the Court find that an investigator affidavit creates a dispute of fact which justifies lifting the PSLRA stay of discovery, without providing any opportunity for that dispute to ever be addressed, either at the pleading stage or (as Plaintiffs effectively concede) later?  To all three questions, this Court answered yes.

The Court's answers to these purely legal questions are squarely at odds with Judge Engelmayer's decision in *In re Millennial Media Inc. Securities Litigation*, 2015 WL 3443918 (S.D.N.Y. May 29, 2015), and with the process described in *Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010), for vetting confidential witness allegations. And had the Court reached the opposite answers, this action would have been dismissed with prejudice or, at a minimum, would be substantially diminished and limited to a much shorter class period. Beyond that, a ruling by the Second Circuit defining counsel's pre-filing obligations in PSLRA cases would be a watershed decision in the jurisdiction with the most active securities docket in the nation.

As things stand now, Plaintiffs have been (as they put it) "vindicate[d]" by the Court's decision denying reconsideration and sanctions. Dkt. No. 158 ("Opp.") at 14. This case is now the benchmark for designing future complaints and pre-filing investigation processes to overcome the

1

PSLRA's heightened pleading standard. Plaintiffs can withhold draft complaints from their confidential witnesses, proceed even where consent is refused, and attribute false statements to the witnesses—through sloppiness or deliberately—and they will get off scot free so long as they can produce an investigator's affidavit. Their methods will never be held up to the light of day in court, the witnesses' adamant denials will never be addressed, and plaintiffs have a green light to proceed without concern for a day of reckoning. And without interlocutory appeal, these important questions will evade appellate review in this case and others. As Congress recognized in enacting the PSLRA's heightened pleading standard, issues not resolved at the pleading stage will likely never be resolved at all. Even more so here, because these disputes are not about the facts going to claims or defenses but rather clashes between people on Plaintiffs' side of the case about whether Plaintiffs' counsel had a good-faith basis to file the complaint. A plaintiff-side dispute about plaintiffs' counsel's pre-pleading investigation can be addressed only at the pleading stage.

The Second Circuit should be given the opportunity to weigh in on these important questions. As Defendants have explained, Dkt. No. 151 ("Br.") at 6–18, this case satisfies all of the requirements for certification under 28 U.S.C. § 1292(b) and illustrates exactly why Congress authorized interlocutory review, namely, "to ensure that the courts of appeals would be able to 'rule on ... ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record.'" *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (alterations in original) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 864 (2d Cir. 1996)).

Plaintiffs' brief in opposition to certification can dispute none of this and so instead recasts the questions to be certified as "highly fact-intensive issues" that will have no effect on the future of this case (or any other) and therefore are ill-suited to appellate review. Opp. at 2. Not so. The facts are simple: three of Plaintiffs' own confidential witnesses did not consent to be in the case

and did not review the allegations attributed to them.[1] If the PSLRA and Rule 11 prohibit a plaintiff from filing a complaint under these circumstances—as Defendants have argued, as *Millennial Media* confirms—then Plaintiffs' complaint, and any other securities complaint similarly devised, must be dismissed with prejudice. At a minimum, without the non-consenting confidential witnesses, the class period would be substantially shorter and the scope of the case and any discovery would be much narrower. What is more, Plaintiffs' sole response to all this is that the witnesses are committing perjury and that their investigator stands by her account, as evidenced by an untested declaration. The Court ruled that that investigator's declaration was sufficient to create a disputed issue of fact regarding what the witnesses actually said to the investigator. This Court therefore held, at odds with *Campo*, that any such dispute cannot be resolved at the pleading stage as a matter of law. Not only did the Court not resolve the dispute, it proceeded to lift the PSLRA stay of discovery and thereby established a procedure whereby this disputed issue of fact will never be resolved.  In other words, under the Court's ruling, that Plaintiffs may have fabricated confidential witness statements in the complaint is legally meaningless.

