**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHAD LINDSEY MOSHELL, Individually
and On Behalf of All Others Similarly
Situated,

      Plaintiff,

    -v-

SASOL LIMITED, DAVID EDWARD
CONSTABLE, BONGANI NQWABABA,
STEPHEN CORNELL, PAUL VICTOR,
and STEPHAN SCHOEMAN,

      Defendants.

Case No. 1:20-CV-01008-JPC

Hon. John P. Cronan

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Sasol Limited, David*
*Edward Constable, Bongani Nqwababa, Stephen*
*Cornell, Paul Victor, and Stephan Schoeman*

September 24, 2021

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

LEGAL STANDARD...........................................................................................................3

ARGUMENT....................................................................................................................5

I.      The Evidence Shows Hagens Berman Committed Fraud on the Court and Cannot
        Adequately Represent the Class.................................................................................5

        A.      Three CWs Each Independently Testified to a Pattern of Wrongdoing by
                Hagens Berman. ................................................................................................5

        B.      A Fourth CW's Testimony Confirms That Hagens Berman Misrepresented
                What Is Perhaps the Single Most Critical Allegation in the Complaint. ...............10

        C.      Hagens Berman Lied to This Court. ....................................................................11

        D.      Hagens Berman Tried to Conceal its Fraud and Hide Behind its Paid PI. ............12

        E.      Hagens Berman Ignored Its Own Clients. ...........................................................14

        F.      Hagens Berman's Persistent Pattern of Misconduct. ............................................16

II.     An Evidentiary Hearing Will Show That Hagens Berman Committed a Fraud on
        the Court and Cannot Serve as Fiduciary to the Class..........................................18

        A.      The Court Must Now Conduct an Evidentiary Hearing. ......................................18

        B.      Dishonest and Deceitful Counsel are not Adequate to Represent a Class.............20

III.    The Court Should Cut Off The Class Period on August 16, 2019...................................22

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Askew v. S. Pan Emp. Stock Ownership Plan,*
  2019 WL 12536148 (N.D. Ga. June 27, 2019) .........................................................................21

*Beck v. Status Game Corp.,*
  1995 WL 422067 (S.D.N.Y. July 14, 1995) ..............................................................................15

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.,*
  2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018) ..............................................................................4

*Brown v. Kelly,*
  609 F.3d 467 (2d Cir. 2010) .....................................................................................................3

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.,*
  2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020) .........................................................................22

*Comcast Corp. v. Behrend,*
  569 U.S. 27 (2013) ....................................................................................................................3

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC,*
  662 F.3d 913 (7th Cir. 2011) ...................................................................................................20

*Crissen v. Gupta,*
  2014 WL 4129586 (S.D. Ind. Aug. 19, 2014) ...............................................................5, 20, 21

*Edwards v. Publishers Circulation Fulfillment, Inc.,*
  268 F.R.D. 181 (S.D.N.Y. 2010) ..............................................................................................4

*In re Fed. Nat. Mortg. Ass'n Sec., Derivative & ERISA Litig.,*
  247 F.R.D. 32 (D.D.C. 2008) .............................................................................................23, 24

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.,*
  270 F.R.D. 150 (S.D.N.Y. 2010) ........................................................................................5, 20

*George v. China Auto. Sys., Inc.,*
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...........................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.,*
  573 U.S. 258 (2014) ..................................................................................................................3

*Huer Huang v. Shanghai City Corp.,*
  459 F. Supp. 3d 580 (S.D.N.Y. 2020) .......................................................................................4

*Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
   616 F. Supp. 2d 461 (S.D.N.Y. 2009)......................................................................................15

*Johnson v. Smithkline Beecham Corp.*,
   2015 WL 1004308 (E.D. Pa. Mar. 9, 2015)..........................................................................16, 17

*Kaplan v. Pomerantz*,
   132 F.R.D. 504 (N.D. Ill. 1990)...............................................................................................21

*Kulig v. Midland Funding, LLC*,
   2014 WL 6769741 (S.D.N.Y. Nov. 20, 2014).........................................................................15

*Levitt v. J.P. Morgan Sec., Inc.*,
   710 F.3d 454 (2d Cir. 2013) .......................................................................................................3

*Menking ex rel. Menking v. Daines*,
   287 F.R.D. 166 (S.D.N.Y. 2011) ...............................................................................................4

*Monroe v. City of Charlottesville*,
   579 F.3d 380 (4th Cir. 2009) ....................................................................................................20

*Olean Wholesale Grocery Coop. et al. v. Agri Stats, Inc. et al.*,
   Case No. 1:19-cv-08318 (N.D. Ill.) ..........................................................................................17

*In re Organogenesis Sec. Litig.*,
   241 F.R.D. 397 (D. Mass. 2007)...............................................................................................21

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*,
   254 F. Supp. 3d 1007 (N.D. Ill. 2017) ......................................................................................21

*Pirnik v. Fiat Chrysler Autos., N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) ................................................................................................23

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
   2007 WL 1521117 (S.D.N.Y. May 24, 2007) .....................................................................19, 20

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
   704 F.3d 489 (7th Cir. 2013) ....................................................................................................21

*Rodpracha v. Pongsri Thai Rest. Corp.*,
   2021 WL 1733531 (S.D.N.Y. Feb. 11, 2021)............................................................................4

*Romano v. SLS Residential Inc.*,
   246 F.R.D. 432 (S.D.N.Y. 2007) ...............................................................................................4

*Sampson v. Hagens Berman Sobol Shapiro, LLP*,
   2020 WL 5507823 (E.D. Pa. Sept. 11, 2020)...........................................................................17

*Spagnola v. Chubb Corp.*,
264 F.R.D. 76 (S.D.N.Y. 2010) ............................................................................4

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) ........................................................................23

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...............................................................22

*Wagner v. Lehman Bros. Kuhn Loeb, Inc.*,
646 F. Supp. 643 (N.D. Ill. 1986) .....................................................................21

*Watson v. VisionPro Commc'ns Corp.*,
2015 WL 5165094 (E.D.N.Y. Sept. 2, 2015) ....................................................19

*Yu Zhang v. Sabrina USA Inc.*,
2021 WL 1198932 (S.D.N.Y. Mar. 30, 2021) ...................................................19

## Statutes & Rules

Fed. R. Civ. P. 23 .............................................................................4, 5, 15, 20

