# EXHIBIT 1
# (Excerpt)

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
CHAD LINDSEY MOSHELL, Individually and on
Behalf of All Others Similarly Situated,

Plaintiffs,

Case No.
1:20-CV-01008-JPC
- against -

SASOL LIMITED, DAVID EDWARD CONSTABLE,
BONGANI NQWABABA, STEPHEN CORNELL, PAUL
VICTOR and STEPHAN SCHOEMAN,

Defendants.
------------------------------------------X

CONFIDENTIAL VIDEOTAPED DEPOSITION
VIA ZOOM VIDEOCONFERENCING
OF
CHAD LINDSEY MOSHELL
Thursday, August 26, 2021

Reported By:
LINDA J. GREENSTEIN

Page 190

CONFIDENTIAL - CHAD LINDSEY MOSHELL

really the way that it works. Then I get to review and -- and get to explain my -- you know, explain a crime to you before charges are levied against me. It's a little strange a concept.

Q. Yes.

A. That I would get to repudiate the allegations before it's even made officially.

Q. Yeah, and so maybe I think I'll kind of -- I think probably important to really focus on the question so maybe I spoke a little bit too fast.

So my question was, if there's going to be allegations or statements attributed to you, meaning things that you said; right?

A. Okay.

Q. Yes, so if there are going to be statements attributed to you as ones that you made that are going to appear in a complaint, wouldn't you want the opportunity to look at those and ensure that they were accurate before the

Page 191

CONFIDENTIAL - CHAD LINDSEY MOSHELL

complaint was filed?

MR. GILMORE: Object to form.
Asked and answered.

A. Yeah, it would depend on the -- you know, the person I was giving the information to, what my level of trust with them. If I don't know them then, yeah, maybe I'd prefer to see what their -- what their notes about our conversation were. Sure, I guess.

Q. I mean, you'd want the opportunity to ensure that kind of the statements that were being attributed to you as ones that you made were actually consistent with your recollection of the statements that you made; correct?

MR. GILMORE: Objection.
Asked and answered. Incomplete hypothetical.

A. Yeah, I guess -- yeah, review everything that's attributed to me before it's included in anything, sure.

Q. Okay. And I know that you're aware that there are CWs in the first and

Page 192

CONFIDENTIAL - CHAD LINDSEY MOSHELL

second amended complaints; is that accurate?

A. Yeah. The ones filed by Hagens Berman, yes.

Q. So maybe we can go to Tab 7.

MS. ZALKA: Which is going to be marked as Exhibit Number 12.

(Moshell Exhibit 12 marked for identification, multi-page document, amended complaint.)

BY MS. ZALKA:

Q. Do you recognize this document?

A. I think this is the big one, the -- oh, it's like a hundred some pages, okay. Yeah, this is the -- I guess the first amended complaint.

Q. And you'll see at the top this was filed on June 4, 2020.

A. Yes, I see that.

Q. In the case captioned "Moshell versus Sasol" and the other individual defendants.

And you previously testified that you did not review a draft of this

Page 193

CONFIDENTIAL - CHAD LINDSEY MOSHELL

before it was filed; correct?

A. Yeah, yeah, I reviewed them as I got them. So if I didn't get them before it was filed, then I didn't review it before it was filed.

Q. And you'll recall that we had looked, based on the entries in the privilege log between April and September of 2020, there were no written communications between you and your lawyers; right?

A. I believe, yes -- yeah, I think that's what we determined.

Q. So you did not review a draft of the first amended complaint before it was filed?

A. Yeah, I think we determined that earlier, yes.

Q. And with respect to this complaint, do you know whether your lawyers received the permission of all six confidential witnesses to be involved in the lawsuit?

MR. GILMORE: Object to form.

49 (Pages 190 - 193)

Page 194

CONFIDENTIAL - CHAD LINDSEY MOSHELL

A.   I don't know.  I don't know what they -- before -- at the time of the filing, if I hadn't received it, I don't know what the status of the permission given, I don't know what it was.

