# EXHIBIT 2
# (Excerpt)

Page 1

CONFIDENTIAL - DAVID COHN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------X

CHAD LINDSEY MOSHELL, Individually and on

Behalf of All Others Similarly Situated,

Plaintiffs,

Case No.

1:20-CV-01008-JPC

- against -

SASOL LIMITED, DAVID EDWARD CONSTABLE,

BONGANI NQWABABA, STEPHEN CORNELL, PAUL

VICTOR and STEPHAN SCHOEMAN,

Defendants.

-------------------------------------------X

CONFIDENTIAL VIDEOTAPED DEPOSITION

VIA ZOOM VIDEOCONFERENCING

OF

DAVID COHN

Friday, September 17, 2021

Reported By:

LINDA J. GREENSTEIN

JOB NO. 4774456

Page 58

CONFIDENTIAL - DAVID COHN

either consent or not consent to your participation in a lawsuit; is that fair?

A. Yes. Okay.

Q. And why is that important?

A. I don't understand the question.

Q. Why is it important to be given the opportunity to consent or not consent to participate in a lawsuit?

MR. GILMORE: Object to form.

A. Well, you -- can I answer?

Q. Yes, please.

A. I mean, I -- I mean, I give my consent when I -- when I decided to participate.

I really don't understand your question. I mean, I give my consent when I called and asked to be the lead plaintiff and started talking to Lucas. That was my consent.

I don't understand your question.

Q. Well, my question is that it's important, right? It was important to you when you decided to file this lawsuit that

Page 59

CONFIDENTIAL - DAVID COHN

Lucas and his firm had your consent to do so?

A. I -- I suppose you're asking if I had given my consent. I mean, I don't understand what you're asking.

I mean, I gave my consent when I decided to participate.

Q. Right. And it was important for you to give your consent in order to participate; right?

MR. GILMORE: Objection. Asked and answered.

Mr. Cohn, just so we're clear, I'm able to state objections to form.

After that, just so I make the record, after that, you should answer unless I instruct you not to.

THE WITNESS: Okay.

MR. GILMORE: So to the last question, the objection is asked and answered.

BY MS. BARRINGTON:

Q. Mr. Cohn, you wouldn't want to be involved in a federal lawsuit without

Page 60

CONFIDENTIAL - DAVID COHN

your consent; right?

A. I don't know how I could be.

Q. So I just want to make sure the record is clear.

You would not want to be involved in a federal lawsuit without your consent; correct?

MR. GILMORE: Objection. Asked and answered.

BY MS. BARRINGTON:

Q. You can answer.

A. I don't know how I could be.

Q. Right. So you don't know how you could be involved in a lawsuit if you didn't otherwise give consent to be part of that lawsuit; correct?

A. Well, I can be part of a lawsuit because of statements I made that have nothing to do with consenting to be part of it. So I -- I don't understand how people can be part of a lawsuit without having done something or said something.

Q. If --

A. So I really don't --

Page 61

CONFIDENTIAL - DAVID COHN

Q. If someone said that they do not want to be involved in a lawsuit, then it's appropriate, right -- then it's not appropriate to involve them -- strike that. Let me re-ask.

If an individual expressly says that they do not want to be involved in a lawsuit, then I think you would agree with me that it's not appropriate to involve them; correct?

MR. GILMORE: Object to form.

A. No, I don't agree at all with that.

Q. And why not?

A. Why not? I don't agree with that.

Q. And I'm asking you why.

A. Well, because people could change their mind and -- so I'll give you an example.

So let's say something happens and I -- I cause some injury to somebody and there's a lawsuit because of that.

The fact that I'm going to

16 (Pages 58 - 61)

Page 62

CONFIDENTIAL - DAVID COHN

consent to be part of a lawsuit is moot. My actions have already made me part of the lawsuit.

So you do not have to give your consent to be part of a lawsuit. And I full -- I can't understand why anybody would think otherwise.

Q. So you --

A. So, no --

Q. Sorry, go ahead.

A. No, no, go ahead. The answer is going to be the same.

Q. So you, yourself, Mr. Cohn, are fine to be dragged into a lawsuit that you had no idea was happening.

Is that your testimony?

