# EXHIBIT 41

Page 1

CONFIDENTIAL - DAVID COHN

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

CHAD LINDSEY MOSHELL, Individually and on

Behalf of All Others Similarly Situated,

Plaintiffs,

Case No.

1:20-CV-01008-JPC

- against -

SASOL LIMITED, DAVID EDWARD CONSTABLE,

BONGANI NQWABABA, STEPHEN CORNELL, PAUL

VICTOR and STEPHAN SCHOEMAN,

Defendants.

----------------------------------------X

CONFIDENTIAL VIDEOTAPED DEPOSITION

VIA ZOOM VIDEOCONFERENCING

OF

DAVID COHN

Friday, September 17, 2021

Reported By:

LINDA J. GREENSTEIN

JOB NO. 4774456

Page 46

CONFIDENTIAL - DAVID COHN

and I think when we left off is we were just reviewing your declaration that you had submitted in support of your motion to be appointed as lead plaintiff in this case.

And I will just direct you to paragraph 4 and I'll repeat my question.

In about the middle of the paragraph you say here that you "understand that a lead plaintiff is required to direct the litigation on behalf of the Class, stay apprised of all material developments of the litigation, and that I would owe duties to the Class to act in its best interest."

Do you see that?

A.    Yes.

Q.    And that's still your understanding today; correct?

A.    Yes.

Q.    Then you go on to say that if you were appointed as lead plaintiff, you would be responsible for conferring with counsel, reviewing and authorizing the filing of important litigation documents

Page 47

CONFIDENTIAL - DAVID COHN

and being deposed or attending important court hearings and trial, if necessary.

Do you see that?

A.    Yes.

Q.    Okay.  And that's obviously -- that's your understanding today; correct?

A.    Yes.

Q.    Okay.  And in April 2020, the Court held a telephonic hearing on your request to be appointed the lead plaintiff.

Do you recall that?

A.    Yes.

Q.    And do you recall speaking to the judge at that hearing?

A.    Yeah, he asked me maybe two questions.

Q.    And I think at the hearing, the judge said that anyone that he appoints as lead plaintiff, quote, "needs to be someone who will not just be a potted plant, that will take affirmative steps to make sure that whatever is being presented by counsel is given scrutiny by you."

Do you recall that?

Page 48

CONFIDENTIAL - DAVID COHN

A.    That sounds like a judge's statement, yes.

Q.    And I believe shortly after you were appointed lead plaintiff, you authorized the filing of the first amended complaint in this case?

A.    Yes.

Q.    And that complaint was filed on June 4, 2020?

A.    Yes.

Q.    Did you review the first amended complaint prior to its filing?

A.    I'm sure I did.

Q.    Do you recall if counsel sent you a draft of the first amended complaint?

A.    Lucas sends me lots of stuff. Yes, I probably got a lot of documents with the first complaint.

Q.    Okay.  So I just want to make sure it's clear.

You recall reviewing the first amended complaint before it was filed on June 4, 2020?

A.    I -- do I specifically recall

Page 49

CONFIDENTIAL - DAVID COHN

that document?  Yes.  I recall reviewing documents, yes.

Q.    Do you recall reviewing it before it was filed?

A.    I'm sure I did.

Q.    Do you recall how long it took you to review the document?

A.    Oh, God.  It sometimes takes me a day or so to read all the stuff, yes.

Q.    Is there anything in particular about the complaint that you recall today?

A.    Not really.  No, not really.

Q.    Did you have any questions about the allegations contained in the complaint?

A.    I've had questions for Lucas about, but I'm not sure if they pertained to that complaint or later complaints.

Q.    So did you speak to Lucas about your questions about the complaint?

A.    Yes.

Q.    Did you make any suggestions or edits to the complaint?

A.    No.  I'm not an attorney. That's what you hire attorneys for.

13 (Pages 46 - 49)

Page 82

CONFIDENTIAL - DAVID COHN

accuracy of those allegations other than relying on counsel?

A. I did nothing besides rely on my counsel.

Q. And you would hold your counsel to the same standard, right, that they prosecute this case in good faith with sound judgment and meritorious advocacy?

A. Yes.

Q. Did you know that your counsel of the law firm Hagens Berman has been sanctioned in other cases?

A. Yes.

Q. And when did you become aware of that?

A. Shortly before or after I retained them. I did some Google searches on them. They're a large law firm.

Q. Okay. And were you aware that a Federal Judge in another case had found that Hagens Berman had acted with bad faith and dishonesty? That's a quote.

A. How many years ago was that?

Q. 2015, so just six years ago.

Page 83

CONFIDENTIAL - DAVID COHN

A. Yes.

Q. You were aware of that?

A. I seem to remember -- I seem to remember reading that statement.

Q. Okay. And you don't think it's important that the attorneys that you selected to lead a federal securities case on behalf of an entire class of investors are acting in good faith and are honest?

