UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHAD LINDSEY MOSHELL, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN,<br><br>                    Defendants. | Case No. 1:20-cv-01008-JPC<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

010886-11/1858909 V4

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ................................................................................2

II.     BACKGROUND ..................................................................................................4

III.    ARGUMENT.......................................................................................................7

        1.      Plaintiffs and Lead Counsel Have Adequately Represented the Class ................................................................................8

        2.      The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel ................................9

        3.      The Substantial Benefits for the Class, Weighed Against Litigation Risks, Support Preliminary Approval .......................................11

                a.      The Effective Process for Distributing Relief to the Settlement Class............................................................. 16

                b.      The Settlement Does Not Excessively Compensate Lead Counsel ................................................................. 18

        4.      Class Members Are Treated Equitably Relative to One Another ................................................................................19

IV.     CONCLUSION...................................................................................................24

010886-11/1858909 V4

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................21, 23

*In re Barrick Gold Sec. Litig.*,
2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015).................................................................16

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)......................................................................................................25

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
2015 WL 13639234 (S.D.N.Y. Oct. 15, 2015).............................................................22

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................15

*Cohen v. J.P. Morgan Chase & Co.*,
262 F.R.D. 153 (E.D.N.Y. 2009) .................................................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)..........................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)................................................................21

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................25

*In re Indep. Energy Holdings PLC*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)...........................................................14

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................12

*Lea v. Tal Education Group*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)..........................................................13, 15

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................22

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .................................................................................20

010886-11/1858909 V4

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ...................................................................13, 14

*In re Monster Worldwide, Inc. Sec. Litig.*,
  2008 WL 9019514 (S.D.N.Y. Nov. 25, 2008) .......................................................................22

*Moshell v. Sasol Ltd.*,
  481 F. Supp. 280 (S.D.N.Y. 2020)........................................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..............................................................................................................25

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x 760 (2d Cir. 2020) ..........................................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................................12

*In re Platinum & Palladium Commod. Litig.*,
  2014 WL 3500655 (S.D.N.Y. Jul. 15, 2014) ........................................................................12

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010)..................................................................................................16

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................................14

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .......................................................................20

*In re Veeco Instr. Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................................................................21, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)....................................................................................................26

## STATUTES

15 U.S.C. § 78u-4(a)(4) .............................................................................................................23

15 U.S.C. § 78u-4(a)(7)(A)-(F)...................................................................................................26

15 U.S.C. § 78u-5(c)......................................................................................................................6

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5....................................................................................................................8

Fed. R. Civ. P. 23(e)(1)................................................................................................................11

010886-11/1858909 V4

Fed. R. Civ. P. 23(e)(1)(B) ..........................................................................................................11

Fed. R. Civ. P. 23(e)(2)................................................................................................................11

Lead Plaintiff David Cohn ("Lead Plaintiff") and Additional Representative Plaintiff Chad L. Moshell (collectively, "Plaintiffs"), on behalf of themselves and all other members of the proposed Settlement Class,[1] respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed settlement reached in the above-captioned class action (the "Action"). The Settlement provides a recovery of $24,000,000 in cash to resolve this securities class action brought against Sasol Limited ("Sasol" or the "Company"), David Edward Constable ("Constable"), Bongani Nqwababa ("Nqwababa"), Stephen Cornell ("Cornell"), Paul Victor ("Victor"), and Stephan Schoeman ("Schoeman") (collectively, the "Individual Defendants" and, together with Sasol, "Defendants").

If approved, the Settlement will bring to a close over two years of hard-fought litigation, substantial motion practice, significant fact discovery, and robust arm's-length negotiations between counsel over the course of a multi-day mediation before well-respected neutrals. By this motion, Plaintiffs seek entry of an Order: (i) granting preliminary approval of the Settlement; (ii) preliminarily certifying the Settlement Class and appointing Plaintiffs as class representatives and Lead Counsel as class counsel, for purposes of the Settlement only; (iii) approving the form and manner of providing notice of the Settlement to the Settlement Class; and (iv) scheduling a hearing date for final approval of the Settlement (the "Settlement Hearing") and related events (the "Preliminary Approval Order").

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated April 1, 2022 (the "Stipulation"). The Stipulation is annexed as Exhibit ("Ex.") 1 to the Declaration of Steve W. Berman ("Berman Decl."), filed herewith.

