UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CHAD LINDSEY MOSHELL, Individually and On Behalf of All Others Similarly Situated,<br><br>                           Plaintiff,<br><br>v.<br><br>SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN,<br><br>                           Defendants. | Case No. 1:20-cv-01008-JPC<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS** |

010886-11/1967681 V1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL AND PROCEDURAL SUMMARY ........................................................................4

ARGUMENT ..............................................................................................................................5

I.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS'
      FEES FROM THE COMMON FUND ...........................................................................5

II.   THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF
      THE COMMON FUND ..................................................................................................5

III.  THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER
      EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE
      LODESTAR METHOD....................................................................................................6

      A.    The Requested Attorneys' Fees Are Reasonable Under the
            Percentage-of-the-Fund Method .........................................................................6

      B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar
            Method .................................................................................................................7

IV.   THE FEE REQUEST IS ENTITLED TO A PRESUMPTION OF
      REASONABLENESS BECAUSE IT IS BASED ON A FEE AGREEMENT
      ENTERED INTO WITH LEAD PLAINTIFF AT THE OUTSET OF THE
      LITIGATION PREVIOUSLY REVIEWED BY THE COURT ......................................9

V.    THE *GOLDBERGER* FACTORS CONFIRM THAT THE REQUESTED
      FEE IS REASONABLE ................................................................................................10

            1.    The Time and Labor Expended by Counsel ..............................................11

            2.    The Risks of the Litigation Support the Requested Fee ...........................12

            3.    The Magnitude and Complexity of the Litigation ....................................17

            4.    The Quality of Lead Counsel's Representation Supports the
                  Requested Fee ...........................................................................................18

            5.    The Requested Fee in Relation to the Settlement .....................................19

            6.    Public Policy Considerations ....................................................................19

            7.    The Class's Reaction to the Fee Request ..................................................20

VI.   PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY
      INCURRED AND NECESSARY TO THE PROSECUTION OF THIS
      ACTION ........................................................................................................................20

010886-11/1967681 V1

VII.   THE PROPOSED AWARD TO PLAINTIFFS IS REASONABLE.................................22

VIII.  CONCLUSION.....................................................................................................................23

010886-11/1967681 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. Jan. 2, 2001) ..................................................................13

*In re Barrick Gold Sec. Litig.*,
2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015).....................................................................14

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)............................................................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................9

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).................................................................6, 8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)..............................................................................................13

*City of Providence v. Aéropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...............................................................17, 18

*In re Cnova N.V. Sec. Litig.*,
No. 1:16-cv-00444, ECF No. 148 (S.D.N.Y. Mar. 20, 2018)............................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................8, 12, 13, 19

*In re Credit Default Swaps Antitrust Litig.*,
2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).....................................................................9

*In re Deutsche Telekom AG Sec. Litig.*,
2005 WL 7984326 (S.D.N.Y. June 14, 2005) .....................................................................9

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)......................................................................7

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................................6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................................................5, 8, 16, 23

010886-11/1967681 V1

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ........................................................................22

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................................................... *passim*

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ............................................................ *passim*

*Hayes v. Harmony Gold Mining Co.*,
  509 F. App'x 21 (2d Cir. 2013) ............................................................................................6

*In re Hi- Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................................................................8

*Hicks v. Morgan Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................................................................5

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
  2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019).......................................................................6

*LandmenPartners, Inc. v. Blackstone Grp. L.P.*,
  2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ....................................................................7

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................................9

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................................................................9, 23

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................17

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)...........................................................................................................8

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
  2016 WL 3369534 (S.D.N.Y. May 2, 2016) .........................................................................8

*In re Nortel Networks Corp. Sec. Litig.*,
  539 F.3d 129 (2d Cir. 2008)...............................................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ...................................................................................9

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999)................................................................................................5

010886-11/1967681 V1

*Slayton v. Am. Express Co.*,
604 F.3d 758 (2d Cir. 2010).................................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)................................................................................................................5

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
No. 18-cv-01620, ECF Nos. 44, 49 (S.D.N.Y. Mar. 27, 2020) ...............................................7

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).........................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)..................................................................................................6, 8

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017)........................................................................9

**STATUTES**

15 U.S.C. § 78u-4(a)(4) .......................................................................................................22

**OTHER AUTHORITIES**

Theodore Eisenberg, et al., *Attorney's Fees in Class Actions: 2009-2013*, 92
N.Y.U. L. Rev. 937 (2017) ....................................................................................................7

010886-11/1967681 V1

Court-appointed Lead Counsel, Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or "Lead Counsel"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 22% of the Settlement Fund, net of Court-approved Litigation Expenses.[1] Lead Counsel also seeks $431,703.42 for Litigation Expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action, and $35,000 for costs incurred by Plaintiffs directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

The proposed Settlement, which provides for a cash payment of $24 million to resolve the Action, is an outstanding result for the Settlement Class. The significant monetary recovery was achieved through the skill, tenacity, and effective advocacy of Lead Counsel, which litigated this Action on a fully contingent fee basis against highly skilled defense counsel. The Settlement was reached only after two years of hard-fought litigation, including the substantial completion of document discovery, which required Lead Counsel to dedicate a significant amount of time and resources to this case.

