**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAD LINDSEY MOSHELL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -v- <br><br> SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN, <br><br> Defendants. | C.A. No. 1:20-cv-01008-JPC <br><br> Hon. John P. Cronan |

**DECLARATION OF MARGERY CRAIG**
**CONCERNING THE RESULTS OF THE CLAIMS ADMINISTRATION PROCESS**

I, Margery Craig, declare:

1.      I am a Project Manager of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm.  I have over fourteen years of experience specializing in the administration of class action cases.  SCS was established in April 1999 and has administered over five hundred (500) class action cases since its inception.  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would testify thereto.

**UPDATE ON THE NOTIFICATION PROCESS**

2.      Pursuant to the Court's Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement, dated April 18, 2022 (the "Preliminary Approval Order"),

1

SCS was appointed and approved as Claims Administrator in connection with the Settlement[1] of the above-captioned Action.

3.    As noted in the Declaration of Margery Craig Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated July 19, 2022 and the Supplemental Declaration of Margery Craig Concerning (A) Mailing of the Notice and Claim Form; (B) Report on Requests for Exclusion and Objections; and (C) Status on Claim Forms Filed, dated August 11, 2022 (the "Craig Declarations"), SCS mailed or emailed 1,928 letters to the Nominee Account Holders and Institutional Groups contained on SCS's master mailing list.  SCS then mailed 78,209 Notice and Proof of Claims to potential Settlement Class Members or nominees.  Additionally, as stated in the Craig Declarations, SCS was notified by two nominees that they emailed the link of the Notice and Proof of Claim to 10,901 of their customers. Since the Craig Declarations were filed, no additional Notice and Proof of Claim documents were mailed or emailed by SCS.  In total, 89,110 Notice and Proof of Claim documents were either mailed or emailed to potential Settlement Class Members and nominees.

## UPDATE ON TOLL-FREE TELEPHONE LINE

4.    The Craig Declarations noted that SCS maintains a toll-free telephone number (1-866-274-4004) for Settlement Class Members to call and obtain information about the Settlement. SCS will continue to promptly respond to each telephone inquiry and  address Settlement Class Members' inquiries.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated April 1, 2022 (the "Stipulation").

**UPDATE ON WEBSITE**

5.    The Craig Declarations also noted that on April 26, 2022, SCS's website was updated to include a specific webpage for this Settlement, www.strategicclaims.net/sasol/.  The webpage is accessible 24 hours a day, 7 days a week and contains a current status of the case; important Settlement-related deadlines; an online claim filing link; downloadable copies of the Notice and Proof of Claim, the Preliminary Approval Order, and the Stipulation.  SCS will continue to maintain the Settlement webpage until the conclusion of the administration.

**STATUS OF CLAIMS PROCESSING**

6.    Through August 17, 2022, 46,707 Claim Forms (hereafter referred to as "claims") were submitted in connection with this settlement.[2]  SCS has carefully reviewed, analyzed, and processed all of these claims, and has responded to all claimant inquiries regarding the action, the settlement and the procedures for filling out the Claim Forms.  SCS has also been in close contact with Lead Counsel to review the administration process.  SCS's Report of Claims Administrator is annexed hereto as **Exhibit A** and described below.

7.    The annexed Report of Claims Administrator sets forth the final status of claims submitted to SCS as follows:

a.    PROPERLY DOCUMENTED CLAIMS:    SCS  has  identified  31,127[3] properly documented valid claims.  These valid claims represent Recognized Losses of $105,678,701.16[4].  These valid claims were calculated in the manner set forth in the Court-

---

[2] SCS has not processed any claims filed after August 17, 2022, or any responses to rejections received after November 18, 2022, due to extreme lateness and because their inclusion would have delayed the finalization of the administration.

[3] This number includes 31,091 timely filed valid claims and 36 late but otherwise valid claims.

