**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAD LINDSEY MOSHELL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN, <br><br> Defendants. | Case No. 1:20-CV-01008-JPC <br><br> CLASS ACTION <br><br> **PLAINTIFFS' RESPONSE TO ORDER FOR SUPPLEMENTAL BRIEFING RE: JUSTIFICATION FOR DENYING CERTAIN CLAIMS** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..............................................................................................................1

II.     BACKGROUND ...............................................................................................................4

III.    DISCUSSION....................................................................................................................6

      A.      ADRs "received, granted by gift, inheritance, or operation of law"
           are not ADRs "otherwise acquired" as used in the definition of the
           "Settlement Class." ...............................................................................................6

      B.      A claimant was considered to be "with shares sold short," and
           hence their claim denied, where the documentation either
           identified a sale as "short," and purchase as a "cover" and the
           "short" sale preceded the "cover." ......................................................................11

      C.      The denial of Settlement Class Member claimants' Recognized
           Losses for "shares sold short" is appropriate in this case. ...................................14

IV.     CONCLUSION.................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Audet v. Fraser*,
332 F.R.D. 53 (D. Conn. 2019)............................................................................................8

*Aviva Life & Annuity Co. v. Davis*,
20 F. Supp. 3d 694 (S.D. Iowa 2014) ...................................................................................9

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)..............................................................................................................7

*Collier v. Aksys Ltd.*,
2005 WL 1949868 (D. Conn. Aug. 15, 2005) ...................................................................14

*Davidson v. Belcor, Inc.*,
933 F.2d 603 (7th Cir. 1991) ...............................................................................................7

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).................................................................................................3, 14, 15

*First Equity Corp. of Fla. v. Standard & Poor's Corp.*,
869 F.2d 175 (2d Cir. 1989)..................................................................................................7

*Hooper v. Mountain States Sec. Corp.*,
282 F.2d 195 (5th Cir. 1960) ...............................................................................................9

*Kitchens v. U.S. Shelter Corp.*,
1984 WL 1150 (D. S.C. Oct. 29, 1984) ...............................................................................8

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
54 F.4th 82 (2d Cir. 2022) ...................................................................................................7

*Mills v. Sarjem Corp.*,
133 F. Supp. 753 (D.N.J. 1955) ...........................................................................................9

*Portnoy v. Memorex Corp.*,
667 F.2d 1281 (9th Cir. 1982) .............................................................................................8

*Rathborne v. Rathborne*,
683 F.2d 914 (5th Cir. 1982) ...............................................................................................7

*Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*,
2005 U.S. Dist. LEXIS 16853 (D.N.J. June 7, 2005) ........................................................15

*Rubin v. United States*,
    449 U.S. 424 (1981)................................................................................................................8

*Strom v. United States*,
    641 F.3d 1051 (9th Cir. 2010) ..............................................................................................7

*In re Tesla Sec. Litig.*,
    477 F. Supp. 3d 903 (N.D. Cal. 2020) ................................................................................15

*Truncale v. Blumberg*,
    80 F. Supp. 387 (S.D.N.Y. 1948)..........................................................................................9

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011)........................................................................14, 15, 16

*Zlotnick v. TIE Comms.*,
    836 F.2d 818 (3d Cir. 1988)............................................................................................11, 12

## STATUTES

15 U.S.C. § 78c(a)(13)................................................................................................................7

Exchange Act..........................................................................................................................8, 9

Exchange Act Section 3(a)(13)...................................................................................................7

Exchange Act Section 10(b) ...............................................................................................1, 7, 9

Private Securities Litigation Reform Act of 1995 Section 21(D)(e)(1).......................................5

Sarbanes-Oxley Act Section 308(a)............................................................................................9

## I.   INTRODUCTION

On December 12, 2022, this Court entered an order on Plaintiffs' Motion for the Distribution of Class Action Settlement Funds. The Order requested supplemental briefing explaining the reasons the Claims Administrator deemed certain claims to be ineligible for compensation as Recognized Losses under the Plan of Allocation. *See* Supplemental Margery Craig Declaration, ECF No. 224 ("Craig Decl."). In particular, the Court stated the briefing should address: (1) whether an ADR "received, granted by gift, inheritance, or operation of law" counts as an ADR "otherwise acquired"; (2) what constitutes a claim as one "with shares sold short"; and (3) whether it is appropriate to deny any share of the recovery to such claimants "with shares sold short" when such claimants are Settlement Class Members and, therefore, have released any claims they may have against Defendants. Plaintiffs respectfully submit this response to the Court's December 12, 2022 Order.

***ADRs "received, granted by gift, inheritance, or operation of law" are not ADRs "otherwise acquired" as used in the definition of the "Settlement Class."*** As shown below, denial of Recognized Losses for shares "received, granted by gift, inheritance, or operation of law" are common in the plans of allocation or distribution in securities fraud class actions as well as Fair Funds set up by the Securities and Exchange Commission.

The reason for the denial of Recognized Losses for shares "received, granted by gift, inheritance, or operation of law" is because under Section 10(b) of the Exchange Act an investor must be a purchaser or seller. Claims are generally considered owned by the person who made the purchase or sale and are not automatically transferred or assigned to subsequent stock recipients. Nevertheless, as a matter of administrative ease and equity, and as clarified in the Supplemental Declaration of Paul Mulholland attached hereto ("Mulholland Declaration" or "Mulholland Decl."), when a claimant who claims shares were "received, granted by gift, inheritance, or

- 1 -

operation of law" and produced paperwork showing the original purchase information from the investor from whom the claimant received the shares, and only one claim was submitted for those purchases, the Claims Administrator calculated the Recognized Loss and accepted the claim. The claim was denied when the original purchase documentation was not provided. This is consistent with language in the Long Form Notice of the Settlement, as well as Fair Fund plans set up by the Securities and Exchange Commission.