These are not case-specific factual holdings. They are legal questions that present difficult, recurring, and important issues whose resolution could stop this case in its tracks and shape the litigation of countless other cases. Plaintiffs do not dispute—and thus effectively concede—that the Second Circuit will have no opportunity to decide these issues if it cannot address them now. But whether Plaintiffs should be vindicated, or whether their conduct is instead barred by the PSLRA and Rule 11 are questions the Second Circuit should decide. At the very least, this Court

---

[1] They in fact insisted that they not be dragged into the litigation. They did not even know a complaint had been filed using their purported statements. On the first occasion they saw the complaint, they adamantly denied having said what was attributed to them, and even insisted they had told the investigator the exact opposite of certain key statements in the complaint—contradictions that go to the heart of Plaintiff's theory of the case. The witnesses testified to all of this under oath in declarations and again in depositions that are part of the record in this matter.

should give the appellate court the opportunity to choose whether to do so or else to decline the appeal before this case can move forward.

**ARGUMENT**

I.    **THIS COURT SHOULD CERTIFY ITS JULY 7 ORDER FOR APPEAL.**

A.    <u>**THE CERTIFIED ISSUES ARE CONTROLLING QUESTIONS OF LAW ON WHICH COURTS ARE DIVIDED.**</u>

1. Plaintiffs insist that the certified issues are "intensely fact-specific," not pure legal questions. Opp. at 9–10. But the facts giving rise to these issues could not be simpler: Plaintiffs attributed allegations to three confidential witnesses based on an *investigator*'s account, without the *witnesses*' consent or review,[2] and at their first opportunity the witnesses contradicted those allegations and denied ever making them, insisting to the contrary that they had said the exact opposite with regard to certain issues that go to the heart of the complaint.[3] The Second Circuit need not even glance at the record to determine whether the PSLRA and Rule 11 categorically bar a plaintiff from filing a complaint without confidential witnesses' consent and review. Similarly, the Second Circuit could decide in a vacuum whether a contradiction between *Plaintiffs'* investigator and *Plaintiffs'* witnesses allows Plaintiffs to pass through the PSLRA's pleading-stage gate—even though this "Plaintiffs'-side-of-the-v." dispute will never be resolved.

There is thus nothing to Plaintiffs' purported concern that issues like these are ill-suited for interlocutory appeal because they "requir[e] appellate courts to delve into the record, make credibility determinations, and decide whether a party's allegations and claims have evidentiary

---

[2] *See* July 7 Order at 14–16, 18–20, 20–22; *see generally id.* at 36 ("Plaintiffs' counsel was able to speak with CW-1, CW-3, and CW-6 and read them the allegations attributed to them in the Amended Complaint" but "Plaintiffs' counsel was unable to do so with CW-2, CW-4, and CW-5.").

[3] *See id.* at 25–26 ("There is undoubtedly a degree of tension between Browning's recollection of the CWs' interviews ... and certain testimony of the CWs .... In certain instances, the evidence is directly conflicting.")

4

support or legal merit." Opp. at 8 (collecting cases). Nor do these questions represent mere challenges to the Court's exercise of discretion. *See id.* at 11. If the Second Circuit holds as a matter of law that a complaint cannot attribute allegations to confidential witnesses without their review and consent, or that courts must resolve pleading-related issues at the pleading stage, or that a dispute between confidential witnesses and an investigator is insufficient to satisfy Rule 11's diligence requirement, then district courts in this circuit would have no discretion to hold otherwise. Courts have accordingly routinely certified orders arising in a similar posture.[4]

2. Other courts have simply not seen eye-to-eye with this Court on these important questions. That is why these issues are the subject of robust commentary and spirited disagreement.[5] Because "there is conflicting authority on the issue[s]," or, at the very least, "the issue[s] [are] particularly difficult and of first impression for the Second Circuit," this case satisfies section 1292(b)'s requirement of "substantial ground for difference of opinion." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020).

---

[4] *See, e.g.*, *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir. 1979) (granting interlocutory appeal and reversing a district court's failure to award a particular sanction); *SEC v. Rio Tinto PLC*, 2021 WL 1893165, at *1 (S.D.N.Y. May 11, 2021) (certifying denial of motion to dismiss); *In re Dynex Cap., Inc. Sec. Litig.*, 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006) (same), *vacated in part sub nom. Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190 (2d Cir. 2008); *see also, e.g.*, *Ramos v. Telgian Corp.*, 2016 WL 1959746, at *1 (E.D.N.Y. May 3, 2016) (certifying summary-judgment denial and staying pending appeal); *see generally In re Manhattan Inv. Fund Ltd.*, 288 B.R. 52, 57 (S.D.N.Y. 2002) ("[D]ecisions on the pleadings may be appropriate for interlocutory review when they present difficult questions of substantive law" (citations omitted)); 16 Wright & Miller, Fed. Prac. & Procedure § 3931 (3d ed. 2021) ("Appeals have been allowed from orders … dealing with sanctions"). That this is a "large and complex" case likewise should not preclude interlocutory review where there will be no need for the Second Circuit to engage in "highly fact-specific applications of law to fact." Opp. at 18 (quoting *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014)).