## Other Authorities

3 Newberg on Class Actions § 7:4 (5th ed. 2021) ...................................................20

## PRELIMINARY STATEMENT

If the sworn testimony of three of Plaintiffs' own confidential witnesses ("CWs") is truthful, then Hagens Berman Sobol Shapiro LLP committed a fraud on the Court and cannot be appointed class counsel. All three CWs, who had never spoken to one another, testified in court-ordered depositions to essentially the same facts: each independently told Hagens Berman's private investigator ("PI") that the Lake Charles Chemicals Project ("LCCP") was on time and on budget, or that they knew nothing to the contrary—facts which directly refuted the theory Plaintiffs posited in their Complaint. Hagens Berman never showed the CWs a draft of the Complaint and indeed never told them (even after the fact) that the Complaint had been filed. When they saw the Complaint for the first time, all three CWs were shocked to learn that their words had been twisted in the Complaint into the exact opposite of what they told the PI: the Complaint attributed false allegations to them that the LCCP was behind schedule and over budget. A fourth CW testified in his deposition that he disagreed with and never said what is perhaps the most critical single allegation in the Complaint; namely, that a Change Order which materially raised the cost of the budget of the LCCP was a binding contractual obligation on Defendant Sasol, rather than a starting point for renegotiation. When Defendants, consistent with routine practice in this District, sought the identities of the CWs, Plaintiffs refused, even going so far as to refuse to agree to a joint call to the Court seeking a disclosure order. When the Court asked Plaintiffs for an explanation for their odd behavior, they claimed they were trying to "protect" the CWs—some of the very same CWs they now accuse of perjury.

This record, together with a host of other facts set forth below and in Defendants' Motion for Reconsideration and Sanctions ("MFR") [Dkt. 104], makes an overwhelming case that Hagens Berman committed a fraud on the Court. But in connection with that Motion, Plaintiffs submitted

a declaration from their PI insisting that the CWs actually said what was attributed to them in the Complaint. Notwithstanding that the PI's notes were full of holes, and in several instances outright contradicted her declaration, this Court found that her declaration created a dispute of fact. The Court said the various witnesses' credibility was at issue: Either all three CWs who provided nearly identical accounts, despite never having spoken to each other before, were telling the truth, or the PI was. And the Court ruled that the procedural context—-reconsideration of a motion to dismiss— did not permit this dispute of fact to be resolved. Therefore, the Court denied the MFR without holding a hearing, evaluating the credibility of the witnesses, or otherwise resolving the contradictory accounts of what happened.

Whereas the Court ruled that the procedural context of the prior motion precluded it from making findings of fact, the current procedural context requires it. Rule 23 motions for class certification require the court to make findings of fact as to each of the requisite elements. It is Plaintiffs who bear the burden of proving those facts. And where there is a dispute, particularly with regard to credibility determinations, an evidentiary hearing is the proper mechanism for the court to resolve it.

One of the Rule 23 elements Plaintiffs must prove is that Hagens Berman meets the high fiduciary standards to adequately serve as class counsel. It is self-evident that if the Court were to determine that the accounts of the CWs are true and that the PI is lying, and that Hagens Berman knowingly or recklessly included false allegations in its Complaint and then defended that Complaint, Hagens Berman could not possibly meet the burden of demonstrating fitness to serve as class counsel.

Defendants respectfully submit that there already is more than enough evidence in the current record for the Court to make this finding: Three CWs independently and simultaneously

providing essentially the same account cannot all be committing perjury, and the PI's contrary version of events is preposterous—the PI's own notes do not even corroborate her account in critical respects and indeed directly contradict key allegations in the Complaint.

But there is, at a bare minimum, a credibility dispute—one that, at this stage of the proceedings, must be resolved. The Court has never evaluated the credibility of the CWs in open court and, more importantly, nobody—not Defendants and not the Court—has had the opportunity to hear the PI testify and judge her credibility. (To be sure, Defendants tried to subpoena her for a deposition, but Plaintiffs threatened a motion to quash and so she has never been confronted.) The PI's credibility lies at the heart of this dispute, and so we respectfully submit that Rule 23 requires an evidentiary hearing in live court—and an opportunity for Defendants to cross-examine her—in order for Plaintiffs to meet their burden and the Court to make the requisite findings of fact required under Rule 23.

## LEGAL STANDARD

In order to certify a class, Plaintiffs must "actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014). The Second Circuit has accordingly held that "'the district court . . . must resolve material factual disputes relevant to each Rule 23 requirement," each of which "must be established by at least a preponderance of the evidence." *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013) (quoting *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010)) (internal quotation marks omitted); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 27-28 (2013) ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that [Rule 23's] prerequisites . . . have been satisfied.'").

This requirement to *prove* each prerequisite of Rule 23 demands a definitive finding that class counsel is "adequate" to represent the class. Fed. R. Civ. P. 23(g)(2) ("the court may appoint [class counsel] only if the applicant is adequate"); *see BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 5619957, at *7 (S.D.N.Y. Aug. 7, 2018) ("In order to certify a class, plaintiffs must show that the class . . . has [] adequate . . . counsel . . . . The plaintiffs must make these showings by a preponderance of the evidence"); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 183 (S.D.N.Y. 2010) ("Rule 23[] requires proof . . . that plaintiffs and their counsel would adequately represent the class . . . . Before certifying a class, a district court is obliged to conduct a 'rigorous analysis' to determine whether the plaintiffs have satisfied all of the requirements"); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010) ("[T]he Court finds that neither Spagnola nor Bernstein has proved their adequacy to serve as class counsel by a preponderance of the evidence. Class certification could be denied . . . on that basis alone").

The inquiry into whether counsel is adequate to represent the class requires "a fact-specific analysis of the conduct of counsel in the lawsuit in which a class is to be certified." *Rodpracha v. Pongsri Thai Rest. Corp.*, 2021 WL 1733531, at *3 (S.D.N.Y. Feb. 11, 2021); *see Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 596 (S.D.N.Y. 2020) (same). And the requirement that Plaintiffs' counsel must prove they are adequate to represent the class means that any factual disputes or credibility issues related to Rule 23's adequacy requirement must be definitively resolved at the class-certification stage. *See, e.g.*, *Menking ex rel. Menking v. Daines*, 287 F.R.D. 166, 172 (S.D.N.Y. 2011) ("In determining adequacy, courts must consider the credibility of the plaintiff(s)"); *Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 445 (S.D.N.Y. 2007) ("[T]he court should assess the class representatives' credibility and trustworthiness").