Q.   So you have no idea sitting here today if your attorneys received permission to include the statements from the six confidential witnesses --

MS. ZALKA:  Sorry, I may need to get some water.

BY MS. ZALKA:

Q.   So it's your testimony sitting here today that you have no idea if your attorneys received permission to include statements from the six confidential witnesses in the amended complaint?

MR. GILMORE:  Object to form.

A.   Yeah, I don't know.

Q.   Why don't you know?

A.   Because I didn't have -- I wasn't involved in the collection of the confidential witnesses' information or the process around collecting their statements.

Page 195

CONFIDENTIAL - CHAD LINDSEY MOSHELL

Q.   Did you do anything to understand whether your attorneys received permission from the confidential witnesses to include their statements in the complaint?

MR. GILMORE:  Object to form.

A.   No.  From reading the complaint, my assumption is they knew they were being involved.

Q.   Why is that your assumption?

A.   Because how else would you get the information from them.

Q.   Sitting here today, do you know whether or not your attorneys showed the confidential witnesses a draft of the statements that were going to be attributed to them in the complaint before it was filed?

MR. GILMORE:  Object to form.

A.   I don't know.  I don't know.

Q.   Okay.  Why don't you know?

A.   It was not disclosed to me whether they got the permission from the confidential witnesses or not,

Page 196

CONFIDENTIAL - CHAD LINDSEY MOSHELL

specifically.

Q.   And it also was it not disclosed to you whether or not the confidential witnesses had actually been given the opportunity to review the statements that were going to be attributed to them in the complaint before it was filed?

MR. GILMORE:  Object to form.

A.   No, I was not involved in the procedure of collecting their testimonies or collecting their statements so I don't know what was offered to them or discussed with them.

Q.   Okay.  Now let's go to Tab 8.

A.   Okay.

MS. ZALKA:  And this is going to be marked as Exhibit Number 13.

(Moshell Exhibit 13 marked for identification, multi-page document, second amended complaint.)

BY MS. ZALKA:

Q.   Can you identify this for the record?

A.   It looks like the second amended

Page 197

CONFIDENTIAL - CHAD LINDSEY MOSHELL

complaint removing -- was it Mr. "Gruebler" -- "Gruebler" or "Guerbert," I think -- removing him from the -- from the plaintiff -- from the defendants' list.

Then it should also include the corrections to my statement of shares.

I'm not sure if this was the version that -- no, I don't know if it was this -- I think it was the responses to the motion to dismiss that would include the -- the expert witness or scholar -- scholar testimony about recanting witnesses.

I don't think it was in this document, if I remember correctly.

Q.   Okay.  So let's go to -- do you recall -- and I think you previously testified that you don't recall whether or not you reviewed a draft of this before it was filed, but you recall reviewing it at some point; is that correct?

MR. GILMORE:  Object to form.

BY MS. ZALKA:

Q.   You can go ahead, Mr. Moshell.

Sorry.

50 (Pages 194 - 197)

Page 198

CONFIDENTIAL - CHAD LINDSEY MOSHELL

A. Correct.

Q. When you reviewed it, was this the first time that you understood that confidential witness allegations were included in the complaint?

A. I think they were discussed over the phone, that they had confidential witnesses --

MR. GILMORE: Object.

I'm going to instruct you that you're getting into conversations that you had with counsel and that divulges attorney-client privilege, so we don't want to get into the actual content.

So listen carefully to the question and then wait for my objections so that we don't divulge that.

THE WITNESS: Okay.

BY MS. ZALKA:

Q. And, again, Mr. Moshell, so I'm not asking you to reveal any privileged information in connection with my response to my questions.

Page 199

CONFIDENTIAL - CHAD LINDSEY MOSHELL

So what I asked you was when you reviewed the second amended complaint, was that the first time that you understood that confidential witness allegations were included in the amended complaint?

A. No.

Q. When was the first time that you understood that confidential witness allegations were going to be included in the second amended complaint?

A. During a phone call with the attorneys.

Q. And when was that phone call?

A. I don't remember specifically.

Q. Do you recall whether it was before or after the complaint was filed?

MR. GILMORE: Objection.