MR. GILMORE: Objection.

Objection. Misstates testimony.

A. If -- if I -- if I was --

Q. I'm sorry, you broke up for a second. Can you repeat that?

A. Yeah. I do not know how I can be part of a lawsuit that I did not have some action that it caused me to be

Page 63

CONFIDENTIAL - DAVID COHN

involved in it.

There are plenty of people out there that are guilty of something that do not want to be part of a lawsuit. That doesn't mean they can't be involved in the lawsuit.

Q. Okay. But I'm just asking about you, Mr. Cohn.

I want to know if you think it's important to be -- strike that.

Would you want to be involved in a lawsuit when you didn't give your express permission or consent to be involved?

MR. GILMORE: Object to form.

A. I -- I think I have every right to be in that lawsuit whether I gave my consent or not, if there was some action or something I was associated with that was involved in this -- consent.

Q. I'm sorry, you broke up again.

I don't think we caught the last part of your answer.

A. You do not have to give your consent.

Page 64

CONFIDENTIAL - DAVID COHN

Q. Did you have to give your consent to be a lead plaintiff in this case?

A. I wanted to be the lead plaintiff.

Q. I know, but did you have to give your consent?

A. My actions are the consent, so in that sense, yes.

Q. Okay. Thank you.

Do you know whether your lawyers received permission from these six confidential witnesses to use their statements in this lawsuit?

A. I think some of them have recanted, actually.

Q. I'm just going to repeat my question.

Do you know whether your lawyers received permission from these six confidential witnesses to use their statements in this lawsuit?

A. No.

Q. And so why don't you know?

Page 65

CONFIDENTIAL - DAVID COHN

A. Because it's a moot point. I don't know because they interviewed witnesses, witnesses made statements, statements are included in the lawsuit.

If -- it's moot as to whether they gave some later consent to be included, so, no, I do not know.

Q. Okay. Just so the record is clear, you don't know whether or not your attorneys received permission from these six confidential witnesses to be involved in a lawsuit?

A. I do not know.

Q. Did you do anything to understand whether your attorneys received permission from the confidential witnesses to include their statements in the complaint?

A. Nothing.

Q. You said I think earlier that you had a chance to review the first amended complaint before it was filed; right?

A. Right.

17 (Pages 62 - 65)

Page 66

CONFIDENTIAL - DAVID COHN

Q.   Do you think it was important for you to review the first amended complaint before it was filed?

I'm sorry, you broke up again there.

A.   Yes.

Q.   And why was that important to you?

A.   Well, it's part of my duties.

Q.   And would you agree with me that if statements are being attributed to you in a federal complaint, you'd want the opportunity to look at those statements and ensure that they were accurate before the complaint was filed?

MR. GILMORE:  Object to form.

A.   No.

Q.   Why is that?

A.   When you make statements, you should expect them to be used in whatever way they are to be used.

Q.   So you're saying that you wouldn't want -- you don't think it's important to give people an opportunity to

Page 67

CONFIDENTIAL - DAVID COHN

review those statements before a federal complaint is filed?

A.   No.

Q.   But you had an opportunity to review the first amended complaint before it was filed.

You thought that was important; right?

A.   It's part of my duties.

Q.   And you take your duties as lead plaintiff seriously; right?

A.   Yes.

Q.   Do you know whether or not your attorneys showed the confidential witnesses a draft of the statements that were going to be attributed to them in the complaint before it was filed?

A.   I do not know.  I would hope they did not.

Q.   Why not?

A.   Well, because confidential witnesses have a funny way of changing the stories.

Q.   Have you had experience with

Page 68

CONFIDENTIAL - DAVID COHN

confidential witnesses before, Mr. Cohn, before this litigation?

A.   No.

Q.   So what's the basis for your statement?

A.   Human knowledge.  Dealings with people.

Q.   Human knowledge?

A.   Yes, just dealings with people. Personal dealings with people.  People say things all the time and then want to change their story later, so, no, I do not think -- once you say something you have said it.

Q.   So you would not give someone an opportunity to just review what is being attributed to them in the first amended complaint.  That's your testimony?