MR. GILMORE: Objection.

Objection. Misstates testimony.

A. Yes, I believe that. It's a large -- it's a large law firm. Do you have the specific individuals that were involved in that sanction?

Q. Were you aware of the sanctions ruling before you retained them?

A. I don't know. It was around the same time. I mean, I was Google searching. It was right when I retained them. I don't know if it was before or after.

Q. Were you aware that a former client actually sued the law firm Hagens Berman because of their sanctionable

Page 84

CONFIDENTIAL - DAVID COHN

conduct in that case?

A. Again, it's a large law firm. It's not the kind of thing that would really bring a lot of red flags.

Q. I'm just asking if you're aware or if you were aware?

A. Am I aware that the firm has been sued in some form in the past? Yes, I am.

Q. And yet you selected them to represent you and to represent the Class in this case?

A. Yes, indeed.

Q. Would you agree with me that it's important to be honest with the Federal Court?

A. Yes.

Q. Okay.

MS. BARRINGTON: What time is it now? Can we go off the record for 5 minutes, take a little bathroom break.

THE WITNESS: I thought you'd never ask.

Page 85

CONFIDENTIAL - DAVID COHN

MS. BARRINGTON: You're always welcome to ask too, Mr. Cohn.

THE WITNESS: No, I'm fine.

THE VIDEOGRAPHER: We're now going off the record at approximately 12:47 p.m.

(A recess was taken.)

THE VIDEOGRAPHER: We're now going back on the record approximately 12:57 p.m. beginning in Media 4.

Go ahead, counsel.

MS. BARRINGTON: Thank you.

BY MS. BARRINGTON:

Q. Mr. Cohn, welcome back.

I think before we left off you had finally agreed with me on something, and that was that it was important to be honest with the Federal Court; right?

A. Yes.

Q. So I'm going to now introduce Exhibit 5.

MS. OLSEWSKI: This will be Exhibit 5 for the record and, Mr. Cohn, this is Tab 31 in your binder.

22 (Pages 82 - 85)

Page 154

CONFIDENTIAL - DAVID COHN

p.m., beginning of Media 6.

BY MS. BARRINGTON:

Q.   Great.  Mr. Cohn, home stretch here.

So I just wanted to ask, sitting here today, you understand that Sasol was disclosing the risks that are associated with mega projects like the LCCP, including their cost increases and scheduling delays; right?

MR. GILMORE:  Object to form.

A.   Yes.

Q.   And you understand as an investor, I think you called yourself an experienced investor, that there are always risks associated with investing in, you know, large mega projects; right?

A.   I understand.

Q.   So can you tell me just what you believe the damages you suffered are in this litigation?

MR. GILMORE:  Object to form.

A.   The damages are related to the inflated market price because the market

Page 155

CONFIDENTIAL - DAVID COHN

did not have all the info to adjust the price on its own.

Q.   Okay.  And what methodology, if you know, are you using to assess your damages in this case?

MR. GILMORE:  Object to form.

A.   Complicated.

Q.   Fair enough.

A.   I -- I don't really -- couldn't explain the total methodology used.

Q.   Okay.  Do you know ballpark what the total damages are for the putative class that you want to represent?

A.   Oh, wow.  I've seen the number, but I do not recall it.  It's a big number.

MS. BARRINGTON:  I think that's all I have.

I am all done here.  I don't know if you have any redirect, Lucas.

MR. GILMORE:  No, I don't have any questions for the witness.

Just would like to thank Mr. Cohn for his time.

MS. BARRINGTON:  Yes, thank you,

Page 156

CONFIDENTIAL - DAVID COHN

Mr. Cohn.  I appreciate it, and I appreciate your flexibility in our rescheduling of this matter.

My partner had I think broke her wrist actually, so...

THE WITNESS:  Well, I was going to ask, is one of y'all the one with the broken hand or is it somebody else.

MS. BARRINGTON:  No, not me.

THE VIDEOGRAPHER:  Maybe we should go off the record so Linda doesn't have to take this down.

We're off the record now at 2:56 p.m.

(Time Noted:  2:56 p.m. EDT)

_____
DAVID COHN

Subscribed and sworn to before me this ____ day of ____ , 2021.

_____

Page 157

CONFIDENTIAL - DAVID COHN

C E R T I F I C A T E

I, Linda J. Greenstein, Professional Shorthand Reporter and Notary Public in and for the State of New York, do hereby certify that, DAVID COHN, the witness whose deposition is hereinbefore set forth, was duly sworn and that such deposition is a true record of the testimony given by the witness to the best of my skill and ability.

I further certify that I am neither related to or employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

IN WITNESS WHEREOF, I have hereunto set my hand this 20th day of September, 2021.

_____
Linda J. Greenstein
My commission expires:   January 30, 2025

40 (Pages 154 - 157)