010886-11/1858909 V4

## I.     PRELIMINARY STATEMENT

Plaintiffs have reached an agreement to settle this Action against Defendants in exchange for their payment to the Class of $24,000,000 in cash. If approved, the Settlement will resolve this Action in its entirety. Plaintiffs believe that the proposed Settlement, which is the result of the mediators' recommendation, represents a very favorable result for the Class because it provides a significant recovery, particularly when compared to the risk that continued litigation might result in a smaller recovery, or no recovery at all. While Plaintiffs and Lead Counsel believe the claims asserted against Defendants have merit, Plaintiffs would have faced substantial challenges in establishing liability and damages. For example, Plaintiffs faced substantial challenges in proving that, after the Court's decision on the motion to dismiss, the remaining alleged misstatements related to the projected end-of-job construction cost and schedule for Sasol's Lake Charles Chemicals Project (the "LCCP") in Lake Charles, Louisiana, were false when made, that Defendants made the false statements with ***actual knowledge*** of their falsity, and that the alleged misstatements are not otherwise protected as forward-looking statements under the PSLRA's safe harbor provision (15 U.S.C. § 78u-5(c)) (the "Safe Harbor Provision"); that Defendants intended to mislead investors when they made the alleged misstatements; and that the alleged misstatements were the cause of losses suffered by the Settlement Class. Plaintiffs also faced substantial hurdles in overcoming Defendants' anticipated "parsing" and "scaling" arguments relating to the purported artificial inflation present in Sasol's American Depository Receipts ("ADRs") throughout the Class Period and that allegedly dissipated in response to the alleged disclosure events, which presented significant challenges to offering an admissible damages methodology and/or could have substantially limited recoverable damages.

Prior to entering into the Settlement, Plaintiffs and Lead Counsel: (i) investigated and drafted detailed amended complaints, including the operative Second Amended Complaint;

- 2 -

(ii) defeated in part Defendants' motion to dismiss; (iii) successfully opposed Defendants' motions for reconsideration and request for sanctions; (iv) engaged in substantial discovery, which involved (a) obtaining and reviewing more than 730,000 pages of documents produced by Defendants; and (b) participating in nine separate fact and expert witness depositions, including those of Plaintiffs; (v) opposed Defendants' request for interlocutory appeal of the Court's Order denying reconsideration and sanctions; (vi) moved for class certification; and (vii) attended a mediation session, spanning two days, under the auspices of experienced and highly respected mediators, the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (collectively, the "Mediators"), during the course of the litigation. Accordingly, Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims in the Action, which informed Plaintiffs' determination that the Settlement is fair, reasonable, and adequate.

At the Settlement Hearing, the Court will have before it more extensive papers in support of the Settlement, and it will be asked to determine whether the Settlement is fair, reasonable, and adequate under Second Circuit law. At present, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class. Specifically, Plaintiffs request that this Court enter the proposed Preliminary Approval Order (attached as Exhibit A to the Stipulation and submitted herewith), which will, among other things: (i) grant preliminary approval of the Settlement; (ii) approve the form and manner of providing notice of the Settlement to the Settlement Class, including the form and content of the Settlement Notice, Claim Form, and Summary Settlement Notice; and (iii) schedule the Settlement Hearing and related events.

As discussed below, the Settlement is fair, reasonable, and adequate, and thus warrants the Court's preliminary approval.

010886-11/1858909 V4

## II.    BACKGROUND

On February 2, 2020, Additional Representative Plaintiff Chad Lindsey Moshell commenced this case by filing a putative securities class action against Sasol and various of its current and former executives in the United States District Court for the Southern District of New York (the "Court"), on behalf of himself and all other persons or entities who purchased or otherwise acquired American Depository Receipts ("ADRs") of Sasol during the period from March 10, 2015, to January 13, 2020, inclusive (the "Settlement Class Period"), alleging violations of the federal securities laws under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

On May 4, 2020, the Court entered an Order appointing David Cohn as Lead Plaintiff and approving his selection of Hagens Berman Sobol Shapiro LLP as lead counsel ("Lead Counsel") (ECF No. 52).