As detailed in the accompanying Declaration of Steve Berman ("Berman Declaration"),[2] Lead Counsel vigorously pursued this litigation from its outset by, among other things, conducting a comprehensive investigation into the claims asserted in the Action; preparing detailed amended complaints, including the operative 115-page Second Amended Class Action Complaint for

---

[1] All capitalized terms not defined herein have the same meanings set forth in the Stipulation and Agreement of Settlement ("Stipulation"), previously filed with the Court. Dkt. No. 203-1.

[2] The Berman Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the nature of the claims asserted in the Action (¶¶ 15-20); the history of the Action (¶¶ 21-47); the risks and uncertainties of continued litigation of the Action (¶¶ 54-66); and the services Lead Counsel provided for the benefit of the Class (¶¶ 82-108).

010886-11/1967681 V1

Violations of the Federal Securities Laws ("Complaint"), based on that investigation; successfully opposing, in significant part, Defendants' motion to dismiss the Complaint; defeating Defendants' Motion for Reconsideration and Sanctions, which included participating in the depositions of six confidential witnesses and submission of an expert report on the standards and practices for use of confidential witnesses in securities class actions; opposing Defendants' motion for Interlocutory Appeal of the Court's Order denying Defendants' Motion for Reconsideration and Sanctions; fully briefing Plaintiffs' Motion for Class Certification, which involved a detailed expert report and the depositions of Plaintiffs and their class certification expert, Dr. Hartzmark, and contentious discovery motion practice to obtain documents necessary for Plaintiffs' supporting reply; conducting wide-ranging fact discovery, which included the analysis of over 700,000 pages of documents produced by Defendants; consultation with economic and engineering experts; and engaging in extensive settlement negotiations, including participation in two full-day mediation sessions under the auspices of experienced and highly respected mediators, the Honorable Daniel Weinstein (Ret.) and Ambassador David Carden (collectively, the "Mediators"). *See* Berman Decl. at ¶ 6.

The Settlement achieved through Lead Counsel's efforts is a particularly favorable result when considered in light of the significant risks of proving the Defendants' liability and establishing loss causation and damages. These risks are set forth in detail in the Berman Declaration at paragraphs 54 to 66 and are summarized in the Settlement Memorandum and below. Despite these risks, Lead Counsel collectively invested over 6,000 hours and incurred over $431,000 in Litigation Expenses, all on a contingent-fee basis with no assurance of ever being paid. *See* Berman Decl. at ¶¶ 91, 96, 102, 104; *see also* Ex. 4 to Berman Decl. (Lead Counsel's Fee and Expense Declaration).

010886-11/1967681 V1

As compensation for their considerable efforts on behalf of the Class and the risk of non-payment they faced in prosecuting the Action on a contingent basis, Lead Counsel seeks attorneys' fees in the amount of 22% of the Settlement Fund, net of Court-approved Litigation Expenses. Berman Decl. at ¶ 12. The requested fee is well within the range of fees that courts in this Circuit have awarded in securities class actions with comparable recoveries on a percentage basis. *Id.* The requested fee also represents a multiplier of approximately 1.40 on Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions of similar size with significant contingency risks such as this one. *Id.* In addition, the expenses for which Lead Counsel seeks payment were reasonable and necessary for the successful prosecution of the Action. *Id.* at ¶¶ 102, 104.

The application for fees and expenses has the full support of the Plaintiffs. *See* Ex. 1 to Berman Decl. (Decl. of Lead Plaintiff David Cohn, at ¶¶ 10-11); Ex. 2 to Berman Decl. (Decl. of Additional Representative Plaintiff Chad Lindsey Moshell, at ¶¶ 11-12). Plaintiffs, who are sophisticated retail investors and were accountants in the energy industry, actively supervised the Action and have endorsed the requested fee as fair and reasonable in light of the result achieved in the Action, the quality of the work counsel performed, and the risks of the litigation. *Id.* The fee request is also consistent with the written fee agreement entered into between Lead Counsel and Lead Plaintiff at the outset of their involvement in the Action, which the Court reviewed and considered in connection with the appointment of Lead Plaintiff. *See* Dkt. No. 52 at 8 (the Court conducted an *in camera* review of Hagens Berman's retainer agreement with Mr. Cohn). Berman Decl. at ¶¶ 12, 86.