[4] This amount includes Recognized Losses for timely filed, valid claims of $104,563,316.71 and Recognized Losses for late (but otherwise valid) claims of $1,115,384.45.

approved Plan of Allocation of the Net Settlement Fund ("Plan of Allocation"), included in the Notice. The total recognized losses of $105,678,701.16 represents recognized losses of $25,778,618.00 for purchases that will receive 4% of the Net Settlement Fund for the period March 10, 2015 to September 6, 2015, inclusive; recognized losses $30,995,208.41 for purchases that will receive 23% of the Net Settlement Fund for the period September 7, 2015 to June 5, 2016, inclusive; recognized losses of $8,399,450.51 for purchases that will received 25% of the Net Settlement Fund for the period June 6, 2016 to February 26, 2017, inclusive; recognized losses of $37,291,446.83 for purchases that will receive 44% of the Net Settlement Fund for the period February 27, 2017 to August 15, 2019, inclusive; and recognized losses of $3,213,977.41 that will receive 4% of the Net Settlement Fund for the period August 16, 2019 to January 13, 2020, inclusive. **Exhibit B-1** is a spreadsheet of the 31,091 properly documented and timely submitted claims.  **Exhibit B-2** is a spreadsheet of the 36 claims submitted after the Court-approved claims filing deadline, July 5, 2022, and on or before August 17, 2022.

b.  INADEQUATELY DOCUMENTED CLAIMS:  SCS initially identified 128 inadequately documented claims.  SCS mailed or emailed inadequacy notices to each of these claimants, advising them of the nature of their inadequacy and providing them an opportunity to cure.  A sample inadequacy notice is annexed hereto as **Exhibit C**.  Among these 128 deficient claims, 59 have been successfully cured and are considered valid.  The remaining 69 inadequate claimants either did not respond to the inadequacy notice or responded with inadequate documentation and were sent a rejection notice setting forth the reason for their inadequacy.  To date, none of the 69 inadequate claimants has objected to

4

or contested this determination.  *See* **Exhibit D** for a list of the inadequate, rejected claimants.

c.    INELIGIBLE CLAIMS:  In addition to the 69 claims discussed above in paragraph 7.b., SCS has identified 15,511 claims which we recommend for complete rejection.   Included in this category are: (i) claims with no Recognized Losses; (ii) American Depository Receipts ("ADRs") of Sasol Limited ("Sasol") that were not purchased or otherwise acquired, but were received, granted by gift, inheritance, or operation of law; (iii) claims with ADRs of Sasol purchased outside of the Settlement Class Period; (iv) claims with shares sold short;  (v) duplicate claims; (vi) claims withdrawn by filing entity; and (vii) claims filed for securities other than Sasol ADRs.  *See* **Exhibit E** for a list of these ineligible claims.  We have communicated with these 15,511 claimants and advised them of our determination.  A sample ineligibility notice is annexed hereto as **Exhibit F**.  To date, none of these ineligible claimants has contested their determination.

8.    In anticipation of completing this administration, SCS respectfully requests that the Court reject as untimely any claims received after August 17, 2022, and any responses to deficiency and/or rejection notices received after November 18, 2022.

9.    Should the Court concur with SCS's administrative determinations concerning the claims recommended for acceptance and rejection, SCS recommends the following:

(a)    Per the Plan of Allocation, each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Loss bears to the total of the Recognized Losses of all 31,091 Authorized Claimants and 36 late claims, if the late claims are deemed valid by the Court.  The Net Settlement Fund will be distributed according to the five purchase time frames described in paragraph 7.a.  No

distribution will be made on a claim where the potential distribution amount is less than ten dollars ($10.00) in cash.

(b)     In order to encourage Authorized Claimants to cash their distribution checks promptly, and to avoid or reduce future expenses relating to unpaid distribution checks, all checks should bear the notation, "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE."  Similarly, all other checks issued in connection with subsequent distributions shall bear the same notation.

(c)     If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants; (ii) second, to pay any additional Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible.  If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate

6

in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to Public Justice, P.C.

(d)    Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement unless good cause is shown. The funds allocated to all such stale-dated checks will be available for re-distribution to other Authorized Claimants in subsequent distributions, if such distributions are determined to be economically feasible.

(e)    SCS respectfully requests the Court order that: (i) in no less than one (1) year after the distribution of the Net Settlement Fund, we may destroy the paper copies of the Claim Forms and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, we may destroy the electronic copies of the Claim Forms and all supporting documentation. This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 22nd day of November 2022, in Media, Pennsylvania.

Margery Craig

7