*A claimant was considered to be "with shares sold short," and hence their claim denied, where the documentation either identified a sale as "short," and purchase as a "cover," and the "short" sale preceded the "cover."* As set forth in the accompanying Mulholland Declaration, the Claims Administrator considered a claimant with "sales sold short" as one who borrowed ADRs from a broker dealer and sold the ADRs in the open market. *See* Mulholland Decl. at ¶ 5. This is usually identified in the supporting documentation as "sold short" and the purchase to cover is identified as a "purchase to cover." *Id.* These denied claims include: (i) ADRs that were sold short during the Settlement Class Period and covered during the Settlement Class Period; (ii) ADRs sold short during the Settlement Class Period and never covered during the Settlement Class Period; and (iii) short positions held at the beginning of the Settlement Class Period and were covered during the Settlement Class Period. *See id.* at ¶ 6.

*Denial of Recognized Losses for claims based on short sales is appropriate here, in this conventional fraud-on-the-market securities class action, because of the difficulty or inability of short-seller class members to prove or show loss causation based on short sales*. The denial of Recognized Losses for shares sold short and covered are also frequently delineated in the plans of allocation or distribution in securities fraud class actions as well as SEC Fair Funds. This is because courts do not agree on when or whether a short seller incurs recoverable losses when

covering a short sale under the Supreme Court decision *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). Aside from those considerations, in this case, as the stock of Sasol declined during the Settlement Class Period, short sellers generally made money, or had no inflation damages, even if the stock they bought to cover a short sale was inflated by a misrepresentation during the Class Period.[1] *See* Mulholland Decl. at ¶ 6.

Finally, a plan of allocation is not based on actual losses, as explained in the notices. It is a set of compromises intended to equitably compensate Settlement Class Members. Rule 23(e)(2)(D) requires that the Court assess whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). It need only be fair and reasonable, meaning it has a reasonable, rational basis. *See* Memorandum in Support of Final Approval, ECF No. 211, at 19-21. As set forth in the declarations in support of final approval, the Plan of Allocation was developed in consultation with Plaintiffs' damages consultant, taking into account the different types of claims possessed by different Settlement Class Members and their relative strength, as well as based on the nature of the claims and defenses, evidence uncovered, and the Parties' mediation presentations.[2] Most importantly, the Plan of Allocation and the basis for calculating Recognized Loses was clearly set forth in the Plan of Allocation that accompanied the long form notice; was mailed and emailed out to over 89,100 potential class members; and was published on a website, referred to in newspaper, and was referred to in summary notices. *See* ECF No. 215 at 2 (reply brief in support of final approval). No objectors came forward and investors who believed

---

[1] Sasol's ADR's declined 76%, from a closing price of $32.59 per share on March 10, 2015, to a closing price of $7.66 on June 3, 2020. Amended Complaint at ¶ 236, ECF No. 59.

[2] Declaration of Steve Berman in Support of Final Approval ("Berman Decl."), ECF No. 214, at ¶ 10.

they were nonetheless damaged and did not want their claims released had the opportunity to opt-out of the settlement. *Id.* at 3.

## II.    BACKGROUND

The Settlement Class negotiated by the parties and set forth in the Stipulation of Settlement filed with this Court is defined as: "all persons and entities who purchased or otherwise acquired American Depository Receipts ("ADRs") of Sasol during the period from March 10, 2015 to January 13, 2020 (the 'Settlement Class Period'), inclusive and who were allegedly damaged thereby." ECF No. 203-1. The Stipulation of Settlement does not determine "who were damaged thereby." Rather, the Plan of Allocation determines how damages are to be calculated for purposes of compensating Settlement Class Members. The Plan of Allocation was determined in conjunction with the consultation of experts by Plaintiffs' counsel and not part of the settlement agreement. *See id.* at ¶ 17 ("The Defendants' Releasees and Defendants' Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: … (iii) the Plan of Allocation or its implementation, administration, or interpretation"); *see also id*. at ¶¶ 22, 25, 26 (describing the Claims Administrator's administration of the Plan of Allocation).

The approved Plan of Allocation was included and is set forth in the Long Form Notice. ECF No. 205-1. "The Plan of Allocation is the basis upon which the Net Settlement Fund will be allocated to the Settlement Class Members with valid claims ('Authorized Claimants')." *Id.* at 5. The Plan starts in the Long Form Notice. *Id.* at 6.

The Preliminary Approval Order approved the forms of notice containing the proposed Plan of Allocation, dictated the distribution and publication of the notices (*see* ECF No. 204 at ¶¶ 7, 10, 12-17), and gave Settlement Class Members the opportunity to comment on or object to the Plan of Allocation. *Id.* at 24-25, 27. The final version of those forms, which were part of the Stipulation of Settlement and the Preliminary and Final Approval Orders, were filed in their

entirety pursuant to the Court's April 19, 2022 Order Granting Lead Plaintiff's Motion for

Preliminary Approval of Class Action Settlement. ECF No. 204.