[5] *Compare, e.g.*, John C. Coffee, Jr., *Confidential Distortion: Dealing with Confidential Witnesses in Securities Litigation*, CLS Blue Sky Blog (Sept. 25, 2017) ("*Tellabs* arguably reframes the motion to dismiss in securities law cases, converting it into a comparison of competing inferences at which some discovery may be permitted to test the reliability of the allegations")*, and* Jed S. Rakoff, *Confidential Informants and Securities Class Actions: Mixed Messages and Motive*s, 45 Loy. U. Chi. L.J. 571, 574 (2014) (hereinafter "*Mixed Messages*") ("[Y]ou need to have an evidentiary hearing if you are going to decide whether in any given case the confidential informants are sufficiently reliable.")*, with* Gideon Mark, *Recanting Confidential Witnesses in Securities Litigation*, 45 Loy. U. Chi. L.J. 575, 588 (2014) ("*Campo* was decided incorrectly with respect to this issue").

Plaintiffs say (quoting this Court's order) that there is no conflict with *Millennial Media* because it is merely "good practice" but not required "to secure a witness's consent before including that person's allegations in a complaint." Opp. at 13, 16. Judge Engelmayer disagreed:

> Rule 11's command that counsel conduct "an inquiry reasonable under the circumstances" does not require counsel personally to participate in an *initial* witness interview.... But, by the time counsel are *readying to file a Complaint*, an "inquiry reasonable under the circumstances" *demands more*. Particularly where a Complaint proposes to *rely on quotes drawn from an investigator's memo* recounting an unrecorded witness interview, it is *reasonable to expect counsel*, before filing the Complaint, to attempt to *confirm with the witness* the statements that counsel proposes to attribute to him and *assure that the Complaint is presenting these statements in fair context*.

*Millennial Media*, 2015 WL 3443918, at *11 (citations omitted) (emphasis added).

More than this, the whole thrust of *Millennial Media* is to avoid the moral hazard that this Court's July 7 Order invites. The PSLRA's pleading requirements are onerous by design. To surmount them, plaintiffs' counsel are incentivized to do things they should not do—rely on overzealous or unscrupulous investigators, avoid verifying investigators' accounts, and drag witnesses into litigation without their knowledge or consent. *Millennial Media* strongly condemned these "ostrich tactics": "the Federal Rules of Civil Procedure do not countenance a 'see no evil' approach to pleading." *Id.* In contrast, this Court's Order (to use Plaintiffs' term) "vindicate[s]" the see-no-evil approach. Counsel in this circuit now face conflicting instructions on their pre-filing obligations in PSLRA cases. In light of this uncertainty, Plaintiffs cannot credibly claim that general standards governing Rule 11 sanctions resolve the issue. *See* Opp. at 15. At the very least, the question is a difficult one that the Second Circuit has not yet resolved.

Similarly, there is no clear answer, and instead much room for dispute, on the question of what a court must do when confronted with a clash between *plaintiffs'* counsel/investigator and *plaintiffs'* confidential witnesses regarding plaintiffs' pre-filing investigation. This Court treated such inconsistencies like garden-variety litigation disputes *between Plaintiffs and Defendants*