4

Attorneys who lack honesty and integrity when dealing with the Court, their own witnesses, and defense counsel, cannot serve as counsel for a class of absent shareholders. *See* Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160-61 (S.D.N.Y. 2010) (denying class certification where counsel "show[ed] a clear inability to satisfy the fiduciary responsibilities that their [] position[] would entail" because they "were complicit in . . . misrepresentations made by the Plaintiff during her deposition and in response to her interrogatories"); *Crissen v. Gupta*, 2014 WL 4129586, at *8 (S.D. Ind. Aug. 19, 2014) (denying class certification in part where "counsel was disingenuous in representations to the Court").

## ARGUMENT

### I. The Evidence Shows Hagens Berman Committed Fraud on the Court and Cannot Adequately Represent the Class.

The evidence already shows—and an evidentiary hearing will only confirm—that Hagens Berman committed a fraud on this Court and, as a result, is not fit to serve as class counsel. Hagens Berman's claim that its PI's untested declaration suffices to rebut the near-identical testimony of three unrelated CWs, the contemporaneous evidence of Hagens Berman's fraud, and Hagens Berman's history of similar misconduct simply cannot be squared with reality.

#### A. Three CWs Each Independently Testified to a Pattern of Wrongdoing by Hagens Berman.

Despite never having spoken to one another, each of the three CWs gave near-identical accounts of Hagens Berman's wrongdoing. Each testified unequivocally that they rejected the false narrative pushed by Hagens Berman's paid PI, and that the allegations attributed to them in the Complaint—which Hagens Berman failed to show them—are categorically false and, in some instances, the exact opposite of what they told the PI. The only way in which these three different

witnesses could have independently described such similar experiences is if Hagens Berman did exactly what the witnesses say. If true, the CWs' testimony overwhelmingly demonstrates that Hagens Berman is not fit to serve as class counsel in this case.

**CW-2:** CW-2 was approached by Hagens Berman's PI and, after a short discussion, informed the PI that she refused to be involved in the litigation. *See* MFR at 8 (citing CW-2 Decl. ¶ 2 [Dkt. 101-1]); Defendants' Supplemental Memorandum of Law and Report of Investigation ("Report of Investigation.") at 9 [Dkt. 114] ("[The PI] misled me by saying that I would not be a part of the lawsuit, so as a matter of fact I shouldn't be sitting here if she had honored my wishes." (citing CW-2 Dep. Tr. 18:9-12)). But Hagens Berman's PI continued to harass CW-2 and Hagens Berman filed the Complaint with allegations purportedly attributed to CW-2 anyway, without telling her and without giving her an opportunity to review the statements attributed to her. *See* MFR at 8 (citing CW-2 Decl. ¶¶ 2, 4). CW-2 was "surprised and upset" to learn that the Complaint was filled with statements ascribed to her. *Id.* (citing CW-2 Decl. ¶ 3).

CW-2 submitted a sworn declaration confirming that the statements attributed to her were false and that she had told the PI the exact opposite of certain allegations Hagens Berman had attributed to her. The Complaint alleged that CW-2—the only high-ranking CW in the complaint—had a "direct window into LCCP's burgeoning costs, internal control weaknesses, financial reporting, and management knowledge of cost overruns and delays with the LCCP mega project." AC ¶ 76. It also asserted that CW-2 stated, among other things: that it was "clear from the beginning" that the LCCP "was going to cost more than $8.1 billion"; that CW-2 told certain Individual Defendants about CW-2's "concerns regarding the cost overruns and timeline for completion of the project"; that the LCCP's subcontracting with Fluor and Technip FMC proved to be a "disaster"; and that CW-2's "efforts to raise concerns with Sasol's executive management

6

in Houston . . . fell on deaf ears." *Id.* ¶¶ 76-78. In fact, the opposite is true. In her sworn declaration, and confirmed in a court-ordered deposition, CW-2 stated that "Plaintiffs' attorneys have falsely represented my statements" and "did nothing to verify . . . the accuracy of what is attributed to me in the Second Amended Complaint." CW-2 Decl. ¶¶ 2, 14; *see also* MFR at 8. CW-2 explained: "I did not tell plaintiffs' investigator that it was 'clear from the beginning' that the LCCP would cost more than $8.1 billion"; "I did not tell plaintiffs' investigator that . . . I had a 'direct window' into 'burgeoning costs, internal control weaknesses, financial reporting, and management knowledge of cost overruns and delays with the LCCP mega project'"; "I did not raise any concerns regarding specific cost overruns or regarding the timeline for completion of the project that I knew or believed rendered the then $8.9 billion estimate or then-current schedule false"; and "I did not tell plaintiffs' investigator that the subcontracting relationship with Fluor was a 'disaster.'" CW-2 Decl. ¶¶ 8, 10, 11; *see also* MFR at 9.

**CW-4:** CW-4 submitted sworn testimony giving a strikingly similar account. CW-4 was approached by Hagens Berman's PI and, after one interview, CW-4 told the PI that he "did not want to be involved in any litigation concerning Sasol" and "told the investigator that she did not have [] permission to" include him in any litigation. *See* CW-4 Decl. ¶ 3 [Dkt. 101-2]; *see also* MFR at 8. Just as CW-2 described, CW-4 explained that the PI continued to harass CW-4 presumably because, as Hagens Berman's internal records made clear, they needed CW-4 to ███ ████████████████ Report of Investigation at 10-11 (citing Email from J. Patterson to C. Szechenyi, dated May 27, 2020 2020, PLAINTIFFS4771 [Dkt. 115-10]). Despite this repeated harassment, Hagens Berman never spoke with CW-4 again to fill those gaps. CW-4, in an attempt to stop the repeated harassment, ultimately demanded monetary payment from counsel in exchange

for information and told the PI in a text: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 12.

As with CW-2, Hagens Berman included CW-4 in the Complaint anyway. When CW-4 was contacted by Defendants and saw the Complaint for the first time, CW-4 was "concerned" to learn that the Complaint was filled with statements ascribed to him even after he told Hagens Berman's PI that he had fabricated his statements to her. *See* MFR at 8 (citing CW-4 Decl. ¶ 5).