Vague as to which complaint, if I can get a clear --

MS. ZALKA: That's totally fair.

BY MS. ZALKA:

Q. So my questions are concerning the second amended complaint that's in front of you.

Page 200

CONFIDENTIAL - CHAD LINDSEY MOSHELL

My question is --

A. Sorry, go ahead and repeat it.

Q. Exactly.

Do you recall whether that phone call with your attorneys was before or after this second amended complaint was filed in September 2020?

A. I believe it was before.

Q. Why do you believe that?

A. Because I was aware of confidential witnesses, just the existence, not necessarily to their testimony or what they would say, but I was aware of their existence in a general sense well before September, I think.

Q. What did you do as a class representative to ensure that the allegations attributed to the confidential witnesses in the complaint had a good faith basis?

MR. GILMORE: Object to form.

A. A good faith basis in what way? A good faith basis on whose part?

Q. So as a class representative --

Page 201

CONFIDENTIAL - CHAD LINDSEY MOSHELL

so in terms of a good faith basis, what I mean by that is that the -- let me strike that if you don't understand what "good faith basis" means.

Do you understand what it means for an allegation in a complaint to have a good faith basis?

A. Yes, it's not malicious or -- yeah, you're doing it in an honest way, if that makes sense.

Q. So what did you do as class representative to ensure that the statements attributed to the confidential witnesses were represented to the Court in an honest way?

MR. GILMORE: Object to form.

A. I did not personally do any kind of research or background check on how the information was collected.

Q. And did you do anything as class representative to ensure that the confidential witnesses had provided their consent to participate in the second amended complaint?

51 (Pages 198 - 201)

Page 210

CONFIDENTIAL - CHAD LINDSEY MOSHELL

████████ statements there?

MR. GILMORE: Objection to form.

A. I mean, other than what she -- what was previously provided by the private investigator, yeah, I don't know which -- you guys -- the credibility of her statement here, I can't answer that.

Q. Oh, no, I'm not asking you to opine on her credibility.

I'm just asking, do you personally have any basis to dispute what ████████ stated there?

A. No, I guess not.

Q. If you could turn to paragraph 8 of ████████ declaration, paragraph 8 and 9, and could you read that into the record.

A. "I did not tell plaintiffs' investigator that it was 'clear from the beginning' that the LCCP would cost more than 8.1 billion.

"I was employed at Sasol during the beginning stages of the LCCP and it was too early for me to know whether the

Page 211

CONFIDENTIAL - CHAD LINDSEY MOSHELL

project will remain on budget."

Paragraph 9:

"When I left Sasol in July of 2015, the LCCP was both on time and on budget for the $8.9 billion cost estimate based on everything I knew."

Q. And is that consistent or inconsistent with the allegations in the complaint?

MR. GILMORE: Object to form.

A. I would say it's -- if I'm remembering the complaint correctly, I believe it's inconsistent.

Q. Similar question:

Sitting here today, you have -- personally don't have any basis to dispute what ████████ stated in her declaration in her capacity as the CFO of Sasol, that based on everything she knew when she left, the project was on time and on budget; right?

A. Yeah, in this version -- in her declaration, no, I don't have any reason to dispute.

Page 212

CONFIDENTIAL - CHAD LINDSEY MOSHELL

Q. As the lead plaintiff -- I'm sorry -- as a class representative, am I correct that you did nothing to diligence whether or not the statements attributed to ████████ in the complaint were accurate?

MR. GILMORE: Object to form.

A. I personally did not, no. I relied on the attorneys.

Q. Okay. Do you think it's appropriate sitting here today, obviously reading ████████ declaration and her sworn deposition testimony concerning her recollection of events as CFO at Sasol, do you think it was appropriate for the statements attributed to her in the second amended complaint that run contrary to her recollection to have been included in the complaint without giving her an opportunity even to review what those statements were going to be?

MR. GILMORE: Object to form.

Assumes facts not in evidence.