A.   That is my testimony.

Q.   Okay.  Is it your testimony, Mr. Cohn, that it's important to be honest and truthful when filing a first -- strike that.

Is it important to be -- that the first amended complaint contain

Page 69

CONFIDENTIAL - DAVID COHN

truthful allegations?

A.   Yes.

Q.   So what did you do as the lead plaintiff in this case to ensure that the statements attributed to the confidential witnesses were represented to the Court in an honest and truthful way?

MR. GILMORE:  Objection.  Asked and answered.

A.   I trusted my counsel.

Q.   And you're aware, I think obviously, that three of the six confidential witnesses that are discussed in the first amended complaint that you authorized to be filed have come forward and said that the statements attributed to them in the first amended complaint are false.

You're aware of that?

A.   I am aware of that.

Q.   And when did you first become aware of that?

A.   Oh, during one of the later filings.

18 (Pages 66 - 69)

Page 70

CONFIDENTIAL - DAVID COHN

Q. Okay. And what's your understanding of -- strike that.

Are you aware that three of the six confidential witnesses in this case submitted sworn declarations under penalty of perjury that the statements attributed to them are false?

A. Yes.

Q. And are you also aware that these three confidential witnesses never received a copy of the complaint before it was filed?

A. Yes, I wouldn't have expected them to.

Q. Are you aware that these three confidential witnesses didn't even know about this litigation until Sasol's counsel told them?

MR. GILMORE: Objection. Misstates the record.

BY MS. BARRINGTON:

Q. You can answer.

A. What was the question?

Q. I said are you aware that these

Page 71

CONFIDENTIAL - DAVID COHN

three confidential witnesses didn't even know about this litigation until Sasol's counsel informed them of it?

A. Yes.

Q. Now, you submitted, I think, a declaration in support of your motion for class certification.

Do you recall that?

A. Okay. A lot of documents, yeah, I'm sure I recall it.

Q. Okay. And it's dated September 30, 2020.

MS. BARRINGTON: I'm going to mark this as Exhibit 3.

(Exhibit 3 marked for identification, four-page document, declaration of David Cohn re support of plaintiffs' motion for class certification.)

THE WITNESS: Okay.

BY MS. BARRINGTON:

Q. And, again, this is your signature on page 3 of the exhibit -- of the declaration; is that right?

Page 72

CONFIDENTIAL - DAVID COHN

MS. OLSEWSKI: This is Tab 24 in your binder, Mr. Cohn.

THE WITNESS: I was going to get to it eventually.

A. Yes, that's my electronic signature.

Q. Okay. And, again, you submitted this under penalty of perjury?

A. Yes.

Q. And I think you say in here that -- give me one sec.

If you turn to page 2, paragraph 4 you say:

"I understand that the Private Securities Litigation Reform Act of 1995 was intended to encourage investors with meaningful losses to direct securities class action.

"I also understand the Court's direction at the April 23, 2020 telephonic lead plaintiff hearing in the above captioned matter concerning the role a lead plaintiff should play.

"Since my appointment as lead

Page 73

CONFIDENTIAL - DAVID COHN

plaintiff in May 2020, I have been committed to vigorously prosecuting this litigation and taking an active role in managing this lawsuit.

"I intend to obtain the largest recovery of the proposed class consistent with good faith, sound judgment and meritorious advocacy."

Do you see that?

A. I see it.

Q. You go on to say in paragraph 5 that: "I have reviewed and monitored the progress and prosecution of this litigation with lead counsel, Hagens Berman.

"For example, I have received and reviewed periodic updates and other correspondence from lead counsel regarding this case, reviewed the complaint and associated motions filed in this case, participated in periodic telephonic and video meetings and discussions with lead counsel regarding the progress and status of the case, including its strengths and weaknesses, litigation strategy and

19 (Pages 70 - 73)

Page 102

CONFIDENTIAL - DAVID COHN

A.   Got it.

(Exhibit 8 marked for identification, multi-page document, deposition transcript of ██████ ████████ dated 12/2/20.)

BY MS. BARRINGTON:

Q.   Let's turn to page 45, lines 20 to 23.

And he says, the question is:

"You told the investigator that you had been given an opportunity to review your comments in the complaint; right?