On June 4, 2020, Lead Plaintiff filed an Amended Class Action Complaint (the "Amended Complaint") for violations of the federal securities laws based on alleged misstatements by defendants Sasol, Constable, Nqwababa, Cornell, Victor, Fleetwood Grobler ("Grobler") and Schoeman concerning the projected cost and schedule of Sasol's Lake Charles Chemicals Project ("LCCP") in Lake Charles, Louisiana, and concerning Sasol's internal controls (ECF No. 59). Defendants moved to dismiss the Amended Complaint on July 2, 2020 (ECF No. 66), which motion was fully briefed on August 10, 2020 (ECF No. 69).

On August 24, 2020, the Court partially granted and partially denied the motion to dismiss. The Court granted the motion to dismiss as to the internal controls claims but denied the motion to dismiss concerning the projected LCCP cost and schedule claims, and granted the motion as to Mr. Grobler but denied the motion to dismiss as to defendants Sasol, Constable, Nqwababa, Cornell, Victor, and Schoeman (ECF No. 74).

- 4 -

Discovery commenced in late August 2020. Lead Plaintiff and Defendants served initial disclosures, served and responded to requests for production of documents, and began document production. *See* Decl. of Steve Berman in Support of Plaintiffs' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (ECF No. 193), ¶ 3.

On September 11, 2020, Lead Plaintiff filed a Second Amended Class Action Complaint (the "Second Amended Complaint"), adding Chad Lindsey Moshell as Additional Plaintiff Representative and removing certain allegations related to certain dismissed claims and all claims against Defendant Grobler (ECF No. 81).

On September 30, 2020, the Action was reassigned from the Honorable Jed. S. Rakoff to the Honorable John P. Cronan.

On October 2, 2020, Plaintiffs moved for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel (the "Motion for Class Certification") (ECF No. 83), which included, among other things, a report from market efficiency expert Michael L. Hartzmark, Ph.D. Then on October 16, 2020, Defendants filed and served their Answer to the Second Amended Complaint (ECF No. 93).

On October 30, 2020, Defendants filed a Motion for Reconsideration of the Court's August 24, 2020 Memorandum and Order; Motion for Sanctions; and Motion for Stay of Discovery (the "Motion for Reconsideration") (ECF No. 104), alleging that certain statements attributed to certain Confidential Witnesses ("CWs") in the Second Amended Complaint were false and made without those CWs' consent or knowledge.

On November 10, 2020, the Court stayed all discovery and deadlines for class certification pending resolution of the Motion for Reconsideration (ECF No. 104) and ordered limited discovery concerning the six CWs identified in the Second Amended Complaint.

010886-11/1858909 V4

On December 15, 2020, after the parties completed the limited scope discovery, which included the depositions of the six CWs, Defendants filed a Supplemental Memorandum of Law and Report of Investigation in Support of Defendants' Motion for Reconsideration (ECF No. 116). Plaintiffs opposed Defendants' Motion on January 19, 2021 (ECF No. 127). Plaintiffs' opposition papers included a declaration from the private investigator Lead Counsel retained in this matter and who interviewed the CWs (ECF No. 143-1), together with a declaration from law Professor Michael J. Kaufman, a leading authority on confidential witness interview practices. ECF No. 143-2. Defendants filed their reply on February 9, 2021 (ECF No. 137).

On July 7, 2021, the Court issued an Opinion and Order denying Defendants' Motion for Reconsideration and lifting the discovery stay (ECF No. 155).[2]

On August 9, 2021, the Parties filed a Revised [Proposed] Scheduling Order (ECF No. 160), which the Court ordered on September 7, 2021 (ECF No. 162), and the Parties re-started discovery in August 2021. Defendants produced over 185,000 documents totaling over 730,000 pages.

On September 24, 2021, after deposing both Plaintiffs and Dr. Hartzmark, Defendants filed their opposition to Plaintiffs' Motion for Class Certification (ECF No. 169). On December 10, 2021, after filing letter motions to compel Defendants' compliance with Plaintiffs' Class Certification Discovery Requests (ECF Nos. 173, 180) and receiving Defendants' production of responsive materials, Plaintiffs filed their reply in support of class certification. (ECF No. 192).