The Settlement Class Members' reaction to the Settlement strongly evidences that Lead Counsel's fee and expense request is fair and reasonable. *See id.* at ¶¶ 67-74. In accordance with

this Court's Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 204), notice was provided to Settlement Class Members (the "Notice").[3] *See id.* The Notice informed Settlement Class Members that Lead Counsel would submit an application for 22% of the Settlement Amount plus expenses not to exceed $600,000, plus interest on such amounts. *Id.* at ¶ 68. While the July 28, 2022 deadline set by the Court for Class Members to object has not yet passed, to date, no objections to the request for fees and expenses have been received.[4] *Id.* at ¶ 73. Additionally, the Notice informed Settlement Class Members that Lead Plaintiff and Plaintiff would seek awards of $20,000 and $15,000, respectively. *Id.* at ¶ 68. As with Lead Counsel's request for fees and reimbursement of expenses, no objections have been received, which evidences the awards' reasonableness. *Id.* at ¶ 73.

In light of the recovery obtained, the time and effort devoted by Lead Counsel, the work performed, the skill and expertise required, and the risks that counsel undertook, Lead Counsel submits that the requested fee award is reasonable. In addition, the Litigation Expenses for which Lead Counsel seeks payment were reasonable and necessary for the successful prosecution of the Action. Lastly, Plaintiffs' request for awards compensating them for their time involved in this Action are reasonable and should be granted.

## FACTUAL AND PROCEDURAL SUMMARY

The Court is respectfully referred to the Berman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of counsel for the Plaintiffs, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

---

[3] *See* Ex. 3 to Berman Decl. (Decl. of Margery Craig on behalf of the Claims Administrator at ¶¶ 2-10).

[4] The deadline for the filing of objections is July 28, 2022.

010886-11/1967681 V1

**ARGUMENT**

### I.    LEAD COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future misconduct of a similar nature." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 8, 2010).

The Supreme Court has emphasized that private securities actions such as this Action are "an essential supplement to criminal prosecutions and civil enforcement actions" by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Compensating plaintiffs' counsel for their risks is crucial, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### II.    THE COURT SHOULD AWARD A REASONABLE PERCENTAGE OF THE COMMON FUND

Lead Counsel respectfully submits that the Court should award a fee based on a percentage of the common fund. The Second Circuit has approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49 (holding that either the percentage-of-fund or lodestar method may be used to determine appropriate attorneys' fees); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (stating that the "percentage-of-the-fund method has been deemed a

- 5 -

010886-11/1967681 V1

solution to certain problems that may arise when the lodestar method is used in common fund cases"). More recently, the Second Circuit has reiterated its approval of the percentage method, stating that it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," and has noted that the "trend in this Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citations omitted); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class.").

Indeed, "[t]he text of the PSLRA . . . contemplates using the percentage [of the common fund] method, as it provides that total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount recovered for the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at \*15 (S.D.N.Y. Dec. 18, 2019) (citations and quotation marks omitted) (emphasis in original). For this reason, this Court and others in this District have used the percentage of the common fund method. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*17 (S.D.N.Y. Oct. 16, 2019); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018).

### III.   THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

**A.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The 22% attorney fee (net of expenses) requested by Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in securities class actions and other similar litigation with comparable recoveries. *See, e.g.*, *In re J.P. Morgan Stable Value Fund*

*ERISA Litig.*, 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) (33% awarded for a $75 million settlement, yielding a lodestar multiplier of 1.4, "compar[ed] favorably" to similar cases in the Second Circuit for action that settled on eve of trial); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015) (33% awarded for $26.5 million settlement yielding a lodestar multiplier of 1.02 was "well within the range of reasonableness" in light of "similar awards in this Circuit" for action that settled during appeal of motion to dismiss order); *In re Cnova N.V. Sec. Litig.*, No. 1:16-cv-00444, ECF No. 148 (S.D.N.Y. Mar. 20, 2018) (33% fee awarded for $28.5 million settlement in action that settled prior to discovery with 3.79 multiplier); *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 18-cv-01620, ECF Nos. 44, 49 (S.D.N.Y. Mar. 27, 2020) (awarding 33% fee of $15 million settlement with multiplier of 3.10 for action that settled before discovery); *LandmenPartners, Inc. v. Blackstone Grp. L.P.*, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (33% fee awarded for $85 million settlement with multiplier of 2.06 for action that settled on eve of trial); *see also* Theodore Eisenberg, et al., *Attorney's Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 949 (2017) (mean multiplier of 1.65 and median multiplier of 1.5 in class actions with settlements between $23.4 million and $67.5 million).

In sum, the fee requested here is well within the range of fees awarded on a percentage basis in comparable actions.

**B.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, district courts may cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50. Through July 20, 2022, Lead Counsel has spent a total of 6,050 hours of attorney and other professional support time prosecuting the Action for the benefit of the Class. Berman Decl. at ¶ 91.

Lead Counsel's total lodestar, derived by multiplying the hours spent by each attorney

010886-11/1967681 V1

and paraprofessional by their current hourly rates, is \$3,774,677.50.[5] *Id.* The requested fee of 22% of the \$24 million Settlement Fund (net of expenses) equates to \$5,280,000 plus interest earned, and thus represents a multiplier of approximately 1.40 of the total lodestar. *Id.* at 92.