Consistent with the Stipulation of Settlement and the Preliminary and Final Approval

Orders, the Long Form Notice contains a section called "Plan of Allocation," which describes how

Recognized Losses will be calculated and that such calculations are not intended to be an estimate

of actual damages recoverable at trial:

> The Claims Administrator shall determine each Authorized
> Claimant's share of the Net Settlement Fund pursuant to the Plan of
> Allocation. The Recognized Loss formula and the proposed
> allocation of the Net Settlement Fund to specific time frames within
> the Settlement Class Period, as set forth below, ***is not intended to be
> an estimate of the amount of what a Settlement Class Member
> might have been able to recover after a trial***. Payments to valid
> Settlement Class Members pursuant to the Plan of Allocation shall
> be deemed conclusive against all Authorized Claimants.

ECF No. 205-1 at 6. Immediately following this section is a bold heading entitled "The Basis for

Calculating Your Recognized Loss." *Id.* That section sets forth how losses will be calculated under

the Plan of Allocation for purposes of distribution to Settlement Class Members. It contains,

amongst other items, a breakdown of the inflation per share upon purchase (as set forth in the

inflation table in the notice) less the inflation per share upon sale (as set forth in the inflation table

in the notice) for various sub-time periods during the Settlement Class Period. *See id.* at 6-9. It

also sets forth a table for calculating the limitation on damages (Recognized Loss) under the 90-

day look-back period pursuant to Section 21(D)(e)(1) of the Private Securities Litigation Reform

Act of 1995. Immediately following those tables, the Plan of Allocation states:

> For purposes of calculating your Recognized Loss, the date of
> purchase, acquisition or sale is the "contract" or "trade" date and not
> the "settlement" or "payment" date. ***The receipt or grant by gift,
> inheritance or operation of law of the Company shares shall not
> be deemed a purchase, acquisition or sale of shares for the
> calculation of an Authorized Claimant's Recognized Loss. The
> covering purchase of a short sale is not an eligible purchase***.

*Id.* at 8 (emphasis added).

As noted in the final approval papers, 89,110 copies of the Settlement Notice Packet, which contains the Plan of Allocation and advises Class Members of their right to object to it, have been sent to potential Settlement Class Members and their nominees. *See* Berman Decl., ECF No. 214, at ¶ 70; Ex. 3 to Berman Decl., ECF No. 214-3, at ¶ 7. No objections to the proposed Plan of Allocation have been received. Berman Decl., ECF No. 214, at ¶ 73; Ex. 3 to Berman Decl., ECF No. 214-3, at ¶¶ 13-14. Moreover, no one opted out of the settlement. *Id.*

The Final Approval Order approved the forms of notice and methods of notifying the Settlement Class, including the Plan of Allocation, which determined how Settlement Class Member damages would be calculated and how the Settlement Proceeds would be allocated based on those calculation. ECF No. 219 at ¶¶ 6, 11.

Moreover, those who filed claims that were rejected on these grounds were informed of the rejection. Craig Decl. at ¶ 7(c). The notification that each rejected claimant received stated the basis of the rejection and strongly suggested that if a claimant felt they were wrongfully rejected that they contact the Claims Administrator. *Id.* at Ex. F, ECF No. 224-7. None have responded to or contested their rejection. *Id.* at ¶ 7(c).

## III.    DISCUSSION

### A.    ADRs "received, granted by gift, inheritance, or operation of law" are not ADRs "otherwise acquired" as used in the definition of the "Settlement Class."

ADRs "received, granted by gift, inheritance, or operation of law" are not ADRs "otherwise acquired" as used in the definition of the "Settlement Class" in the Court's Order and Final Judgment.

A private damage action under Section 10(b) and Rule 10b-5 is limited to actual purchasers and sellers of securities. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975).[3] This is known as the "purchaser-seller" rule. *Id.* at 734. "Under the purchaser-seller rule, standing to bring a claim under Section 10(b) is limited to purchasers or sellers of securities about which a misstatement was made." *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 84 (2d Cir. 2022) (denying standing of purchasers of stock in an acquiring company for statements made pre-acquisition by the acquired company).

The term "otherwise acquired" is used to capture these situations. The term "otherwise acquired" comes from Section 3(a)(13) of the Exchange Act, which defines the term "purchase" to include "any contract to buy, purchase, or otherwise acquire" securities. *See* 15 U.S.C. § 78c(a)(13). Courts have recognized, however, that this definition provides little guidance because "[t]he cases go well beyond th[ese] general definition[s], including … a broad range of transactions" seemingly outside of the "contract[s]" mentioned in the statutory text. *Strom v. United States*, 641 F.3d 1051, 1061 n.11 (9th Cir. 2010) (alterations in original). A purchase or sale "may in some cases encompass transactions that bear little resemblance to conventional common law purchases and sales." *See Rathborne v. Rathborne*, 683 F.2d 914, 920 (5th Cir. 1982). "The crucial question is not whether the transaction fulfills the requisites of a common law sale; the core issue is whether the transaction has transformed the plaintiff into the functional equivalent of a purchaser or seller." *Id.* An "exchange of shares during a merger transaction constitute[s] the purchase or sale of securities for the purposes of Section 10(b) and Rule 10b-5." *Davidson v.*

---

[3] *Compare First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 869 F.2d 175, 180 n.2 (2d Cir. 1989) ("Under Blue Chip, plaintiffs suing under Section 10(b) of the Securities Exchange Act of 1934 may recover only for losses that result from decisions to buy or to sell, not from decisions to hold or refrain from trading.").