6

about the facts underlying the parties' *legal claims and defenses*—disputes that cannot be resolved at the pleading stage because they will be tested at a later stage in the litigation. But this is a dispute *between people on Plaintiffs' side* of the case about whether *Plaintiffs' Counsel* had a "good faith basis for the factual and legal contentions contained in" their pleading. *Campo*, 371 F. App'x at 216 n.4. Under this Court's ruling, this issue cannot be resolved at the pleading stage, and therefore, (as Plaintiffs effectively concede) it cannot be resolved at all—meaning all Plaintiffs have to do to avoid accountability is stand by allegations they never should have made in the first place. But, as Defendants have explained, Br. at 12–14, *Campo* shows that the issue *can* and indeed *must* be resolved at the pleading stage to "test the good faith basis of plaintiffs' compliance with *Tellabs*," 371 F. App'x at 216 n.4. When the Second Circuit observed in *Campo* that the district court "made no credibility determinations," it did not mean the court could not find facts to "determin[e] whether the confidential witnesses acknowledged the statements attributed to them." *Id.* That was the whole point of the depositions *Campo* ratified. Again, this raises—at the very least—a difficult legal question on which the Second Circuit's teachings are subject to dispute.

B.    **THE CERTIFIED ISSUES ARE IMPORTANT IN THIS CASE AND MANY OTHERS—THEY MUST BE ADDRESSED NOW OR NEVER.**

Once the certified issues are fairly framed, it is likewise clear that the Second Circuit's resolution could end this case and affect many others. *See* Br. at 15–18. To put a finer point on it, if the Second Circuit holds that Rule 11 and the PSLRA prohibit a plaintiff from filing a complaint without the consent and review of confidential witnesses, Plaintiffs' complaint must be dismissed with prejudice and this action must end. Similarly, if the Second Circuit holds that a court must hold an evidentiary hearing at the pleading stage where a plaintiff disagrees with its own witness, this Court must do exactly that, with implications for the nature and scope of any further proceedings. Moreover, either ruling would transform securities litigation practice in this circuit.

Plaintiffs minimize the stakes of appeal. They claim they would face, at most, monetary sanctions and that "reversal would not terminate this action" because they would simply re-plead. Opp. at 11, 19. But the certified questions go to whether Plaintiffs were permitted to file the complaint at all, and may well result in a ruling dismissing this action with prejudice— notwithstanding the Court's hypothesizing that a version of the complaint without unverified and disputed confidential witness allegations might have survived dismissal. *See* Br. at 17.[6]

Nor can Plaintiffs plausibly claim that the resolution of the certified issues will not affect other cases. *See Glatt v. Fox Searchlight Pictures Inc.*, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (citing broad impact as a reason to certify).[7] Both the plaintiffs' and defense bar have analyzed *Millennial Media*'s standard for pre-filing diligence, confirming its broad impact and undermining Plaintiffs' claim (Opp. at 13) that neither this case nor *Millennial Media* "articulate[d] any new standard."[8] To the contrary, securities plaintiffs will unquestionably view this Court's decision not to impose any sanctions for Plaintiffs' conduct as an invitation to engage in the same exact sort of pre-filing "non-investigation." This Court need look no further than Plaintiffs' own opposition for proof: Plaintiffs proudly claim that this Court "vindicate[d] them[] of Defendants' baseless claims of wrongdoing," all but inviting the plaintiffs' bar to do more of the same in future

---

[6] At a minimum, a Second Circuit holding that this Court is required to resolve any disputes between plaintiffs and their witnesses at this stage could substantially curtail the class period and thereby massively alter the scope and shape of discovery. *See* Dkt. No. 116 (Report of Investigation) at 12 (describing Plaintiffs' admission that CW-4 was the only confidential witness covering several years of the class period).

[7] To be sure, Defendants do not dispute Plaintiffs' contention that broad impact standing alone is not dispositive of certification. Opp. at 15. But neither do Plaintiffs challenge Defendants' argument that such impact is an important factor in assessing whether certification is justified. Br. at 15.

[8] *See, e.g.*, Charles Davidow et al., *Best Practice for Dealing with Confidential Witness Allegations in Securities Fraud Complaints: The Implications of* In re Millennial Media *and Other Recent Decisions*, 47 Sec. Reg. L. Rep. (BNA) (July 27, 2015) ("The *Millennial Media* decision is the first to go beyond responding to evidence of false confidential witness allegations and actually provide guidance as to the prophylactic steps that plaintiffs' counsel should take to ensure their accuracy when preparing a complaint.").

cases. Opp. at 14. So despite Plaintiffs' claim that the "facts of this case are highly unique," this Court's decision ensures that they are likely to become commonplace. *Id.*