Just like CW-2, CW-4 was also surprised to see that the Complaint attributed statements to him that he did not make. According to the Complaint, CW-4 stated that "from the moment CW-4 started working at Sasol in summer 2014, he/she saw that the LCCP project was behind schedule, and saw that both the initial $8.9 billion cost estimate and the revised $11.1 billion cost estimate . . . were too low"; that Sasol's accounting for LCCP "stinks to high heaven"; that Sasol was "double counting"; that CW-4's "colleagues were also suspicious of the accounting, and some control managers would not sign the reports"; and that CW-4 "believed that Defendant Cornell was aware of the construction delays and the too-low cost estimates." AC ¶¶ 86-88. But CW-4 confirmed under oath that "many of the allegations attributed to me are fundamentally false or presented in a misleading manner" and that "Plaintiffs have misrepresented the allegations attributed to me." CW-4 Decl. ¶¶ 8, 20; *see also* MFR at 18. Indeed, CW-4 stated, among other things, that: "At no time did I examine the entire $8.9 billion dollar estimate to conclude that the overall estimate was too low"; "I do not have any personal basis to think or give the opinion that the $11.1 billion estimate for the overall project was too low, as is attributed to me in the Second Amended Complaint"; "I did not tell the plaintiffs' investigator that Sasol's accounting for LCCP 'stinks to high heaven'"; "I do not understand what [the 'double counting'] allegation means, do not understand the context behind it, and do not believe I ever said it in regards to the context of

the allegation"; "I did not state that 'some control managers would not sign the reports'"; "I [] do not recall stating that my colleagues were suspicious of the reporting"; and "I had no personal interactions with Mr. Cornell or Mr. Constable, and do not have any personal knowledge regarding what they knew or did not know." CW-4 Decl. ¶¶ 8-9, 11-13, 15; *see also* MFR at 9, 18.

**CW-5:** CW-5 is Hagens Berman's third strike, as CW-5's interactions with Hagens Berman followed the exact same pattern as CW-2's and CW-4's. CW-5 was approached by Hagens Berman's PI, but expressly told the PI that he "did not want to be involved in any litigation concerning Sasol and that she did not have permission to attribute any statements to [CW-5]." CW-5 Decl. ¶ 2 [Dkt. 101-3]; *see also* MFR at 8. CW-5 told this not just to the PI, but to Hagens Berman directly. Report of Investigation at 14 (citing CW-5 Dep. Tr. 14:6-12 [Dkt. 115-5]). Hagens Berman's PI nevertheless continued to follow-up with CW-5, prompting CW-5 to block the PI's number in an attempt to stop this "harassing" behavior. CW-5 Decl. ¶ 4; *see also* MFR at 8. As with CW-2 and CW-4, Hagens Berman ignored CW-5's express wishes and included him in the Complaint.

Upon belatedly learning that he had been included, CW-5—much like CW-2 and CW-4—said he was "alarmed" not only by his inclusion, but also by the specific statements ascribed to him. CW-5 Decl. ¶ 5; *see also* MFR at 8. The Complaint stated, among other things, that CW-5 alleged that throughout 2015, the budget for the LCCP was "$11 billion"; and that "Defendant Cornell would have been '100% informed and involved' with issues concerning contracting, cost overruns, and construction delays." AC ¶ 95. CW-5 testified that the allegations attributed to him in the SAC are "categorically false." CW-5 Decl. ¶ 9; *see also* MFR at 8. CW-5 stated, among other things, that: "I did not tell plaintiffs' investigator that 'we were talking $11 billion' in connection with the LCCP cost estimate during the time that I was employed at Sasol. Indeed, I

9

told the plaintiffs' investigator the *exact opposite* . . . . I was clear with the investigator that I had *no knowledge* that the company considered the LCCP to be an '$11 billion project' while I was at Sasol"; and "I certainly never said, and have no basis to believe, that while I was at Sasol, Stephen Cornell 'knew' that the project would ultimately cost $11 billion." CW-5 Decl. ¶¶ 10-13; *see also* MFR at 9. And when cross-examined by Hagens Berman on these exact points, CW-5 testified again: "Absolutely not, no, no, no . . . this is a complete lie from your firm. I did not talk $11 billion at any point, no." Report of Investigation at 13-14 (citing CW-5 Dep. Tr. 38:14-22).

CW-2, CW-4, and CW-5 are three separate, independent witnesses. They have never spoken, met, or coordinated their testimony in connection with this litigation. Yet all have repeatedly sworn, under oath and under cross examination by Hagens Berman, that Hagens Berman and its paid PI continuously harassed them despite their express wishes not to be involved in the litigation; that certain allegations attributed to them in the Complaint are unequivocally false and, in some instances, the exact opposite of what they told Hagens Berman's paid PI; and that Hagens Berman filed the Complaint without their knowledge and without affording them the decency to review the statements attributed to them. They happen to be the only three CWs with whom Hagens Berman failed to review the Complaint's allegations prior to filing.

### B. A Fourth CW's Testimony Confirms That Hagens Berman Misrepresented What Is Perhaps the Single Most Critical Allegation in the Complaint.

But Hagens Berman's outrageous conduct did not stop with just those three CWs. It extended to CW-1's supposed claim—perhaps the most important allegation in the Complaint—that Sasol was "not in a position to reject" the $11.7 billion Change Order from Fluor, but was instead "contractually obligated to pay that amount." AC ¶ 67. Indeed, Hagens Berman recognized the importance of the Change Order in its own notes and questioned whether the Change Order was in fact binding on Sasol:

10

Report of Investigation at 17 (citing PI Notes, PLAINTIFFS4950 [Dkt. 115-23]). But the PI's and Hagens Berman's contemporaneous notes clearly state that CW-1 confirmed that the Change Order was *not* binding and instead was merely a ███████ or an ███████ *See Id*. at 16-18 (citing PI Memo, PLAINTIFFS4171 [Dkt. 115-20]; PI Notes, PLAINTIFFS5114-17 [Dkt. 115-24]). CW-1, in his court-ordered deposition, confirmed Hagens Berman's and its PI's understanding at the time: the Change Order was just "an estimate" that "would be reviewed by Sasol and discussed [and] [n]egotiated" and it was not, in fact, legally binding on Sasol. Report of Investigation at 16 (citing CW-1 Dep. Tr. 17:16-19, 26:9-17, 27:3-9).

Nevertheless, Hagens Berman purposefully ignored its PI's and its own contemporaneous understanding and included the blatantly false allegation in the Complaint that the Change Order was contractually binding on Sasol. Hagens Berman then doubled down on this false allegation at the hearing on Defendants' Motion to Dismiss. In response to Judge Rakoff's questions about the binding nature of the Change Order, counsel repeatedly told the Court that they "confirmed" that the Change Order was legally-binding. *See* Aug. 20, 2020 Tr. at 26:15-19; 26:25-27:6. Not surprisingly, Judge Rakoff later relied on CW-1's Change Order story and counsel's express representations to partially deny Defendants' Motion to Dismiss. MTD Order at 9-11, 14-15 [Dkt. 74].