A. Sorry, can you repeat it again?

Page 213

CONFIDENTIAL - CHAD LINDSEY MOSHELL

It was a long question. Sorry.

Q. Sure, I can shorten it.

Sitting here today, do you think it's appropriate, having read ████████ declaration and her recollection of events at Sasol, in terms of the project being on time and on budget when she left, that it was appropriate for statements to be attributed to her in the second amended complaint without even giving her an opportunity to review those statements before they were filed?

MR. GILMORE: Object to form.

Assumes facts not in evidence.

A. No, it's -- no.

Q. No, it's not appropriate?

A. I can't determine if it's appropriate or not.

I'm not in a -- yeah, I'm not able to make that determination, what's appropriate and what's not. I --

Q. I'm not asking for a legal -- I'm sorry. Go ahead.

A. Yeah, I'm not -- yeah, I can't

54 (Pages 210 - 213)

Page 214

CONFIDENTIAL - CHAD LINDSEY MOSHELL

make a determination whether that's appropriate or not.

I'm not familiar enough with the procedures to say what's appropriate or what's not appropriate.

Q. I'm not asking you for a legal ruling or any kind of legal question.

You're a person. I'm asking you kind of outside of the capacity of, like, as a lawyer, right, because I understand you're not a lawyer.

Just as you're sitting here today, right, do you think it was appropriate for statements to be attributed to ▮▮▮▮▮▮ in the second amended complaint without even giving her an opportunity to review them before that was publicly filed in a federal class action?

MR. GILMORE: Object to form.

Assumes facts not in evidence.

Asked and answered.

A. Yeah, I mean, considering she's the CFO and somebody identifies themselves as an investigator, says "contact me to

Page 215

CONFIDENTIAL - CHAD LINDSEY MOSHELL

work on behalf of lawyers wishing to bring a lawsuit against Sasol," and then she continued to speak with them, I think she should have the wherewithal as the CFO of a large division of a major corporation to know that then can be included in a legal proceeding.

I mean, whether she expressly stated, I don't want to be included or not, then she should have just hung up the phone.

For her to then come back afterwards and say "I don't want to give that," then, you know, I think that's information you gave on the record publicly -- or not necessarily publicly, but you gave on the record to somebody who identified themselves as an investigator in potential litigation and you continue to talk with them, I have no reason to believe why that information wouldn't be included without her reviewing it.

Q. There's no explanation for why that information would be included without

Page 216

CONFIDENTIAL - CHAD LINDSEY MOSHELL

her reviewing it, right, that you can identify sitting here today?

MR. GILMORE: Object to form.

Assumes facts not in evidence.

BY MS. ZALKA:

Q. You could answer.

A. Yeah, I don't see why she would need to review it if she already said it and this document that she said it in, you know, it's -- there's notes taken and the private investigator said she said it.

Q. I'm not asking about your lawyer's defense. I'm asking you just generally speaking; right?

So do you think it's appropriate for someone to explicitly say, as ▮▮▮▮▮▮ did, right, she said:

"I expressly stated I did not want to be involved in any litigation concerning Sasol and that the investigator did not have permission to attribute any statements to me in the contemplated lawsuit. Plaintiffs' investigator explicitly told me that I would not be

Page 217

CONFIDENTIAL - CHAD LINDSEY MOSHELL

involved in litigation."

A. Yeah, if you --

MR. GILMORE: Object to form.

Object to form. Assumes facts not in evidence and asked and answered.

A. Yeah, if you -- if you would -- if you take her statement, the declaration, at face value, and she did, in fact, say what she claimed she said at the time, then, yeah, then maybe it would be -- it would be a little -- unfair to include her -- her statements in the filing.

Q. And you wouldn't want someone to do that to you, would you?

MR. GILMORE: Object to form.

Asked and answered and assumes facts not in evidence.

A. Yes, I would also -- yeah, I probably wouldn't want that to happen, just like I wouldn't want to take down somebody's information, and take information from them only to have them completely recant it later on. That would

55 (Pages 214 - 217)

Page 218

CONFIDENTIAL - CHAD LINDSEY MOSHELL

also be just as frustrating.