"Answer:  Correct."

And again on page 58, line 20 to page 59, line 2, the question was:

"You told the investigator that Fluor was never going to be performing soft construction on this job; correct?

"Answer:  "I don't recall making that exact statement at the time the estimate was produced.  It was approximately."

Do you know if that's consistent with what's alleged in the first

Page 103

CONFIDENTIAL - DAVID COHN

amended complaint?

A.   It's not consistent.

Q.   Correct, okay.

And if we can turn to page 61, line 6 through 9.

"Question:  You also told the investigator that the LCCP project was behind schedule.

"Answer:  I don't remember making that statement."

Now, is that consistent with what's been set forth in the first amended complaint?

A.   No, he -- no, it's not consistent.  He remembered.

Q.   Okay.  Do you have any basis to dispute any of ████████ testimony here?

A.   Again, yes, he told the investigator something different.

Q.   But do you have any basis to dispute that he's telling the truth in this deposition?

MR. GILMORE:  Objection.

Page 104

CONFIDENTIAL - DAVID COHN

Asked and answered.

A.   Well --

Q.   You can answer.

A.   Well, my basis for doubting this is that I think he's still employed in the oil and gas industry, he has a, you know, probably a financial interest in not being connected to a lawsuit for Sasol.

So, yeah, I have some doubts about the truthfulness of his statements, mainly because he told the investigator something else.

Q.   Okay.

MS. BARRINGTON:  Now we're going to introduce the declaration of CW-5, which is ██████████.

MS. OLSEWSKI:  This will be Exhibit 9 for the record and, Mr. Cohn, is this is Tab 30 in your binder.

(Exhibit 9 marked for identification, multi-page document, declaration of ████████████.)

BY MS. BARRINGTON:

Page 105

CONFIDENTIAL - DAVID COHN

Q.   Have you seen this document before, Mr. Cohn?

A.   Hold on.

Yes.  I don't recall exactly when.

Q.   And if you turn to page 1, paragraph 2, ████████ writes -- ██ ████ writes:

"I expressly stated that I did not want to be involved in any litigation concerning Sasol and that she did not have permission to attribute any statements to me.

"At no time did plaintiffs' investigator inform me that plaintiff intended to attribute statements to me in a federal complaint."

A.   Yes.

Q.   Page 2, paragraph 6:

"Plaintiffs did not provide me with a draft or a final version of the complaint before or after it was filed.

"Plaintiffs did not provide me with a summary of the statements

27 (Pages 102 - 105)

Page 106

CONFIDENTIAL - DAVID COHN

purportedly attributed to me before they included them in their complaint.

"Plaintiffs did not inform me that they intended to attribute statements to me, even though I had decidedly and repeatedly told the investigator that she did not have my permission to use any statements by me.

"Plaintiffs did not inform me that they intended to use my falsely attributed statements to formulate those allegedly made by other confidential witnesses."

On page 3, paragraph 9 he says:

"These allegations in the complaint are categorically false."

Page 4, paragraph 14:

"Plaintiffs have falsely represented my statements and I submit this declaration to correct the record."

Do you have -- you'll agree with me, Mr. Cohn, that if the allegations in the complaint as they relate to CW-5 are categorically false they shouldn't be

Page 107

CONFIDENTIAL - DAVID COHN

included in the complaint; correct?

MR. GILMORE:  Objection to form.

A.    I don't understand the question.

Q.    My question is, if the allegations in the amended complaint as they relate to Mr. -- ███████ are false, they shouldn't have been included; correct?

MR. GILMORE:  Object to form.

A.    If they were false, if they're false, they shouldn't have been included.

Q.    Right.  And if the allegations as they relate to ███████ are false, they also shouldn't have been included; correct?

A.    Correct.  If they are false they shouldn't be included.

Q.    And same with respect to ███████.

If her testimony, if the allegations as it relates to her statements in the amended complaint were false, they shouldn't have been included; correct?

A.    If they are false, they

Page 108

CONFIDENTIAL - DAVID COHN

shouldn't be included.

Q.    Now let's turn to the deposition transcript of ███████.

MS. OLSEWSKI:  This will be Exhibit 10 for the record and this is going to be Tab 155 in your binder, Mr. Cohn.