---

[2] On July 16, 2021, Defendants filed a Motion to Certify the Court's July 7, 2021 Opinion and Order for Interlocutory Appeal and to Stay Further Proceedings Pending Appeal ("Motion to Certify for Interlocutory Appeal") (ECF No. 151). The Motion to Certify for Interlocutory Appeal was fully briefed as of August 9, 2021 (ECF No. 159).

Thereafter, the Parties engaged in a confidential mediation before the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (the "Mediators"). Prior to the mediation, the Parties exchanged detailed mediation statements on February 8, 2022, addressing liability and damages issues with numerous exhibits. The parties then participated in a two-day mediation session in California on February 16-17, 2022, during which counsel made extensive presentations relating to liability and damages. After substantial negotiation throughout the mediation process, the Parties reached an agreement in principle to settle the Action on February 17, 2022, based on a recommendation by the Mediators. Thereafter, the Parties worked diligently to negotiate the full settlement terms, which are set forth in the Stipulation.

### III.   ARGUMENT

#### A.   Preliminary Approval Is Warranted

A district court's review of a proposed class action settlement is a two-step process. First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class. *See* Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the court determines whether to approve the settlement on a finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice to the class upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). This standard for preliminary approval of class action settlements was established by amendments to Rule 23(e) that became effective on December 1, 2018. Prior to those amendments, courts had developed a standard for preliminary approval through case law that was substantively similar to the current standard but phrased differently. A common formulation was that the court should grant preliminary approval if "the proposed settlement appears to be the

product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (citation omitted); *accord In re Platinum & Palladium Commod. Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. Jul. 15, 2014); *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009). In considering preliminary approval, a court looks to both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *Platinum & Palladium*, 2014 WL 3500655 at *11 (citation omitted).

As shown below, preliminary approval should be granted because the proposed Settlement is procedurally and substantively fair and the Court will be able to approve the Settlement as fair, reasonable, and adequate at final approval. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

### 1.   Plaintiffs and Lead Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have zealously prosecuted this Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits. Plaintiffs were active and informed participants in the litigation. Mr. Moshell commenced this action by filing the initial complaint, and later agreed to serve as an additional class representative to provide the class with more robust representation. Likewise, Lead Plaintiff testified before Judge Rakoff as to his ability to supervise counsel and oversee the litigation during the Lead Plaintiff hearing. Faithfully executing this duty, Lead Plaintiff oversaw the drafting of robust amended complaints containing over 100 pages of detailed allegations, substantial fact discovery, and extensive briefing on dispositive motions, motion for class certification, and discovery motions. Plaintiffs received regular updates from counsel and

010886-11/1858909 V4

frequently attended conferences with counsel regarding the status of the litigation by video or phone. Plaintiffs also appeared for depositions in connection with Class Certification. Plaintiffs further participated in the two-day mediation by phone, were well aware of both the Settlement Class's and Defendants' best arguments concerning liability and damages, and were consulted on and approved the terms of the Settlement.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding the Company and interviews of confidential witnesses; (ii) briefing on Defendants' motion to dismiss, motion for reconsideration and for sanctions, and Motion for Interlocutory Appeal; (iii) engaging in extensive discovery efforts; (iv) briefing of the class certification motion; (v) reviewing of voluminous discovery; and (vi) working with experts and consultants in market efficiency, loss causation, and damages issues. In consultation with its damages expert and consultants, Lead Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $24 million settlement. Accordingly, the Settlement Class has been, and remains, well represented.

2.      **The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

"When a settlement is the product of arms-length negotiations between experienced, capable counsel after meaningful discovery, it is afforded a presumption of fairness, adequacy, and reasonableness." *Lea v. Tal Education Group*, 2021 WL 5578665, at *4 (S.D.N.Y. Nov. 30, 2021) (internal quotations and citation omitted). "A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness. . . . Involvement by a mediator in settlement negotiations also supports a finding of procedural fairness." *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at

*5 (E.D.N.Y. Jan. 6, 2021) (internal quotations and citation omitted) (finding that the parties' exchanging of mediation briefs addressing the merits of the case and attendance of a day-long mediation session created no doubt that the settlement was negotiated at arm's-length).