In complex contingent litigation such as this Action, fees representing multiples above the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See In re Flag Telecom Holdings*, 2010 WL 4537550, at *26 ("a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors"); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

The requested 1.40 multiplier is well within the range of multipliers commonly awarded in securities class actions and other comparable litigation. In complex litigation, lodestar multipliers between 2 and 5 are commonly awarded, and fee awards resulting in multipliers as high as 6 have also been approved. *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Christine Asia Co.*, 2019 WL 5257534, at *19 (approving \$62.5 million fee based on lodestar multiplier of approximately 2.15, which the Court found to be "well within the range commonly awarded in securities class actions of this complexity and magnitude"); *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534 (S.D.N.Y. May 2, 2016)

---

[5] The Supreme Court and courts in this Circuit have approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation.").

010886-11/1967681 V1

(3.9 multiplier); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (3.14 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (3.96 multiplier); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Credit Default Swaps Antitrust Litig.*, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (multiplier of "just over 6"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (6.96 multiplier).

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar. Moreover, as discussed below, each of the factors established for the review of attorneys' fee awards by the Second Circuit in *Goldberger* strongly supports a finding that the requested fee is reasonable.

### IV.    THE FEE REQUEST IS ENTITLED TO A PRESUMPTION OF REASONABLENESS BECAUSE IT IS BASED ON A FEE AGREEMENT ENTERED INTO WITH LEAD PLAINTIFF AT THE OUTSET OF THE LITIGATION PREVIOUSLY REVIEWED BY THE COURT

A number of courts have treated fee arrangements between PSLRA lead plaintiffs and their counsel established at the outset of the litigation to be presumptively reasonable in light of Congress's intent to empower lead plaintiffs under the PSLRA to select and supervise attorneys on behalf of the class. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions enjoy "a presumption of reasonableness"); *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) ("Since the passage of the PSLRA, courts have found such an agreement between fully informed lead plaintiffs and their counsel to be presumptively reasonable"). The Second Circuit has indicated that the Court

- 9 -

Case 1:20-cv-01008-JPC    Document 213    Filed 07/21/22    Page 16 of 30

should, at least, give "serious consideration" to such agreements. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133-34 (2d Cir. 2008).

Here, the 22% attorney fee request is made pursuant to the agreement Lead Counsel entered into with Lead Plaintiff—a college-educated former accountant and sophisticated retail investor— at the outset of the litigation. *See* Berman Decl. at ¶¶ 12, 86. Significantly, the Court reviewed and considered the fee arrangement in connection with the appointment of Lead Plaintiff and Lead Counsel. *Id.*; *see* Dkt. No. 52 at 8 (the Court conducted an *in camera* review of Hagens Berman's retainer agreement with Mr. Cohn). Thereafter, Lead Plaintiff took an active role in the litigation and closely supervised the work of Lead Counsel. *See* Ex. 1 to Berman Decl. (Cohn Decl. ¶¶ 3-8). Significantly, both Lead Plaintiff and Additional Representative Plaintiff support the fee request. *See* Exs. 1 and 2 to Berman Decl. (Cohn Decl. ¶¶ 10-11; Moshell Decl. ¶¶ 11-12). Accordingly, the fee should be considered reasonable, and should be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) (noting lead plaintiff that "conscientiously supervised the work of lead counsel and has approved the fee request" contributes to finding reasonableness of fee request).

## V.    THE *GOLDBERGER* FACTORS CONFIRM THAT THE REQUESTED FEE IS REASONABLE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (citation and quotation marks omitted). Consideration of these factors further demonstrates that the fee requested by Lead Counsel is reasonable.

### 1.     The Time and Labor Expended by Counsel

The substantial time and effort expended by Plaintiffs' Counsel in prosecuting the Action and achieving the Settlement support the requested fee. The Berman Declaration details the significant efforts that Lead Counsel dedicated to prosecuting and resolving Lead Plaintiff's claims. As set forth in greater detail in the Berman Declaration, prior to entering into the Settlement, Lead Counsel:

- conducted an extensive investigation into the claims asserted in the Action, which included a thorough review of public information such as SEC filings, research reports, investor call transcripts, press releases, news articles, and Sasol's corporate website; consultation with experts; and contacts and interviews with numerous confidential witnesses (Berman Decl. at ¶ 6);

- researched and drafted two extensive amended complaints based on Lead Counsel's investigation (*id.*);

- drafted an opposition to, and defeated in substantial part, Defendants' motion to dismiss the Complaint (*id.*);

- successfully opposed Defendants' motions for reconsideration and request for sanctions, which involved exchange documents, participating in the depositions of six confidential witnesses and submitting an expert report on the standard of care for use of confidential witnesses in securities class actions (*id.*);