*Belcor, Inc.*, 933 F.2d 603, 606 (7th Cir. 1991). Pledges of stock as collateral for loans have been deemed sales. *Rubin v. United States*, 449 U.S. 424, 431 (1981) (examining the "economic considerations and realities" of the transaction). Thus, "otherwise acquired" usually involves some sort of exchange and consideration.[4]

The Mulholland declaration confirms the claims administrator's implementation of "otherwise acquired" in this manner:

> The term "otherwise acquired" principally relates to an acquisition of ADRs for an exchange other than cash (i.e. converting debt to equity; employee stock grants; and acquisition of assets). These types of transactions have both acquisition date and price unlike shares received, granted by gift, inheritance or operation of law unless original purchase prices and dates are provided.

Mulholland Decl. at ¶ 4.

Thus, case law confirms that securities "received, granted by gift, inheritance or operation of law" do not fit this exchange-based definition of "otherwise acquired." *See Portnoy v. Memorex Corp.*, 667 F.2d 1281, 1283 (9th Cir. 1982) (holding that a bank's donation of warrants to a foundation was a gift and the foundation therefore did not acquire the warrants, and stating: "The terms 'buy' and 'purchase' and 'sale' and 'sell' are broadly defined to include contracts to buy, purchase or otherwise acquire, and contracts to sell or otherwise dispose of…. But these definitions

---

[4] *See also Kitchens v. U.S. Shelter Corp.*, 1984 WL 1150, at *3 (D. S.C. Oct. 29, 1984) (upholding standing for Section 11 plaintiffs who exchanged their interest in limited partnerships for stock in a newly-formed entity and alleged misrepresentations in registration and prospectus of new entity, and stating: "The common meaning of 'acquire' is 'to gain possession of … to get by one's own efforts.' The American Heritage Dictionary (1971). If Congress had intended that Section 11 be limited to pure purchasers, it would have said so. The plaintiffs here 'acquired' their securities within the meaning of the 1933 Act."); *Audet v. Fraser*, 332 F.R.D. 53, 64-65 (D. Conn. 2019) (construing definition of "acquired" broadly under the Exchange Act, and holding that class members who held cryptocurrency promissory notes that could be purchased or mined and then exchanged for cryptocurrency had "otherwise acquired" securities and had standing to bring 10(b) claim).

do not include gifts…. The acquisition of the warrant by the Foundation was not a 'purchase' by it within the meaning of § 16(b). A donee does not 'purchase.'"); *Truncale v. Blumberg*, 80 F. Supp. 387, 389-91 (S.D.N.Y. 1948) (gift of stock purchase warrants to charitable agencies were not "sales" or purchases" under Exchange Act and stating: "[I]t is hard to see any relation whatsoever between gifts to charities and trading for profit in the market place.").

Moreover, under federal law, claims under § 10(b) are not automatically assigned with the subsequent transfer of securities. *Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 699 (S.D. Iowa 2014) (citing *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985); *Lowry v. Baltimore & Ohio R.R. Co.*, 707 F.2d 721, 727 (3rd Cir. 1983))).[5]

On the other hand, securities passed on to the estate of a bankrupt person or entity or a decedent have been recognized as retaining the claim. *See Hooper v. Mountain States Sec. Corp.*, 282 F.2d 195, 206-07 (5th Cir. 1960) (corporation's Rule 10b-5 claim survived corporation's bankruptcy and passed to bankruptcy trustee); *Mills v. Sarjem Corp.*, 133 F. Supp. 753, 761 (D.N.J. 1955) (since actions under the Securities Exchange Act of 1934 are remedial in nature and are not penal, decedent's § 10(b) claim survived his death and passed to his executors).

The denial of claims by those who inherit or are gifted shares is common language in plans of allocation. *See* Mulholland Decl. at ¶ 3. Similarly, SEC Fair Funds[6] was set up by the Securities and Exchange Commission and their claims administrators also deny claims based on the similar receipt of shares: "The receipt of Securities by gift, inheritance, devise, or operation of law will not be deemed to be a purchase of Securities, nor will it be deemed an assignment of any claim

---

[5] Federal law governs the assignability of claims under the federal securities laws. *Id.*

[6] These are civil penalties added to disgorgement funds, referred to as "Fair Funds" under Section 308(a) of the Sarbanes–Oxley Act.

relating to the purchase of such Securities unless specifically so provided in the instrument of inheritance." *See* Plan of Distribution *In the Matter of General Electric Company*, SEC Administrative Matter, File No. 3-20165.[7]

Here, following these principles and precedent, losses for ADRs "received, granted by gift, inheritance, or operation of law" were generally rejected as claimants failed to provide documentation showing the original purchase price or date for these transactions as opposed to a transfer date. *See* Mulholland Decl. at ¶ 3. The receipt of such ADRs is generally a transfer from a separate account and has no purchase price associated with it. *Id.*

Still, under some SEC Fair Fund plans and the Sasol plan, claims were allowed in certain circumstances regardless of this limitation. Arguably, with no intermediate sale, it would be contrary to the purposes of the statute to consider a claim extinguished upon the death of an investor. Thus, for example, the *Wells Fargo* SEC Plan states: "However, the recipient of Securities as a gift, inheritance, devise or by operation of law will be eligible to file a Claim Form and participate in the distribution of the Fair Fund to the extent the original purchaser would have been eligible under the terms of the Plan. Only one claim may be submitted with regard to the same transactions in Securities, and in cases where multiple claims are filed by the donor and

---

[7] https://www.sec.gov/litigation/admin/2022/34-94856-dp.pdf; *see also In the Matter of Wells Fargo, Respondent,* Administrative Matter File No. 3-19704 at ¶ 68, https://www.sec.gov/litigation/admin/2020/34-89501-dp.pdf.