The only thing that is unique about this case is the opportunity it provides the Second Circuit to address these important and ephemeral issues—a point that Plaintiffs' Opposition does not address at all. As Congress recognized in the PSLRA, *see* Br. at 16–17, and as Judge Rakoff has explained, "[securities] cases almost always settle" so "in real terms, a judge is deciding these cases when he or she decides early motions," *Mixed Messages* at 571–72. The "credibility disputes" here are between people who are all supposedly on Plaintiffs' side of the case, and they concern *Counsel's* good-faith basis for filing the complaint (not the facts supporting claims and defenses in the underlying litigation). So Plaintiffs' suggestion that the Court's opinion may be revisited at a later date is disingenuous and self-serving. Opp. at 11. There will be no later date, as Plaintiffs well know, and allowing Plaintiffs to postpone any reckoning for their actions allows them to avoid it entirely. Moreover, the Second Circuit may never see another case presenting these important issues as squarely as this one does. Because review delayed is review denied, and because section 1292(b)'s requirements are satisfied, this case amply "justif[ies] a departure from the basic policy of postponing appellate review." *Id.* at 18.

## II.    THIS COURT SHOULD STAY DISCOVERY PENDING APPEAL.

Defendants explained why a stay of this action pending interlocutory appeal follows *a fortiori* from this Court's ruling extending the PSLRA's mandatory stay pending this Court's resolution of these issues. *See* Br. at 18–19. Plaintiffs utterly fail to acknowledge, much less respond to, this argument—effectively conceding that a stay is justified.

To the extent Plaintiffs do briefly respond to Defendants' additional arguments for a stay, *see* Opp. at 20–22, Plaintiffs rehash their unconvincing arguments against interlocutory appeal. *First*, Plaintiffs can argue that Defendants have no chance of success on the merits, *see id.* at 21,

only by mischaracterizing the relevant questions, which are difficult and important legal issues, *see supra* at 4–9. ***Second***, Plaintiffs can claim that Defendants will suffer no harm from proceeding, *see* Opp. at 21, only by ignoring the PSLRA, which confers a statutory right to avoid discovery unless and until Plaintiffs can surmount "heightened pleading requirements," reflecting Congress's recognition that discovery in securities cases (and "coercive" settlement pressure that results) causes irreparable harm.[9] ***Third***, Plaintiffs claim they will suffer from additional delay. *See* Opp. at 21. But that argument—and the case Plaintiffs cite in support of it—hinges on Plaintiffs' erroneous argument that appeal "would do little to advance the ultimate termination of this case." *U.S. ex rel. Mikes v. Straus*, 939 F. Supp. 301, 302 (S.D.N.Y. 1996). To the contrary, appeal could terminate this case outright, making any delay well worth the wait. *See supra* at 7–8; Br. at 17–18.

***Finally***, Plaintiffs cite the public interest in just and speedy proceedings and the need to "hold alleged ... wrongdoers accountable." Opp. at 22. But it is allowing rather than denying interlocutory appeal, and staying this case in the interim, that best serves these important ends. Courts have long recognized that the abuse of confidential witness allegations facilitates abusive strike suits, overreaching discovery, and coercive settlements. If these issues are not appealed now, the Second Circuit may never have the opportunity to declare what law and justice require in this context and will never have the opportunity to hold wrongdoers to account.

## CONCLUSION

For the foregoing reasons, this Court should certify its July 7, 2021 Order for interlocutory appeal and suspend further proceedings in this action.

---

[9] *See* Br. at 21 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); H.R. Rep. No. 104-369, at 37 (1995) (Conf. Rep.)). None of the cases Plaintiffs cite to support this argument, *see* Opp. at 21, involves the PSLRA's heightened pleading requirements. *See Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (contract dispute); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) (class certification); *Glatt*, 2013 WL 5405696, at *1 (Fair Labor Standards Act).

Dated: New York, New York
       August 9, 2021

Respectfully submitted,

 /s/ *Jonathan D. Polkes*
Jonathan D. Polkes
Gregory Silbert
Caroline H. Zalka
Luna N. Barrington
Nicole E. Prunetti
Robert B. Niles-Weed
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants Sasol Limited, David*
*Edward Constable, Bongani Nqwababa, Stephen*
*Cornell, Paul Victor, and Stephan Schoeman*

11