### C.    Hagens Berman Lied to This Court.

But that was not all. Hagens Berman made numerous other false statements directly to this Court. For example, when questioned by this Court whether Hagens Berman stood by the allegations in the Complaint, Hagens Berman stated: "The answer is, absolutely . . . the complaint accurately alleges . . . *all* of the CW accounts. *There have been no fabrications, no exaggerations,*

11

*period*, and we'll submit evidence to the Court proving this." Nov. 10, 2020 Tr. at 2:23-3:9 (emphasis added). Hagens Berman also told this Court that they took "efforts to ensure the accuracy" of the CW allegations, and that the CWs' allegations were "supported through our copious notes and memorandums of what these individuals said." *Id.* at 17:6-7; 24:10-11.

None of this was true. There can be no real dispute that the Complaint does not accurately allege *all* of the CW accounts. Three CWs have explicitly said they never made the statements Hagens Berman attributed to them, and the documentary evidence shows that Hagens Berman was aware that the statements it included in the Complaint were, in numerous instances, contrary to its own PI's and even its own contemporaneous notes.

**D.     Hagens Berman Tried to Conceal its Fraud and Hide Behind its Paid PI.**

In the face of the three corroborating CW accounts of Hagens Berman's misconduct, Hagens Berman first tried to keep Defendants from discovering the CWs' identities and then, when that failed, chose to hide behind its PI. When Defendants, consistent with near-universal practice in this District, sought the identities of the CWs after denial of the Motion to Dismiss, Hagens Berman refused, even going so far as to refuse to agree to a time to call the Court seeking a disclosure order. *See* MFR at 10-11. Plaintiffs claimed this dodge was all about protecting their confidential witnesses. MFR at 10-12 (citing Letter from L. Gilmore to N. Prunetti dated Sept. 21, 2020 [Dkt. 101-4]). Of course that explanation is preposterous now that Plaintiffs have accused those very same witnesses of lying under oath.

Unable to hide the CWs' identities, and after three CWs each independently testified to Hagens Berman's misconduct, Hagens Berman had to pivot. Hagens Berman now claims that because its paid PI submitted a declaration saying that she stands by the allegations attributed to the CWs in the Complaint—meaning that the CWs who adamantly reject those allegations are

12

lying—counsel is in the clear. But this defense stretches the imagination: How could it possibly be that three independent CWs described the exact same experiences if, as the PI claims, that's not what happened? To date, however, neither Defendants nor this Court has had the opportunity to hear live testimony from the PI and assess her credibility to determine whether her story holds up.

What is more, Hagens Berman appeared to reject the PI's account when it did not support their narrative, as evidenced by the fact that certain allegations in the Complaint directly *conflict* with the PI's notes.

One of the most egregious examples concerns the allegation that Defendant Schoeman told CW-1 "things are not good" with the LCCP project, *see* AC ¶ 69 (citing CW-1), which Judge Rakoff relied on in partially denying Defendants' Motion to Dismiss. MTD Order at 14. Both the PI's and counsel's own handwritten notes clearly state that this comment was made by non-defendant, Olaf Muller. *See* Report of Investigation at 18-19 (citing PI Memo, PLAINTIFFS4264 [Dkt. 115-25]) and J. Patterson's Notes, PLAINTIFFS5083 [Dkt. 115-26]). The PI even warned counsel about attributing this comment to Defendant Schoeman when a member of the PI team reviewed the draft Complaint, saying in an email to Hagens Berman, ████████████████ ████████████████████████████ *Id.* at 19 (citing Email from C. Szechenyi to R. Katherin, dated June 3, 2020, PLAINTIFFS4258 [Dkt. 115-27]). But Hagens Berman ignored its PI's warning and included the allegation in the Complaint anyway. *See* AC ¶ 69. To date, counsel has offered no credible explanation as to why the statement ultimately included in the Complaint conflicts with the PI's notes (and its own) and was included despite the PI's warning. How can they still stand by the allegation? Indeed, the PI now simply says, apropos of nothing, that she stands by the Complaint's attribution of this statement to Defendant Schoeman. This is an outright lie and amounts to perjury.

13

The record is filled with additional examples of Hagens Berman expressly overriding their PI's notes in order to include allegations in the Complaint that were the *exact opposite* of what the CWs said. The Complaint included allegations from CW-2 that it was "clear from the beginning" that LCCP would cost more than $8.1 billion. *Id*. ¶ 76. In fact, the PI's notes clearly state that CW-2 said ███████████████████████████████████ and that she did not ███████ ███████████████████████████████████ Report of Investigation at 8 (citing PI Notes, PLAINTIFFS4094, 4101 [Dkt. 115-7]). The Complaint included allegations from CW-5 that the $8.9 billion cost estimate was "ridiculously low" and that the actual budget was $11 billion. AC ¶ 95. In fact, the PI's notes reveal that CW-5 said that ██████████████████████████ ███████████████████████ and that ██████████████████ Report of Investigation at 13 (citing PI Notes, PLAINTIFFS4084-85 [Dkt. 115-18]). These are the contemporaneous notes that Hagens Berman selectively ignored in order to fabricate key allegations. And these are the allegations that Hagens Berman's PI now supposedly blesses wholesale, despite her own clear, contemporaneous evidence to the contrary.