Q. Okay.

MS. ZALKA: Let's go to Tab -- the cast is making it difficult for me to turn pages.

Let's go to Tab 13.

(Moshell Exhibit 16 marked for identification, multi-page document, declaration of ███████ ████████.)

BY MS. ZALKA:

Q. Do you recognize this document?

A. No, I do not.

Q. Have you seen this document before?

A. I have not.

Q. Okay. I'm going to mark this as Exhibit Number 16 and I will represent to you that this is a declaration of ███████ ████████ that was filed with the Court. If you could turn to paragraph 2.

A. Okay.

Q. And you'll see there that

Page 219

CONFIDENTIAL - CHAD LINDSEY MOSHELL

███████ declared that he expressly stated to the plaintiffs' investigator that he did not want to be involved in any litigation concerning Sasol and that the investigator did not have permission to attribute any statements to him.

A. Yes, it looks exactly like the statement from ███████, word for word.

Q. And you also see that ███████ stated that:

"The plaintiffs' investigator said that she was simply seeking background information on Sasol and the LCCP."

At no time did the plaintiffs' investigator inform him that plaintiffs intended to attribute statements to him in a federal complaint.

And you have no basis sitting here today personally to dispute ███████ statements; correct?

MR. GILMORE: Object to form.

A. By itself, no. It's a little odd that it's word for word, the exact same

Page 220

CONFIDENTIAL - CHAD LINDSEY MOSHELL

opening statement or almost opening statement from the previous one.

But other than that, I have no reason to -- to object against it.

Q. Okay. And you'll see in paragraph 6, if you could read that into the record.

A. "Plaintiffs did not provide me with a draft or final version of the second amended complaint before or after it was filed.

"Plaintiffs did not provide me with all summary of the statements purportedly attributed to me before they included them in their second amended complaint.

"Plaintiffs did not inform me that they intended to attribute statements to me, even though I had specifically and repeatedly told the investigator that she did not have my permission to use any statements by me.

"Plaintiffs did not inform me that they intended to use my falsely

Page 221

CONFIDENTIAL - CHAD LINDSEY MOSHELL

attributed statements to corroborate those allegedly made by other confidential witnesses."

Q. Same question:

You don't have any basis to dispute what ███████ said in paragraph 6 of his declaration to the Court, do you?

A. I do not.

MR. GILMORE: Object to form.

BY MS. ZALKA:

Q. Now, if you can turn to paragraphs 8 to 9, and you don't need to read them into the record, they're long, but take a chance to review paragraph 8.

A. Okay. Okay.

Q. Okay. So in paragraph 8, ███████ is quoting from the second amended complaint the portions of that complaint that contain statements attributed to him as CW-5, and you'll see in paragraph 9 he said -- he declared to the Court that: "These allegations in the second amended complaint are categorically false."

56 (Pages 218 - 221)

Page 222

CONFIDENTIAL - CHAD LINDSEY MOSHELL

Do you see that?

A. Yes.

Q. I think you'll agree with me that it's not appropriate to include categorically false statements in a federal securities complaint; right?

MR. GILMORE: Object to form. Assumes facts not in evidence.

A. If the allegations were true, then maybe it would not be appropriate, correct.

Q. Sorry, what do you mean "if the allegations were true, then maybe it would not be appropriate"?

A. If what he says, that it actually -- he claims he did not say it, if that is, in fact, that he did not say it, then, yes, that would not be appropriate.

It just seems odd that such a long and detailed summary of his -- of his conversation or the claims -- or the statements that he made could be categorically false.

I mean, that just seems like a

Page 223

CONFIDENTIAL - CHAD LINDSEY MOSHELL

very improbable -- that so much -- that such a specific statement would be categorically false is a little odd, but...

Q. No basis to dispute, though, that what [redacted] is saying is that based on everything he knew as of when he was at Sasol and the statements that were attributed to him in the complaint were categorically false; right?

MR. GILMORE: Object to form. Asked and answered. Assumes not in evidence.