(Exhibit 10 marked for identification, multi-page document, deposition transcript of ███████ ███████ dated 11/24/20.)

THE WITNESS:  Got it.

BY MS. BARRINGTON:

Q.    And if we turn to page 26, lines 6 to 12:

"Question:  The investigator told you that other witnesses she spoke to would characterize the $8.9 billion estimate as ridiculously low; is that correct?

"Answer:  If somebody else said that, I don't know, but you attributed that to me in your complaint, and that's not true."

Page 109

CONFIDENTIAL - DAVID COHN

A.    Okay.

Q.    Is his testimony consistent with what is alleged in the first amended complaint?

A.    No.

Q.    All right.  Turn to page 29, line 15 to 24:

"Question:  You said to the investigator that Sasol had received an estimate from Westney Consulting for the estimated cost of the LCCP?

"Answer:  Yes, correct.

"Question:  And you said at that time the estimated cost from the Westney Consulting was also higher than $8.9 billion; correct?

"Answer:  Not correct.  In fact, the discussion was all around" -- excuse me, strike that.

"Answer:  Not correct.

"In fact, the discussion was, it was all around amount versus probability and it validated the $8.9 billion number if things were executed properly."

28 (Pages 106 - 109)

Page 110

CONFIDENTIAL - DAVID COHN

Now, is that consistent with what's set forth in the amended complaint?

A. It's not consistent with what she told the investigator.

Q. That's not my question, Mr. Cohn.

Is that consistent with what is set forth in the first amended complaint?

A. No, because it's not consistent with what she told the investigator.

Q. Turn to page 38, line 14 to page 39 line 13:

"Question: You told defendants that the $11 billion estimate figure I think management knew; correct?

"Answer: Absolutely not. No, no, no. There was no 11. This is a complete lie from your firm. I did not talk about 11 billion at any point, no.

"I can walk you through both conversations with your investigator and also my statement with your damn attorney present saying that it was on time and on budget for $8.9 billion. That was the

Page 111

CONFIDENTIAL - DAVID COHN

correct number.

"Nobody believed differently and you're fabricating something to try to prove it differently. You put words in my mouth in this case against my express wishes and you made it up. That's got to be illegal."

Is that consistent with what is alleged in the first amended complaint?

A. No.

Q. Turn to page 65, line 14 to page 66 line 13:

"Question: You told the investigator that the $11 billion cost for LCCP at the time you were there was socialized; correct?

"Answer: This is wrong on a couple of levels.

"First, I never referred to an $11 billion cost estimate, period. That's your fabrication, complete lie made up by your team. Don't associate that with anything that I said ever. And this should be criminal. I hope the judge in this case

Page 112

CONFIDENTIAL - DAVID COHN

takes this into consideration and sanctions you.

"Because you had a legal team member present when I was very clear that this was on time, on budget for 8.9 billion, and based on everything that I knew, and on top of that, gave you no permission, none, to cite to me in this case, yet you dragged me into it. So I'm angry about that and, frankly, I hope you get sanctioned."

Is this testimony consistent with what is set forth in the amended complaint?

A. No.

Q. So do you think it's appropriate to include statements of confidential witnesses who expressly stated that they did not want to be involved in the lawsuit?

A. Yes.

MR. GILMORE: Object to form.

A. Yes, again.

Q. Do you think it's appropriate to lie in a federal securities complaint?

Page 113

CONFIDENTIAL - DAVID COHN

A. No.

Q. To be clear, you authorized the filing of this complaint in your name; correct?

A. Yes.

Q. Okay. And to be clear, you did nothing to verify these allegations before you filed the complaint; correct?

MR. GILMORE: Object to form. Mischaracterizes testimony.

A. Trusted my counsel and their long expertise in this area.

Q. And you are aware before you retained or right around the time that you retained counsel that the firm that you retained to represent you had been sanctioned for bad faith and dishonesty; correct?

A. Yes, as many large firms have been sanctioned, yes.

Q. Do you know the firms that have been sanctioned?

A. Excuse me?

Q. I said, are you aware of any

29 (Pages 110 - 113)