Here, Lead Plaintiff and Lead Counsel only agreed to settle the claims after a rigorous factual investigation and consultation with experts, and after testing the Parties' claims and defenses through a mediation process overseen by highly experienced third-party neutrals Honorable Daniel Weinstein (Ret.) and Ambassador David Carden. In fact, the accepted Settlement was the product of two full days of mediation and was the result of the mediators' own recommendation to the Parties. "[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable." *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (in approving securities class action settlement, the court observed, "Judge Weinstein's role in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc*., 822 F. App'x 40 (2d Cir. 2020) (finding proposed settlement was procedurally fair, given that "[t]he $35 million amount is based on the suggestion by a neutral mediator, Judge Weinstein of the JAMS").

Further, Plaintiffs, who both were accountants in the energy industry and are sophisticated retail investors that closely supervised this litigation, recommend that the Settlement be approved. *Mikhlin*, 2021 WL 1259559, at *4 (approving settlement led by class representatives who were sophisticated retail investors). Likewise, Lead Counsel has extensive experience in prosecuting securities class actions, both in this District and nationally, and has also concluded that the

010886-11/1858909 V4

Settlement is in the best interests of the Class. *Lea*, 2021 WL 5578665, at \*8 (courts should hesitate to substitute their judgement for that of the parties and experienced counsel who negotiated the settlement).

In sum, the fact that the Settlement is the product of arm's-length settlement negotiations, is based on a mediator's recommendation, has been approved by the Court-appointed Lead Plaintiff and Mr. Moshell (the investor who initiated this suit), and was entered into by experienced and informed counsel, demonstrates the procedural fairness of the process by which the Settlement was reached. The Settlement is, therefore, presumptively fair, reasonable, and adequate. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*4 (S.D.N.Y. May 9, 2014) ("This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations."), *aff'd, Arbuthnot v. Person*, 607 F. App'x 73 (2d Cir. 2015).

### 3. The Substantial Benefits for the Class, Weighed Against Litigation Risks, Support Preliminary Approval

The Settlement provides a payment of $24 million for the benefit of the Class. The Settlement is a favorable result for Class Members given the risks of continued litigation. Although Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the expense and length of litigation through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.

Here, Plaintiffs faced significant risks that, at either the summary judgment stage or after a trial, Defendants would prevail in demonstrating that the alleged false and misleading statements concerning the projected cost and schedule for the LCCP are barred by the PSLRA's Safe Harbor Provision. As the Court already ruled, all of "defendants' LCCP cost and schedule estimates do constitute, contrary to plaintiff's argument, forward-looking statements as defined by the PSLRA

(ECF No. 74, Memorandum Order, dated Aug. 24, 2020, at 8-9). Framed in the disjunctive, the Safe Harbor Provision applies if a forward-looking statement is "identified and accompanied by meaningful cautionary language or is immaterial or the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). Defendants argued that two separate prongs of the Safe Harbor Provision independently dispose of Plaintiffs' Section 10(b) claim.

First, Defendants contended that each of the challenged disclosures was accompanied by meaningful cautionary language. Although the Court rejected Defendants' arguments as to the sufficiency of the cautionary language at the motion to dismiss stage, the Court did so by relying on Plaintiffs' theory that the cautionary language was "misleading in light of historical fact." Defendants argued that the evidentiary record would not conclusively show that Sasol had internally determined that the LCCP cost and schedule projections would be higher than what was publicly disclosed.

Second, Defendants argued that Sasol's statements were separately protected under the Safe Harbor Provision because Plaintiffs could not prove that Defendants had "actual knowledge" that the LCCP projections were contemporaneously false when made—which this Court and others have recognized constitutes a more demanding mental element of a person's intention than the traditional scienter element. ECF No. 74, Memorandum Order, dated Aug. 24, 2020, at 13; *see also In re Barrick Gold Sec. Litig.*, 2015 WL 1514597, at *10 (S.D.N.Y. Apr. 1, 2015) (finding that, while internal company reports suggesting that project would not be complete within publicly disclosed cost and time frame "plausibly allege[d] recklessness," "they do not support a strong inference that the estimates were announced with actual knowledge of their falsity"). Here, Defendants argued that the evidentiary record would demonstrate that the persons who made the

- 12 -

challenged statements—Constable, Cornell, Nqwababa, and Victor—genuinely believed the projections were accurate. If Defendants prevailed on either of those arguments, virtually the entirety of the alleged misstatements would be dismissed,[3] and Plaintiffs may have been prevented from obtaining any recovery for investors in this Action.