- opposed Defendants' request for interlocutory appeal of the Court's Order denying reconsideration and sanctions (*id.* at ¶ 88);

- fully briefed class certification motion, which involved a detailed expert report on market efficiency and a classwide damage model, the depositions of Plaintiffs and Plaintiffs' class certification expert, contentious discovery motion practice to obtain and incorporate documents in Plaintiffs' reply papers (*id.* at ¶ 6);

- Engaged in substantial discovery, which involved obtaining and reviewing more than 730,000 pages of documents produced by Defendants (*id.* at ¶¶ 42, 88);

- consulted extensively with experts concerning a host of complex issues central to the litigation, including loss causation and damages and mega-project budgeting and scheduling (*id.* at ¶ 6);

- engaged in extensive settlement negotiations with Defendants' counsel, including the exchange of detailed mediation statements on liability and damages, followed by two-day mediation sessions under the auspices of Judge Weinstein and Amb. Carden (*id.*); and

- negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related documents with Lead Plaintiff's motion for preliminary approval of the Settlement (*id.*).

As noted above, Lead Counsel has expended over 6,000 hours prosecuting this Action through July 20, 2022, with a lodestar value of over $3.7 million. Berman Decl. at ¶ 91. The time and effort devoted to this case by Lead Counsel was critical in obtaining the outstanding result achieved by the Settlement. In addition, the legal work on this Action will not end with the Court's approval of the proposed Settlement. Additional hours and resources necessarily will be expended assisting members of the Settlement Class, shepherding the claims process, and responding to Class Member inquiries. The time and effort devoted to this case by Lead Counsel to obtain this $24 million Settlement[6] confirms that the 22% fee request is reasonable.

### 2.    The Risks of the Litigation Support the Requested Fee

The risk of the litigation is one of the most important *Goldberger* factors. *See Goldberger*, 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5. The Second Circuit has recognized that the risks associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

---

[6] As discussed in more detail in the Settlement Memorandum, the Settlement's recovery for Settlement Class Members is fair, reasonable, and adequate. Lead Plaintiff's expert considered other scenarios based on the factual record, Defendants' arguments, and risks related thereto. The Settlement is favorable in light of these other scenarios. *See* Berman Decl. at ¶¶ 64-65 (including table providing a range of possible outcomes and percentages of recovery; and comparing the Settlement's recovery).

010886-11/1967681 V1

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5 (citation omitted); *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. Jan. 2, 2001) (it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award").

While Lead Counsel believes that Plaintiffs' claims are meritorious, Lead Counsel recognized that there were many substantial risks in the litigation from the outset and that Lead Plaintiff's ability to succeed at trial and obtain a substantial judgment was far from certain. This case did not involve a restatement or a parallel SEC action to support Lead Plaintiff's claims or provide a roadmap for discovery. As discussed in greater detail in the Berman Declaration, and in the Settlement Memorandum, there were substantial risks here with respect to liability, loss causation, and damages. *See* Berman Decl. at ¶¶ 54-66.

***First***, there was no guarantee that Plaintiffs would have prevailed on Defendants' Interlocutory Appeal of the Court's Order denying Defendants' Motion for Reconsideration and Sanctions or Plaintiffs Motion for Class Certification. *See id.* at ¶¶ 32-38.

***Second***, Lead Plaintiff faced several risks in proving Defendants' liability with respect to the alleged misstatements and omissions relating to the LCCP. Specifically, Plaintiffs faced significant risks that, at either the summary judgment stage or after a trial, Defendants would prevail in demonstrating that the alleged false and misleading statements concerning the projected cost and schedule for the LCCP are barred by the PSLRA's Safe Harbor Provision. Berman Decl. at ¶¶ 55-57. As the Court already ruled, all of "defendants' LCCP cost and schedule estimates do constitute, contrary to plaintiff's argument, forward-looking statements as defined by the PSLRA" (ECF No. 74, Memorandum Order, dated Aug. 24, 2020, at 8-9). Berman Decl. at ¶ 55. Framed in

- 13 -

the disjunctive, the Safe Harbor Provision applies if a forward-looking statement is "identified and accompanied by meaningful cautionary language or is immaterial or the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010); Berman Decl. at ¶ 55. Defendants argued that two separate prongs of the Safe Harbor Provision independently dispose of Plaintiffs' Section 10(b) claim. *Id.*

As an initial matter, Defendants contended that each of the challenged disclosures was accompanied by meaningful cautionary language. Although the Court rejected Defendants' arguments as to the sufficiency of the cautionary language at the motion to dismiss stage, the Court did so by relying on Plaintiffs' theory that the cautionary language was "misleading in light of historical fact." Defendants argued that the evidentiary record would not conclusively show that Sasol had internally determined that the LCCP cost and schedule projections would be higher than what was publicly disclosed. *Id.* at ¶ 56.