Some other SEC Fair Funds' plans of distribution may not include this language and the rational is not stated. *See, e.g.*, *In the Matter of Anthony Coronati and Bidtoask LLC*, Administrative Matter File No. 3-16203, https://www.sec.gov/litigation/admin/2017/34-80469-dp.pdf (not including language that exclude gifts and inheritances as purchases); *In the Matter of Augustine Capital Management, LLC, et al.*, Administrative Matter File No. 3-17740, https://www.sec.gov/litigation/admin/2019/34-85340-dp.pdf (same); *In the Matter of Roger T. Denha*, Administrative Matter File No. 3-18649, https://www.sec.gov/litigation/admin/2019/34-86472-dp.pdf (same).

donee, the donee claim will be honored, assuming it is supported by proper documentation."[8]

Similarly, here, the Claims Administrator allowed claims by those who received shares by gift or inheritance "[w]henever claimants with received ADRs do provide SCS with the original purchase price and date from the 'origin account[.]'" *See* Mulholland Decl. at ¶ 3.

Accordingly, only claimants who fell within the definition of shares "received, granted by gift, inheritance, or operation of law" and did not provide documentation for the original purchase price or date (as opposed to the transfer date) had their claims rejected. *Id.* at ¶ 3. Each had the opportunity to contest or correct the deficiency. *Id.* at ¶ 4.

**B.    A claimant was considered to be "with shares sold short," and hence their claim denied, where the documentation either identified a sale as "short," and purchase as a "cover" and the "short" sale preceded the "cover."**

As the Court notes, the Craig Declaration identified "claims with sales sold short" as ineligible for losses under the Plan of Allocation. While the language was not precise, this is in reference to the sentence in the Plan of Allocation, which states: "***The covering purchase of a short sale is not an eligible purchase***." ECF No. 205-1 at 8 (emphasis added).

The Claims Administrator considered a claimant with "sales sold short" as one who borrowed ADRs from a broker dealer and sold the ADRs in the open market. Mulholland Decl. at ¶ 5.[9] This is usually identified in the supporting documentation as "sold short" and the purchase to cover is identified as a "purchase to cover." *See* Mulholland Decl. at ¶ 5. These denied claims

---

[8] *See Wells Fargo, Respondent,* Administrative Matter File No. 3-19704 at ¶ 68, https://www.sec.gov/litigation/admin/2020/34-89501-dp.pdf.

[9] *See Zlotnick v. TIE Comms.*, 836 F.2d 818, 820 (3d Cir. 1988) ("Short selling is accomplished by selling stock which the investor does not yet own; normally this is done by borrowing shares from a broker at an agreed upon fee or rate of interest. At this point the investor's commitment to the buyer of the stock is complete; the buyer has his shares and the short seller his purchase price. The short seller is obligated, however, to buy an equivalent number of shares in order to return the borrowed shares…. There is no time limit on this obligation to cover.").

include: ADRs that were sold short during the Settlement Class Period and covered during the Settlement Class Period; ADRs sold short during the Settlement Class Period and never covered during the Settlement Class Period; and short positions held at the beginning of the Settlement Class Period and were covered during the Settlement Class Period. *See id* at ¶ 6.

Here, there were 1,121 claims that had a short position during the Settlement Class Period and were rejected for "sales sold short." The short positions for each of these 1,121 claims were rejected under the Plan of Allocation for one of the following reasons:

a)   ADRs that were sold short during the Settlement Class Period and covered during the Settlement Class Period would have been rejected for no "inflation damages"[10] and no Recognized Loss since the inflation upon sale is the same or greater than the inflation upon purchase.

b)   ADRs that were sold short during the Settlement Class Period and never covered during the Settlement Class Period would have been rejected for no Recognized Loss since there were no eligible purchases during the Settlement Class Period.

c)   ADRs with short positions at the beginning of the Settlement Class Period and covered during the Settlement Class Period would have been rejected since selling prices are not provided and "trading losses"[11] cannot be calculated without selling prices. Under the Plan of Allocation, Recognized Losses are the lesser of "inflation damages"[12] or "trading losses."

---

[10] "Inflation damages" occur when the inflation upon purchase exceeds the inflation upon sale. *See* Mulholland Decl. at ¶ 6, n.2.

[11] "Trading losses" used in this Plan of Allocation are losses where the purchase price exceeds the selling price. Mulholland Decl. at ¶ 6, n.3; *see* Long Form Notice at 5-6.

[12] There were 1,208,837 "shares sold short" at the beginning of the Settlement Class Period and covered during the Settlement Class Period. However, pre-class trading data, including selling prices, were not provided to the claims administrator. Since there were no selling prices available, "trading losses" for shares sold short pre-class period and covered with a purchase during the class period cannot currently be calculated for these shares. Mulholland Decl. at ¶ 6, n.4.

Additionally, unlike a "long" position, short selling is highly risky and presents the threat of unlimited losses. *Zlotnick*, 836 F.2d at 820 ("[T]here is no limit to the short seller's potential loss:

*See* Mulholland Decl. at ¶ 6.