### E.    Hagens Berman Ignored Its Own Clients.

Hagens Berman's misconduct does not stop with its witnesses, as Defendants have recently learned that Hagens Berman's misconduct extends even to its own clients. Both Lead Plaintiffs testified that they had no knowledge about Hagens Berman's activities vis-à-vis the CW allegations and did not know whether Hagens Berman had obtained permission from the CWs to include their statements in the Complaint. *See e.g.*, Ex. 1, Aug. 26, 2021 Moshell Dep. Tr. at 194:14-25 (**MS. ZALKA**: "So it's your testimony sitting here today that you have no idea if your attorneys received permission to include statements from the six confidential witnesses in the amended complaint?" **MR. MOSHELL**: "Yeah, I don't know."); *id.* at 195:14-196:2 (**MS.**

**ZALKA**: "[D]o you know whether or not your attorneys showed the confidential witnesses a draft of the statements that were going to be attributed to them in the [Amended] [C]omplaint before it was filed." **MR. MOSHELL**: "I don't know." **MS. ZALKA**: "Why don't you know?" **MR. MOSHELL**: "It was not disclosed to me whether they got the permission from the confidential witnesses or not, specifically."); Ex. 2, Sept. 17, 2021 Cohn. Dep. Tr. at 64:20-24 (**MS. BARRINGTON**: "Do you know whether your lawyers received permission from these six confidential witnesses to use their statements in this lawsuit?" **MR. COHN**: "No."); *id.* at 67:14-19 (**MS. BARRINGTON**: "Do you know whether or not your attorneys showed the confidential witnesses a draft of the statements that were going to be attributed to them in the complaint before it was filed?" **MR. COHN**: "I do not know."); *id.* at 69:4-11 (**MS. BARRINGTON**: "So what did you do as the lead plaintiff in this case to ensure that the statements attributed to the confidential witnesses were represented to the Court in an honest and truthful way?" **MR. COHN**: "I trusted my counsel.").[1]

---

[1] Mr. Moshell and Mr. Cohn's passive approach toward this litigation also raises serious questions about their ability to "fairly and adequately protect the interests of the class" as lead plaintiffs. Fed. R. Civ. P. 23(a)(4); *see Kulig v. Midland Funding, LLC*, 2014 WL 6769741, at *3 (S.D.N.Y. Nov. 20, 2014) (certification requires that the proposed class representative "must show that he or she will 'fairly and adequately protect the interests of the class.'"). By allowing Hagens Berman's rampant misconduct, the Lead Plaintiffs have not served as a "check" on "the otherwise unfettered discretion of counsel in prosecuting the suit." *Beck v. Status Game Corp.*, 1995 WL 422067, at *6 (S.D.N.Y. July 14, 1995). Rather, they have impermissibly "len[t] [their] name[s] to a suit controlled entirely by the class attorney." *Id.*; *see also Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 463 (S.D.N.Y. 2009) ("It is axiomatic . . . that the lead plaintiff provisions of the PSLRA were intended to curtail the vice of 'lawyer-driven' litigation'"). They cannot be trusted to fulfill Judge Rakoff's instruction that: "[A]nyone I appoint as lead [plaintiff] needs to be someone who will not just be a potted plant but will take affirmative steps to make sure that whatever is being presented by counsel is given scrutiny by you." *See* Apr. 29, 2020 Tr. at 4:1-4.

Hagens Berman's unethical conduct with the CWs stands in stark contrast to the expectations of the Lead Plaintiffs (and, by extension, the entire putative class). Both Lead Plaintiffs testified that including fabricated allegations in a complaint is wrong and that, if the CW allegations were indeed false, they should have never been included in the Complaint. *See e.g.*, Ex. 2 at 107:5-108:2 (**MS. BARRINGTON**: "[I]f the allegations in the amended complaint . . . are false, they shouldn't have been included; correct?" **MR. COHN**: "If they were false, if they're false, they shouldn't have been included."); Ex. 1 at 229:10-229:18 (**MS. ZALKA:** "And I take it obviously you agree that, you know, complete lies should not be included in a complaint?" **MR. MOSHELL**: "I would agree with the statement complete lies should not be included in a complaint, yeah."). Mr. Moshell even expressly decried dragging CWs into litigation against their will and quoting them in an amended complaint without their permission. *See id.* at 216:16-218:2 (**MS. ZALKA:** "[D]o you think it's appropriate for someone to explicitly say, as [CW-2] did . . . 'I expressly stated I did not want to be involved in any litigation concerning Sasol and that the investigator did not have permission to attribute any statements to me in the contemplated lawsuit. Plaintiffs' investigator explicitly told me that I would not be involved in litigation.'" **MR. MOSHELL:** "Yeah, if you -- if you would -- if you take her statement, the declaration, at face value, and she did, in fact, say what she claimed she said at the time, then, yeah, then maybe it would be -- it would be a little -- unfair to include her -- her statements in the filing."). In abusing its own CWs, Hagens Berman not only failed to treat those CWs with decency and integrity, but was also being disloyal to its own clients.

**F.      Hagens Berman's Persistent Pattern of Misconduct.**

This is not Hagens Berman's first controversy over pleadings-stage misconduct. In *Johnson v. Smithkline Beecham Corp.*, 2015 WL 1004308 (E.D. Pa. Mar. 9, 2015), Hagens Berman

was sanctioned for its "bad faith and dishonesty in litigating three products liability actions." *Id.* at \*1. In a later lawsuit against Hagens Berman brought by a former client in that case, the court said that Hagens Berman "repeatedly refused to provide the defendants with the most basic information relevant to their [statute of] limitations defenses," and when they were finally forced to do so by the court, "numerous cases had to be dropped or involuntarily terminated because the actual facts differed critically from the allegations in the plaintiffs' complaints." *Sampson v. Hagens Berman Sobol Shapiro, LLP*, 2020 WL 5507823, at \*2 (E.D. Pa. Sept. 11, 2020). Indeed, the court in *Johnson* found that "Hagens Berman continued to prosecute the actions well after it knew they were baseless, time-barred, or both." 2015 WL 1004308, at \*1. The court also concluded, among other things, that Hagens Berman's conduct in the litigation was "dishonest"; that Hagens Berman "felt no obligation to remain tethered to the truth"; and that "[c]lear and convincing evidence shows that the firm's bad faith and intentional misconduct undoubtedly and unnecessarily increased the cost of litigating the claims of [plaintiffs]." *Id.* at \*1, \*14. If that was not enough, the court found that Hagens Berman entered into a settlement with a defendant that "apparently benefited Hagens Berman to the detriment of its clients"; a "Hagens Berman attorney gave false testimony" during a court hearing; and a Hagens Berman attorney "had tampered with documents – expert reports – and placed them in evidence as genuine." *Sampson*, 2020 WL 5507823, at \*2.

And this will not be Hagens Berman's last controversy about pleading-stage misconduct. As of the filing of this motion, Hagens Berman is embroiled in yet another controversy over the

17

same PI's efforts to obtain confidential witness statements in a putative class action. *See Olean*

*Wholesale Grocery Coop. et al. v. Agri Stats, Inc. et al.*, Case No. 1:19-CV-08318 (N.D. Ill.).[2]

**II.      An Evidentiary Hearing Will Show That Hagens Berman Committed a Fraud on the Court and Cannot Serve as Fiduciary to the Class.**

This evidentiary record provides more than enough support for this Court to conclude that

Hagens Berman has not and cannot meet their burden of showing that they are adequate fiduciaries

for the absent class. But to the extent any uncertainty remains about the conflicting evidence from

Plaintiffs' CWs and PI, we respectfully submit that the Court must hold a hearing in open court,

with live testimony from all involved and, particularly, from Hagens Berman's PI.