A. Again, yeah, it's odd if it's -- if it's categorically false it would be odd to be included in the complaint.

Q. I mean, if it's categorically false, do you think it should be included in the complaint?

MR. GILMORE: Object to form. Assumes facts not in evidence. Asked and answered. Incomplete hypothetical.

A. Yeah, that's a big if, but, yes.

Q. So maybe, I think you might be

Page 224

CONFIDENTIAL - CHAD LINDSEY MOSHELL

-- let me repeat the question.

If it's categorically false, do you think the allegations should be included in the complaint?

MR. GILMORE: Object to form. Asked and answered. Assumes facts not in evidence. Incomplete hypothetical.

BY MS. ZALKA:

Q. So the reason why I'm reasking the question is, so I asked you if the allegation is categorically false, do you think it should be included in the complaint, and you responded "that's a big if, but, yes."

A. Correct, that's a major if. If something is categorically false, that's a -- that's a big if. To say it's absolutely, completely false, that's a big if.

But, yeah, if something is categorically false, then it should not be included in the -- in the complaint complaint.

Page 225

CONFIDENTIAL - CHAD LINDSEY MOSHELL

Q. It should not be included in the complaint?

A. Right.

Q. And you didn't do anything personally to verify whether or not the statements attributed to the CWs were categorically false, right, before they were --

MR. GILMORE: Object to form.

A. I did not.

Q. And you didn't, I take it then, instruct your counsel to verify that the statements attributed to the CWs in the complaint were accurate?

MR. GILMORE: Object to form.

A. No, I did not instruct them to specifically verify the statements.

Q. Let's go to Tab 14.

A. Okay.

Q. Do you recognize this document?

A. I do not.

Q. Have you seen this document before?

A. I have not.

57 (Pages 222 - 225)

Page 226

CONFIDENTIAL - CHAD LINDSEY MOSHELL

Q.   Okay.  I'll represent that this is a transcript of the deposition of ████████ dated on November 24, 2020 at 2 p.m. and it's Exhibit Number --

MS. ZALKA:  Andrew, what are we up to?

MR. CAUCHI:  17.

(Moshell Exhibit 17 marked for identification, multi-page document, deposition transcript dated 11/24/20 of ████████.)

BY MS. ZALKA:

Q.   So if you can turn to page 26, lines 6 through 12.

This is the same format as before, so it's page 26 to lines 6 to 12.

MR. GILMORE:  Counsel, before you ask the inquiry, the exhibit is not on the Exhibit Share.

Can you just wait a moment?

MS. ZALKA:  Sure.

MR. GILMORE:  Thank you.

BY MS. ZALKA:

Q.   Can you just read that into the

Page 227

CONFIDENTIAL - CHAD LINDSEY MOSHELL

record?

A.   Which lines is it, 6 to --

Q.   6 to 12.

A.   Okay.  "Ms. Browning told you that other witnesses she spoke with characterized the 8.9 billion estimate as ridiculously low; is that correct?

"Answer:  If somebody else said that, I don't know.  But you attributed that to me in your complaint and that's not true.

Q.   Same questions:

No basis -- you don't have any basis to dispute ████████ sworn testimony there?

A.   I do not.

Q.   Okay.  The turn to page 28, line 14 through page 39, line 13.  I'll wait until you get there and then I'll repeat the lines.

A.   38, you said page 38.

Q.   Line 14.

A.   14.  Okay.

Q.   To page 39, line 13.

Page 228

CONFIDENTIAL - CHAD LINDSEY MOSHELL

A.   Okay.

"Question:  You said that the 11 -- you told the Naredello investigator that the $11 billion estimate figure I think management knew; correct?

"Answer:  Absolutely not.  No, no, no.  There was no 11 -- this is a complete lie from your firm.  I did not talk about 11 billion at any point.

"Now, I can point to, if you give me the time to go, I can walk you through both multiple conversations with your investigator and also my statement with your damn attorney present saying that it was on time and on budget for 8.9 billion.  That was the correct number.