Plaintiffs also faced the risk of not proving the element of scienter. Defendants argued that there was no "motive and opportunity" evidence suggesting that anyone benefited economically from the alleged fraud. Likewise, Defendants argued that even assuming *arguendo*, that a theory of recklessness could establish scienter in this action, the evidentiary record foreclosed Plaintiffs' ability to prove it. If Defendants prevailed on their scienter arguments, Plaintiffs' claims would have been dismissed, resulting in no recovery.

Plaintiffs also faced the risk of not proving the essential element of loss causation. For instance, in opposing class certification, Defendants argued that the Court should end the Class Period on August 16, 2019, contending that the final alleged disclosure event occurring on January 14, 2020, when Sasol revealed that the Company had "experienced an explosion and fire at its LCCP low-density polyethylene (LDPE) unit" on January 13, 2020, did not "correct" their alleged misstatements. Defendants' Opp. to Class Cert. at 22-24 (ECF No. 169). If Defendants prevailed on this loss-causation argument, recoverable damages would have declined significantly.

Finally, Plaintiffs faced substantial risks of offering an admissible damages theory and calculating class-wide damages. In particular, Defendants would likely argue that since the nature and value of misrepresented and omitted material facts during the Class Period purportedly

---

[3] Judge Rakoff found that Defendant Constable's statement in June 2016 that the $11 billion cost estimate represented a "worst-case scenario" was not forward-looking. *Moshell v. Sasol Ltd.*, 481 F. Supp. 280, 292 (S.D.N.Y. 2020). However, Defendants similarly contend that this statement is inactionable.

- 13 -

changed during the Class Period (i.e., the size in the deviation between Sasol's internal projections of the cost and schedule of the LCCP versus Defendants' public statements), the standard constant dollar methodology—which assumes that the amount of artificial stock inflation dissipated on each corrective disclosure was present in the stock price going back to the beginning of the Class Period —would not be appropriate here. According to Defendants, Plaintiffs would therefore have to "scale" the artificial inflation for each day over the Class Period, which Defendants would likely aver Plaintiffs could not do through a reliable methodology supported by the evidence. Defendants would also likely argue that on the dates for many of the corrective disclosures for which Plaintiffs claimed damages, Sasol also released non-fraudulent, company-specific information adversely affecting Sasol's ADR prices, which losses in turn would need to be "parsed" from investors' recoverable damages. If Defendants prevailed on these "scaling" and "parsing" arguments, then recoverable damages would have declined significantly.

On all of these issues, Plaintiffs would have to prevail at several stages—on a motion for class certification, on a motion for summary judgment, and at trial; and if they prevailed on those, on the appeals that would likely follow—which would have taken years. At each stage, there were very significant risks attendant to the continued prosecution of the Action, as well as considerable expense and delay. The Settlement is desirable because it will provide a prompt and certain benefit to the Class rather than the mere possibility of a recovery after additional years of costly litigation and appeals.

Lastly, the Settlement is also reasonable when considered in relation to the range of potential recoveries that might be recovered if Plaintiffs prevailed at trial, which was far from certain for the reasons noted above. Lead Plaintiff's damages expert estimated that maximum damages for the entirety of the Class Period and attributable to the six alleged fraud-related

- 14 -

disclosure dates ranged from $158.6 million to $202.5 million. Accordingly, the $24 million that will be available for claimants represents approximately 12% to 15% of the maximum recoverable damages. However, this "best case" scenario does not disaggregate any non-fraud related causes of downward stock movement on the six alleged corrective disclosure dates and assumes a constant dollar inflation throughout the entirety of the Class Period. This calculation also does not net gains on pre-class period purchases accrued during the class period, which Defendants argued should be removed.[4]

Lead Plaintiff's expert also considered other scenarios based on the factual record, Defendants' arguments, and risks related thereto. For instance, Defendants argued vehemently that that there could be no liability for alleged misstatements before June 6, 2016, when construction at the LCCP was in the early stages. Defendants further contended that Plaintiffs faced significant risk for establishing liability on alleged misstatements before March 19, 2018, only after which the Company released a series of large cost increases and schedule delays over a short period of time. Similarly, as noted above, Defendants aggressively challenged loss causation with respect to the January 14, 2020 disclosure. If Defendants were successful at convincing the Court at class certification or summary judgment, or a jury at trial, that there was no liability for certain earlier time periods or no loss causation for certain alleged corrective disclosures, then the Class Period would effectively be shortened, significantly reducing recoverable damages. The below table provides a range of possible outcomes and percentages of recovery, assuming various permutations of liability over various potential Class Periods and without netting for alleged gains:

---

[4] Assuming that gains on pre-class period purchases accrued during the class period are removed or "netted," Plaintiffs' expert estimated maximum damages for the entirety of the Class Period and attributable to the six alleged fraud-related disclosure dates was approximately $116 million. Accordingly, the $24 million settlement equates to more than 20% of the recoverable damages.

010886-11/1858909 V4

| Class Period | Maximum Damages | Percentage of Recovery ($24 million settlement) |
|---|---|---|
| 06/06/2016 – 01/13/2020 | $86.9M – 109.8M | 22% – 28% |
| 06/06/2016 – 08/15/2019 | 69.8M – $87.3M | 29% – 34% |
| 03/19/2018 – 01/13/2020 | $55.1M – 63.9M | 38% – 44% |
| 03/19/2018 – 08/15/2019 | $42.2M – $49.1M | 49% – 57% |

These percentages of recovery are well-above the range of settlements that have received approval within this District. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

a.    **The Effective Process for Distributing Relief to the Settlement Class**

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator, Strategic Claims Services. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of

- 16 -

the Net Settlement Fund. *See* Stipulation ¶ 25. Lead Plaintiff's claim will be reviewed in the same manner.

Based on the nature of the claims and defenses, evidence uncovered, and the Parties' mediation presentations, Plaintiffs propose allocating the Net Settlement Fund to five purchasing time frames within the Settlement Class Period as follows:

| Proposed Allocation of Settlement Proceeds | | | | |
| --- | --- | --- | --- | --- |
| Mar. 10, 2015 to Sept. 6, 2015 | Sept. 7, 2015 to June 5, 2016 | June 6, 2016 to Feb. 26, 2017 | Feb. 27, 2017 to Aug. 15, 2019 | Aug. 16, 2019 to Jan. 13, 2020 |
| (4%) | (23%) | (25%) | (44%) | (4%) |

As noted above, the proposed allocation of settlement proceeds accounts for the reduced likelihood of success of the claims for investors who bought early in the Class Period and recognizes the relative strength of those who bought later in the Class Period. The proposed allocation also acknowledges the significant risk of the dismissal of the final January 14, 2020 disclosure event. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *21 (S.D.N.Y. Nov. 8, 2010) (approving allocation plan granting larger portion of settlement proceeds to investors who bought during time periods with stronger claims); *In re Veeco Instr. Inc. Sec. Litig.*, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007) (same); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429 (S.D.N.Y. 2001) ("Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim.").

Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. Stipulation ¶ 29(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id.*

- 17 -

After the Settlement reaches its Effective Date (*id.* ¶ 36) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, unclaimed funds shall be donated to Public Justice, P.C. *See* Notice at 6.

### b.    The Settlement Does Not Excessively Compensate Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and litigation expenses. The Settlement does not contemplate any specific award. Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Defendants. In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 22% of the Settlement Fund as attorneys' fees, an amount that is below the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries. *See, e.g.*, *In re Monster Worldwide, Inc. Sec. Litig.*, 2008 WL 9019514, at *1 (S.D.N.Y. Nov. 25, 2008) (awarding 25% of $47.5 million settlement); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (awarding 33.3% of $35 million ERISA class action settlement); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 2015 WL 13639234, at *4 (S.D.N.Y. Oct. 15, 2015) (awarding 30% of $33 million settlement). Counsel will also seek payment of Litigation Expenses incurred during the prosecution of the Action, in an amount not to exceed $600,000.

010886-11/1858909 V4

### 4.        Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff, Additional Representative Plaintiff Moshell, or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiff and Additional Plaintiff Representative, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[5] Moreover, Plaintiffs' proposed allocation of the settlement proceeds granting those investors with stronger relative claims a higher percentage of the settlement proceeds, based on plaintiffs' counsel and their experts' determination of the merits of class members' claims and corresponding recoverable damages, have been routinely recognized as an appropriate way to equitably distribute settlement proceeds. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 429-30 (approving allocation plan and according counsel's opinion "considerable weight" because there were "detailed assessments of the strengths and weaknesses of the claims asserted, the applicable damages, and the likelihood of recovery"); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *13 (quoting *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983)) ("'[T]here is no rule that settlements benefit all class members equally[.]' Instead, the general rule is that an allocation formula need only have a reasonable and rational basis, particularly if recommended by experienced and competent class counsel.").