Moreover, Defendants argued that Sasol's statements were separately protected under the Safe Harbor Provision because Plaintiffs could not prove that Defendants had "actual knowledge" that the LCCP projections were contemporaneously false when made—which this Court and others have recognized constitutes a more demanding mental element of a person's intention than the traditional scienter element. ECF No. 74, Memorandum Order, dated Aug. 24, 2020, at 13; *see also In re Barrick Gold Sec. Litig.*, 2015 WL 1514597, at *10 (S.D.N.Y. Apr. 1, 2015) (finding that, while internal company reports suggesting that project would not be complete within publicly disclosed cost and time frame "plausibly allege[d] recklessness," "they do not support a strong inference that the estimates were announced with actual knowledge of their falsity"). Defendants argued that the evidentiary record would demonstrate that the persons who made the challenged statements—Constable, Cornell, Nqwababa, and Victor—genuinely believed the projections were

- 14 -

accurate. If Defendants prevailed on either of those arguments, virtually the entirety of the alleged misstatements would be dismissed, and Plaintiffs may have been prevented from obtaining any recovery for investors in this Action. Berman Decl. at ¶ 57.

**Third**, Plaintiffs also faced the risk of not proving the element of scienter. Defendants argued that there was no "motive and opportunity" evidence suggesting that anyone benefited economically from the alleged fraud. Likewise, Defendants argued that even assuming *arguendo*, that a theory of recklessness could establish scienter in this action, the evidentiary record foreclosed Plaintiffs' ability to prove it. If Defendants prevailed on their scienter arguments, Plaintiffs' claims would have been dismissed, resulting in no recovery. *Id.* at ¶ 58.

**Fourth**, Plaintiffs also faced the risk of not proving the essential element of loss causation. For instance, in opposing class certification, Defendants argued that the Court should end the Class Period on August 16, 2019, contending that the final alleged disclosure event occurring on January 14, 2020, when Sasol revealed that the Company had "experienced an explosion and fire at its LCCP low-density polyethylene (LDPE) unit" on January 13, 2020, did not "correct" their alleged misstatements. Defendants' Opp. to Class Cert. at 22-24 (ECF No. 169). *Id.* at ¶ 59. Defendants would have further asserted that many of the corrective events were confounded by the disclosure of information unrelated to the alleged fraud, such as the declining energy prices and reduced guidance. Defendants would have contended that when one disaggregates the impact of non-fraud-related information from the stock price declines, none or only a small portion of some of the declines were recoverable as damages. If Defendants prevailed on this loss-causation argument, recoverable damages would have declined significantly. *See id.*

**Fifth**, Plaintiffs also faced substantial risks of offering an admissible damages theory and calculating class-wide damages. In particular, Defendants would likely argue that since the nature

- 15 -

and value of misrepresented and omitted material facts during the Class Period purportedly changed during the Class Period (i.e., the size in the deviation between Sasol's internal projections of the cost and schedule of the LCCP versus Defendants' public statements), the standard constant dollar methodology—which assumes that the amount of artificial stock inflation dissipated on each corrective disclosure was present in the stock price going back to the beginning of the Class Period —would not be appropriate here. According to Defendants, Plaintiffs would therefore have to "scale" the artificial inflation for each day over the Class Period, which Defendants would likely aver Plaintiffs could not do through a reliable methodology supported by the evidence. Defendants would also likely argue that on the dates for many of the corrective disclosures for which Plaintiffs claimed damages, Sasol also released non-fraudulent, company-specific information adversely affecting Sasol's ADR prices, which losses in turn would need to be "parsed" from investors' recoverable damages. If Defendants prevailed on these "scaling" and "parsing" arguments, then recoverable damages would have declined significantly. *Id.* at ¶ 61.

While Plaintiffs believe that it had responses to rebut Defendants' arguments, they recognized that the outcome was far from certain, particularly given that the vast majority of issues in this case would turn on a very unpredictable "battle of the experts." In the face of the many uncertainties regarding the outcome of the case, Lead Counsel undertook and prosecuted this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses with no guarantee of compensation.

Lead Counsel's assumption of this risk strongly supports the reasonableness of the requested fee. *See In re Flag Telecom Holdings*, 2010 WL 4537550, at \*27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis

is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.      The Magnitude and Complexity of the Litigation

The magnitude and complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *Guevoura Fund*, 2019 WL 6889901, at *19 (securities class actions are inherently complex); *City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014). The fee request is strongly supported by the complexity of the federal securities law claims asserted in this Action.

As discussed in detail in the Berman Declaration, Plaintiffs' claims raise numerous complex legal and factual issues under the federal securities laws which would require extensive expert discovery and testimony. *See* Berman Decl. at ¶¶ 6, 16; ¶¶ 54-66 (discussing risks of continued litigation). Plaintiffs also faced significant risks at the summary judgment stage, at trial, and during an appeal. Plaintiffs would have to prevail at several stages—on the motion for interlocutory appeal, a motion for class certification, on a motion for summary judgment, and at trial; and if they prevailed on those, on the appeals that would likely follow—which would have taken years. *See id.* At each stage, there were very significant risks attendant to the continued prosecution of the Action, as well as considerable expense and delay. It would be costly and time-consuming to pursue this litigation through and after trial, with no guarantee of success.