The denial of recognized losses for short sales is also consistent with most of the plans of allocation for security class action settlements administered by the Claims Administrator. *Id.* at ¶ 6. Similarly, SEC Fair Funds and their claims administrators also often deny claims based on short sales: "Shares purchased during the Relevant Period to cover short positions held at the beginning of the Relevant Period or to cover short positions opened during the Relevant Period will have a Recognized Loss per Share of $0.00. The date of a 'short sale' is deemed to be the date of sale of the Security and the date of covering a 'short sale' is deemed to be the date of purchase of the Security. The earliest Relevant Period purchases will be matched against any short position

---

if the price of the stock rises, so too does the short seller's loss, and since there is no cap to a stock's price, there is no limitation on the short seller's risk."). Moreover, short sellers are limited as to how long they can maintain their short positions due to brokerage account margin requirements, and the interest they pay on the loan to borrow shares sold short. Thus, class counsel believes most short sellers do not maintain a short position very long, which further complicates calculating losses under the Plan of Allocation.

However, in order to estimate short seller's inflation damages (if any)—known as Recognized Losses (excluding trading losses) under the Plan of Allocation—during the class period for shares sold short pre-class period *and* had covering purchases during the class period, class counsel requested that the claims administrator assume a pre-class period short sale price based on the 30-day average preceding the class period (Feb. 9, 2015 to Mar. 9, 2015). Mulholland Decl. at ¶ 6, n.4.

Using a pre-class period 30-day average selling price, the selling price can be assumed to be $37.52 per share. *Id.* Recognized Losses would therefore be $4,555.25 for 5,213 damaged short seller shares eligible for participation under the Plan of Allocation. *Id.*

Total Recognized Losses in the claims administrator's distribution declaration (ECF No. 224) totals $105,678,701.16, and there are 18,955,412 damaged shares. *Id.* Thus, assuming short sales are included in the Plan of Allocation and using the 30-day average selling price assumption above, total short seller damages represents less than 0.005% of Recognized Losses and less than 0.03% of damaged shares. *Id.*

Even if shares were sold short long before the beginning of the class period, most short sellers would not have trading losses: for the six months prior to the class period, the average selling price of Sasol stock was $48.179 on the day preceding the beginning of the Class Period, which does not equate to trading losses for short sellers in this scenario. *Id.*

existing on the date prior to the start of the Relevant Period until that short position is fully covered." *See* Plan of Distribution, *In the Matter of General Electric Company*, SEC Administrative Matter, File No. 3-20165 at 2.[13]

## C.    The denial of Settlement Class Member claimants' Recognized Losses for "shares sold short" is appropriate in this case.

The decision to exclude losses incurred in Settlement Class Members short sales is both reasonable and rational. First, courts do not agree on when or whether short sellers are damaged in covering a short sale under *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). In *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 752 (S.D.N.Y. 2011), the court noted that the Supreme Court held in ordinary fraud-on-the-market cases, an "inflated purchase price [of a security] will not itself constitute or proximately cause the relevant economic loss" (citing *Dura*, 544 U.S. at 342). Thus, the Court concluded that an investor who closes out or covers its short position before a corrective disclosure or the materialization of a concealed risk cannot show loss causation. *Id.* at 753-59.[14] *See also*, *Collier v. Aksys Ltd.*, 2005 WL 1949868 (D. Conn. Aug. 15,

---

[13] https://www.sec.gov/litigation/admin/2022/34-94856-dp.pdf. *See also In the Matter of Wells Fargo, Respondent,* Administrative Matter File No. 3-19704 at ¶41. https://www.sec.gov/litigation/admin/2020/34-89501-dp.pdf ("If the sale date for a share falls before the purchase date ("Short Sale"), then the share has a Recognized Loss per Share of $0.00"); *In the Matter of Bankrate, Inc.*, Administrative Matter File No. 3-16786 at Ex. A, ¶B.1., https://www.sec.gov/litigation/admin/2020/34-90188-dp.pdf ("Short sale transactions shall not be eligible for recovery."); *In the Matter of Computer Sciences Corp., et al.*, Administrative Matter File No. 3-16575, at Ex. B, ¶B.3., https://www.sec.gov/litigation/admin/2017/34-80559-dp.pdf ("The date of covering a short sale is deemed to be the date of purchase or acquisition of the common stock. The date of a short sale is deemed to be the date of sale of the respective common stock. However, the Recognized Claim on short sales is zero."). Some other SEC Fair Fund plans of distribution may not include this exclusion and the rational is not stated.

[14] In *Take-Two,* a short-seller plaintiff brought an individual securities action against the defendants after he opted-out of another securities fraud settlement with the same defendants because the plan of allocation in that settlement excluded short sellers like him from recovery. "Any person or entity that sold Take-Two common stock 'short' shall have no Recognized Loss with respect to any purchase during the Class Period or SEC Claims Period to cover such short

2005), *aff'd*, 179 F. App'x 770 (2d Cir. 2006) (dismissing short sellers' class action claim under *Dura* where plaintiff alleged defendants' misrepresentation artificially inflated the price of a stock for a period of time until the constricted supply of stock caused the stock price to "take off," causing harm to short sellers). Second, these courts reason that assessing loss causation in a short-selling setting is further complicated because the nature of the misstatement, the corrective disclosure, and the corresponding movement of stock prices would all be inverted from the standard long-investor model. *Take-Two*, 818 F. Supp. 2d at 753 (citing *Collier*, 2005 WL 1949868, at *36). Thus, the actionable misstatement in the short-selling context would conceal positive rather than negative information about the company—such as the pendency of a favorable merger—and would depress rather than inflate stock prices. *Id.*