**A.      The Court Must Now Conduct an Evidentiary Hearing.**

In identifying a plaintiffs' side dispute between Hagens Berman's PI and Hagens Berman's

CWs in its ruling on Defendants' Motion for Reconsideration and Sanctions, this Court described

"factual disputes and credibility issues" that bear directly on Hagens Berman's adequacy to serve

as lead counsel. *See* July 7 Order  at 30 [Dkt. 155]; *see, e.g., id.* at 36 ("[I]t remains unclear whether

---

[2] In that case, the defendants sought discovery related to Hagens Berman's PI's investigation (including statements by confidential witnesses) that occurred *before* Hagens Berman ever found a plaintiff to be involved in the case. *See* Def. Opp. to the Motions to Quash Investigator Subpoenas and Cross-Motion to Compel Pre-Client Investigative Materials, *Olean Wholesale Grocery Coop. et al. v. Agri Stats, Inc., et al.*, Case No. 1:19-CV-08318 (N.D. Ill. July 14, 2021), Dkt. 275. The defendants argued, among other things: "A case [] requires more than a theory of liability and a lawyer's desire to bring it. It requires a plaintiff . . . . Defendants sought discovery relating to [the PI's] *pre-client* investigation . . . including any statements the so-called 'confidential witnesses' made to [the PI]. Statements made by material witnesses to investigators about the operative events are, without question, relevant, and any statements omitted from the complaint could bear on both the conduct alleged and the credibility of the witnesses." *Id.* at 3-4. Curiously, despite having no client, Hagens Berman opposed the motion to compel on work-product grounds. *See* Reply in Support of Mot. to Quash Investigator Subpoenas and Response to Defs' Cross-Mot. to Compel Pre-Client Investigative Materials, *Olean Wholesale Grocery Coop. et al. v. Agri Stats, Inc. et al.*, Case No. 1:19-CV-08318 (N.D. Ill. July 28, 2021), Dkt. 282. The matter is *sub judice*.

it is [the PI] or the . . . [CWs] whose credibility is compromised or whose recollection is faulty.").[3] Either the three CWs are telling the truth or Hagens Berman's paid PI is. The only way to resolve this factual dispute is to hold an evidentiary hearing in open court. Defendants, who have never had the opportunity to question the PI should be allowed to cross-examine her and the Court should have the opportunity to assess her credibility live and in person. *See, e.g.*, *Watson v. VisionPro Commc'ns Corp.*, 2015 WL 5165094, at *2 (E.D.N.Y. Sept. 2, 2015) ("It is 'beyond dispute that a district court may not grant class certification without making a determination that all of the Rule 23 requirements are met,' which may include resolving some underlying factual disputes . . . . Therefore, the Court directs that an evidentiary hearing be held on whether the requirements of Rule 23 have been met."); *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *2 (S.D.N.Y. July 3, 2013) ("This Court's denial of class certification follows its rigorous review of the requirements of Rule 23 based on evidence from an evidentiary hearing, declarations, and other materials submitted in connection with this motion."); *Yu Zhang v. Sabrina USA Inc.*, 2021 WL 1198932, at *2 (S.D.N.Y. Mar. 30, 2021) (discussing the Court's earlier denial of conditional class certification after holding an evidentiary hearing concerning contradictions in plaintiff's affidavit); *Rahman v. Smith & Wollensky Rest. Grp., Inc.,* 2007 WL 1521117, at *9 (S.D.N.Y. May 24, 2007) ("Given that the Court must consider the qualifications of plaintiff's counsel in determining

---

[3] Defendants respectfully disagree with the Court's July 7, 2021 Opinion and Order denying Defendants' MFR. On July 16, 2021, Defendants filed a Motion to Certify the Court's July 7, 2021 Opinion and Order for Interlocutory Appeal and to Stay Further Proceedings Pending Appeal ("Motion to Certify" [Dkt. 151]), and briefing was completed on August 9, 2021. As of the date of this filing, the Motion to Certify remains pending with the Court and discovery has proceeded in the interim. Defendants suffer prejudice every day that the Motion to Certify is not decided.

whether the class should be certified, it is appropriate for the defendants to obtain some discovery regarding prior class actions in which plaintiff's counsel have been involved.").[4]

### B.    Dishonest and Deceitful Counsel are not Adequate to Represent a Class.

It goes without saying that, if the evidentiary hearing establishes that Hagens Berman committed a fraud on the Court, they are not adequate to serve as class counsel under Rule 23. Counsel who engage in a consistent pattern of misconduct and dishonesty, like that described here, cannot serve as fiduciaries for the class under Rule 23, and Courts have routinely denied class certification where counsel has been found to be inadequate. *See* Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests of the class."). *First*, dishonest counsel cannot be trusted to prioritize the interests of the class over their own interests. *See Friedman-Katz*, 270 F.R.D. at 160-61 (denying class certification after concluding that proposed class counsel had "shown a clear inability to satisfy the fiduciary responsibilities that their [] position[] would entail" because they "were complicit in the misrepresentations made by the Plaintiff during her deposition and in response to her interrogatories"); *see also Crissen*, 2014 WL 4129586, at *8 (denying class certification in part because "counsel was disingenuous in representations to the Court"); *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917-18 (7th Cir. 2011) (denying class certification where, among other misconduct, counsel obtained files for

---

[4] Other courts outside this Circuit routinely hold evidentiary hearings at the class-certification stage. *See e.g., Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009) ("When deciding a motion for class certification, a district court does not accept the plaintiff's allegations in the Amended Complaint as true; rather, an evidentiary hearing is typically held on the certification issue."); *see generally* 3 Newberg on Class Actions § 7:4 (5th ed. 2021) (collecting cases to conclude that "[c]ourts have found that an evidentiary hearing is helpful . . . when one of the parties has requested an opportunity to be heard on the issues" or "when there is a question of whether the plaintiff satisfies the . . . adequacy requirements of Rule 23[]").