"Nobody believed differently and you're fabricating something to try to prove it differently.

"Question:  You confirmed --

"Answer:  You put words in my mouth in this case against my express

Page 229

CONFIDENTIAL - CHAD LINDSEY MOSHELL

wishes and you made it up.  That's got to be illegal."

Q.   Same question:

You have no basis to dispute the truthfulness of ████████ testimony; correct?

MR. GILMORE:  Object to form.

A.   No.

Q.   And I take it obviously you agree that, you know, complete lies should not be included in a complaint?

MR. GILMORE:  Object to form.

Asked and answered.  Assumes facts not in evidence.

A.   I would agree with the statement complete lies should not be included in a complaint, yeah.

Q.   And what did you do as a class representative to ensure that complete lies were not being included in the second amended complaint in terms of the statements attributed to confidential witnesses?

MR. GILMORE:  Object to form.

58 (Pages 226 - 229)

Page 230

CONFIDENTIAL - CHAD LINDSEY MOSHELL

A.   Considering they're confidential, I don't really know what I could have included or interviewed them since they're confidential.

But, yeah, I guess I didn't do -- no, I did not perform anything to verify their statements.

Q.   So you did not do anything to check whether the statements attributed to the confidential witnesses in the complaint were truthful or lies?

MR. GILMORE:  Object to form.

A.   No, I don't -- I did not and I do not see how I could have.

Q.   Okay.

THE VIDEOGRAPHER:  Counsel, can we briefly go off the record just to reset the recording?

MS. ZALKA:  Yes, of course.  I actually need to get some water anyway so we can take -- we're probably going for -- I don't know -- probably an hour.

You're very good about not

Page 231

CONFIDENTIAL - CHAD LINDSEY MOSHELL

asking for breaks, Mr. Moshell, so I just keep going, so we can take a 10-minute break now and go back on the record at 4:15.

How's that?

THE VIDEOGRAPHER:  Okay.  We are going off the record.

The time is 4:06 p m.

(A recess was taken.)

THE VIDEOGRAPHER:  We are back on the record.

The time is 4:18 p m.

BY MS. ZALKA:

Q.   Mr. Moshell, you still have Exhibit Number 17 in front of you?

A.   Tab 14?

Q.   So it's Exhibit Number 17.  I think it's Tab 14, yes.

And if you could go to page 65, line 14.

A.   Okay.

Q.   And read into the record through page 66, line 13.

A.   Okay.

Page 232

CONFIDENTIAL - CHAD LINDSEY MOSHELL

"Question:  ███████, you told Ms. Browning the $11 billion cost for the LCCP at the time you were there was 'socialized'; correct?

"MS. BARRINGTON:  Objection.

"Misstates his testimony.

"Answer:  This is wrong on a couple of levels.

"First, I never referred to an $11 billion cost estimate, period.  That's your fabrication.  A complete lie made up by your team.  Don't associate that with anything that I said ever.

"And this should be criminal.  I hope the judge in this case takes this into consideration and sanctions you because you had a legal team member present when I was very clear this was on time, on budget for 8.9 billion, and based on everything that I knew, and on top of that gave you no permission, none, to cite me in this case, yet you dragged me into it.

Page 233

CONFIDENTIAL - CHAD LINDSEY MOSHELL

"So I'm angry about that, and frankly I hope you get sanctioned."

Q.   I have the same question:

You have no basis to dispute ███████ testimony; correct?

MR. GILMORE:  Object to form.

BY MS. ZALKA:

Q.   Do you want me to repeat the question?

A.   No, I answered.  I do not.

Q.   Sorry.  I didn't hear it.

And based on your understanding of the complaint, is ███████ testimony inconsistent with the allegations attributed to him in the complaint?

MR. GILMORE:  Object to form.

A.   Yes, it's -- it's inconsistent with his testimony.  The complaint is inconsistent with his testimony, yes.

Q.   Did you know whether ███████ was given an opportunity to review a draft of the statements attributed to him in the complaint before it was filed?

A.   No, I was not.

59 (Pages 230 - 233)