Finally, Rule 23(e)(2)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. Here, on April 1, 2022, the Parties entered the

---

[5] Plaintiffs will seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

Stipulation, and also entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). Stipulation ¶ 40. The Supplemental Agreement sets forth the conditions under which Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and term sheet are the only agreements concerning the Settlement entered into by the Parties.

## B.  Preliminary Certification of the Settlement Class

For the reasons set forth in its previously filed motion for class certification (ECF Nos. 82-84), Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties, is "all persons and entities who purchased or otherwise acquired American Depository Receipts ("ADRs") of Sasol during the period from March 10, 2015, to January 13, 2020, inclusive, and who were allegedly damaged thereby."[6] *See* Stipulation ¶ 1(ss).

---

[6] Excluded from the Settlement Class are: (i) Defendants; (ii) the Immediate Family Members of the Individual Defendants; (iii) any person who was an Officer or director of Sasol during the Settlement Class Period and his or her Immediate Family Members; (iv) any parent, subsidiary, or affiliate of Sasol; (v) any firm, trust, corporation, or other entity in which any excluded person or entity has, or had during the Settlement Class Period, a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

Pursuant to Rule 23(a): (1) the Settlement Class is so numerous that joinder of all members is impracticable (ECF No. 83 at 9-10); (2) there are questions of law or fact common to the Settlement Class (*id*. at 10-11); (3) the claims or defenses of Lead Plaintiff are typical of the claims or defenses of the Settlement Class (*id*. at 11); and (4) Lead Plaintiff and Lead Counsel will fairly and adequately protect the interests of the Settlement Class (*id*. at 12).

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard: (i) common questions of both fact and law predominate, given the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) (*see* ECF No. 83 at 14-22); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims (*id*. at 24-25).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (internal quotations and citation omitted). For the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## C.    The Proposed Notice Program Should Be Approved

The proposed Notice and Summary Notice would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the

- 21 -

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005).

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedure for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time, and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The Notice also satisfies the PSLRA's separate requirements by, *inter alia*, stating: (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. § 78u-4(a)(7)(A)-(F).

The proposed notice program notifies class members through individual notice by mail and through electronic publication in the *GlobeNewswire* and through print publication in the *Investor's Business Daily*. To the extent email addresses are provided to the Claims Administrator, the Notice will also be emailed. Upon entry of the Preliminary Approval Order, the Claims

010886-11/1858909 V4

Administrator will mail the Notice and Claim Form to all Class Members who can be identified and located using information provided by Sasol's transfer agent as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases. The Notice and Claim Form will be available on the Settlement website and Lead Counsel's website.

Lead Plaintiff also requests that the Court appoint Strategic Claims Services as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. Strategic Claims Services is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. Its fees and expenses are to be payable from the Settlement Fund.

### D.     Proposed Schedule of Settlement-Related Events

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing, which Lead Plaintiff requests be approximately 100 days from entry of the Order in order to comply with the Class Action Fairness Act and to allow recipients of the Notice sufficient time to act, given the global COVID-19 pandemic:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (the "Notice Date") | *No later than 28 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 28 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 28 calendar days before the Settlement Hearing.* |

- 23 -

| Event | Proposed Timing |
|---|---|
| Deadline for receipt of requests for exclusion or objections | *No later than 21 calendar days before the Settlement Hearing.* |
| Deadline for Submitting Claim Forms | *No later than 44 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience. The hearing can be held either in-person or remotely, at the discretion of the Court. Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Strategic Claims Services as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

DATED: April 5, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
    STEVE W. BERMAN

Steve W. Berman (admitted *Pro Hac Vice*)
Jerrod C. Patterson
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

- 24 -

Lucas E. Gilmore (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com

*Counsel for Lead Plaintiff David Cohn and*
*Additional Representative Plaintiff Chad L. Moshell*

- 25 -