As further detailed in the Berman Declaration, Defendants have vigorously opposed Plaintiffs' claims. Assuming Plaintiffs succeeded in certifying the Class and survived a summary judgment motion, trial preparation would have required many additional hours of work, at great expense. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested

- 17 -

motions, and the considerable expenditure of judicial resources. Moreover, the Settlement obtained by Lead Counsel avoids the difficulties and uncertainties of presenting the Settlement Class's damages model to the Court in the hope of proving the full amount of damages.

### 4.      The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. Lead Counsel submits that the quality of its representation is best evidenced by the quality of the result achieved. *Guevoura Fund*, 2019 WL 6889901, at *20; *see also City of Providence*, 2014 WL1883494, at *16-17. It took a great deal of skill to achieve a settlement at this level in this particular case. Specifically, this Action required investigation and mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. To properly perform the legal services this Action called for, Lead Counsel was required to have a robust understanding of complex securities laws and a familiarity with complex litigation procedures.

The quality of representation by counsel of both sides of this Action was high. Indeed, Defendants' counsel, Weil Gotshal & Manges LLP, a leader among international litigation firms, has well-noted expertise in corporate litigation practices. Berman Decl. at ¶ 94; *City of Providence*, 2014 WL 1883494, at *17 ("Indeed, Defendants' Counsel, Weil Gotshal & Manges LLP, is a long-time leader among national litigation firms, with well-noted expertise in corporate litigation practices. The highly skilled attorneys at Weil Gotshal zealously fought Lead Plaintiff's claims at every turn, but notwithstanding this formidable opposition, Lead Counsel was able to develop Lead Plaintiff's case so as to resolve the litigation on terms favorably to the Class."). Likewise, Defendants had an extensive litigation budget and would (and did) spare no expense to resolve the case in their favor.

- 18 -

Lead Counsel is a nationally known leader in the fields of class actions and complex litigation, including securities litigation, and have substantial experience litigating class actions in courts throughout the country with success. *See* Ex. 5 to Berman Decl. (Lead Counsel's firm resume). As experienced class action and securities litigators, Lead Counsel not only had to use their knowledge, skill, and efficiency from past experiences, but have also developed expertise in the unique issues presented here to overcome significant obstacles during this litigation. This favorable Settlement is attributable to the diligence, determination, hard work, and reputation of Lead Counsel, who developed, litigated, and successfully negotiated the settlement of this Action, an immediate cash recovery in a very difficult case, without the risk of further litigation.

**5.      The Requested Fee in Relation to the Settlement**

Courts have interpreted this factor as requiring the review of the fee request in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3 (citation omitted). As discussed in detail in Part III above, the requested fee is well within the range of fees that courts in the Second Circuit have awarded in comparable cases on both a percentage basis and lodestar multiplier basis.

**6.      Public Policy Considerations**

"The Second Circuit has also held that 'public policy considerations' should be afforded weight when determining the fee awarded to plaintiffs' counsel in class actions." *Guevoura Fund*, 2019 WL 6889901, at *21 (citations omitted). Securities claims brought in "[p]rivate lawsuits, such as this, serve to further the objective of the federal securities laws to protect investors and consumers against fraud and other deceptive practices." *Id.* (citation omitted). Indeed, the "Second Circuit has taken into account the social and economic value of class actions and the need to

- 19 -

encourage counsel to undertake such litigation. . . . This will occur if courts award reasonable and adequate compensation for [counsel's] services where successful results are achieved." *Id.* (citation omitted).

Here, the Settlement was achieved despite the absence of any assistance from any government agencies. *Id.* Lead Counsel willingly assumed the risks of this litigation and achieved the only recovery for the Class related to the allegations in this Action. For most Settlement Class Members, this Action was the only hope of obtaining compensation for the losses suffered as a result of the allegations in this Action. Thus, Lead Counsel's efforts in enforcing the public policy of protecting investors and consumers against fraud and deceptive practices favors granting Lead Counsel's fee request.

### 7.    The Class's Reaction to the Fee Request

To date, the Claims Administrator has mailed 89,110 copies of the Notice to all members of the Class, informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees of 22% of the Settlement Amount, plus expenses not to exceed $600,000, plus interest on both amounts. The time to object to the fee request expires on July 28, 2022. To date, not a single objection to the fee and expense request has been received. Berman Decl. at ¶ 73. "The absence of objectors may itself be taken as evidencing the fairness of a settlement." *Guevoura Fund*, 2019 WL 6889901, at *7. The fact that no objections were received is compelling evidence of the fairness of the fee request. *Id.* ("The absence of negative feedback from Class Members evidences an overall favorable response of the Class Members to the Settlement.").