But not all courts agree that a short seller can never prove loss causation in a securities fraud class action. In *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, 2005 U.S. Dist. LEXIS 16853 (D.N.J. June 7, 2005), a case rejected by *Take-Two* as outside of the Second Circuit and pre-*Dura*, the district court upheld claims that "the false financial statements artificially inflated [defendant's] stock, which, in turn, forced [p]laintiffs to make cover transactions and incur significant losses." The *Take-Two* court also noted that unlike the short sellers in *Rocker*, the *Take-Two* plaintiff began his short sales well after the prices were already inflated, and made no allegations of a subsequent scheme by Take-Two to manipulate prices in order to force short sellers like him to prematurely cover. 818 F. Supp. 2d at 758; *see also In re Tesla Sec. Litig.*, 477 F. Supp. 3d 903, 933 (N.D. Cal. 2020) (recognizing for purposes of a lead plaintiff motion short-seller claims of loss causation when the stock price rose "when Mr. Musk indicated the going-private

---

sale." The short-seller plaintiff did not object to the settlement and the court approved the settlement and plan of allocation. *Id*. at 749.

share price would be $420, which was above the current share price. Because of this allegedly artificial rise in price, short sellers betting against Tesla were forced to sell their stocks to prevent further loss.").

Here, this was a standard securities fraud case alleging inflated ADR prices that fell upon a series of partial disclosures revealing the truth; and there were no allegations that Defendants' statements were aimed to squeeze short sellers, or caused the price of the stock to be artificially low when short sellers sold, or rise after the statement was made in such a way as to harm short sellers. In fact, after each corrective disclosure, Sasol's stock price fell such that a short seller, as with its expectations, likely profited. Amended Complaint at ¶¶ 32, 223, 234-237; *see Take-Two*, 818 F. Supp. 2d at 753 ("By contrast, where, as alleged here, a company concealed negative information about its economic condition, a short seller who sold at artificially inflated prices and covered after the corrective disclosure would actually *profit* from the fraud") (italics in original). Further, out of the myriad of false statements made, the complaint does not plead that any misstatements caused the stock price to rise such that a short seller would be hurt. *See* Amended Complaint at ¶¶ 126-223. Under these circumstances, Plaintiff's counsel and its experts believed it was rational, reasonable, and equitable to only allocate the Settlement Funds to those who took long (not short) positions and were betting for rather than against the Company.

## IV.   CONCLUSION

For the reasons stated above, the Plan of Allocation on which the Plan of Distribution is based, has a reasonable and rational basis, and treats class members equitably towards each other. Accordingly, both plans are fair and reasonable, and the Plan of Distribution should be approved.

DATED: February 22, 2023

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:    */s/ Steve W. Berman*
      STEVE W. BERMAN
Steve W. Berman (admitted *Pro Hac Vice*)
Jerrod C. Patterson (admitted *Pro Hac Vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com
jerrodp@hbsslaw.com

Lucas E. Gilmore (admitted *Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
lucasg@hbsslaw.com

*Counsel for Lead Plaintiff David Cohn and*
*Additional Representative Plaintiff Chad L. Moshell*

- 17 -

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAD LINDSEY MOSHELL, individually and on behalf of all others similarly situated, | C.A. No. 1:20-cv-01008-JPC |
| Plaintiff, | Hon. John P. Cronan |
| v. | **SUPPLEMENTAL DECLARATION OF PAUL MULHOLLAND RESPONDING TO THE COURT'S QUESTIONS REGARDING REJECTED SHARES** |
| SASOL LIMITED, DAVID EDWARD CONSTABLE, BONGANI NQWABABA, STEPHEN CORNELL, PAUL VICTOR, and STEPHAN SCHOEMAN, | |
| Defendants. | |

I, Paul Mulholland, declare:

1.      I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have over thirty years of experience specializing in the administration of class action cases. SCS was established in April 1999 and has administered over four hundred (400) class action cases since its inception. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would testify thereto.

2.      As requested by the Court, this declaration sets forth the justification for denying claims falling into two of the categories listed in the Craig Declaration namely, categories (ii) ("American Depository Receipts ('ADRs') of Sasol Limited ('Sasol') that were not purchased or otherwise acquired, but were received, granted by gift, inheritance, or operation of law") and (iv) ("claims with shares sold short"). This declaration will address (1) whether an ADR "received, granted by gift, inheritance, or operation of law" counts as an ADR "otherwise acquired" as used in the definition of the "Settlement Class" in the Court's Order and Final Judgment; (2) what relationship must exist between a filed claim and that claimant's short position in Sasol Limited ADRs for the claim to be considered one "with shares sold short"; and (3) whether it is appropriate to deny any recovery to claimants "with shares sold short" when such claimants do not appear to be excluded by the definition of the Settlement.