litigation after making a false promise to keep the files confidential); *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 410 (D. Mass. 2007) (denying class certification where "[a]lthough [counsel] defeated a Motion to Dismiss, it has also given the court reason to question its ability to adequately present truthful factual information to the court"); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 511 (N.D. Ill. 1990) (decertifying a class where "Plaintiff's counsel should have made defendants aware of the true facts; instead, their comments during the depositions reveal an intent to keep the truth hidden even at the cost of allowing their own client to lie"); *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F.Supp. 643, 658-59 (N.D. Ill. 1986) (denying certification where counsel, among other misconduct, "filed [a] complaint knowing that it was based primarily on . . . inherently unreliable and purchased testimony"); *cf. Askew v. S. Pan Emp. Stock Ownership Plan*, 2019 WL 12536148, at *12 (N.D. Ga. June 27, 2019) (expressing "serious reservations as to whether the proposed class could be certified" where "Counsel for Plaintiffs have engaged in a pattern of misrepresentations to the Court" including "misrepresent[ing] the factual basis for seeking to amend the Complaint" and "submitt[ing] false statements of fact in support of their opposition to the partial summary judgment motion").

*Second*, dishonest counsel "jeopardizes the court's ability to reach a just and proper outcome in the case." *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1032 (N.D. Ill. 2017) (quoting *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 499 (7th Cir. 2013)); *see also Crissen*, 2014 WL 4129586, at *8 (denying certification where "[t]he misconduct [plaintiff's] counsel have engaged in . . . creates a serious doubt that counsel will represent the class loyally and jeopardizes the Court's ability to reach a just and proper outcome in the case"). Thus, if Hagens Berman committed the fraud that the three CWs

21

independently described, then there can be no doubt that they are not fit to serve as class counsel in this case and the Motion for Class Certification should be denied.

### III.     The Court Should Cut Off The Class Period on August 16, 2019.

Even if the Court were to certify the Class, the Court should reject Plaintiffs' proposed Class Period as overly broad. In the Complaint, Plaintiffs claim that Defendants made ten separate corrective disclosures throughout the Class Period. *See* AC ¶¶ 106-122, 145-224; Hartzmark Expert Report ¶ 83. This includes a final purported corrective disclosure on January 14, 2020 (the day after the putative Class Period ends), when Sasol disclosed that it had "experienced an explosion and fire at its LCCP low-density polyethylene (LDPE) unit." *See* AC ¶ 223. Plaintiffs do not (and cannot) explain how an explosion "corrects" any of the alleged misstatements at issue in this case (*e.g.,* statements regarding the cost and schedule of the LCCP).

At the outset, "a court may appropriately consider, at the class certification stage, whether an alleged corrective disclosure actually corrected an earlier misrepresentation." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 WL 1329354, at *5 (S.D.N.Y. Mar. 23, 2020) (emphasis added). And it is axiomatic that "a corrective disclosure needs to be corrective and 'linked' to a specific alleged misrepresentation." *Id.* at *6 (emphasis added); *see also In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008) ("the disclosure must possess a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement"). Here, however, Plaintiffs make no effort to "link" the disclosure of this inherently unpredictable event— *i.e.*, an explosion and resulting fire—to any of Sasol's earlier statements concerning the anticipated cost and schedule for the LCCP, which are the only two categories of alleged misstatements

22

remaining in the case.[5] The reason for that is obvious: the January 14, 2020 disclosure is entirely unrelated to any of the other statements challenged by Plaintiffs in the Complaint. Sasol's statements on January 14 do not even mention the cost of the LCCP, nor did they reveal any new, corrective information concerning the schedule for completion of the project. It follows that the January 14, 2020 statement by Sasol cannot constitute a corrective disclosure.

"In a securities fraud class action, courts are required to cut off the class period on the date of a statement or event that cures the market." *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019) (quoting *Pirnik v. Fiat Chrysler Automobiles, N.V.*, 327 F.R.D. 38, 48 (S.D.N.Y. 2018)). Here, any alleged misstatements regarding the cost or timing of the LCCP had been fully "cured" by August 16, 2019 (at the latest), when Sasol disclosed that it was delaying announcement of its 2019 financial results due to "possible LCCP control weaknesses" identified in an independent review authorized by the company's Board of Directors. While the Complaint also alleges two additional corrective disclosures on August 26, 2019 and October 28, 2019, these statements merely provide "additional details and context" to what had already been fully disclosed to the market by August 16, 2019, and thus, should not function to extend the Class Period any further. *See e.g., In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. at 133 (shortening the class period where "additional details and context about these loans and the Company more generally that came to light in subsequent disclosures described in the Complaint did not alter the detailed, unambiguous disclosures in the third quarter of 2015."); *In re Fed. Nat. Mortg. Ass'n Sec.*,

---

[5] *See* Aug. 24, 2020 Memorandum & Order at 8 [Dkt. 74] (describing the "two categories" of misrepresentations alleged in the Complaint as concerning (i) "the actual estimated costs and schedules of the LCCP" and (ii) "the effectiveness of Sasol's internal controls over financial reporting and management of the LCCP"). The Court subsequently dismissed "plaintiff's Rule 10b-5 claim insofar as it relies on this second category of alleged misrepresentations," *i.e.*, relating to the effectiveness of Sasol's internal controls. *Id.* at 23.

*Derivative & ERISA Litig.*, 247 F.R.D. 32, 40 (D.D.C. 2008) ("While additional information did enter the market after December 22, 2004, those additional disclosures did not render the December 22nd statement either misleading or any less corrective."). Accordingly, to the extent the Court is prepared to certify a class, the Class Period should be cut off at August 16, 2019.

## CONCLUSION

The Court should deny Plaintiffs' Motion for Class Certification and Appointment of Class Counsel or, in the alternative, conduct an evidentiary hearing on Hagens Berman's adequacy to serve as class counsel under Rule 23. To the extent the Court is prepared to certify a class, the Class Period should be cut off at August 16, 2019.

Dated: New York, New York         Respectfully submitted,
         September 24, 2021

                                   /s/ *Jonathan D. Polkes*
                                   Jonathan D. Polkes
                                   Gregory Silbert
                                   Caroline H. Zalka
                                   Luna N. Barrington
                                   Nicole E. Prunetti
                                   Robert B. Niles-Weed
                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York 10153
                                   Tel: (212) 310-8000
                                   Fax: (212) 310-8007

                                   *Counsel for Defendants Sasol Limited, David*
                                   *Edward Constable, Bongani Nqwababa, Stephen*
                                   *Cornell, Paul Victor, and Stephan Schoeman*

24