### VI.    PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

Rule 23(h) also allows courts to award class counsel for "nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h); *Guevoura Fund*, 2019 WL 6889901, at *22 ("It is well

established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class. . . . Particular costs are compensable if they are of the type normally billed by attorneys to paying clients. . . . Courts have awarded such expenses so long as counsel's documentation of them is 'adequate.'" *Id.* (citations omitted).

Lead Counsel respectfully requests payment of $431,703.42 in Litigation Expenses. Berman Decl. at ¶ 102; *see also* Ex. 4 to Berman Decl. Exhibit 4 to the Berman Declaration sets forth in detail each of the expenses for which payment is sought. All of the requested expenses were reasonable, necessary, and directly related to the prosecution of this Action. Berman Decl. at ¶ 102. The costs include routine expenses related to copying, court fees, postage, and shipping, phone charges, legal research, and travel and transportation, as well as expenses for experts, consultants, investigators, and costs arising from the investigation, database management charges for the documents produced in the litigation, and mediation fees. Berman Decl. ¶ 104. All of these expenses were critical to Lead Counsel's success in achieving the Settlement. *See, e.g.*, *Guevoura Fund*, 2019 WL 6889901, at *22 (awarding reimbursement for same type of litigation expenses incurred here after noting that "no objections have been received to the reimbursement request").

The largest expense, by far, is for retention of Lead Plaintiff's experts and consultants, in the amount of $323,926.00, or approximately 75% of Lead Counsel's total expenses. *See* Ex. 4 to Berman Decl. (Lead Counsel's Fee and Expense Decl., Ex. B). As discussed in the Berman Declaration, Lead Counsel consulted extensively with experts in the fields of market efficiency, loss causation and damages, the use of confidential witnesses in securities class actions, and budgeting and scheduling for mega-projects, among others. In addition, Hagens Berman incurred costs associated with the investigation of the Settlement Class's claims, including the retention of an outside investigation firm and reimbursement of attorney's fees for the representation of three

- 21 -

confidential witnesses. Each of the parties retained was instrumental in Lead Counsel's prosecution of the Action and in bringing about the outstanding result achieved. Berman Decl. at ¶ 105.

Lead Counsel set forth in the Notice that it would seek up to $600,000 in expenses. *Id.* at ¶ 108. Not a single objection to the expense request has been received. *Id.* Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## VII.    THE PROPOSED AWARD TO PLAINTIFFS IS REASONABLE

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (quotation and citation omitted); *Guevoura Fund*, 2019 WL 6889901, at *22 ("Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class. Indeed, important policy considerations to encourage enforcement of the federal securities laws by shareholders underlie these awards[.]").

Plaintiffs have devoted a substantial amount of time to this case. Messrs. Cohn and Moshell spent at least 175 hours doing, among other things, reviewing the initial and amended pleadings, reviewing motion to dismiss briefing, reviewing class certification briefing, participating in discovery (including appearing for their own depositions), participating in mediation, and

010886-11/1967681 V1

communicating and corresponding with Lead Counsel regarding the litigation and settlement. *See* Exs. 1 and 2 to the Berman Decl. (Decl. of Messrs. Cohn and Moshell). Therefore, Plaintiffs request a payment to reimburse them for the time they spent on this case in the amount of $20,000 for Mr. Cohn and $15,000 for Mr. Moshell. Berman Decl. at ¶ 107. Such a payment is reasonable and appropriate relative to the Settlement. *See, e.g.*, *In re Flag Telecom Holdings*, 2010 WL 4537550, at *31 (awarding $100,000 to Lead Plaintiff for their services in prosecuting action); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding the one Lead Plaintiff $70,000 and the other $144,657.14 as compensation for their reasonable costs and expenses).

Lastly, the Notice informed Settlement Class Members that Plaintiffs would seek the $20,000 and $15,000 awards. To date, no objections to these awards have been received, which further evidences the reasonableness of these awards. Berman Decl. at ¶ 108.

## VIII.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 22% of the Settlement Fund, net of Litigation Expenses; award $431,703.42 for the reasonable expenses incurred by Plaintiffs' Counsel in connection with the prosecution and settlement of the Action; and award Lead Plaintiff and Additional Representative Plaintiff $20,000 and $15,000, respectively, in reimbursement of Plaintiffs' costs and expenses, as authorized by the PSLRA.

- 23 -

010886-11/1967681 V1

DATED: July 21, 2022

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
      STEVE W. BERMAN

Steve W. Berman (admitted *Pro Hac Vice*)
Jerrod C. Patterson (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

Lucas E. Gilmore (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com

*Counsel for Lead Plaintiff David Cohn and
Additional Representative Plaintiff Chad L. Moshell*

- 24 -