## RECEIVED, GRANTED BY GIFT, INHERITANCE OR OPERATION OF LAW

3.      ADRs received, granted by gift, inheritance or operation of law were rejected since claimants did not provide the original purchase price or date for these transactions. Under Section 10(b) of the Exchange Act an investor must be a purchaser or seller. These ADRs are shown as

- 1 -

010886-11/2185219 V1

received[1] in the claimant's documentation. Received ADRs are not actual purchases but transfers from other accounts. Since the origin of the actual purchase occurred in a different account ("origin account") and the claimant did not provide the purchase price and date from the "origin account," SCS was unable to properly calculate Recognize Losses for these shares. Often claimants will mistakenly provide a share price at date of transfer versus the original purchase price. The price at date of transfer is not a valid purchase price. Whenever claimants with received ADRs do provide SCS with the original purchase price and date from the "origin account", SCS will properly compute Recognized Losses using the original data. The Plan of Allocation states "The receipt or grant by gift, inheritance or operation of law of the Company shares shall not be deemed a purchase, acquisition or sale of shares for the calculation of an Authorized Claimant's Recognized Loss." This is consistent with all other Plans of Allocation in security class action settlements administered by SCS and is commonly used methodology throughout this industry including Fair Fund plans set up by the Securities and Exchange Commission.

3.      The term "otherwise acquired" principally relates to an acquisition of ADRs for an exchange other than cash (i.e. converting debt to equity; employee stock grants; and acquisition of assets). These types of transactions have both acquisition date and price unlike shares received, granted by gift, inheritance or operation of law unless original purchase prices and dates are provided. Claimants who were rejected on the basis of shares "received, granted by gift, inheritance, or operation of law" had the opportunity to contest or correct the deficiency.

## SHARES SOLD SHORT

4.      A claimant was considered to be "with shares sold short," and hence their claim denied, where the documentation either identified a sale as "short," and purchase as a "cover" and

---

1 Other commonly used terms for shares received are "transfers-in" and "shares delivered".

010886-11/2185219 V1

the "short" sale preceded the "cover." Unlike typical trading of publicly traded securities where you generate a profit by predicting an increase in price, short selling is a trading technique in which a trader tries to generate a profit by predicting a decline in price. A claimant in a short position borrows ADRs from a broker dealer and sells the ADRs in the open market. This is considered one "with shares sold short" that results in a negative balance of shares until shares are covered or purchased. "With shares sold short" the selling of shares will precede the corresponding purchase or covering of shares.

5.      In this settlement, there were 1,121 claims that had a short position during the Settlement Class Period and were rejected for "sales sold short". The short positions for each of these 1,121 claims would also have been rejected under the Plan of Allocation for one of the following reasons:

a)      ADRs that were sold short during the Settlement Class Period and covered during the Settlement Class Period would have been rejected for no "inflation damages"[2] and no Recognized Loss since the inflation upon sale is the same or greater than the inflation upon purchase.

b)      ADRs that were sold short during the Settlement Class Period and never covered during the Settlement Class Period would have been rejected for no Recognized Loss since there were no eligible purchases during the Settlement Class Period.

c)      ADRs with short positions at the beginning of the Settlement Class Period and covered during the Settlement Class Period would have been rejected since selling prices are not provided and "trading losses"[3] cannot be calculated without selling prices. Under the Plan of Allocation, Recognized

---

2 "Inflation damages" occur when the inflation upon purchase exceeds the inflation upon sale.

3 "Trading losses" are losses where the purchase price exceeds the selling price.

- 3 -

Losses are the lesser of "inflation damages"[4] or "trading losses".

These are the principal reasons the Plan of Allocation in this matter states, "The covering purchase of a short sale is not an eligible purchase" and is also consistent with the large majority of Plans of Allocation for security class action settlements administered by SCS and is commonly used methodology throughout this industry including Fair Fund plans set up by the Securities and Exchange Commission.

6.      As noted in paragraph six above, all "shares sold short" during the Settlement Class Period have no Recognized Loss under the Plan of Allocation. Rejected claimants with "shares sold short" were given proper notice to contest their rejection for "shares sold short" and no Class Member objected. In addition, the exclusion of "shares sold short" was included in the Plan of Allocation available to all Class Members and no Class Member objected.

---

4 There were 1,208,837 "shares sold short" at the beginning of the Settlement Class Period and covered during the Settlement Class Period. Assuming these 1,208,237 "shares sold short" were sold at $0 inflation and later covered (purchased) at inflated prices during the Settlement Class Period, "inflation damages" would total $16,109,442. Since there are no selling prices "trading losses" cannot be calculated for these shares.

However, in order to estimate short seller's inflation damages (if any)—known as Recognized Losses (excluding trading losses) under the Plan of Allocation—during the class period for shares sold short pre-class period and had covering purchases during the class period, class counsel requested that SCS assume a pre-class period short sale price based on the 30-day average preceding the class period (Feb. 9, 2015 to Mar. 9, 2015). Using a pre-class period 30-day average selling price, the selling price can be assumed to be $37.52 per share. Recognized Losses would therefore be $4,555.25 for 5,213 damaged short seller shares eligible for participation under the Plan of Allocation.

Total Recognized Losses totals $105,678,701.16, and there are 18,955,412 damaged shares. See ECF No. 224. Thus, assuming short sales are included in the Plan of Allocation and using the 30-day average selling price assumption above, total short seller damages represents less than 0.005% of Recognized Losses and less than 0.03% of damaged shares.

Even if shares were sold short long before the beginning of the class period, most short sellers would not have trading losses: For the six months prior to the class period, the average selling price of Sasol stock was $48.179 on the day preceding the beginning of the Class Period, which does not equate to trading losses for short sellers in this scenario.

- 4 -

7.      It is my opinion and for the reasons stated above, the Plan of Distribution based on the Plan of Allocation is a fair, reasonable and equitable to Class Members.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 21st day of February 2023, in Media, Pennsylvania.

_Paul Mulholland_
Paul Mulholland

- 5 -

010886-11/2185219 V1